KILPATRICK TOWNSEND & STOCKTON LLP
GREGORY S. GILCHRIST (State Bar No. 111536)
RYAN T. BRICKER (State Bar No. 269100)
SOPHY MANES (State Bar No. 287583)
ALEXANDRA N. MARTINEZ (State Bar No. 317382)
Two Embarcadero Center, Suite 1900
San Francisco, California  94111
Telephone:  (415) 576-0200
Facsimile:  (415) 576-0300
Email:      gilchrist@kilpatricktownsend.com
            rbricker@kilpatricktownsend.com
            smanes@kilpatricktownsend.com
            amartinez@kilpatricktownsend.com

Attorneys for Plaintiffs
PATAGONIA, INC. and
PATAGONIA PROVISIONS, INC.

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

# WESTERN DIVISION – LOS ANGELES

| | |
|---|---|
| PATAGONIA, INC. and PATAGONIA PROVISIONS, INC., <br><br> Plaintiffs, <br><br> v. <br><br> ANHEUSER-BUSCH, LLC dba PATAGONIA BREWING CO., <br><br> Defendant. | Case No. 2:19-cv-02702 <br><br> **COMPLAINT FOR TRADEMARK INFRINGEMENT, UNFAIR COMPETITION, DILUTION, FRAUD, AND JUDICIAL DECLARATION THAT TRADEMARK REGISTRATION IS VOID (INJUNCTIVE RELIEF SOUGHT)** <br><br> **JURY TRIAL DEMAND** |

## INTRODUCTION

1.      In 2012, Anheuser-Busch LLC ("AB") submitted false evidence to the Trademark Office to unlawfully obtain a trademark for PATAGONIA on beer. After letting its fraudulently obtained trademark registration lie unused for six years, AB recently adopted the fictitious business name "Patagonia Brewing Co." and launched an intensive marketing campaign to "introduce" its PATAGONIA beer to American consumers.



2.     AB's new beer bottle employs a logo including PATAGONIA beneath a mountain silhouette, shown below ("AB's PATAGONIA logo").



AB recently launched its new beer at ski resorts in Colorado, where its sales people dressed in black down jackets with AB's PATAGONIA logo on the chest and gave out beanies, scarves, and t-shirts all bearing the same PATAGONIA logo.  At the ski resorts, AB set up what looks like a pop-up store, including a booth made of what AB called out to be reclaimed wood, featuring a large PATAGONIA logo sign and a placard describing "Patagonia's 'tree positive' mission."  Customers were told AB will plant one tree for every case of beer purchased.

3.     In launching its PATAGONIA beer, AB deliberately has attempted to take advantage of the tremendous goodwill that Patagonia, Inc. and Patagonia Provisions, Inc. (together, "Patagonia" or "Plaintiffs") have cultivated in their brand, and the hard-earned reputation that Patagonia, Inc. has built over the last forty years as a company dedicated to environmental conservation.  AB has gone as far as creating a logo that is strikingly similar to Patagonia's famous mountain silhouette logo that has appeared continuously for decades on millions of products.  AB has



COMPLAINT – Case No. 2:19-cv-02702                                               - 2 -

1   tried to connect its beer with environmental conservation by claiming to plant a

2   tree for each case of beer sold, an initiative that Patagonia would welcome but for

3   the fact that AB is clearly attempting to copy Patagonia's famous brand identity

4   to confuse consumers.  AB has launched its copycat brand at ski resorts where

5   Patagonia, Inc.'s ski apparel is widely used and universally recognized in further

6   attempts to draft off Patagonia's goodwill.  And AB has dressed its sales people

7   in down jackets and given out beanies, t-shirts, and scarves bearing AB's

8   PATAGONIA logo—all products that Patagonia sells, including in its stores in

9   the very towns where AB has launched its beer.  In short, AB has done everything

10  possible to make it appear as though this PATAGONIA beer is sold by Patagonia.



21  / / /

22  / / /

23  / / /

24  / / /

25  / / /

26  / / /

27  / / /

28  / / /



COMPLAINT – Case No. 2:19-cv-02702                                           - 3 -

1
2
3
4
5
6
7
8
9



10
11
12
13
14
15
16
17



18
19
20        4.      AB's effort to look and feel like Patagonia is all the more confusing
21   because Patagonia started a food business in 2012 called Patagonia Provisions, Inc.
22   ("Provisions"), which was formed to challenge a broken food industry increasingly
23   dependent on pesticides, chemicals, and emitting massive amounts of greenhouse
24   gases.  Provisions has been selling its own beer since 2016 using a perennial grain
25   called Kernza® instead of traditional barley.  Kernza has long roots that store carbon
26   in the ground and using it in beer has served as an effective vehicle for Patagonia
27   to introduce customers to carbon sequestration as a means of removing greenhouse
28   gases from our atmosphere.

     / / /



1
2
3
4
5
6
7
8
9
10
11
12
13



14  5.     Patagonia is filing this lawsuit to stop AB from maintaining its

15  unlawful trademark registration, from selling PATAGONIA beer, and to prevent

16  AB from going to such great lengths to pass itself off as Patagonia, all of which

17  infringes, dilutes, and usurps the goodwill in Patagonia's famous PATAGONIA

18  trademarks, as well as the reputation it has built over the last four decades.

19  **PARTIES, JURISDICTION, AND VENUE**

20  6.     Patagonia, Inc. is a California corporation headquartered at 259 West

21  Santa Clara Street, Ventura, California 93001.  For more than forty years, Patagonia,

22  Inc. has been designing, developing, marketing, and retailing outdoor apparel,

23  sportswear, and related products.  For many years, Patagonia, Inc. and the

24  PATAGONIA® brand have been famous in the United States and around the world

25  for innovative apparel designs, quality products, and environmental and corporate

26  responsibility.

27  7.     Patagonia, Inc. was founded in the late 1960s to design and sell

28  climbing clothes and other active sportswear.  The company adopted the brand



1   "PATAGONIA" to differentiate another business that designed and manufactured
2   climbing gear and tools.  PATAGONIA was chosen as the trademark to call to mind
3   romantic visions of glaciers tumbling into fjords, jagged windswept peaks, gauchos,
4   and condors.  Since at least 1973, the PATAGONIA brand has appeared on a multi-
5   colored label inspired by a silhouette of the jagged peaks of the Mt. Fitz Roy skyline
6   (the "P-6 logo").

