KILPATRICK TOWNSEND & STOCKTON LLP
GREGORY S. GILCHRIST (State Bar No. 111536)
RYAN T. BRICKER (State Bar No. 269100)
SOPHY MANES (State Bar No. 287583)
ALEXANDRA N. MARTINEZ (State Bar No. 317382)
Two Embarcadero Center, Suite 1900
San Francisco, California  94111
Telephone:   (415) 576-0200
Facsimile:    (415) 576-0300
Email:        gilchrist@kilpatricktownsend.com
              rbricker@kilpatricktownsend.com
              smanes@kilpatricktownsend.com
              amartinez@kilpatricktownsend.com

Attorneys for Plaintiffs
PATAGONIA, INC. and
PATAGONIA PROVISIONS, INC.

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION – LOS ANGELES

| | |
|---|---|
| PATAGONIA, INC. and PATAGONIA PROVISIONS, INC., <br><br> Plaintiffs, <br><br> v. <br><br> ANHEUSER-BUSCH, LLC dba PATAGONIA BREWING CO., <br><br> Defendant. | Case No. 2:19-cv-02702-VAP (JEMx) <br><br> **FIRST AMENDED COMPLAINT FOR TRADEMARK INFRINGEMENT, UNFAIR COMPETITION, DILUTION, FRAUD, AND JUDICIAL DECLARATION THAT TRADEMARK REGISTRATION IS VOID (INJUNCTIVE RELIEF SOUGHT)** <br><br> **JURY TRIAL DEMAND** |

## INTRODUCTION

1.      In 2012, Anheuser-Busch LLC ("AB") submitted false evidence to the Trademark Office to unlawfully obtain a trademark for PATAGONIA on beer. After letting its fraudulently obtained trademark registration lie unused for six years, AB recently adopted the fictitious business name "Patagonia Brewing Co." and launched an intensive marketing campaign to "introduce" its PATAGONIA beer to American consumers.



2.     AB's new beer bottle employs a logo including PATAGONIA beneath a mountain silhouette, shown below ("AB's PATAGONIA logo").



AB recently launched its new beer at ski resorts in Colorado, where its sales people dressed in black down jackets with AB's PATAGONIA logo on the chest and gave out beanies, scarves, and t-shirts all bearing the same PATAGONIA logo.  At the ski resorts, AB set up what looks like a pop-up store, including a booth made of what AB called out to be reclaimed wood, featuring a large PATAGONIA logo sign and a placard describing "Patagonia's 'tree positive' mission."  Customers were told AB will plant one tree for every case of beer purchased.

3.     In launching its PATAGONIA beer and adopting the "Patagonia Brewing Co." name, AB deliberately has misappropriated the tremendous goodwill that Patagonia, Inc. and Patagonia Provisions, Inc. (together, "Patagonia" or "Plaintiffs") have cultivated in their brand, and cooped the hard-earned reputation that Patagonia, Inc. has built over the last forty years as a company dedicated to environmental conservation.  AB has gone as far as creating a logo that is strikingly similar to Patagonia's famous mountain silhouette logo that has appeared



1  continuously for decades on millions of PATAGONIA branded products.  AB has

2  tried to connect its beer with environmental conservation by claiming to plant a

3  tree for each case of beer sold, an initiative that Patagonia would welcome but for

4  the fact that AB is clearly attempting to copy Patagonia's famous brand identity

5  to confuse consumers.  AB has launched its copycat brand at ski resorts where

6  Patagonia, Inc.'s ski apparel is widely used and universally recognized in further

7  attempts to draft off Patagonia's goodwill.  And AB has dressed its sales people

8  in down jackets and given out beanies, t-shirts, and scarves bearing AB's

9  PATAGONIA logo—all products that Patagonia sells, including in its stores in

10 the very towns where AB has launched its beer.  In short, AB has done everything

11 possible to make it appear as though this PATAGONIA beer is sold by Patagonia.



12
13
14
15
16
17
18
19
20
21
22  / / /
23  / / /
24  / / /
25  / / /
26  / / /
27  / / /
28  / / /

1
2
3
4
5
6
7
8
9



10
11
12
13
14
15
16
17
18



19   4.      AB's effort to look and feel like Patagonia is all the more confusing
20   because Patagonia started a food business in 2012 called Patagonia Provisions, Inc.
21   ("Provisions"), which was formed to challenge a broken food industry increasingly
22   dependent on pesticides, chemicals, and emitting massive amounts of greenhouse
23   gases.  Provisions released its first beer in collaboration with New Belgium Brewing
24   Co. in 2013, and has been selling its own Long Root beer since 2016 using a
25   perennial grain called Kernza® instead of traditional barley.  Kernza has long roots
26   that store carbon in the ground and using it in beer has served as an effective vehicle
27   for Patagonia to introduce customers to carbon sequestration as a means of
28   removing greenhouse gases from our atmosphere.



1
2
3
4
5
6
7
8
9
10
11
12
13



14   5.   Patagonia is filing this lawsuit to stop AB from maintaining its

15   unlawful trademark registration, from selling PATAGONIA beer, and to prevent

16   AB from going to such great lengths to pass itself off as Patagonia, all of which

17   infringes, dilutes, and usurps the goodwill in Patagonia's famous PATAGONIA

18   trademarks, as well as the reputation it has built over the last four decades.

19   **PARTIES, JURISDICTION, AND VENUE**

20   6.   Patagonia, Inc. is a California corporation headquartered at 259 West

21   Santa Clara Street, Ventura, California 93001.  For more than forty years, Patagonia,

22   Inc. has been designing, developing, marketing, and retailing outdoor apparel,

23   sportswear, and related products.  For many years, Patagonia, Inc. and the

24   PATAGONIA® brand have been famous in the United States and around the world

25   for innovative apparel designs, quality products, and environmental and corporate

26   responsibility.

27   7.   Patagonia, Inc. was founded in the late 1960s to design and sell

28   climbing clothes and other active sportswear.  The company adopted the brand



"PATAGONIA" to differentiate another business that designed and manufactured climbing gear and tools.  PATAGONIA was chosen as the trademark to call to mind romantic visions of glaciers tumbling into fjords, jagged windswept peaks, gauchos, and condors.  Since at least 1973, the PATAGONIA brand has appeared on a multi-colored label inspired by a silhouette of the jagged peaks of the Mt. Fitz Roy skyline (the "P-6 logo").

8.     In the more than forty years since Patagonia, Inc.'s business started, the PATAGONIA brand and its P-6 logo have become among the most identifiable brands in the world.  Patagonia, Inc.'s products now include a wide range of apparel products and equipment, including technical products designed for climbing, skiing and snowboarding, surfing, fly fishing, and trail running, as well as sportswear, which are sold around the world.

