**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**



FILED
CLERK, U.S. DISTRICT COURT
SEPT 3, 2019
CENTRAL DISTRICT OF CALIFORNIA
BY: ___BH___ DEPUTY

| | |
|---|---|
| Patagonia, Inc., Patagonia Provisions, Inc.<br><br>Plaintiffs,<br><br>v.<br><br>Anheuser-Busch, LLC dba Patagonia Brewing Co.<br><br>Defendant. | 2:19-CV-02702-VAP-JEMx<br><br>**Order DENYING Defendant's Motion to Dismiss Plaintiff's First Amended Complaint (Doc. No. 15).** |

Plaintiffs Patagonia, Inc. and Patagonia Provisions, Inc. (collectively, "Plaintiffs") filed this action against Defendant Anheuser-Busch, LLC d/b/a Patagonia Brewing Co. ("Anheuser-Busch") on April 9, 2019.  (Doc. No. 1.)  Plaintiffs filed the operative First Amended Complaint ("FAC") on June 5, 2019.  (Doc. No. 12.)

On July 3, 2019, Anheuser-Busch filed the pending Motion to Dismiss (Doc. No. 15, "Motion").  Plaintiffs filed their opposition on July 25, 2019. (Doc. No. 17.)  Anheuser-Busch filed an untimely timely reply on August 9, 2019.  (Doc. No. 19).  After considering all papers filed in support of, and in opposition to Anheuser-Busch's Motion, the Court rules as follows.

## I. SUMMARY OF ALLEGATIONS

For more than forty years, Plaintiff Patagonia, Inc. has been designing, developing, marketing and retailing outdoor apparel, sportswear and related products. FAC ¶ 6. Patagonia, Inc. has used its PATAGONIA mark (Registration No. 1,189,402) and its P-6 logo (Registration No. 1,294,523) in interstate commerce since as early as August 1974. *Id.* ¶ 8, 36. Plaintiffs allege that their PATAGONIA brand and P-6 logo have become among the most identifiable brands in the world. *Id.* ¶ 8. Patagonia, Inc. has also been recognized and honored for its sustainable and charitable business initiatives. *Id.* ¶ 9. Since 1985, Patagonia, Inc. has pledged 1% of sales to environmental groups to preserve and restore our natural environment, donating more than $100 million to date. *Id.* In 2002, Patagonia, Inc.'s founder, Yvon Chouinard, created a non-profit called 1% For the Planet® to encourage other businesses to do the same. *Id.* To date, more than 1200 companies have donated more than $150 million to over 3,300 nonprofits through 1% For the Planet®. *Id.* In 2012, Plaintiff Patagonia Provisions, Inc., a related company, began developing, marketing and selling socially and environmentally responsible food items under the PATAGONIA PROVISIONS® mark (Registration No. 4,168,329), including beer, buffalo jerky, salmon, fruit and almond bars, and soup mixes. *Id.* ¶¶ 4, 10.

Defendant Anheuser-Busch is a global producer of beer and other products and services under a multitude of brands. *Id.* ¶ 11. Among its brands is Anheuser-Busch's PATAGONIA beer, which it sells under the business name Patagonia Brewing Company. *Id.* ¶¶ 11-12. Anheuser-Busch purports to own the registered trademark PATAGONIA (Registration

No. 4,226,102) for use in connection with beer. *Id.* ¶ 16; Def. RJN, Ex. A. According to Plaintiffs, Anheuser-Busch recently launched its PATAGONIA beer at ski resorts in Colorado, where its sales people dressed in black down jackets with Anheuser-Busch's PATAGONIA logo on the chest and gave out beanies, scarves, and t-shirts all bearing the same PATAGONIA logo. FAC ¶ 2. At the ski resorts, Anheuser-Busch set up a pop-up store, featuring a large PATAGONIA sign and a placard describing "Patagonia's 'tree positive' mission," where customers were told that Anheuser-Busch would plant one tree for every case of beer purchased. *Id.*

  

Plaintiffs allege that Anheuser-Busch, in launching its PATAGONIA beer, has deliberately misappropriated the tremendous goodwill that Plaintiffs have cultivated in their PATAGONIA brand. *Id.* ¶ 3. Plaintiffs allege that Anheuser-Busch has created a logo that is strikingly similar to Patagonia, Inc.'s P-6 logo. *Id.* ¶ 51. Plaintiffs further allege that Anheuser-Busch's environmental conservation initiative is a clear attempt to copy Plaintiffs' famous brand identity. *Id.* ¶ 49. Below is a side-by-side comparison of the parties' respective marks:

 
 

Additionally, Plaintiffs allege that Anheuser-Busch's PATAGONIA registration was procured unlawfully and through fraudulent misrepresentations to the United States Patent and Trademark Office ("USPTO"). *Id.* ¶ 16. Anhueser-Busch's application for registration for PATAGONIA to be used in connection with beer (International Class 32) was initially filed on June 8, 2006 by competitor Warsteiner Importers Agency, Inc. ("Warsteiner"). *Id.* ¶ 18. On July 21, 2009, the USPTO issued the "Notice of Allowance" for Warsteiner's intent to use ("ITU"), inviting Warsteiner to secure its registration by showing commercial use of the mark. *Id.* ¶ 21. Beginning on January 18, 2010, Warsteiner repeatedly requested an extension of time to file its statement of use every six months. *Id.* ¶ 22. On January 5, 2012, Warsteiner filed its fifth and final permissible extension to show use, which was set to expire on July 12, 2012. *Id.*

On July 17, 2012, four days before Warsteiner's ITU application was set to fall abandoned for failure to use the mark, Anheuser-Busch's attorney filed a "Statement of Use" on behalf of Warsteiner, showing a single bottle

as a specimen that used the same "Patagonia" label that Anheuser-Busch submitted to the Alcohol and Tobacco Tax and Trade Bureau for Certificate of Label Approval.  *Id.* ¶ 24.  On October 16, 2012, Warsteiner's registration for PATAGONIA was issued by the USPTO in reliance on Warsteiner's statement that it had used its PATAGONIA mark in interstate commerce in the United States as of July 16, 2012.  *Id.* ¶¶ 25-26.  On February 8, 2013, a trademark assignment was recorded with the USPTO, reflecting Warsteiner's assignment of the PATAGONIA trademark and registration to Anheuser-Busch on December 20, 2012.  *Id.* ¶ 27.

Plaintiffs allege that Anheuser-Busch submitted false evidence to the USPTO to obtain unlawfully a trademark for PATAGONIA in connection with beer.  *Id.* ¶ 1.  Plaintiffs assert that Warsteiner's assignment "did not occur until after the registration was issued when, in fact, the improper assignment of the intent to use application already had occurred."  *Id.* ¶ 91.  Further, Plaintiffs assert that Warsteiner, through Anheuser-Busch's attorney, filed a false "Statement of Use" because Warsteiner never used the PATAGONIA mark on beer in interstate commerce.  *Id.* ¶ 25.

Based on the foregoing, Plaintiffs assert the following claims under the Lanham Act and California law: (1) trademark infringement, in violation of 15 U.S.C. §§ 1114-1117; (2) false designation of origin and false description, 15 U.S.C. § 1125(a); (3) trademark dilution, 15 U.S.C. § 1125(c); (4) trademark infringement and unfair competition under California statutory law, in violation of California Business & Professions Code §§ 14320, 14335 and 17200; (5) cancellation of trademark registration under 15 U.S.C. § 1060(a);

(6) cancellation of trademark registration under 15 U.S.C. § 1052(a); (7) cancellation of trademark registration under 15 U.S.C. § 1119; and (8) rectification of trademark registration, 15 U.S.C. § 1119.  (Doc. No. 12.)

## II.     LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows a party to bring a motion to dismiss for failure to state a claim upon which relief can be granted. Rule 12(b)(6) is read along with Rule 8(a), which requires a short, plain statement upon which a pleading shows entitlement to relief.  Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  When evaluating a Rule 12(b)(6) motion, a court must accept all material allegations in the complaint—as well as any reasonable inferences to be drawn from them— as true and construe them in the light most favorable to the non-moving party.  *See Doe v. United States*, 419 F.3d 1058, 1062 (9th Cir. 2005).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555 (citations omitted).  Rather, the allegations in the complaint "must be enough to raise a right to relief above the speculative level."  *Id*.

To survive a motion to dismiss, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570; *Ashcroft v. Iqbal*, 556 U.S. 662, 697 (2009).  "The plausibility standard

is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556).

The Ninth Circuit has clarified that (1) a complaint must "contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively" and (2) "the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Starr v. Baca*, 652 F. 3d 1202, 1216 (9th Cir. 2011).