7        8.     In the more than forty years since Patagonia, Inc.'s business started,
8   the PATAGONIA brand and its P-6 logo have become among the most identifiable
9   brands in the world.  Patagonia, Inc.'s products now include a wide range of apparel
10  products and equipment, including technical products designed for climbing, skiing
11  and snowboarding, surfing, fly fishing, and trail running, as well as sportswear,
12  which are sold around the world.

13       9.     Over the years, Patagonia, Inc. has been recognized and honored for
14  its business initiatives, including receiving the Sustainable Business Counsel's first
15  "Lifetime Achievement Award."  In 1996, with an increased awareness of the
16  dangers of pesticide use and synthetic fertilizers used in conventional cotton
17  growing, Patagonia, Inc. began the exclusive use of organically grown cotton and
18  has continued that use for more than twenty years.  It was a founding member of
19  the Fair Labor Association®, which is an independent multi-stakeholder verification
20  and training organization that audits apparel factories.  Additionally, since 1985
21  Patagonia, Inc. has pledged 1% of sales to environmental groups to preserve and
22  restore our natural environment, donating more than $100 million to date.  In 2002,
23  Patagonia, Inc.'s founder, Yvon Chouinard, along with others, created a non-profit
24  called 1% For the Planet® to encourage other businesses to do the same.  Today,
25  more than 1200 member companies have donated more than $150 million to more
26  than 3,300 nonprofits through 1% For the Planet.  In 2012, Patagonia, Inc. became
27  one of California's first registered Benefit Corporations, ensuring Patagonia, Inc.
28  could codify into its corporate charter consideration of its workers, community,



COMPLAINT – Case No. 2:19-cv-02702                                    - 6 -

and the environment.  In 2016, Patagonia, Inc. pledged to donate all revenue from sales on Black Friday, donating $10 million to environmental grantees in response to customers' purchases on that day.  In 2018, Patagonia, Inc. pledged an additional $10 million in grants to environmental groups in response to recent tax cuts given to businesses.

10.    Patagonia Provisions, Inc. is a California corporation headquartered at 259 West Santa Clara Street, Ventura, California 93001.  For several years, Provisions has developed, marketed, and sold socially and environmentally responsible food items under the PATAGONIA PROVISIONS® Mark, including buffalo jerky, salmon, fruit and almond bars, and soup mixes.  Patagonia and Provisions are related companies.

11.    Anheuser-Busch, LLC ("AB") is a limited liability company that, in its corporate filings, alleges its principal place of business is One Busch Place, St. Louis, Missouri 63118.  AB is a global producer of beer and other products and services under a multitude of brands.  Patagonia is informed and believes that AB maintains a sophisticated department of trademark attorneys and an array of outside counsel to procure, maintain, and enforce these brands and trademarks.  Although the primary products sold by AB are beers, AB and, on information and belief, its parent corporation, Anheuser-Busch Inbev S.A., use and maintain trademarks for additional products categories, including for apparel under the STELLA ARTOIS, HOEGARDEN, and LEFFE marks, among others, and for educational and charitable services under the OCTOBER, LA SAVOIR, and THE SIMPLE COMPLEXITIES OF BEER brands.  Among its brands is AB's PATAGONIA beer, newly launched in the United States.  Though AB has not made any effort to obtain a PATAGONIA registration for apparel products or educational or charitable services—presumably because it knows such applications would be futile in light of Patagonia's broad rights—AB is also producing and distributing such products and services.



1      12.     Patagonia Brewing Company is, on information and belief, a

2   fictitious business name registered by AB in July 2018, shortly before its launch

3   of PATAGONIA beer in the United States.  Patagonia is informed and believes

4   that AB registered the name so that, in addition to using PATAGONIA as a mark,

5   it could identify itself to consumers as an entity named Patagonia (see, for example,

6   the copyright ownership claim for AB's packaging below), enhancing the likelihood

7   that consumers will associate AB's beer with Plaintiffs, and not with a multinational

8   conglomerate.

9

10   © 2018 Patagonia Brewing Co., Bohemian Pilsner Lager (Ale in TX), Fairfield, California. Brewed in USA.

11

12      13.     Patagonia's trademark claims arise under the Trademark Act of 1946

13   (the Lanham Act), as amended by the Trademark Dilution Revision Act of 2006.

14   This Court has jurisdiction over such claims pursuant to 28 U.S.C. §§ 1338(a) and

15   1338(b) (trademark and unfair competition), 28 U.S.C. § 1331 (federal question),

16   and 15 U.S.C. § 1121 (Lanham Act).  This Court has jurisdiction over the state law

17   claims under 28 U.S.C. § 1367 (supplemental jurisdiction) and, because the claims

18   involve more than $75,000 exclusive of interest and costs, 28 U.S.C. § 1332

19   (diversity).

20      14.     This Court has personal jurisdiction over AB because AB's contacts

21   with this forum are so pervasive and substantial that it is fair for AB to respond to

22   a lawsuit here.  In addition, AB is offering and promoting its relevant products and

23   services to residents of this district through its website, where to buy locater, and

24   through distributors and retailers who are selling or promoting the products and

25   services to consumers in this district.  Patagonia is informed and believes that

26   AB knows Patagonia is located in this judicial district, and that Patagonia will

27   suffer the harm from damage to its reputation and trademarks in this district.

28   / / /



1        15.    Venue is proper in this Court under 28 U.S.C. § 1391(b) because AB

2    transacts business in this district and a substantial part of the events giving rise to

3    the claims asserted arose in this district.

4        **AB Unlawfully Obtained the PATAGONIA Registration for Beer**

5        16.    AB purports to own U.S. Trademark Registration No. 4,226,102.  That

6    registration issued from an intent to use application originally filed by Warsteiner

7    Importers Agency, Inc. ("Warsteiner"), a German brewer and, on information and

8    belief, competitor of AB.  Patagonia is informed and believes that the registration

9    was procured unlawfully and is void from its inception.

10       17.    Plaintiffs' investigation, to date, of AB's unlawful acquisition of

11   Warsteiner's intent to use application reveals as follows:

12       18.    On June 8, 2006, Warsteiner filed an "intent to use" application for

13   PATAGONIA in International Class 32 for beer, declaring a bona fide intention

14   to use the mark in interstate commerce.

15       19.    On July 12, 2006, Warsteiner petitioned to cancel a then-existing

16   United States registration for PATAGONIA for beer belonging to Cerveceria Y

17   Malteria Quilmes S.A.I.C.A.G. ("Quilmes").  The U.S. Patent and Trademark Office

18   ("Trademark Office") cancelled the Quilmes registration on November 17, 2006.