9.     Over the years, Patagonia, Inc. has been recognized and honored for its business initiatives, including receiving the Sustainable Business Counsel's first "Lifetime Achievement Award."  In 1996, with an increased awareness of the dangers of pesticide use and synthetic fertilizers used in conventional cotton growing, Patagonia, Inc. began the exclusive use of organically grown cotton and has continued that use for more than twenty years.  It was a founding member of the Fair Labor Association®, which is an independent multi-stakeholder verification and training organization that audits apparel factories.  Additionally, since 1985 Patagonia, Inc. has pledged 1% of sales to environmental groups to preserve and restore our natural environment, donating more than $100 million to date.  In 2002, Patagonia, Inc.'s founder, Yvon Chouinard, along with others, created a non-profit called 1% For the Planet® to encourage other businesses to do the same.  Today, more than 1200 member companies have donated more than $150 million to more than 3,300 nonprofits through 1% For the Planet.  In 2012, Patagonia, Inc. became one of California's first registered Benefit Corporations, ensuring Patagonia, Inc. could codify into its corporate charter consideration of its workers, community,



1   and the environment.  In 2016, Patagonia, Inc. pledged to donate all revenue from

2   sales on Black Friday, donating $10 million to environmental grantees in response

3   to customers' purchases on that day.  In 2018, Patagonia, Inc. pledged an additional

4   $10 million in grants to environmental groups in response to recent tax cuts given

5   to businesses.

6         10.   Patagonia Provisions, Inc. is a California corporation headquartered

7   at 259 West Santa Clara Street, Ventura, California 93001.  For several years,

8   Provisions has developed, marketed, and sold socially and environmentally

9   responsible food items under the PATAGONIA PROVISIONS® Mark, including

10  beer, buffalo jerky, salmon, fruit and almond bars, and soup mixes.  Patagonia and

11  Provisions are related companies.

12        11.   Anheuser-Busch, LLC ("AB") is a limited liability company that,

13  in its corporate filings, alleges its principal place of business is One Busch Place,

14  St. Louis, Missouri 63118.  AB is a global producer of beer and other products and

15  services under a multitude of brands.  Patagonia is informed and believes that AB

16  maintains a sophisticated department of trademark attorneys and an array of outside

17  counsel to procure, maintain, and enforce these brands and trademarks.  Although

18  the primary products sold by AB are beers, AB and, on information and belief, its

19  parent corporation, Anheuser-Busch Inbev S.A., use and maintain trademarks for

20  additional products categories, including for apparel under the STELLA ARTOIS,

21  HOEGAARDEN, and LEFFE marks, among others, and for educational and

22  charitable services under the OCTOBER, LA SAVOIR, and THE SIMPLE

23  COMPLEXITIES OF BEER brands.  Among its brands is AB's PATAGONIA beer,

24  newly launched in the United States.  Though AB has not made any effort to obtain

25  a PATAGONIA registration for apparel products or educational or charitable

26  services—presumably because it knows such applications would be futile in light

27  of Patagonia's broad rights—AB is also producing and distributing such products

28  and services.



FIRST AMENDED COMPLAINT – Case No. 2:19-cv-02702-VAP (JEMx)          - 7 -

12.     Patagonia Brewing Company is, on information and belief, a fictitious business name registered by AB in July 2018, shortly before its launch of PATAGONIA beer in the United States.  Patagonia is informed and believes that AB registered the name so that, in addition to using PATAGONIA as a mark, it could identify itself to consumers as an entity named Patagonia (see, for example, the copyright ownership claim for AB's packaging below), enhancing the likelihood that consumers will associate AB's beer with Plaintiffs, and not with a multinational conglomerate.

© 2018 Patagonia Brewing Co., Bohemian Pilsner Lager (Ale in TX), Fairfield, California. Brewed in USA.

13.     Patagonia's trademark claims arise under the Trademark Act of 1946 (the Lanham Act), as amended by the Trademark Dilution Revision Act of 2006. This Court has jurisdiction over such claims pursuant to 28 U.S.C. §§ 1338(a) and 1338(b) (trademark and unfair competition), 28 U.S.C. § 1331 (federal question), and 15 U.S.C. § 1121 (Lanham Act).  This Court has jurisdiction over the state law claims under 28 U.S.C. § 1367 (supplemental jurisdiction) and, because the claims involve more than $75,000 exclusive of interest and costs, 28 U.S.C. § 1332 (diversity).

14.     This Court has personal jurisdiction over AB because AB's contacts with this forum are so pervasive and substantial that it is fair for AB to respond to a lawsuit here.  In addition, AB is offering and promoting its relevant products and services to residents of this district through its website, where to buy locater, and through distributors and retailers who are selling or promoting the products and services to consumers in this district.  Patagonia is informed and believes that AB knows Patagonia is located in this judicial district, and that Patagonia will suffer the harm from damage to its reputation and trademarks in this district.

/ / /



15.     Venue is proper in this Court under 28 U.S.C. § 1391(b) because AB transacts business in this district and a substantial part of the events giving rise to the claims asserted arose in this district.

**AB Unlawfully Obtained the PATAGONIA Registration for Beer**

16.     AB purports to own U.S. Trademark Registration No. 4,226,102.  That registration issued from an intent to use application originally filed by Warsteiner Importers Agency, Inc. ("Warsteiner"), a German brewer and, on information and belief, competitor of AB.  Patagonia is informed and believes that the registration was procured unlawfully and through fraudulent misrepresentations to the Trademark Office.

17.     Plaintiffs' investigation, to date, of AB's unlawful acquisition of Warsteiner's intent to use application reveals as follows:

18.     On June 8, 2006, Warsteiner filed an "intent to use" application for PATAGONIA in International Class 32 for beer, declaring its bona fide intention to use the mark in interstate commerce.

19.     On July 12, 2006, Warsteiner petitioned to cancel a then-existing United States registration for PATAGONIA for beer belonging to Cerveceria Y Malteria Quilmes S.A.I.C.A.G. ("Quilmes").  The U.S. Patent and Trademark Office ("Trademark Office") cancelled the Quilmes registration on November 17, 2006.

20.     On January 1, 2007, AB acquired a Luxembourg-based holding company that controlled 93% of Quilmes International, which owned the Argentine Quilmes entity that previously owned the United States trademark registration for PATAGONIA that Warsteiner had cancelled one month earlier for non-use.

21.     On July 21, 2009, after opposition proceedings from a third party, the Notice of Allowance for Warsteiner's intent to use application was issued, inviting Warsteiner to secure its registration by showing commercial use of the mark.

22.     On January 18, 2010, Warsteiner requested an extension of time to file its statement of use.  For the next two years there was no activity on Warsteiner's



FIRST AMENDED COMPLAINT – Case No. 2:19-cv-02702-VAP (JEMx)          - 9 -

1    intent to use application, except that it filed similar extensions every six months to

2    keep the application alive.  On January 5, 2012, Warsteiner filed its fifth and final

3    permissible extension to show use, which was set to expire July 21, 2012.

4        23.    On May 14, 2012,  two trademark attorneys employed by AB

5    substituted in as the correspondents and attorneys of record, representing Warsteiner

6    in the proceeding involving its intent to use application.

7        24.    At the same time that AB's lawyer took over Warsteiner's trademark

8    application, AB submitted labels to the Alcohol and Tobacco Tax and Trade Bureau

9    (TTB) for Certification of Label Approval (COLA), a prerequisite to selling beer in

10   the United States.  On July 17, 2012, four days before Warsteiner's intent to use

11   application was set to fall abandoned for failure to use the mark, AB's attorney filed

12   a statement of use *on behalf of Warsteiner*, showing a single bottle as a specimen

13   that used the same "Patagonia" label that AB had recently submitted to the TTB for

14   approval.  The label used for both AB's COLA Application and Warsteiner's

15   statement of use are shown below.