Although the scope of review is limited to the contents of the complaint, the Court may also consider exhibits submitted with the complaint, *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990), and "take judicial notice of matters of public record outside the pleadings," *Mir v. Little Co. of Mary Hosp.*, 844 F.2d 646, 649 (9th Cir. 1988). Moreover, "[d]ocuments whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss." *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994) overruled on other grounds by *Galbraith v. Cty. of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002).

### III. DISCUSSION

Anheuser-Busch moves to dismiss Plaintiffs' third, fourth, fifth, sixth, and seventh claims alleged in the FAC for failure to state a claim pursuant to Rule 12(b)(6) and for a more definite statement pursuant to Rule 12(e).[1] (Doc. No. 15).

To allege trademark dilution, a plaintiff must plead that "(1) the mark is famous and distinctive; (2) the defendant is making use of the mark in commerce; (3) the defendant's use began after the mark became famous; and (4) the defendant's use of the mark is likely to cause dilution by blurring or dilution by tarnishment." *Jada Toys, Inc. v. Mattel, Inc.*, 518 F.3d 628, 634 (9th Cir. 2008) (citing 15 U.S.C. § 1125(c)(1)).  "A mark is famous if it is widely recognized by the general consuming public of the United States." 15 U.S.C. § 1125(c)(2)(1).

Anheuser-Busch argues that the Court should dismiss Plaintiffs' federal trademark dilution claim because (1) Plaintiffs fail to plead specific facts in support of their claim, and (2) as a matter of law, Plaintiffs' PATAGONIA

---

[1] In connection with its Motion, Anheuser-Busch has requested that the Court take judicial notice of seventeen exhibits. (Doc. No. 16.)  The Court takes judicial notice of the USPTO record for Registration No. 4,226,102 for the PATAGONIA mark for beer (Exhibit A) and the USPTO record for application, Serial No. 86/455,281, for the PATAGONIA PROVISIONS mark for wines (Exhibit B).  *See Metro Pub., Ltd. v. San Jose Mercury News*, 987 F.2d 637, 641 n. 3 (9th Cir. 1993) (taking judicial notice of trademark documents from the USPTO because their "accuracy cannot reasonably be questioned").  Because the Court need not consider Exhibits C-Q in deciding this Motion, the Court declines to take judicial notice of them.

mark lacks the requisite level of distinctiveness to be "famous."  Motion at 20.

"To meet the 'famousness' element of protection under the dilution statutes, a mark must be truly prominent and renowned."  *Avery Dennison Corp. v. Sumpton*, 189 F.3d 868, 875 (9th Cir. 1999) (quotations and citation omitted).  Under the Trademark Dilution Revision Act, four non-exclusive factors are relevant when determining whether a mark is sufficiently famous for anti-dilution protection: (1) The duration, extent, and geographic reach of advertising and publicity of the mark, whether advertised or publicized by the owner or third parties; (2) the amount, volume, and geographic extent of sales of goods or services offered under the mark; (3) the extent of actual recognition of the mark; and (4) whether the mark was registered under the Act of March 3, 1881, or the Act of February 20, 1905, or on the principal register.  15 U.S.C. § 1125(c)(2)(A).

Here, the Court finds that Plaintiffs have sufficiently alleged that its PATAGONIA mark is famous and distinctive.  Plaintiffs received registration for its PATAGONIA trademark on February 9, 1982, with its first date of use in August of 1974.  FAC ¶ 36; Registration No. 1,189,402.  Plaintiffs allege that in the "more than forty years since Patagonia, Inc.'s business started, the PATAGONIA brand and its P-6 logo have become among the most identifiable brands in the world."  *Id*. ¶ 7.  Plaintiffs allege that it has spent enormous amounts of time, money, and effort in advertising and promoting the products and services on which their PATAGONIA trademarks are used, including in print, on the Internet and at numerous retailers.  *Id*. ¶ 40.

Plaintiffs also allege that they have sold their PATAGONIA brand products all over the world. *Id.* ¶ 41. Further, with respect to sales, Plaintiffs allege that "since 1985, Patagonia, Inc. has pledged 1% of sales to environmental groups … donating more than $100 million to date." *Id.* ¶ 9. This amounts to $10 billion in sales since 1985. In addition, Plaintiffs allege that it owns numerous federal registrations for their PATAGONIA trademark and P-6 logo. *Id.* ¶ 36. Assuming these allegations are true and construing the facts in the light most favorable to Plaintiffs, Plaintiffs have sufficiently alleged that its PATAGONIA mark is "famous" for purposes of its federal trademark dilution. Accordingly, the Court **DENIES** Anheuser-Busch's motion to dismiss Plaintiffs' third claim.