19       20.    On January 1, 2007, AB acquired a Luxembourg-based holding

20   company that controlled 93% of Quilmes International, which owned the Argentine

21   Quilmes entity that previously owned the United States trademark registration for

22   PATAGONIA that Warsteiner had cancelled one month earlier.

23       21.    On July 21, 2009, after opposition proceedings from a third party, the

24   Notice of Allowance for Warsteiner's intent to use application was issued, inviting

25   Warsteiner to secure its registration by showing commercial use of the mark.

26       22.    On January 18, 2010, Warsteiner requested an extension of time to file

27   its statement of use.  For the next two years there was no activity on Warsteiner's

28   intent to use application, except that it filed similar extensions every six months to



1   keep the application alive.  On January 5, 2012, Warsteiner filed its fifth and final

2   permissible extension to show use, which was set to expire July 21, 2012.

3        23.   On May 14, 2012, Andrea K. Cannon, a trademark attorney employed

4   by AB, substituted in as the correspondent and attorney of record, representing

5   Warsteiner in the proceeding involving its intent to use application.

6        24.   At the same time that AB's lawyer took over Warsteiner's trademark

7   application, AB submitted labels to the Alcohol and Tobacco Tax and Trade Bureau

8   (TTB) for COLA approval, a prerequisite to selling beer in the United States.  On

9   July 17, 2012, four days before Warsteiner's intent to use application was set to

10   fall abandoned for failure to use the mark, AB's attorney filed a statement of use

11   *on behalf of Warsteiner*, showing a single bottle as a specimen that used the same

12   "Patagonia" label that AB had recently submitted to the TTB for approval.  The

13   label used for both AB's COLA Application and Warsteiner's statement of use

14   are shown below.

15

| AB's COLA Filing Label | Warsteiner's Evidence of Use |
|---|---|
| ![AB's COLA Filing Label — Patagonia Cerveza / Amber Lager label] | ![Warsteiner's Evidence of Use — Patagonia Amber Lager bottle] |



25.     In the statement of use submitted to the Trademark Office, Warsteiner swore—through AB's attorney—that the bottle of AB beer showed *Warsteiner's* use of PATAGONIA in interstate commerce, and that it had first sold beer in the United States under the mark one day earlier, on July 16, 2012.  But Warsteiner owns no COLA for the label shown in the statement of use and, on information and belief, could not legally have sold the beer in this form.  In short, there is no evidence that Warsteiner actually used the applied-for trademark and, it appears, simply acquiesced in AB's misrepresentation to the Trademark Office that Warsteiner had used the mark in the United States.  The specimen did not show AB's beer in a commercial context, such as a store shelf.  Instead, the submission consisted of two photos of a single bottle of PATAGONIA-labeled beer on a table in a white-walled room.

26.     On October 16, 2012, Warsteiner's purported trademark registration for PATAGONIA was issued by the Trademark Office.

27.     On February 8, 2013, AB's lawyer recorded that Warsteiner had assigned the registration to AB.  A "corrected" assignment was filed on February 22, 2013.  The document verifying the assignment states it "assigns … all right, title, in and to the PATAGONIA *Application* and Mark, together with the goodwill of the business symbolized by the PATAGONIA mark *and any resulting registration*," revealing, on information and belief, that the assignment was drafted *before* any registration had issued and purporting to assign the application:

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /



COMPLAINT – Case No. 2:19-cv-02702

- 11 -

1

2    **Appendix III**

3    **MODEL FORM OF ASSIGNMENT OF U.S. TRADEMARK**

4
5        Whereas WARSTEINER IMPORTERS AGENCY, INC. ("WIA") with a principal
     place of business at 9359 Allen Road, West Chester, Ohio 45609 has filed an application for
6    registration with the U.S. Trademark Office (Serial No. 78/903,572) (the "PATAGONIA
     Application") for the mark PATAGONIA (the „Mark") ; and

7
        Whereas ANHEUSER-BUSCH, LLC , with a principal place of business at One
8    Busch Place, St. Louis, Missouri 63118 („Buyer") wishes to acquire the PATAGONIA
     Application and Mark and any resulting registration.

9
        Now, therefore, for good and valuable consideration, WIA hereby assigns to
10   ANHEUSER-BUSCH, LLC all right, title, and interest in and to the PATAGONIA
     Application and Mark, together with the goodwill of the business symbolized by the
11   PATAGONIA mark and any resulting registration.

12

13

14   _Shtan Fehry_

15   Signed (Stephan Fahrig)                              (Sabine Diße)

16   _____                          _____
     Director                                      Director
17   Title

18   WARSTEINER IMPORTERS AGENCY, INC.

19   Dated:  20.12.2012

20        28.     Intent to use trademark applications cannot be assigned unless the

21   assignor also transfers the existing business unit which owns the application and

22   goodwill associated with the mark (which only can be created through use).  There

23   is no evidence that Warsteiner became part of AB as part of this transaction; indeed,

24   Warsteiner continues to exist as an independent entity to this day.  Knowing that

25   Warsteiner could not lawfully assign the intent to use trademark application to AB,

26   and knowing that Warsteiner could not show the use needed to obtain the trademark

27   registration, AB and Warsteiner, on information and belief, colluded to deceive

28   the Trademark Office—seeking to show that Warsteiner was responsible for



COMPLAINT – Case No. 2:19-cv-02702                                    - 12 -

1    commercial use of the PATAGONIA beer shown in the statement of use.  While the
2    ostensible reason for this collusion is not reflected in the public record, Patagonia is
3    informed and believes that the only purpose for AB's attorney to have appeared
4    before the Trademark Office on behalf of its competitor to complete an application
5    and file a statement of use—using AB-produced beer and AB-owned labels and
6    packaging—was to create the illusion that Warsteiner was entitled to perfect its
7    registration while, under a transaction that remained undisclosed to the Trademark
8    Office, Warsteiner's non-use of the PATAGONIA trademark was disguised.  Absent
9    this subterfuge, the Trademark Office would have deemed Warsteiner's application
10   abandoned.

11                          **AB's False Section 8 & 15 Filing**

12           29.     After obtaining the PATAGONIA registration, Patagonia is informed
13   and believes that AB made no commercial use of the mark in the United States until
14   its recent campaign.  Indeed, the use complained of in this complaint is AB's *first*
15   bona fide use of the PATAGONIA mark in the United States, more than six years
16   after the registration issued.

17           30.     Despite this, on October 5, 2018, AB made the following sworn
18   statement to the Trademark Office, to renew and preserve its registration:  "The
19   mark has been in continuous use in commerce for five consecutive years after the
20   date of registration … and is still in use in commerce on or in connection with all
21   goods/services."  The filing itself warned AB that any willfully false statement
22   would jeopardize the validity of the trademark registration.