16   / / /

17   / / /

18   / / /

19   / / /

20   / / /

21   / / /

22   / / /

23   / / /

24   / / /

25   / / /

26   / / /

27   / / /

28   / / /



| AB's COLA Filing | Warsteiner's Evidence of Use |
|---|---|
|  |  |

25.     In the statement of use submitted to the Trademark Office, Warsteiner swore—through AB's attorney—that this bottle of beer showed *Warsteiner's* use of PATAGONIA in interstate commerce, and that it had first sold beer in the United States under the mark one day earlier, on July 16, 2012.  But the statement was untrue because Warsteiner never used the PATAGONIA trademark on beer, and the statement of use filed by Warsteiner in the Trademark Office (prepared by AB) was false.  AB knew the statement was false.  In fact, it does not even appear that AB— the purported assignee of the application—used the mark.  The COLA for the label that was used on the beer shown in the statement of use states that the beer was produced by Quilmes and imported by "Import Brands Alliance."  The specimen did not show this Quilmes beer in a commercial context, such as a store shelf.  Instead, the specimen showed two photos of a single bottle of PATAGONIA-labeled beer on a table in a white-walled room.

/ / /



FIRST AMENDED COMPLAINT – Case No. 2:19-cv-02702-VAP (JEMx)          - 11 -

26.     On October 16, 2012, Warsteiner's purported trademark registration for PATAGONIA was issued by the Trademark Office in reliance on Warsteiner's statement that it had used the Mark in interstate commerce in the U.S.

27.     On February 8, 2013, AB's lawyer recorded that Warsteiner had assigned the registration to AB.  A "corrected" assignment was filed on February 22, 2013.  The document verifying the assignment states it "assigns … all right, title, in and to the PATAGONIA *Application* and Mark, together with the goodwill of the business symbolized by the PATAGONIA mark *and any resulting registration*," revealing that the assignment was drafted and effective *before* any registration had issued:

---

### Appendix III

### MODEL FORM OF ASSIGNMENT OF U.S. TRADEMARK

Whereas WARSTEINER IMPORTERS AGENCY, INC. ("WIA") with a principal place of business at 9359 Allen Road, West Chester, Ohio 45609 has filed an application for registration with the U.S. Trademark Office (Serial No. 78/903,572) (the "PATAGONIA Application") for the mark PATAGONIA (the „Mark") ; and

Whereas ANHEUSER-BUSCH, LLC , with a principal place of business at One Busch Place, St. Louis, Missouri 63118 („Buyer") wishes to acquire the PATAGONIA Application and Mark and any resulting registration.

Now, therefore, for good and valuable consideration, WIA hereby assigns to ANHEUSER-BUSCH, LLC all right, title, and interest in and to the PATAGONIA Application and Mark, together with the goodwill of the business symbolized by the PATAGONIA mark and any resulting registration.

Signed (Stephan Fahrig)                                      (Sabine Diße)

Director                                                            Director
Title

**WARSTEINER IMPORTERS AGENCY, INC.**

Dated:   20.12.2012

---



FIRST AMENDED COMPLAINT – Case No. 2:19-cv-02702-VAP (JEMx)                - 12 -

28.     The date shown on the assignment document is months after registration of the mark and yet the assignment does not refer to the registration or the registration number.  The date thus appears to have been falsely stated to disguise the true date of the assignment which preceded the statement of use.

29.     Intent to use trademark applications cannot be assigned unless the assignor also transfers the existing business unit which owns the application and goodwill associated with the mark (which only can be created through use). Warsteiner never became part of AB as part of this transaction; indeed, Warsteiner continues to exist as an independent entity to this day.  Knowing that Warsteiner could not lawfully assign the intent to use trademark application to AB, and knowing that Warsteiner could not show the use needed to obtain the trademark registration, AB and Warsteiner colluded through their knowingly false representa-tions to deceive the Trademark Office—seeking to show that Warsteiner was responsible for commercial use of the PATAGONIA beer shown in the statement of use.  While the ostensible reason for this collusion is not reflected in the public record, the only purpose for AB's attorney to have appeared before the Trademark Office on behalf of its competitor, Warsteiner, was to afford AB with control over the nature of the deceptive statements made to Trademark Office.  The only purpose for filing a false statement of use on Warsteiner's behalf—based on purported sales of  Quilmes-produced beer to Import Brands Alliance —was to create the illusion within the Trademark Office that Warsteiner was entitled to perfect its registration, while Warsteiner's assignment of the application remained undisclosed and disguised.  Absent this subterfuge, the Trademark Office would have deemed Warsteiner's application abandoned.

### AB's False Section 8 & 15 Filing

30.     After obtaining the PATAGONIA registration, Patagonia is informed and believes that AB made no bona fide commercial use of the mark in the United States until its recent campaign.  Indeed, the use complained of in this complaint is



AB's *first* bona fide use of the PATAGONIA mark in the United States, more than six years after the registration issued.

31.     Despite this, on October 5, 2018, AB made the following sworn statement to the Trademark Office, to renew and preserve its registration:  "The mark has been in continuous use in commerce for five consecutive years after the date of registration … and is still in use in commerce on or in connection with all goods/services."  The filing itself warned AB that any willfully false statement would jeopardize the validity of the trademark registration.

32.     AB's current press releases and promotional statements—together with its disclosures in its public filings—indicate that AB made no bona fide commercial use of its unlawful PATAGONIA trademark in the five years following issuance of the registration, and contradict AB's sworn statement to the Trademark Office.  AB's annual reports up to and including the 2017 report identify PATAGONIA as a "local craft brand" in the "Latin America South" category.  The brand is only mentioned once in the company's 2016 report, together with dozens of other beers under a lengthy list of "Local Brands" in the report's trademark notice.  Similarly, in 2015, the brand is described as only available in the Latin America South market, and even within that market, distinguished from "global brands" such as Corona and Stella Artois, and "international brands" Hoegaarden and Leffe.

33.     The February 28, 2019, press release announcing AB's 2018 financial results stated that AB is "identifying opportunities to *introduce* existing brands into *new* markets.  Examples of this practice include Argentina's Patagonia in certain regions of the U.S. …" (emphasis added).

34.     AB's recent promotional statements follow suit.  A Beer Business Daily trade journal article in which Harry Lewis, AB's Vice President of New Brands, is heavily quoted, explains that AB "quietly began testing" the PATAGONIA beer "stateside" in 2018, and more recently launched a "pilot program" in Colorado.



35.     The net effect of Warsteiner's intent to use application, the mis-reported assignment to AB, and AB's covert maintenance of the registration while it waited for the additional protections provided by the five-year renewal filing follow:  AB effectively reserved the PATAGONIA trademark for more than a decade before the mark appears genuinely to have been used in conjunction with AB's recent launch of its PATAGONIA-branded beer.  During this interval, Provisions' own application to register the mark PATAGONIA PROVISIONS for wine was refused, partly on the strength of Warsteiner's trademark, then owned by AB.  The registration continues to harm Plaintiffs, including because AB has cautioned Patagonia against using Plaintiffs' PATAGONIA trademark in connection with beer on the strength of AB's supposed rights in its registration.