### A. California Trademark Claims (Claim Four)

Anheuser-Busch moves to dismiss Plaintiffs' fourth claim for "Trademark Infringement and Unfair Competition Under California Statutory Law," arguing that this claim fails because Plaintiffs cite inapplicable statutes and state no facts supporting a claim for dilution under the cited California statute. Motion at 17-18. In response, Plaintiffs contend that the substance of the FAC puts Anheuser-Busch on notice of Plaintiffs' state law claims; and to the extent Plaintiffs' statutory citations were obsolete, they offered to clarify their state law claims in discovery or by filing a post-Motion amendment. Pln. Opp. at 13, fn. 5. According to Plaintiffs, "[t]here is no basis to dismiss the claims and any questions about what statutes are relied upon can easily be cured in discovery." *Id*. The Court agrees that any doubt regarding the state law statutes upon which Plaintiffs rely can be resolved in discovery. Accordingly, the Court **DENIES** Anheuser-Busch's

1  motion to dismiss Plaintiffs' fourth claim, but orders Plaintiffs to file an
2  amended complaint no later than October 3, 2019.

**B.  Cancellation of Anheuser-Busch's PATAGONIA Mark**

Plaintiffs' Fifth, Sixth and Seventh claims seek to cancel Anheuser-Busch's PATAGONIA trademark (Registration No. 4,226,102) on numerous grounds.  FAC ¶¶ 83-93.  The Lanham Act gives federal courts authority to cancel an invalid trademark registration.  *See Petroliam Nasional Berhad v. GoDaddy.com, Inc.*, 897 F. Supp. 2d 856, 869 (N.D. Cal. 2012), aff'd, 737 F.3d 546 (9th Cir. 2013) (citing 15 U.S.C. § 1119).  Anheuser-Busch moves to dismiss each of Plaintiffs' cancellations claims pursuant to Rule 12(b)(6) and Rule 12(e).  Motion at 7-17.[2]  The Court evaluates the sufficiency of each of Plaintiffs' cancellation claims in turn, below.

1.  Cancellation Pursuant to Section 10(a) of the Lanham Act (Claim Five)

Under the Lanham Act, an intent-to-use application cannot be assigned before the applicant files a verified statement that he or she is using the mark, unless the part of the applicant's business that pertains to the mark is also assigned and that business is still "ongoing and existing."  15 U.S.C. § 1060(a)(1).  Violating this "anti-trafficking rule" voids the assignment as well as the underlying application and resulting registration.  *The Clorox Co. v.*

---

[2] Throughout its Motion, Anheuser-Busch emphasizes that its PATAGONIA mark is "incontestable."  *See* Motion at 1-2, 4-6, 14, 16, 18.  The Court notes that the incontestability of a trademark is irrelevant to Plaintiffs' cancellation claims. *See, e.g., Fed. Treasury Enter. Sojuzplodoimport v. Spirits Int'l N.V.*, 623 F.3d 61, 69 (2d Cir. 2010) (holding that "the question of the validity of the assignment is antecedent to the question of incontestability").

*Chemical Bank*, 40 U.S.P.Q.2d (BNA) 1098, 1104 (T.T.A.B.1996). Federal courts may also cancel registrations based on abandonment. *See Petroliam Nasional Berhad*, 897 F. Supp. 2d at 869 (citing 15 U.S.C. § 1064(3)).

Plaintiffs seek to cancel Anheuser-Busch's PATAGONIA trademark pursuant to § 10(a) of the Lanham Act, 15 U.S.C. § 1060(a). FAC ¶¶ 78-82. Plaintiffs further allege that Anheuser-Busch's PATAGONIA trademark should be cancelled because Anheuser-Busch "abandoned the registration after it was purportedly acquired and cannot, several years later, resurrect the abandoned registration. *Id*. ¶ 82. Anheuser-Busch argues that Plaintiffs' fifth claim fails because Plaintiffs do not plead facts to support a claim for a violation of the anti-trafficking rule or abandonment. Motion at 14-17.