23           31.     AB's current press releases and promotional statements—together with
24   its disclosures in its public filings—indicate that AB made no bona fide commercial
25   use of its unlawful PATAGONIA trademark in the five years following issuance
26   of the registration, and contradict AB's sworn statement to the Trademark Office.
27   AB's annual reports up to and including the 2017 report identify PATAGONIA as
28   a "local craft brand" in the "Latin America South" category.  The brand is only



COMPLAINT – Case No. 2:19-cv-02702                                              - 13 -

mentioned once in the company's 2016 report, together with dozens of other beers under a lengthy list of "Local Brands" in the report's trademark notice. Similarly, in 2015, the brand is described as only available in the Latin America South market, and even within that market, distinguished from "global brands" such as Corona and Stella Artois, and "international brands" Hoegarden and Leffe.

32. The February 28, 2019, press release announcing AB's 2018 financial results stated that AB is "identifying opportunities to *introduce* existing brands into *new* markets. Examples of this practice include Argentina's Patagonia in certain regions of the U.S. …" (emphasis added).

33. AB's recent promotional statements follow suit. A Beer Business Daily trade journal article in which Harry Lewis, AB's Vice President of New Brands, is heavily quoted, explains that AB "quietly began testing" the PATAGONIA beer "stateside" in 2018, and more recently launched a "pilot program" in Colorado.

34. The net effect of Warsteiner's intent to use application, the mis-reported assignment to AB, and AB's covert maintenance of the registration while it waited for the additional protections provided by the five-year renewal filing follow: AB effectively reserved the PATAGONIA trademark for more than a decade before the mark appears genuinely to have been used in conjunction with AB's recent launch of its PATAGONIA-branded beer. During this interval, Provisions' own application to register the mark PATAGONIA PROVISIONS for wine was refused, partly on the strength of Warsteiner's trademark, then owned by AB. The registration continues to harm Plaintiffs, including because AB has cautioned Patagonia against using Plaintiffs' PATAGONIA trademark in connection with beer on the strength of AB's supposed rights in its registration.

### The PATAGONIA Trademarks

35. Plaintiffs own numerous registrations for and including the PATAGONIA trademark and P-6 logo, both together and alone, and the



PATAGONIA PROVISIONS trademark, for a wide-ranging assortment of products and services.  Among these are the following U.S. trademark registrations:

| Trademark | Reg. No. / Reg. Date | Goods | Date of First Use |
|---|---|---|---|
| **PATAGONIA** | 1189402 / Feb. 9, 1982 | Men's and Women's Clothing – Namely, Sweaters, Rugby Shirts, Walking Shorts, Trousers, Jackets, Mittens, Hoods, and Rainwear. | 08/1974 |
|  | 1294523 / Sept. 11, 1984 | Men's, Women's, and Children's Clothing – Namely, Jackets, Pants, Vests, Gloves, Pullovers, Cardigans, Socks, Sweaters, Underwear, Shirts, Shorts, Skirts, and Belts. | 08/1974-1981 |
|  | 1547469 / July 11, 1989 | Men's, Women's, and Children's Clothing – Namely, Jackets, Pants, Shirts, Sweaters, Vests, Skirts, Underwear Tops and Bottoms, Socks, Gloves, Mittens, Hats, Face Masks, Balaclava, Gaiters, and Belts. | 08/1974 |
|  | 1775623 / June 8, 1993 | Luggage, Back Packs, and All-Purpose Sports Bags. | 08/1988 |
| **PATAGONIA** | 1811334 / Dec. 14, 1993 | Luggage, Back Packs, Fanny Packs, and All-Purpose Sport Bags, Footwear, Ski Bags, and Ski Gloves. | 08/1990 |
| **PATAGONIA** | 2260188 / July 13, 1999 | Computerized on-line ordering activities in the field of clothing and accessories; providing information in the field of technical clothing and accessories for use in | 10/1995 |

| Trademark | Reg. No. / Reg. Date | Goods | Date of First Use |
|---|---|---|---|
| | | recreational, sporting, and leisure activities; providing information in the field of existing and evolving environmental issues. | |
| **PATAGONIA.COM** | 2392685 / Oct. 10, 2000 | On-line retail store and mail order services featuring technical clothing, footwear, and accessories; computer services in the nature of on-line information related to the environment and clothing. | 10/1995 |
| **PATAGONIA** | 2662619 / Dec. 17, 2002 | Retail store services featuring clothing, footwear, luggage, and a wide variety of sporting goods and accessories. | 06/1986 |
| **PATAGONIA PROVISIONS** *(owned by Provisions)* | 4894914 / Feb. 2, 2012 | Salmon, not live. | 08/2013 |
| **PATAGONIA PROVISIONS** *(owned by Provisions)* | 4168329 / July 3, 2012 | Salmon jerky. | 04/2012 |
| **PATAGONIA PROVISIONS** *(owned by Provisions)* | 4,786,172 / Aug. 4, 2015 | Mugs all for use in camping and outdoor events; mugs used to keep food and drink cold, drink bottles sold empty; camping gear dinnerware and cook-ware, namely, pots. | 09/2014 |
| **PATAGONIA PROVISIONS** *(owned by Provisions)* | 4,795,759 / Aug. 18, 2015 | Tsampa (Tibetan porridge) and mixes for making tsampa comprising processed roasted grains. | 09/2014 |
| **PATAGONIA PROVISIONS** *(owned by Provisions)* | 4,809,079 / Sept. 8, 2015 | Snack bars containing primarily dried fruit and nuts; mixes for making soup comprising roasted | 09/2014 |



COMPLAINT – Case No. 2:19-cv-02702

| Trademark | Reg. No. / Reg. Date | Goods | Date of First Use |
|---|---|---|---|
| | | grains, flour, olive oil, and spices; soup mixes. | |
| **PATAGONIA PROVISIONS** *(owned by Provisions)* | 4822430/ Sept. 29, 2015 | Bison jerky, buffalo jerky. | 08/2015 |
| **PATAGONIA PROVISIONS** *(owned by Provisions)* | 4917049 / Mar. 15, 2016 | Online retail store services featuring food, namely, bison jerky, buffalo jerky, salmon jerky, snack bars containing primarily dried fruit and nuts, mixes for making soup comprising roasted grains, flour, olive oil and spices; providing current events news related to topics of general interest; provid-ing on-line publications in the nature of periodical columns and blogs in the field of food, recipes, lifestyle, the environment, and topics of general interest; providing information, news and commentary related to recipes; providing information, news, and commentary regarding food, namely, information, news, and commentary related to cooking food (among others). | 11/2013 |
| **PATAGONIA WORKS** | 4791042 / Aug. 11, 2015 | Capital investment services for research and development projects; providing grants and seed money to environmentally and socially conscious companies and projects. | 05/2013 |

/ / /



36.     These registrations are in full force and effect.  Many have become incontestable under 15 U.S.C. § 1065.  Plaintiffs also have common law rights in their trademarks covering other apparel and food products, and charitable and educational services in a broad array of environmental issues, including agricultural issues related to the food and grain supply chain.