### The PATAGONIA Trademarks

36.     Plaintiffs own numerous registrations for and including the PATAGONIA trademark and P-6 logo, both together and alone, and the PATAGONIA PROVISIONS trademark, for a wide-ranging assortment of products and services.  Among these are the following U.S. trademark registrations:

| Trademark | Reg. No. / Reg. Date | Goods | Date of First Use |
|---|---|---|---|
| **PATAGONIA** | 1189402 / Feb. 9, 1982 | Men's and Women's Clothing – Namely, Sweaters, Rugby Shirts, Walking Shorts, Trousers, Jackets, Mittens, Hoods, and Rainwear. | 08/1974 |
| ![patagonia logo] | 1294523 / Sept. 11, 1984 | Men's, Women's, and Children's Clothing – Namely, Jackets, Pants, Vests, Gloves, Pullovers, Cardigans, Socks, Sweaters, Underwear, Shirts, Shorts, Skirts, and Belts. | 08/1974-1981 |

/ / /



| Trademark | Reg. No. / Reg. Date | Goods | Date of First Use |
|---|---|---|---|
|  | 1547469 / July 11, 1989 | Men's, Women's, and Children's Clothing – Namely, Jackets, Pants, Shirts, Sweaters, Vests, Skirts, Underwear Tops and Bottoms, Socks, Gloves, Mittens, Hats, Face Masks, Balaclava, Gaiters, and Belts. | 08/1974 |
|  | 1775623 / June 8, 1993 | Luggage, Back Packs, and All-Purpose Sports Bags. | 08/1988 |
| **PATAGONIA** | 1811334 / Dec. 14, 1993 | Luggage, Back Packs, Fanny Packs, and All-Purpose Sport Bags, Footwear, Ski Bags, and Ski Gloves. | 08/1990 |
| **PATAGONIA** | 2260188 / July 13, 1999 | Computerized on-line ordering activities in the field of clothing and accessories; providing information in the field of technical clothing and accessories for use in recreational, sporting, and leisure activities; providing information in the field of existing and evolving environmental issues. | 10/1995 |
| **PATAGONIA.COM** | 2392685 / Oct. 10, 2000 | On-line retail store and mail order services featuring technical clothing, footwear, and accessories; computer services in the nature of on-line information related to the environment and clothing. | 10/1995 |

/ / /

/ / /



FIRST AMENDED COMPLAINT – Case No. 2:19-cv-02702-VAP (JEMx)

- 16 -

| Trademark | Reg. No. / Reg. Date | Goods | Date of First Use |
|---|---|---|---|
| **PATAGONIA** | 2662619 / Dec. 17, 2002 | Retail store services featuring clothing, footwear, luggage, and a wide variety of sporting goods and accessories. | 06/1986 |
| **PATAGONIA PROVISIONS** *(owned by Provisions)* | 4894914 / Feb. 2, 2012 | Salmon, not live. | 08/2013 |
| **PATAGONIA PROVISIONS** *(owned by Provisions)* | 4168329 / July 3, 2012 | Salmon jerky. | 04/2012 |
| **PATAGONIA PROVISIONS** *(owned by Provisions)* | 4,786,172 / Aug. 4, 2015 | Mugs all for use in camping and outdoor events; mugs used to keep food and drink cold, drink bottles sold empty; camping gear dinnerware and cookware, namely, pots. | 09/2014 |
| **PATAGONIA PROVISIONS** *(owned by Provisions)* | 4,795,759 / Aug. 18, 2015 | Tsampa (Tibetan porridge) and mixes for making tsampa comprising processed roasted grains. | 09/2014 |
| **PATAGONIA PROVISIONS** *(owned by Provisions)* | 4,809,079 / Sept. 8, 2015 | Snack bars containing primarily dried fruit and nuts; mixes for making soup comprising roasted grains, flour, olive oil, and spices; soup mixes. | 09/2014 |
| **PATAGONIA PROVISIONS** *(owned by Provisions)* | 4822430/ Sept. 29, 2015 | Bison jerky, buffalo jerky. | 08/2015 |
| **PATAGONIA PROVISIONS** *(owned by Provisions)* | 4917049 / Mar. 15, 2016 | Online retail store services featuring food, namely, bison jerky, buffalo jerky, salmon jerky, snack bars containing primarily dried fruit and nuts, mixes for making soup comprising roasted grains, flour, olive oil and spices; providing | 11/2013 |



FIRST AMENDED COMPLAINT – Case No. 2:19-cv-02702-VAP (JEMx)

| Trademark | Reg. No. / Reg. Date | Goods | Date of First Use |
|---|---|---|---|
| | | current events news related to topics of general interest; providing on-line publications in the nature of periodical columns and blogs in the field of food, recipes, lifestyle, the environment, and topics of general interest; providing information, news and commentary related to recipes; providing information, news, and commentary regarding food, namely, information, news, and commentary related to cooking food (among others). | |
| **PATAGONIA WORKS** | 4791042 / Aug. 11, 2015 | capital investment services for research and development projects; providing grants and seed money to environmentally and socially conscious companies and projects | 05/2013 |

37.     These registrations are in full force and effect.  Many have become incontestable under 15 U.S.C. § 1065.  Plaintiffs also have common law rights in their trademarks covering other apparel and food products, and charitable and educational services in a broad array of environmental issues, including agricultural issues related to the food and grain supply chain.

38.     For example, the Provisions website explains the process and benefits related to brewing beer with a perennial grain called Kernza®.  Kernza is a grain with long roots and perennial growth that allow it to thrive without tilling or pesticides; it uses less water than conventional wheat, prevents erosion, and removes more carbon from the atmosphere than annual grains.  Provisions, since 2013,



1    has, in collaboration with others, produced beer and educated consumers about the

2    importance to the environment of the agricultural choices made in producing beer.

3    For example, Provisions reports regarding its LONG ROOT ALE products:

4              We believe the future of farming—and our planet—lies

5              in something called organic regenerative agriculture.

6              Organic regenerative agriculture restores soil biodiversity,

7              sequesters carbon, and efficiently grows crops without

8              chemical fertilizers or pesticides.  Researchers at the Rodale

9              Institute have found that a switch to organic regenerative

10             techniques could actually store enough carbon in the soil

11             to reverse global climate change.

12    39.    Collectively, when referring to marks owned by Patagonia or

13    Provisions, these marks, including Plaintiffs' registered trademarks and their

14    common law marks, are referred to as the "PATAGONIA" brand or trademarks.

15    The PATAGONIA trademarks are distinctive, arbitrary, and fanciful, entitled to

16    the broadest scope of protection, and certain of the PATAGONIA trademarks are

17    registered in ninety countries.