First, Anheuser-Busch argues that Plaintiffs cannot state a claim for violation of § 10(a) because the assignment—dated December 20, 2012— took place after the registration was issued on October 16, 2012, and thus, there can be no violation of the anti-trafficking rule. Motion at 17 (relying on FAC ¶¶ 26-28). In opposition, Plaintiffs argue that its allegations support the plausible inference that Warsteiner actually assigned the ITU to Anheuser-Busch on May 14, 2012, the date Anheuser-Busch's lawyers took control of Warsteiner's application, which was two months before the Statement of Use was filed on July 17, 2012. Pln. Opp. at 5 (citing FAC ¶¶ 23-24). Plaintiffs allege that the "date on the assignment document is months after registration of the mark and yet the assignment does not refer to the registration or registration number," and therefore, the date "appears to have

been falsely stated to disguise the true date of the assignment which preceded the statement of use." *Id.* ¶ 28. Plaintiffs argue that if the assignment was not effective until the recorded execution date, then there is no explanation why Anheuser-Busch's attorneys drafted and submitted to the USPTO an assignment of the "application." Pln. Opp. at 6.[3]

In response, Anheuser-Busch argues that Plaintiffs do not allege facts from which one can plausibly infer that the date was "falsely stated to disguise the true date of the assignment" such that the assignment violated the anti-trafficking rule. Motion at 17. In support, Anheuser-Busch relies on *In re Century Aluminum Co. Sec. Litig.*, for the proposition that "plaintiffs cannot offer allegations that are 'merely consistent with' their favored explanation but are also consistent with the alternative explanation." 729 F.3d 1104, 1108 (9th Cir. 2013) (citing *Iqbal*, 556 U.S. at 678) (internal quotation marks omitted). The Court finds Anheuser-Busch's reliance on *In re Century Aluminum Co.* unavailing because it ignores that "facts tending to exclude the possibility that the alternative explanation is true" can render Plaintiffs' allegations plausible within the meaning of *Iqbal* and *Twombly*. *See In re Century Aluminum Co. Sec. Litig,* 729 F.3d at 1108. Here, Plaintiffs' allegations related to Anheuser-Busch's conduct prior to registration of the mark, *see* FAC ¶¶ 19-25, are sufficient to exclude the

---

[3] Plaintiffs allege that the "document verifying the assignment states [that] it 'assigns… all right, title, in and to the PATAGONIA *Application* and Mark, together with the goodwill of the business symbolized by the PATAGONIA mark and *any resulting registration*,' revealing that the assignment was drafted and effective *before* any registration had issued." FAC ¶ 27 (emphasis in original).

13

possibility that Anheuser-Busch's explanation that the assignment was drafted before, but executed after, registration is true.

Second, Anheuser-Busch argues that Plaintiffs' fifth claim does not plead facts sufficient to cancel its registration based on abandonment. Motion at 14-16. A mark is abandoned "[w]hen its use has been discontinued with an intent not to resume such use." 15 U.S.C. § 1127. The first element for a claim of abandonment through non-use is "discontinuance of the trademark." *Electro Source, LLC v. Brandess-Kalt-Aetna Group, Inc.*, 458 F.3d 931, 935 (9th Cir. 2006) (citing 15 U.S.C. § 1127). Plaintiffs' allegations that Anheuser-Busch's first bona fide use of its PATAGONIA mark in the United States was six years after the registration was issued sufficiently alleges the first element. FAC ¶ 30. The second element for a claim of abandonment through non-use is "intent not to resume such use." *Electro Source*, 458 F.3d at 935. Here, Plaintiffs allege that Anheuser-Busch's "current press releases and promotional statements—together with its disclosures in its public filings—indicate that [Anheuser-Busch] made no bona fide commercial use of its unlawful PATAGONIA trademark in the five years following issuance of the registration, and contradict [Anheuser-Busch's] sworn statement to the Trademark Office." FAC ¶ 32. Anheuser-Busch's argument that Plaintiffs fail to allege sufficient facts to support the second element is belied by the Lanham Act itself, which provides that intent not to resume use "may be inferred from circumstances," and that "[n]onuse for 3 consecutive years shall be prima facie evidence of abandonment." 15 U.S.C. § 1127. Accepting all of Plaintiffs' allegations as true, the Court finds

1  that Plaintiffs have sufficiently stated a claim for abandonment.  Accordingly,
2  the Court **DENIES** Anheuser-Busch's motion to dismiss Plaintiffs' fifth claim.