37.     For example, the Provisions website explains the process and benefits related to brewing beer with a perennial grain called Kernza®.  Kernza is a grain with long roots and perennial growth that allow it to thrive without tilling or pesticides; it uses less water than conventional wheat, prevents erosion, and removes more carbon from the atmosphere than annual grains.  Provisions, since 2013, has, in collaboration with others, produced beer and educated consumers about the importance to the environment of the agricultural choices made in producing beer.  For example, Provisions reports regarding its LONG ROOT ALE products:

> We believe the future of farming—and our planet—lies
> in something called organic regenerative agriculture.
> Organic regenerative agriculture restores soil biodiversity,
> sequesters carbon, and efficiently grows crops without
> chemical fertilizers or pesticides.  Researchers at the Rodale
> Institute have found that a switch to organic regenerative
> techniques could actually store enough carbon in the soil
> to reverse global climate change.

38.     Collectively, when referring to marks owned by Patagonia or Provisions, these marks, including Plaintiffs' registered trademarks and their common law marks, are referred to as the "PATAGONIA" brand or trademarks.  The PATAGONIA trademarks are distinctive, arbitrary, and fanciful, entitled to the broadest scope of protection, and certain of the PATAGONIA trademarks are registered in ninety countries.

/ / /



39.     For many years prior to the events giving rise to this Complaint and continuing to the present, Plaintiffs annually have spent enormous amounts of time, money, and effort advertising and promoting the products and services on which their PATAGONIA trademarks are used.  PATAGONIA brand products are advertised in print and on the Internet.  In addition to advertising by Plaintiffs, the PATAGONIA trademarks are also advertised and promoted and presented at point of sale by numerous retailers.  Consumers, accordingly, are exposed to the PATAGONIA trademarks in a variety of shopping and post-sale contexts.

40.     Plaintiffs have sold their PATAGONIA brand products all over the world, including throughout the United States and California.  Through their promotion and investment in the PATAGONIA brand—combined with extensive sales, publicity, awards, and leadership in sustainable sourcing practices—Plaintiffs have acquired enormous goodwill in their PATAGONIA trademarks.

41.     The PATAGONIA mark is famous within the meaning of the Trademark Dilution Revision Act, and has been since long before AB began selling PATAGONIA beer in the United States.  The mark enjoys strong consumer recognition, is used as a household term to refer to Patagonia or its products, and is recognized around the world and throughout the United States by consumers as signifying high quality products and services from a responsible company.

### AB's Infringement and Dilution of Patagonia's Trademark Rights

42.     Consistent with the comments from AB's Vice President of New Brands, quoted above, AB recently has launched its PATAGONIA branded beer in various U.S. markets.  AB has surrounded its promotion of the beer products with PATAGONIA branded apparel and a plant-a-tree initiative in an attempt to draw upon the same associations that consumers have with Patagonia's PATAGONIA brand.

43.     As described above, AB made token use, if any, of the PATAGONIA beer prior to the U.S. launch of the brand in late 2018.  AB has not accumulated any



trademark rights by way of this token use, and will not, unless consumers come to secondarily associate PATAGONIA beer exclusively with AB.

44.    When it launched PATAGONIA beer, AB modified the neck label to create a new "housemark" for its products consisting of a mountain silhouette above the PATAGONIA name (defined above as "AB's PATAGONIA logo").  This mimics Patagonia's P-6 logo and reinforces consumers' associations between AB's PATAGONIA beer and Patagonia.  The new label is being used on billboards, signs, apparel, packaging, and advertisements.  On the billboard below, this new label is used in an advertisement "introducing" the product and pairing this introduction with the slogan "you buy a case, we plant a tree":



45.    Southern Eagle Distributing now has AB's PATAGONIA Cerveza on its website, introducing the U.S. launch of this beer with no indication it has been used continuously for the last six years: "Originally from the Patagonia region in South America, they've decided to start their next adventure in the U.S."

46.    In a January 2019 interview, AB's Chief U.S. Sales Officer, Brendan Whitworth, stated "AB InBev owns a brand in Argentina called Patagonia which research indicated could have potential in the Colorado market," again indicating AB had not previously sold the beer in the U.S.



COMPLAINT – Case No. 2:19-cv-02702

- 20 -

47.    In the following signage, AB announces "Patagonia's 'tree positive' mission," referring to its new beer brand and to an entity, all at once usurping Patagonia's famous mark and its corporate identity, and again using AB's PATAGONIA logo as a "housemark."



48.    The same "housemark" was used on a variety of apparel products that AB representatives were wearing and distributing to consumers in a recent promotion.  Side by side comparisons of the parties' respective marks in use follow.









49.     There is no question that AB is well aware of Patagonia's prior rights, or that it is using this array of promotional tools to try and capture Patagonia's hard-earned goodwill for itself.  AB has surrounded its launch of PATAGONIA beer with the goods and services, including apparel and sustainability, that are most responsible for making Patagonia's brand famous.  If there were any question remaining that AB intends to draft on Patagonia's reputation and consumer associations with its brand, an AB representative recently contacted Provisions seeking an "interview" about the Kernza grain use in Provisions' Long Root Ale.

50.     Consumers' longstanding association of the PATAGONIA brand with Patagonia will likely be substantially diminished and eroded if AB continues to use Patagonia's brand to market AB's products.  Further, consumers will doubt-less acquire negative associations with the PATAGONIA brand of beer from discovering the truth behind AB's pretense that PATAGONIA beer is made in California at a small craft brewery, rather than by one of the largest beer producers in the world.  Even if consumers come away from AB's products with a positive

/ / /



COMPLAINT – Case No. 2:19-cv-02702

1  experience, Patagonia's famous brand will be eroded and diminished by AB's use

2  of the PATAGONIA trademark.

3  **Harm to Patagonia**

4  51.   AB's activities have caused consumer confusion in the marketplace.