18    40.    For many years prior to the events giving rise to this Complaint

19    and continuing to the present, Plaintiffs annually have spent enormous amounts

20    of time, money, and effort advertising and promoting the products and services on

21    which their PATAGONIA trademarks are used.  PATAGONIA brand products are

22    advertised in print and on the Internet.  In addition to advertising by Plaintiffs, the

23    PATAGONIA trademarks are also advertised and promoted and presented at point

24    of sale by numerous retailers.  Consumers, accordingly, are exposed to the

25    PATAGONIA trademarks in a variety of shopping and post-sale contexts.

26    41.    Plaintiffs have sold their PATAGONIA brand products all over

27    the world, including throughout the United States and California.  Through their

28    promotion and investment in the PATAGONIA brand—combined with extensive



FIRST AMENDED COMPLAINT – Case No. 2:19-cv-02702-VAP (JEMx)          - 19 -

1  sales, publicity, awards, and leadership in sustainable sourcing practices—Plaintiffs

2  have acquired enormous goodwill in their PATAGONIA trademarks.

3      42.    When used as a brand, source identifier, trade name, or as the name

4  of an institution or product, the term PATAGONIA uniquely and unmistakably

5  identifies Patagonia, Inc. in the minds of United States consumers, and has operated

6  in this fashion since well before (a) the PTO issued U.S. Trademark Registration

7  No. 4,226,102, or (b) AB began marketing and selling a PATAGONIA beer.

8  Patagonia, Inc. is identified by the public as "Patagonia", and consumers assume

9  and understand that products, including beer, marketed under the name refer directly

10 to Patagonia, Inc.

11     43.    The PATAGONIA mark is famous within the meaning of the

12 Trademark Dilution Revision Act, and has been since long before AB began

13 selling PATAGONIA beer in the United States.  The mark enjoys strong consumer

14 recognition, is used as a household term to refer to Patagonia or its products, and

15 is recognized around the world and throughout the United States by consumers as

16 signifying high quality products and services from a responsible company.

17           **AB's Infringement and Dilution of Patagonia's Trademark Rights**

18     44.    Consistent with the comments from AB's Vice President of New

19 Brands, quoted above, AB recently has launched its PATAGONIA branded beer

20 in various U.S. markets.  AB has surrounded its promotion of the beer products

21 with PATAGONIA branded apparel and a plant-a-tree initiative in an attempt

22 to draw upon the same associations that consumers have with Patagonia's

23 PATAGONIA brand.

24     45.    As described above, AB made token use, if any, of the PATAGONIA

25 beer prior to the U.S. launch of the brand in late 2018.  AB has not accumulated any

26 trademark rights by way of this token use, and will not, unless consumers come to

27 secondarily associate PATAGONIA beer exclusively with AB.

28 / / /



FIRST AMENDED COMPLAINT – Case No. 2:19-cv-02702-VAP (JEMx)                        - 20 -

46.     When it launched PATAGONIA beer, AB modified the neck label to create a new "housemark" for its products consisting of a mountain silhouette above the PATAGONIA name (defined above as "AB's PATAGONIA logo").  This mimics Patagonia's P-6 logo and reinforces consumers' associations between AB's PATAGONIA beer and Patagonia.  The new label is being used on billboards, signs, apparel, packaging, and advertisements.  On the billboard below, this new label is used in an advertisement "introducing" the product and pairing this introduction with the slogan "you buy a case, we plant a tree":



47.     Southern Eagle Distributing now has AB's PATAGONIA Cerveza on its website, introducing the U.S. launch of this beer with no indication it has been used continuously for the last six years: "Originally from the Patagonia region in South America, they've decided to start their next adventure in the U.S."

48.     In a January 2019 interview, AB's Chief U.S. Sales Officer, Brendan Whitworth, stated "AB InBev owns a brand in Argentina called Patagonia which research indicated could have potential in the Colorado market," again indicating AB had not previously sold the beer in the U.S.

49.     In signage and packaging and in fictitious promotional names, AB has identified how its purported trademark registration for beer can be used to confuse



1  consumers and falsely suggest to consumers that they are referring with the mark

2  directly to Patagonia, Inc.  For example, AB announces "Patagonia's 'tree positive'

3  mission," referring to its new beer brand and to a "Patagonia" entity, all at once

4  usurping Patagonia's famous mark and its corporate identity, and again using AB's

5  PATAGONIA logo as a "housemark."



21     50.    Similarly, AB has decided to call the fictitious producer of Patagonia

22  beer, even though it is now brewed at AB's Fairfield California brewery, "Patagonia

23  Brewing Co."  These references further illustrate how the trademark can be and has

24  been used by AB to signal to consumers that they are dealing with Patagonia, the

25  entity that produces other PATAGONIA branded products and services.

26     51.    The same "housemark" was used on a variety of apparel products

27  that AB representatives were wearing and distributing to consumers in a recent

28  promotion.  Side by side comparisons of the parties' respective marks in use follow.



1
2
3
4
5
6




7
8
9
10
11
12




13
14
15
16
17




18   52.   There is no question that AB at all times was well aware of Patagonia's

19   prior rights, or that it is now using this array of promotional tools to try and capture

20   Patagonia's hard-earned goodwill and corporate identity for itself.  AB has

21   surrounded its launch of PATAGONIA beer and Patagonia Brewing Co. with the

22   goods and services, including apparel and sustainability, that are most responsible

23   for making Patagonia's brand and corporate identity famous.  If there were any

24   question remaining that AB intends to draft on Patagonia's reputation and consumer

25   associations with its brand, an AB representative recently contacted Provisions

26   seeking an "interview" about the Kernza grain use in Provisions' Long Root Ale.

27   53.   Consumers' longstanding association of the PATAGONIA brand

28   with Patagonia will likely be substantially diminished and eroded if AB continues



FIRST AMENDED COMPLAINT – Case No. 2:19-cv-02702-VAP (JEMx)        - 23 -

1  to use Patagonia's brand and corporate identity to identify, promote and market

2  AB's products.  Further, consumers will doubtless acquire negative associations

3  with the PATAGONIA brand and Patagonia itself from discovering the truth behind

4  AB's pretense that PATAGONIA beer is made in California by Patagonia Brewing

5  Co., rather than by one of the largest beer producers in the world.  Even if con-

6  sumers come away from AB's products with a positive experience, Patagonia's

7  famous brand and right to control and promote its identity will be eroded and

8  diminished by AB's use of the PATAGONIA trademark.

9  **Harm to Patagonia**

10  54.  AB's activities have caused consumer confusion in the marketplace.

11  Consumers have, for example, attributed AB's PATAGONIA beer to Plaintiffs,

12  causing a range of damages including depriving Plaintiffs of their right to control

13  their corporate identify and the reputation associated with their brands and marks.

14  On information and belief, AB intended this outcome when it tailored its launch

15  of the PATAGONIA beer to target Patagonia's consumers.