4      2.    <u>Cancellation by False Suggestion (Claim Six)</u>
5      Section 2(a) of the Lanham Act, 15 U.S.C. § 1052(a), allows a person or
6  entity to challenge a trademark filing where it falsely suggests a connection
7  with another person, corporation or institution.  15 U.S.C. § 1052(a).  A
8  false suggestion claim requires the moving party to show the following four
9  elements: (1) that the defendant's mark is the same or a close
10 approximation of plaintiff's previously used name or identity; (2) that the
11 mark would be recognized as such; (3) that the plaintiff is not connected
12 with the activities performed by the defendant under the mark; and (4) that
13 the plaintiff's name or identity is of sufficient fame or reputation that when
14 the defendant's mark is used on its goods or services, a connection with the
15 plaintiff would be presumed.  *See Univ. of Notre Dame du Lac v. J.C.*
16 *Gourmet Food Imps. Co.*, 703 F.2d 1372 (Fed. Cir. 1983); *Buffett v. Chi-*
17 *Chi's, Inc.*, 226 U.S.P.Q. (BNA) ¶ 428 (T.T.A.B. June 13, 1985).

19     Anheuser-Busch argues that Plaintiffs' allegations are insufficient to
20 establish the second or fourth element of their false suggestion claim.
21 Motion at 11-14.  As to the second element, Anheuser-Busch argues that the
22 FAC fails to allege enough facts to state a plausible claim that "as of 2012,
23 PATAGONIA—for beer—'uniquely and unmistakably' identified Patagonia,
24 Inc." Motion at 13.  To satisfy this element, courts "must determine whether
25 consumers would view the mark as pointing only to [Plaintiffs], or whether
26 they would perceive it to have a different meaning."  *Lesley Hornby a/k/a*

*Lesley Lawson a/k/a Twiggy v. Tjx Companies, Inc.*, 87 U.S.P.Q.2d 1411 (T.T.A.B. 2008). Such a fact-intensive inquiry is inappropriate on a Rule 12(b)(6) motion because the Court must accept Plaintiffs' allegations in the FAC as true. Here, Plaintiffs allege that "the term PATAGONIA uniquely and unmistakably identified Patagonia, Inc. in the minds of United States consumers, and has operated in this fashion since well before (a) the USPTO issued U.S. Trademark Registration No. 4,226,102, or (b) [Anheuser-Busch] began marketing and selling a PATAGONIA beer." FAC ¶ 42. Accepting these allegations as true, Plaintiffs sufficiently allege the second element of their false suggestion claim.

As to the fourth element, Anheuser-Busch argues that Plaintiffs fail to allege facts to support that Plaintiffs' fame and reputation is such that when PATAGONIA is used to identify beer, a connection with Plaintiffs would be presumed. Motion at 14. For this element, the fame or reputation of Plaintiffs must be determined as of the time of Anheuser-Busch's registration for PATAGONIA issued. *See Lesley Hornby a/k/a Lesley Lawson a/k/a Twiggy v. Tjx Companies, Inc.*, 87 U.S.P.Q.2d 1411 (T.T.A.B. 2008). Thus, Plaintiffs must allege facts to show that Plaintiffs had sufficient fame and/or reputation as of October 16, 2012.

Here, the FAC alleges that "[a]s a result of the fame and reputation of Patagonia, Inc.'s identity and name—including at the time that Registration No. 4,226,102 issued—consumers are and were likely to immediately associate [Anheuser-Busch's] use of PATAGONIA on beer with Patagonia, Inc." FAC ¶ 87. The Court has already determined that Plaintiffs have

sufficiently alleged that its PATAGONIA mark is "famous" for purposes of its federal trademark dilution. *See, supra*, III.A; *see also Chagall v. Bondarchuk*, 82 U.S.P.Q.2d 1838 (T.T.A.B. 2007) (rejecting the registrant's argument that the "strict fame requirement" applied in dilution cases applies to the "fame or reputation" requirement under section 2(a)). Indeed, the USPTO even acknowledges that "[i]n the more than forty years since Patagonia's business started, PATAGONIA® has become one of the most identifiable brands in the world." Def. RJN, Ex. B at 39. Thus, Plaintiffs have alleged sufficient facts to meet the fourth element of their false suggestion claim. Accordingly, the Court **DENIES** Anheuser-Busch's motion to dismiss Plaintiffs' sixth claim.