5  Consumers have, for example, attributed AB's PATAGONIA beer to Plaintiffs,

6  causing a range of damages including depriving Plaintiffs of their right to control

7  the reputation associated with their brands and marks.  On information and belief,

8  AB intended this outcome when it tailored its launch of the PATAGONIA beer to

9  target Patagonia's consumers.

10  52.   AB's actions have caused and will cause irreparable harm to Plaintiffs

11  for which money damages and other remedies are inadequate.  Unless AB is

12  restrained by this Court, it will continue to cause irreparable damage and injury

13  to Plaintiffs by, among other things:

14  a.   Depriving Plaintiffs of their statutory rights to obtain

15  registrations for, use, and control use of their trademarks;

16  b.   Creating a likelihood of confusion, mistake, and deception

17  among consumers and the trade as to the source of the infringing

18  products and services, including beer, apparel, sustainability education,

19  and charitable environmental programs;

20  c.   Creating a likelihood of confusion among potential

21  partners with whom Plaintiffs have or may produce beer products,

22  about a Patagonia or Patagonia Provisions partnership with AB, such

23  that Plaintiffs' ability to secure the services of or collaborate with high

24  quality craft brewers is diminished or eliminated;

25  d.   Causing the public falsely to associate Plaintiffs with AB

26  and/or its products, or vice versa;

27  / / /

28  / / /



COMPLAINT – Case No. 2:19-cv-02702

- 23 -

   e. Causing incalculable and irreparable damage to Plaintiffs' goodwill and diluting the capacity of the famous PATAGONIA trademark to differentiate its products from those of its competitors;

   f. Causing incalculable and irreparable damage to Patagonia's famous PATAGONIA trademark by creating negative associations with AB's PATAGONIA beer products, apparel products, and sustainability and philanthropic programs;

   g. Causing Plaintiffs to lose sales of their genuine PATAGONIA brand products and services; and

   h. Causing AB to capture profits, premiums and goodwill that are only available due to its exploitation of the PATAGONIA brand, all to the detriment of deceived consumers and Patagonia.

Accordingly, in addition to damages and recovery of AB's profits, Plaintiffs are entitled to injunctive relief against AB and all persons acting in concert with it.

<div align="center">

**<u>FIRST CLAIM</u>**

**<u>FEDERAL TRADEMARK INFRINGEMENT</u>**

**(15 U.S.C. §§ 1114-1117)**

</div>

53. Plaintiffs reallege and incorporate by reference each of the allegations contained in paragraphs 1 through 52 of this Complaint as if fully set forth here.

54. AB has used—in connection with the sale, offering for sale, distribution, or advertising of its apparel products—words and symbols that infringe upon Plaintiffs' registered trademarks, including the PATAGONIA trademark and the P-6 logo.

55. AB's use of the registered PATAGONIA trademarks on apparel creates a likelihood of consumer confusion that AB is authorized to produce and distribute PATAGONIA products, or is associated or affiliated with Patagonia, when it is not.

/ / /

/ / /



COMPLAINT – Case No. 2:19-cv-02702        - 24 -

56.    These acts of trademark infringement have been committed deliberately and with the intent to cause confusion, mistake, or deception, and are in violation of 15 U.S.C. § 1114.

57.    As a direct and proximate result of AB's conduct, Plaintiffs are entitled to recover up to treble the amount of AB's unlawful profits and Plaintiffs' damages, and an award of attorneys' fees under 15 U.S.C. §§ 1117(a).

58.    Plaintiffs and the public will suffer irreparable harm if AB's infringements continue.  Therefore, Plaintiffs are entitled to injunctive relief pursuant to 15 U.S.C. § 1116(a) that requires AB to stop use of Plaintiffs' registered trademarks on apparel and to stop using any other mark or design that creates likely confusion that AB is authorized to produce or distribute PATAGONIA brand products, or that there is any affiliation between Plaintiffs and AB.

## SECOND CLAIM
## FEDERAL UNFAIR COMPETITION
### (False Designation of Origin and False Description)
### (15 U.S.C. § 1125(a))

59.    Plaintiffs reallege and incorporate by reference each of the allegations contained in paragraphs 1 through 58 of this Complaint.

60.    AB's conduct as alleged in this Complaint constitutes the use of symbols or devices tending falsely to describe the infringing products and services, including on beer, apparel, educational, and charitable and philanthropic goods and services within the meaning of 15 U.S.C. § 1125(a).  AB's conduct is likely to cause confusion, mistake, or deception by or in the public as to the affiliation, connection, association, origin, sponsorship, or approval of the infringing products and services to the detriment of Plaintiffs and the PATAGONIA trademarks, and in violation of 15 U.S.C. § 1125(a).

/ / /

/ / /



61.    As a direct and proximate result of AB's conduct, Plaintiffs are entitled to recover up to treble the amount of AB's unlawful profits and Plaintiffs' damages, and an award of attorneys' fees under 15 U.S.C. § 1117(a).

62.    Plaintiffs and the public will suffer irreparable harm if AB's infringements continue.  Therefore, Plaintiffs are entitled to an injunction pursuant to 15 U.S.C. § 1116(a) that requires AB to stop use of PATAGONIA on any good or service and to stop using any other mark or design that creates likely confusion that AB is authorized or sponsored by Plaintiffs or to use the PATAGONIA brand.

## THIRD CLAIM

## FEDERAL DILUTION OF FAMOUS MARK

### (Trademark Dilution Revision Act of 2006, 15 U.S.C. § 1125(c))

63.    Patagonia realleges and incorporates by reference each of the allegations contained in paragraphs 1 through 62 of this Complaint.

64.    Patagonia's PATAGONIA word mark is distinctive and famous within the meaning of the Trademark Dilution Revision Act of 2006, 15 U.S.C. § 1125(c), in that it is a household brand in the United States, and was famous prior to AB's adoption of the trademarks.

65.    AB's conduct is likely to cause dilution of Patagonia's PATAGONIA word mark by diminishing its distinctiveness and by disparaging Patagonia and the PATAGONIA word mark in violation of the Trademark Dilution Revision Act of 2006, 15 U.S.C. § 1125(c).

66.    AB's conduct was deliberate, systematic, and willful, including in taking improper steps to acquire Warsteiner's intent to use trademark application for PATAGONIA and then to coopt Patagonia's identity when it launched the brand.

67.    As a direct and proximate result of AB's willful conduct, Patagonia is entitled to recover up to treble the amount of AB's unlawful profits and Patagonia's damages, and an award of attorneys' fees under 15 U.S.C. §§ 1116(a), 1117(a), and 1125(c).