16  55.  AB's actions have caused and will cause irreparable harm to Plaintiffs

17  for which money damages and other remedies are inadequate.  Unless AB is

18  restrained by this Court, it will continue to cause irreparable damage and injury

19  to Plaintiffs by, among other things:

20  a.  Depriving Plaintiffs of their statutory rights to obtain

21  registrations for, use, and control use of their trademarks;

22  b.  Creating a likelihood of confusion, mistake, and deception

23  among consumers and the trade as to the source of the infringing

24  products and services, including beer, apparel, sustainability education,

25  and charitable environmental programs;

26  c.  Creating a likelihood of confusion among potential

27  partners with whom Plaintiffs have or may produce beer products,

28  about a Patagonia or Patagonia Provisions partnership with AB, such



FIRST AMENDED COMPLAINT – Case No. 2:19-cv-02702-VAP (JEMx)          - 24 -

1   that Plaintiffs' ability to secure the services of or collaborate with high

2   quality craft brewers is diminished or eliminated;

3          d.      Causing the public falsely to associate Plaintiffs with AB

4   and/or its products, or vice versa;

5          e.      Causing the public to associate AB's PATAGONIA

6   branded beer with Patagonia, compromising Patagonia's right to

7   control its own image and right of promotion;

8          f.      Causing incalculable and irreparable damage to Plaintiffs'

9   goodwill and diluting the capacity of the famous PATAGONIA trade-

10  mark to differentiate its products from those of its competitors;

11         g.      Causing incalculable and irreparable damage to

12  Patagonia's famous PATAGONIA trademark by creating negative

13  associations with AB's PATAGONIA beer products, apparel products,

14  and sustainability and philanthropic programs;

15         h.      Causing Plaintiffs to lose sales of their genuine

16  PATAGONIA brand products and services; and

17         i.      Causing AB to capture profits, premiums and goodwill

18  that are only available due to its exploitation of the PATAGONIA

19  brand, all to the detriment of deceived consumers and Patagonia.

20  Accordingly, in addition to damages and recovery of AB's profits, Plaintiffs are

21  entitled to injunctive relief against AB and all persons acting in concert with it.

22  **<u>FIRST CLAIM</u>**

23  **<u>FEDERAL TRADEMARK INFRINGEMENT</u>**

24  **(15 U.S.C. §§ 1114-1117)**

25         56.    Plaintiffs reallege and incorporate by reference each of the allegations

26  contained in paragraphs 1 through 55 of this Amended Complaint as if fully set forth

27  here.

28  / / /



57.     AB has used—in connection with the sale, offering for sale, distribution, or advertising of its apparel products—words and symbols that infringe upon Plaintiffs' registered trademarks, including the PATAGONIA trademark and the P-6 logo.

58.     AB's use of the registered PATAGONIA trademarks on apparel creates a likelihood of consumer confusion that AB is authorized to produce and distribute PATAGONIA products, or is associated or affiliated with Patagonia, when it is not.

59.     These acts of trademark infringement have been committed deliberately and with the intent to cause confusion, mistake, or deception, and are in violation of 15 U.S.C. § 1114.

60.     As a direct and proximate result of AB's conduct, Plaintiffs are entitled to recover up to treble the amount of AB's unlawful profits and Plaintiffs' damages, and an award of attorneys' fees under 15 U.S.C. §§ 1117(a).

61.     Plaintiffs and the public will suffer irreparable harm if AB's infringements continue.  Therefore, Plaintiffs are entitled to injunctive relief pursuant to 15 U.S.C. § 1116(a) that requires AB to stop use of Plaintiffs' registered trademarks on apparel and to stop using any other mark or design that creates likely confusion that AB is authorized to produce or distribute PATAGONIA brand products, or that there is any affiliation between Plaintiffs and AB.

## SECOND CLAIM

## FEDERAL UNFAIR COMPETITION

### (False Designation of Origin and False Description)

### (15 U.S.C. § 1125(a))

62.     Plaintiffs reallege and incorporate by reference each of the allegations contained in paragraphs 1 through 61 of this Amended Complaint.

63.     AB's conduct as alleged in this Complaint constitutes the use of symbols or devices tending falsely to describe the infringing products and services, including on beer, apparel, educational, and charitable and philanthropic goods and



1    services within the meaning of 15 U.S.C. § 1125(a).  AB's conduct is likely to cause

2    confusion, mistake, or deception by or in the public as to the affiliation, connection,

3    association, origin, sponsorship, or approval of the infringing products and services

4    to the detriment of Plaintiffs and the PATAGONIA trademarks, and in violation of

5    15 U.S.C. § 1125(a).

6         64.    As a direct and proximate result of AB's conduct, Plaintiffs are entitled

7    to recover up to treble the amount of AB's unlawful profits and Plaintiffs' damages,

8    and an award of attorneys' fees under 15 U.S.C. § 1117(a).

9         65.    Plaintiffs and the public will suffer irreparable harm if AB's infringe-

10   ments continue.  Therefore, Plaintiffs are entitled to an injunction pursuant to

11   15 U.S.C. § 1116(a) that requires AB to stop use of PATAGONIA on any good or

12   service and to stop using any other mark or design that creates likely confusion that

13   AB is authorized or sponsored by Plaintiffs or to use the PATAGONIA brand.

## THIRD CLAIM

## FEDERAL DILUTION OF FAMOUS MARK

### (Trademark Dilution Revision Act of 2006, 15 U.S.C. § 1125(c))

17        66.    Patagonia realleges and incorporates by reference each of the

18   allegations contained in paragraphs 1 through 65 of this Amended Complaint.

19        67.    Patagonia's PATAGONIA word mark is distinctive and famous within

20   the meaning of the Trademark Dilution Revision Act of 2006, 15 U.S.C. § 1125(c),

21   in that it is a household brand in the United States, and was famous prior to AB's

22   adoption of the trademarks.

23        68.    AB's conduct is likely to cause dilution of Patagonia's PATAGONIA

24   word mark by diminishing its distinctiveness and by disparaging Patagonia and the

25   PATAGONIA word mark in violation of the Trademark Dilution Revision Act of

26   2006, 15 U.S.C. § 1125(c).

27        69.    AB's conduct was deliberate, systematic, and willful, including in

28   taking improper steps to acquire Warsteiner's intent to use trademark application



FIRST AMENDED COMPLAINT – Case No. 2:19-cv-02702-VAP (JEMx)          - 27 -

1  for PATAGONIA and then to coopt Patagonia's identity when it launched the
2  brand.

3       70.     As a direct and proximate result of AB's willful conduct, Patagonia is
4  entitled to recover up to treble the amount of AB's unlawful profits and Patagonia's
5  damages, and an award of attorneys' fees under 15 U.S.C. §§ 1116(a), 1117(a), and
6  1125(c).

7       71.     Patagonia and the public will suffer irreparable harm if AB's dilution
8  of the famous PATAGONIA word mark continues and Patagonia is entitled to an
9  injunction pursuant to 15 U.S.C. §§ 1116(a) and 1125(c) that requires AB to stop
10 use of any PATAGONIA marks and any other mark or design that diminishes or
11 disparages the PATAGONIA word mark or diminishes the association consumers
12 have between Patagonia and the PATAGONIA word mark.

13                          **FOURTH CLAIM**
14      **TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION**
15                **UNDER CALIFORNIA STATUTORY LAW**
16        **(Cal. Bus. & Prof. Code §§ 14320, 14335, and 17200 et seq.)**

17      72.     Plaintiffs reallege and incorporate by reference each of the allegations
18 contained in paragraphs 1 through 71 of this Amended Complaint.

19      73.     Plaintiffs are the owners of numerous registrations as well as common
20 law rights for the PATAGONIA trademarks.