### 3. Cancellation Based on Fraudulent Procurement (Claim Seven)

A court may order the cancellation of a registered mark if the mark was procured fraudulently. 15 U.S.C. §§ 1119, 1064. In order to prove fraud on the USPTO, the party seeking cancellation must show: "a false representation regarding a material fact, the registrant's knowledge or belief that the representation is false, the intent to induce reliance upon the misrepresentation and reasonable reliance thereon, and damages proximately resulting from the reliance." *Spin Master, Ltd. v. Zobmondo Entm't, LLC*, 778 F. Supp. 2d 1052, 1061 (C.D. Cal. 2011) (citing *Robi v. Five Platters, Inc.*, 918 F.2d 1439, 1444 (9th Cir. 1990)).

The Court must determine whether Plaintiffs have pleaded their false procurement claim with the requisite particularity under Rule 9(b). To meet this standard, the FAC must "identify the who, what, when, where, and how

of the misconduct charged, as well as what is false or misleading about the purportedly fraudulent statement, and why it is false." *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011) (internal quotation marks omitted).

Plaintiffs allege that Anheuser-Busch's PATAGONIA registration was procured unlawfully and through fraudulent misrepresentations to the USPTO. FAC ¶ 16. Specifically, Plaintiffs' fraudulent procurement claim concerns (1) the Statement of Use filed by Anheuser-Busch on July 17, 2012 and (2) the assignment recorded on February 22, 2013. Anheuser-Busch argues that Plaintiffs' fraudulent procurement claim fails because their allegations fall short of the exacting pleading requirements for fraud. Motion at 8-11.

As to the Statement of Use, the FAC alleges that on "July 17, 2012, four days before Warsteiner's intent to use application was set to fall abandoned for failure to use the mark, [Anheuser-Busch's] attorney filed a statement of use on behalf of Warsteiner, showing a single bottle as a specimen that used the same 'Patagonia' label that [Anheuser-Busch] had recently submitted to the [Alcohol and Tobacco Tax and Trade Bureau] for approval." FAC ¶ 24. The Statement of Use provides that "[t]he mark was first used by the applicant, or the applicant's related company, licensee, or predecessor in interest at least as early as 07/16/2012, and first used in commerce at least as early as 07/16/2012, and is now in use in such commerce." Def. RJN, Ex. A at 14. Plaintiffs allege that this statement is untrue because Warsteiner never used the PATAGONIA trademark on beer, and thus, the

Statement of Use filed by Warsteiner and prepared by Anheuser-Busch's attorneys was false. FAC ¶ 25. Plaintiffs allege that Anhueser-Busch knew this statement was false given that the specimen did not show the beer in a commercial context. *Id*. Rather, the specimen showed two photos of a single bottle of PATAGONIA-labeled beer on a table in a white-walled room. *Id*. The Court finds that these allegations are pled with the requisite particularity under Rule 9(b).

As for the assignment, the FAC alleges that Anheuser-Busch "knowingly misrepresented to the Trademark Office the date when [Anheuser-Busch] acquired Warsteiner's purported rights." FAC ¶ 90. The assignment, dated December 20, 2012, provides that Warsteiner "hereby assigns to Anheuser-Busch, LLC all right, title, and interest in and to the PATAGONIA Application and Mark, together with the goodwill of the business symbolized by the PATAGONIA mark and any resulting registration." *Id*. ¶ 27. Plaintiffs allege that the "date shown on the assignment document is months after registration of the mark, and yet the assignment does not refer to the registration or registration number," and thus, the date appears to have been falsely stated to disguise the true date of the assignment which preceded the statement of use. *Id*. ¶ 28. Plaintiffs further allege that "[k]nowing that Warsteiner could not lawfully assign the intent to use trademark application to [Anheuser-Busch], and knowing that Warsteiner could not show the use needed to obtain the trademark registration, [Anheuser-Busch] and Warsteiner colluded through their knowingly false representations to deceive the Trademark Office—seeking to show that Warsteiner was responsible for commercial use of the PATAGONIA beer

shown in the statement of use." *Id.* ¶ 29. The Court concludes that these allegations are sufficient to state a claim for fraudulent procurement. Accordingly, the Court **DENIES** Anheuser-Busch's motion to dismiss Plaintiffs' seventh claim.

### IV. CONCLUSION

The Court therefore **DENIES** Anheuser-Busch's Motion to Dismiss. Further, the Court orders Plaintiffs to file an amended complaint no later than October 3, 2019 to clarify Plaintiffs' fourth claim.

**IT IS SO ORDERED.**

Dated: 9/3/19

Virginia A. Phillips
Chief United States District Judge