68.    Patagonia and the public will suffer irreparable harm if AB's dilution of the famous PATAGONIA word mark continues and Patagonia is entitled to an injunction pursuant to 15 U.S.C. §§ 1116(a) and 1125(c) that requires AB to stop use of any PATAGONIA marks and any other mark or design that diminishes or disparages the PATAGONIA word mark or diminishes the association consumers have between Patagonia and the PATAGONIA word mark.

## FOURTH CLAIM

## TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION
## UNDER CALIFORNIA STATUTORY LAW

**(Cal. Bus. & Prof. Code §§ 14320, 14335, and 17200 et seq.)**

69.    Plaintiffs reallege and incorporate by reference each of the allegations contained in paragraphs 1 through 68 of this Complaint.

70.    Plaintiffs are the owners of numerous registrations as well as common law rights for the PATAGONIA trademarks.

71.    To enhance the commercial value of its offerings, AB has used the PATAGONIA trademarks on its beer, apparel, educational, and charitable and philanthropic goods and services.  AB's conduct is likely to cause confusion, mistake, or deception by or in the public as to the affiliation, connection, associa- tion, origin, sponsorship, or approval of the infringing products and services to the detriment of Plaintiffs and the PATAGONIA trademarks, and in violation of California Business & Professions Code §§14320 *et seq.* and §§ 14335 *et seq.*

72.    AB's conduct also constitutes an "unlawful, unfair or fraudulent business act[s] or practice[s] and unfair, deceptive, untrue or misleading advertising" within the meaning of California Business & Professions Code §§ 17200 *et seq.*

73.    Plaintiffs are entitled to monetary and injunctive relief.  The public and Plaintiffs will suffer irreparable harm if AB's infringements continue.  Therefore, Plaintiffs are entitled to an injunction that requires AB to stop use of any



COMPLAINT – Case No. 2:19-cv-02702

1    PATAGONIA trademarks and to stop using any other mark or design that is likely
2    to cause confusion about the origin of products or services bearing the PATAGONIA
3    trademarks or about whether Plaintiffs have sponsored or authorized AB in its use
4    of the PATAGONIA mark.

5        74.    Because AB's actions have been committed willfully, maliciously, and
6    intentionally, Patagonia is entitled to reasonable attorneys' fees, and compensatory
7    and punitive damages pursuant to California Business & Professions Code
8    §§ 14320, 14330, and 14340.

## FIFTH CLAIM

## CANCELLATION OF TRADEMARK REGISTRATION

### (15 U.S.C. §§ 1060, 1119)

12       75.    Plaintiffs reallege and incorporate by reference each of the allegations
13   contained in paragraphs 1 through 74 of this Complaint.

14       76.    Section 10(a) of the Lanham Act, 15 U.S.C. § 1060(a), provides in
15   relevant part as follows:

16           [N]o application to register a mark under section 1051(b)
17           of this title shall be assignable prior to the filing of an
18           amendment under section 1051(c) of this title to bring the
19           application into conformity with section 1051(a) of this title
20           or the filing of the verified statement of use under section
21           1051(d) of this title, except for an assignment to a successor
22           to the business of the applicant, or portion thereof, to which
23           the mark pertains ….

24       77.    This means that Warsteiner could not assign the intent to use applica-
25   tion to AB without selling Warsteiner Imports Agency, or the relevant part of it,
26   to AB.

27       78.    Plaintiffs are informed and believe and the transactional documents
28   recorded in the Trademark Office confirm that Warsteiner made no such sale of any



1   part of its business to AB and instead, solely in a pro-forma manner purported

2   to assign to AB its non-existent goodwill in the PATAGONIA mark for beer.

3   Section 10(a) of the act makes it clear that an assignment of so-called goodwill

4   in an intent to use application is insufficient to support its assignment.

5        79.    Because Warsteiner never made any use of the PATAGONIA trade-

6   mark, the registration was void ab initio.  Accordingly, the Court should order

7   Registration No. 4,226,102 to be cancelled and, pursuant to regulations, should

8   address its certified order to the USPTO, Office of the Solicitor, Mail Stop 8,

9   Director of the United States Patent and Trademark Office, P.O. Box 1450,

10   Alexandria, Virginia 22313-1450.

11   <div align="center">**SIXTH CLAIM**</div>

12   <div align="center">**CANCELLATION OF TRADEMARK REGISTRATION**</div>

13   <div align="center">**(15 U.S.C. § 1119)**</div>

14        80.    Plaintiffs reallege and incorporate by reference each of the allegations

15   contained in paragraphs 1 through 79 of this Complaint.

16        81.    AB, when it assumed control over Warsteiner's intent to use applica-

17   tion, knew that Warsteiner never had used the PATAGONIA mark for beer, but

18   nonetheless swore to the Trademark Office that Warsteiner had, in fact, made

19   sufficient use in U.S. commerce to support a statement of use under 15 U.S.C.

20   § 1051(d).  Had AB not made these false filings on Warsteiner's behalf, the

21   Trademark Office would have deemed Warsteiner's application abandoned

22   and would not have issued the registration.

23        82.    Plaintiffs are informed and believe that AB already had engaged in

24   a transaction with Warsteiner in which Warsteiner's interest in the PATAGONIA

25   trademark application had been sold or transferred to AB as of May 2012, when its

26   attorney substituted for the correspondent Warsteiner attorney.  AB made further

27   false statements to the Trademark Office when it continued to prosecute the applica-

28   tion on Warsteiner's ostensible behalf and stated later to the Trademark Office that



1    the assignment to AB did not occur until after the registration was issued when, in

2    fact, the improper assignment of the intent to use application already had occurred.

3         83.    AB knew that its statements to the Trademark Office were false, but

4    made them with the intention to deceive the Trademark Office so that it would,

5    unaware of the improper assignment and non-use by Warsteiner, issue the registra-

6    tion for PATAGONIA on beer.  The Trademark Office acted in reliance on these

7    fraudulent statements when it issued Registration No. 4,226,102 to Warsteiner.

8         84.    Because AB, on Warsteiner's behalf, procured the registration by fraud,

9    and/or never made any use of the PATAGONIA trademark, the registration must be

10   cancelled.  Accordingly, the Court should order Registration No. 4,226,102 to be

11   cancelled and, pursuant to regulations, should address its certified order to the

12   USPTO, Office of the Solicitor, Mail Stop 8, Director of the United States Patent

13   and Trademark Office, P.O. Box 1450, Alexandria, Virginia 22313-1450.

14   <div align="center">**SEVENTH CLAIM**</div>

15   <div align="center">**RECTIFICATION OF TRADEMARK REGISTRATION**</div>

16   <div align="center">**(15 U.S.C. § 1119)**</div>

17        85.    Plaintiffs reallege and incorporate by reference each of the allegations

18   contained in paragraphs 1 through 84 of this Complaint.