21      74.     To enhance the commercial value of its offerings, AB has used the
22 PATAGONIA trademarks on its beer, apparel, educational, and charitable and
23 philanthropic goods and services.  AB's conduct is likely to cause confusion,
24 mistake, or deception by or in the public as to the affiliation, connection, associa-
25 tion, origin, sponsorship, or approval of the infringing products and services to
26 the detriment of Plaintiffs and the PATAGONIA trademarks, and in violation of
27 California Business & Professions Code §§14320 *et seq*. and §§ 14335 *et seq*.
28 / / /



FIRST AMENDED COMPLAINT – Case No. 2:19-cv-02702-VAP (JEMx)        - 28 -

75.     AB's conduct also constitutes an "unlawful, unfair or fraudulent business act[s] or practice[s] and unfair, deceptive, untrue or misleading advertising" within the meaning of California Business & Professions Code §§ 17200 *et seq*.

76.     Plaintiffs are entitled to monetary and injunctive relief.  The public and Plaintiffs will suffer irreparable harm if AB's infringements continue.  Therefore, Plaintiffs are entitled to an injunction that requires AB to stop use of any PATAGONIA trademarks and to stop using any other mark or design that is likely to cause confusion about the origin of products or services bearing the PATAGONIA trademarks or about whether Plaintiffs have sponsored or authorized AB in its use of the PATAGONIA mark.

77.     Because AB's actions have been committed willfully, maliciously, and intentionally, Patagonia is entitled to reasonable attorneys' fees, and compensatory and punitive damages pursuant to California Business & Professions Code §§ 14320, 14330, and 14340.

## FIFTH CLAIM

## CANCELLATION OF TRADEMARK REGISTRATION

### (15 U.S.C. §1119)

78.     Plaintiffs reallege and incorporate by reference each of the allegations contained in paragraphs 1 through 77 of this Amended Complaint.

79.     Section 10(a) of the Lanham Act, 15 U.S.C. § 1060(a), provides in relevant part as follows:

> [N]o application to register a mark under section 1051(b)
> of this title shall be assignable prior to the filing of an
> amendment under section 1051(c) of this title to bring the
> application into conformity with section 1051(a) of this title
> or the filing of the verified statement of use under section
> 1051(d) of this title, except for an assignment to a successor
> to the business of the applicant, or portion thereof, to which



1    the mark pertains ….

2        80.    This means that Warsteiner could not assign the intent to use applica-

3    tion to AB without selling Warsteiner Imports Agency, or the relevant part of it,

4    to AB.

5        81.    The transactional documents recorded in the Trademark Office confirm

6    that Warsteiner made no such sale of any part of its business to AB and instead,

7    solely in a pro-forma manner purported to assign to AB its non-existent goodwill

8    in the PATAGONIA mark for beer.  Section 10(a) of the act makes it clear that an

9    assignment of so-called goodwill in an intent to use application is insufficient to

10   support its assignment.

11       82.    Because Warsteiner never made any use of the PATAGONIA trade-

12   mark, the application was abandoned.  To the extent that Warsteiner perfected the

13   registration, it never used the trademark after the mark registered and has abandoned

14   it.  AB is not, by virtue of its disguised and unlawful acquisition of the registration,

15   entitled to maintain the registration.  AB is not, by virtue of its disguised and

16   unlawful acquisition of the registration, a "registrant" within the meaning of the

17   Lanham Act and is not entitled to the benefits of a "registrant."  AB, in any event,

18   abandoned the registration after it was purportedly acquired and cannot, several

19   years later, resurrect the abandoned registration.  Accordingly, the Court should

20   order Registration No. 4,226,102 to be cancelled and, pursuant to regulations,

21   should address its certified order to the USPTO, Office of the Solicitor, Mail Stop 8,

22   Director of the United States Patent and Trademark Office, P.O. Box 1450,

23   Alexandria, Virginia 22313-1450.

24                          **SIXTH CLAIM**

25       **CANCELLATION OF TRADEMARK REGISTRATION**

26                    **(15 U.S.C. §§ 1052(a))**

27       83.    Plaintiffs reallege and incorporate by reference each of the allegations

28   contained in paragraphs 1 through 82 of this Amended Complaint.



84.     The PATAGONIA mark and brand uniquely and unmistakably identifies Patagonia, Inc. in the minds of consumers, and, when used as a brand, source identifier, trade name, or as the name of an institution or product, has held such immediate significance for many years.  Accordingly, the term PATAGONIA when applied to goods, including beer, refers to and identifies Patagonia, Inc.

85.     Warsteiner applied to register—and AB now purports to own—Registration No. 4,226,102 for PATAGONIA, a mark that is identical to Patagonia, Inc.'s name and identity.

86.     Plaintiffs have no connection with the products marketed and sold under Registration No. 4,226,102.

87.     As a result of the fame and reputation of Patagonia, Inc.'s identity and name—including at the time that Registration No. 4,226,102 issued—consumers are and were likely immediately to associate AB's use of PATAGONIA on beer with Patagonia, Inc.

88.     The PATAGONIA mark covered by Registration No. 4,226,102 falsely suggests a connection with Patagonia, Inc., and suggested such a false connection at the time the registration issued.  Because no mark that falsely suggests such a connection may be registered, pursuant to 15 U.S.C. §§ 1052(a) the Court should order Registration No. 4,226,102 to be cancelled and, pursuant to regulations, should address its certified order to the USPTO, Office of the Solicitor, Mail Stop 8, Director of the United States Patent and Trademark Office, P.O. Box 1450, Alexandria, Virginia 22313-1450.

## SEVENTH CLAIM

## CANCELLATION OF TRADEMARK REGISTRATION

### (15 U.S.C. § 1119)

89.     Plaintiffs reallege and incorporate by reference each of the allegations contained in paragraphs 1 through 88 of this Amended Complaint.

/ / /



FIRST AMENDED COMPLAINT – Case No. 2:19-cv-02702-VAP (JEMx)          - 31 -

90.    AB, when it assumed control over Warsteiner's intent-to-use applica-
tion, knew that Warsteiner never had used the PATAGONIA mark for beer, but
nonetheless swore to the Trademark Office that Warsteiner had, in fact, made
sufficient use in U.S. commerce to support a statement of use under 15 U.S.C.
§ 1051(d).  AB also knowingly misrepresented to the Trademark Office the date
when AB acquired Warsteiner's purported rights.  Had AB not made these false
filings on Warsteiner's behalf, intending to deceive, the Trademark Office would
not have issued the registration.

91.    AB already had engaged in a transaction with Warsteiner in which
Warsteiner's interest in the PATAGONIA trademark application had been sold
or transferred to AB as of May 2012, when its attorneys substituted for the
correspondent Warsteiner attorney.  AB made further false statements to the
Trademark Office when it continued to prosecute the application on Warsteiner's
ostensible behalf and stated later to the Trademark Office that the assignment to AB
did not occur until after the registration was issued when, in fact, the improper
assignment of the intent to use application already had occurred.

92.    AB knew that its and Warsteiner's statements to the Trademark Office
were false, but made them with the intention to deceive the Trademark Office so
that it would, unaware of the improper assignment and non-use by Warsteiner, issue
the registration for PATAGONIA on beer.  The Trademark Office acted in reliance
on these fraudulent statements when it issued Registration No. 4,226,102 to
Warsteiner.