19        86.    Plaintiffs are informed and believe that AB has not made genuine,

20   continuous use of the PATAGONIA trademark for beer in interstate commerce

21   over the past five years as recited in AB's statement of incontestability filed with

22   the Trademark Office on October 5, 2018.

23        87.    Plaintiffs base these allegations on multiple published reports from AB

24   to the effect that the PATAGONIA product line is being introduced or launched as

25   of 2018, and by AB distributors who have stated that they expect to be receiving

26   access to PATAGONIA beer soon.

27        88.    Because AB falsely declared that its registration was entitled to incon-

28   testable status, the Court should order rectification of Registration No. 4,226,102 by



1   striking the affidavit of incontestability from the register.  The Court, pursuant to

2   regulations, should address its certified order to the USPTO, Office of the Solicitor,

3   Mail Stop 8, Director of the United States Patent and Trademark Office, P.O.

4   Box 1450, Alexandria, Virginia 22313-1450.

5                                    **<u>PRAYER FOR JUDGMENT</u>**

6            WHEREFORE, Plaintiffs pray that this Court grant it the following relief:

7            1.     Adjudge that the PATAGONIA trademarks have been infringed by

8   AB in violation of Plaintiffs' rights under 15 U.S.C. § 1114;

9            2.     Adjudge that the PATAGONIA trademarks have been infringed by

10  AB in violation of California statutory law;

11           3.     Adjudge that Plaintiffs' common law rights in the PATAGONIA

12  trademarks have been infringed;

13           4.     Adjudge that AB has falsely described the source of its products and

14  services in violation of Plaintiffs' rights under 15 U.S.C. § 1125(a);

15           5.     Adjudge that AB has competed unfairly with Plaintiffs in violation

16  of California statutory law;

17           6.     Adjudge that AB's activities are likely to dilute Patagonia's famous

18  PATAGONIA trademark in violation of Patagonia's rights under 15 U.S.C.

19  § 1125(c);

20           7.     Adjudge that AB and its agents, employees, attorneys, successors,

21  assigns, affiliates, and joint venturers, and any person(s) in active concert or

22  participation with it, and/or any person(s) acting for, with, by, through, or under it,

23  be enjoined and restrained at first during the pendency of this action and thereafter

24  permanently from:

25                  a.     Manufacturing, producing, sourcing, importing, selling, offering

26  for sale, distributing, advertising, or promoting any goods or services that copy or

27  display any words or symbols that so resemble Plaintiffs' PATAGONIA trademarks

28  as to be likely to cause confusion, mistake, or deception, on or in connection with



any product or service that is not authorized by or for Plaintiffs, including, without limitation, any product or service that (i) bears the PATAGONIA trademarks, (ii) bears AB's mountain silhouette logo, or (iii) otherwise approximates Plaintiffs' trademarks;

b. Using any word, term, name, symbol, device, or combination that (i) causes or is likely to cause confusion, mistake, or deception as to the affiliation or association of AB or its products or services with Plaintiffs, or as to the origin of AB's products or services, (ii) contains any false designation of origin, false or misleading description or representation of fact, (iii) contains any false or misleading advertising, or (iv) causes likely dilution of the distinctiveness of the PATAGONIA trademark or degrades it;

c. Further infringing the rights of Plaintiffs in and to their PATAGONIA trademark, or otherwise damaging Plaintiffs' goodwill or business reputation;

d. Further diluting the famous PATAGONIA trademark;

e. Otherwise competing unfairly with Plaintiffs in any manner; or

f. Continuing to perform in any manner whatsoever any of the other acts complained of in this Complaint;

8. Order that Registration No. 4,226,102 shall be cancelled and address its certified order to the USPTO, Office of the Solicitor, Mail Stop 8, Director of the United States Patent and Trademark Office, P.O. Box 1450, Alexandria, Virginia 22313-1450;

9. Order that Registration No. 4,226,102 shall be rectified to strike AB's statement of incontestability under section 15 of the Lanham Act, and address its certified order to the USPTO, Office of the Solicitor, Mail Stop 8, Director of the United States Patent and Trademark Office, P.O. Box 1450, Alexandria, Virginia 22313-1450;

/ / /



10.     Adjudge that AB, within thirty (30) days after service of the Court's judgment, be required to file with this Court and serve upon Patagonia's counsel a written report under oath setting forth in detail the manner in which it has complied with the judgment;

11.     Adjudge that Plaintiffs recover from AB its damages and lost profits, and AB's profits, in an amount to be proven at trial;

12.     Adjudge that AB be required to account for any profits that are attributable to its illegal acts, and that Plaintiffs be awarded (1) AB's profits and (2) all damages sustained by Plaintiffs, under 15 U.S.C. § 1117, plus prejudgment interest;

13.     Adjudge that the amounts awarded to Plaintiffs pursuant to 15 U.S.C. § 1117 shall be trebled;

14.     Adjudge that AB be obligated to pay punitive damages to Plaintiffs;

15.     Adjudge that this is an exceptional case and that Plaintiffs be awarded its costs and disbursements incurred in connection with this action, including Plaintiffs' reasonable attorneys' fees and investigative expenses; and

16.     Adjudge that all such other relief be awarded to Plaintiffs as this Court deems just and proper.


DATED:  April 9, 2019                    Respectfully submitted,

                                         KILPATRICK TOWNSEND & STOCKTON LLP


                                         By:   */s/ Gregory S. Gilchrist*
                                               GREGORY S. GILCHRIST
                                               RYAN T. BRICKER
                                               SOPHY MANES
                                               ALEXANDRA N. MARTINEZ

                                         Attorneys for Plaintiffs
                                         PATAGONIA, INC. and
                                         PATAGONIA PROVISIONS, INC.



COMPLAINT – Case No. 2:19-cv-02702                                    - 33 -

**DEMAND FOR JURY TRIAL**

Plaintiffs Patagonia, Inc. and Patagonia Provisions, Inc. demand that this action be tried to a jury.

DATED: April 9, 2019

Respectfully submitted,

KILPATRICK TOWNSEND & STOCKTON LLP

By: */s/ Gregory S. Gilchrist*
GREGORY S. GILCHRIST
RYAN T. BRICKER
SOPHY MANES
ALEXANDRA N. MARTINEZ

Attorneys for Plaintiffs
PATAGONIA, INC. and
PATAGONIA PROVISIONS, INC.

71781213V.1 | 1123713