93.    Because AB and Warsteiner procured the registration by fraud, the
registration must be cancelled.  Accordingly, the Court should order Registration
No. 4,226,102 to be cancelled and, pursuant to regulations, should address its
certified order to the USPTO, Office of the Solicitor, Mail Stop 8, Director of the
United States Patent and Trademark Office, P.O. Box 1450, Alexandria, Virginia
22313-1450.



## EIGHTH CLAIM

## RECTIFICATION OF TRADEMARK REGISTRATION

### (15 U.S.C. § 1119)

94.     Plaintiffs reallege and incorporate by reference each of the allegations contained in paragraphs 1 through 93 of this Amended Complaint.

95.     Plaintiffs are informed and believe that AB has not made genuine, continuous use of the PATAGONIA trademark for beer in interstate commerce over the past five years which is a prerequisite for incontestable status.  Although AB knows it has not made bona fide use,  AB filed statements of renewal and incontestability with the Trademark Office on October 5, 2018 which falsely reported that such use had been continuous since the date of registration.

96.     Plaintiffs base these allegations on multiple published reports from AB to the effect that the PATAGONIA product line was being introduced or launched as of 2018, and by AB distributors who have stated that they expect to be receiving access to PATAGONIA beer soon.

97.     An unlawfully acquired registration is not incontestable in the hands of the unlawful assignee.  In addition, incontestability only operates in favor of "registrants" and AB is not, by virtue of its disguised and unlawful acquisition of the registration, a "registrant" within the meaning of the Lanham Act.

98.     For all of these reasons, the Court should order rectification of Registration No. 4,226,102 by striking the affidavit of incontestability from the register.  The Court, pursuant to regulations, should address its certified order to the USPTO, Office of the Solicitor, Mail Stop 8, Director of the United States Patent and Trademark Office, P.O. Box 1450, Alexandria, Virginia 22313-1450.

## PRAYER FOR JUDGMENT

WHEREFORE, Plaintiffs pray that this Court grant it the following relief:

1.     Adjudge that the PATAGONIA trademarks have been infringed by AB in violation of Plaintiffs' rights under 15 U.S.C. § 1114;



2.      Adjudge that the PATAGONIA trademarks have been infringed by AB in violation of California statutory law;

3.      Adjudge that Plaintiffs' common law rights in the PATAGONIA trademarks have been infringed;

4.      Adjudge that AB has falsely described the source of its products and services in violation of Plaintiffs' rights under 15 U.S.C. § 1125(a);

5.      Adjudge that AB has competed unfairly with Plaintiffs in violation of California statutory law;

6.      Adjudge that AB's activities are likely to dilute Patagonia's famous PATAGONIA trademark in violation of Patagonia's rights under 15 U.S.C. § 1125(c);

7.      Adjudge that AB and its agents, employees, attorneys, successors, assigns, affiliates, and joint venturers, and any person(s) in active concert or participation with it, and/or any person(s) acting for, with, by, through, or under it, be enjoined and restrained at first during the pendency of this action and thereafter permanently from:

        a.      Manufacturing, producing, sourcing, importing, selling, offering for sale, distributing, advertising, or promoting any goods or services that copy or display any words or symbols that so resemble Plaintiffs' PATAGONIA trademarks as to be likely to cause confusion, mistake, or deception, on or in connection with any product or service that is not authorized by or for Plaintiffs, including, without limitation, any product or service that (i) bears the PATAGONIA trademarks, (ii) bears AB's mountain silhouette logo, or (iii) otherwise approximates Plaintiffs' trademarks;

        b.      Using any word, term, name, symbol, device, or combination that (i) causes or is likely to cause confusion, mistake, or deception as to the affiliation or association of AB or its products or



FIRST AMENDED COMPLAINT – Case No. 2:19-cv-02702-VAP (JEMx)          - 34 -

services with Plaintiffs, or as to the origin of AB's products or services, (ii) contains any false designation of origin, false or misleading description or representation of fact, (iii) contains any false or misleading advertising, or (iv) causes likely dilution of the distinctiveness of the PATAGONIA trademark or degrades it;

c.      Further infringing the rights of Plaintiffs in and to their PATAGONIA trademark, or otherwise damaging Plaintiffs' goodwill or business reputation;

d.      Further diluting the famous PATAGONIA trademark;

e.      Otherwise competing unfairly with Plaintiffs in any manner; or

f.      Continuing to perform in any manner whatsoever any of the other acts complained of in this Complaint;

8.      Order that Registration No. 4,226,102 shall be cancelled and address its certified order to the USPTO, Office of the Solicitor, Mail Stop 8, Director of the United States Patent and Trademark Office, P.O. Box 1450, Alexandria, Virginia 22313-1450;

9.      Order that Registration No. 4,226,102 shall be rectified to strike AB's statement of incontestability under section 15 of the Lanham Act, and address its certified order to the USPTO, Office of the Solicitor, Mail Stop 8, Director of the United States Patent and Trademark Office, P.O. Box 1450, Alexandria, Virginia 22313-1450;

10.     Adjudge that AB, within thirty (30) days after service of the Court's judgment, be required to file with this Court and serve upon Patagonia's counsel a written report under oath setting forth in detail the manner in which it has complied with the judgment;

11.     Adjudge that Plaintiffs recover from AB its damages and lost profits, and AB's profits, in an amount to be proven at trial;



12. Adjudge that AB be required to account for any profits that are attributable to its illegal acts, and that Plaintiffs be awarded (1) AB's profits and (2) all damages sustained by Plaintiffs, under 15 U.S.C. § 1117, plus prejudgment interest;

13. Adjudge that the amounts awarded to Plaintiffs pursuant to 15 U.S.C. § 1117 shall be trebled;

14. Adjudge that AB be obligated to pay punitive damages to Plaintiffs;

15. Adjudge that this is an exceptional case and that Plaintiffs be awarded its costs and disbursements incurred in connection with this action, including Plaintiffs' reasonable attorneys' fees and investigative expenses; and

16. Adjudge that all such other relief be awarded to Plaintiffs as this Court deems just and proper.

DATED:  June 5, 2019            Respectfully submitted,

                                KILPATRICK TOWNSEND & STOCKTON LLP


                                By:   */s/ Gregory S. Gilchrist*
                                      GREGORY S. GILCHRIST
                                      RYAN T. BRICKER
                                      SOPHY MANES
                                      ALEXANDRA N. MARTINEZ

                                      Attorneys for Plaintiffs
                                      PATAGONIA, INC. and
                                      PATAGONIA PROVISIONS, INC.



## **DEMAND FOR JURY TRIAL**

Plaintiffs Patagonia, Inc. and Patagonia Provisions, Inc. demand that this action be tried to a jury.

DATED:  June 5, 2019                    Respectfully submitted,

KILPATRICK TOWNSEND & STOCKTON LLP

By:   */s/ Gregory S. Gilchrist*
       GREGORY S. GILCHRIST
       RYAN T. BRICKER
       SOPHY MANES
       ALEXANDRA N. MARTINEZ

Attorneys for Plaintiffs
PATAGONIA, INC. and
PATAGONIA PROVISIONS, INC.

72000481V.1

