COOLEY LLP
BOBBY GHAJAR (198719)
bghajar@cooley.com
MARCUS PETERSON (265339)
mpeterson@cooley.com
1333 2nd Street, Suite 400
Santa Monica, CA 90401
Telephone: (310) 883-6400
Facsimile: (310) 883-6500

COOLEY LLP
AMANDA A. MAIN (260814)
amain@cooley.com
DINA ROUMIANTSEVA (300576)
droumiantseva@cooley.com
3175 Hanover Street
Palo Alto, CA 94304
Telephone: (650) 843-5000
Facsimile: (650) 843-7400

Attorneys for Defendant and Counter-
Claimant ANHEUSER-BUSCH, LLC

*Counsel information continued on
next page*

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION – LOS ANGELES

| | |
|---|---|
| PATAGONIA, INC. and PATAGONIA PROVISIONS, INC., <br><br> Plaintiffs and Counter-Defendants, <br><br> v. <br><br> ANHEUSER-BUSCH, LLC dba PATAGONIA BREWING CO. , <br><br> Defendant and Counter-Claimant. <br><br> *And Counterclaims* | Case No. 2:19-cv-02702-VAP(JEMx) <br><br> **[DISCOVERY MATTER] JOINT STIPULATION REGARDING DEFENDANT'S MOTION TO COMPEL RESPONSES TO INTERROGATORIES, REQUESTS FOR PRODUCTION, AND REQUESTS FOR ADMISSION** <br><br> Magistrate Judge: Honorable John E. McDermott <br> Date: February 25, 2020 <br> Time: 10:00 am <br> Dept.:640, 6th Floor <br> Discovery Cut-off Date: July 3, 2020 <br> Pretrial Conf. Date: Oct. 5, 2020 <br> Trial Date: October 13, 2020 |

KILPATRICK TOWNSEND &
  STOCKTON LLP
GREGORY S. GILCHRIST (111536)
ggilchrist@kilpatricktownsend.com
RYAN T. BRICKER (269100)
rbricker@kilpatricktownsend.com
SOPHY MANES (287583)
smanes@kilpatricktownsend.com
HANNAH T. YANG (311814)
hyang@kilpatricktownsend.com
Two Embarcadero Center, Suite 1900
San Francisco, CA  94111
Telephone: 415 576 0200
Facsimile: 415 576 0300

Attorneys for Plaintiffs and Counter-
Defendants PATAGONIA, INC. and
PATAGONIA PROVISIONS, INC.

Cooley LLP
Attorneys At Law
Los Angeles

Joint Stip. Re Defendant's Motion to Compel
CASE NO. 2:19-CV-02702-VAP (JEMx)

# TABLE OF CONTENTS

I.   Introduction ........................................................................................................... 1

    A.  AB's Introductory Statement ....................................................................... 1

    B.  Plaintiffs' Introductory Statement ............................................................... 4

II.  Parties' Statements on Specific Document Requests ........................................ 7

    A.  Requests Relating to Plaintiffs' Awareness and Understanding of AB's Trademark Rights and Plaintiffs' Expansion into Beer (Interrogatories 1, 2; RFP Nos. 1, 2, 7, 45, and 46) ........................................................................................................ 7

        1.  AB's Argument in Support of Motion to Compel ........................... 12

        2.  Plaintiffs' Opposition .................................................................... 17

    B.  Discovery Requests Relating to Plaintiffs' Awareness and Tolerance of Third-Party Uses or Registration of "Patagonia" (Interrogatory 4; RFP Nos. 6, 9, 11, 21, 34, 35, 40, 42, 43) ..................................................................................................... 28

        1.  AB's Argument in Support of Motion to Compel ........................... 32

        2.  Plaintiffs' Opposition .................................................................... 42

    C.  Discovery Requests Relating to Alleged Strength of Plaintiffs' PATAGONIA Marks (RFP Nos. 13, 14, 15, 21, 37, and 38) ................................................................ 55

        1.  AB's Argument in Support of Motion to Compel ........................... 58

        2.  Plaintiffs' Opposition .................................................................... 61

    D.  Discovery Requests Relating to Damages (RFP Nos. 33 and 44) .................. 63

        1.  AB's Argument in Support of Motion to Compel ........................... 64

        2.  Plaintiffs' Opposition .................................................................... 64

    E.  Requests for Admission Relating to Specific Examples of Third-Party Use Provided in AB's Discovery ........................................................................................... 65

        1.  AB's Argument in Support of Motion to Compel ........................... 83

        2.  Patagonia's Argument .................................................................... 85

    F.  Patagonia's Requests for Attorneys' Fees ................................................... 89

Pursuant to Rule 37(a) of the Federal Rules of Civil Procedure ("Rules") and Local Rule 37-2.1, Defendant Anheuser-Busch, LLC ("AB" or "Defendant") and Plaintiffs Patagonia, Inc. ("PI") and Patagonia Provisions, Inc. ("PPI") (collectively, "Plaintiffs") submit the following joint stipulation regarding Defendant's Motion to Compel Responses to Defendant's Interrogatories, Requests for Production of Documents ("RFPs"), and Requests for Admission.

## I.   INTRODUCTION

### A. AB's Introductory Statement

Plaintiffs served inadequate responses to targeted discovery requests and have refused to search for or produce critical information and documents that are directly relevant to their claims and AB's defenses.  In September, the parties reached an impasse, with Plaintiffs agreeing to produce only a narrow subset of information, and AB insisting more was required.  (*See* Declaration of Marcus Peterson in Support of Motion to Compel ("Peterson Decl.") ¶6.)  When Plaintiffs' counsel severed the parties' meet and confer efforts, he specifically warned they would supplement their responses "as [they] see fit."  (Ex. D to Peterson Decl., at 1.)  It is now clear from Plaintiffs' productions that entire categories of crucial documents have been omitted, and Plaintiffs refuse to supplement their search or production of that information.

By way of background, Plaintiffs are attempting to monopolize the name of a popular region renowned for beauty and adventure: ***Patagonia***.  This region has lent its name to numerous products and companies, including Plaintiffs (an apparel company), an established Argentinian beer brand expanded by AB, and many third-party companies offering various goods and services.  Plaintiffs took no action against third parties for years, implicitly acknowledging the limits of their own rights.  Plaintiffs' priorities apparently changed last year, when they filed this lawsuit to prevent AB from selling beer under its own PATAGONIA trademark— a trademark that has been registered to AB ***since 2012***. AB's registration is

incontestable and gives it the conclusive and exclusive right to sell PATAGONIA beer. Plaintiffs' Second Amended Complaint ("SAC") attacks AB's registration on every conceivable ground, including that AB allegedly committed fraud in acquiring it; later abandoned it; and never should have been allowed to register it, because use of PATAGONIA for beer "uniquely and unmistakably" points to only Patagonia, Inc. AB will disprove these claims, and Plaintiffs are withholding information directly relevant to do so.

This motion seeks an order compelling Plaintiffs to provide five categories of documents and information. *First*, AB seeks documents relating to Plaintiffs' awareness and understanding of AB's trademark rights to PATAGONIA for beer, Plaintiffs' understanding of limitations on their own rights to use the word "Patagonia" on beer, and Plaintiffs' desire or need to use "Patagonia" on beer. Plaintiffs possess additional documents that likely contain admissions about the scope of the parties' respective rights and the facts underlying AB's laches defense.

*Second*, AB seeks evidence relating to Plaintiffs' knowledge of, agreements with, and tolerance of third-party uses of the mark PATAGONIA. There is no dispute over the relevance of this information, but Plaintiffs have improperly narrowed their search and production of relevant documents.

*Third*, in view of Plaintiffs' allegations that their PATAGONIA mark is distinctive and conceptually strong (SAC ¶¶ 42, 46, 77), AB is entitled to Plaintiffs' files and correspondence with the USPTO, as well as any surveys, diligence, research, and investigations regarding the exclusivity, recognition, and strength of their PATAGONIA brand, from 2006 (AB's constructive priority date) to the present. But Plaintiffs only agree to produce documents if searches revealed 200 or fewer documents, or to produce only completed, but not inchoate surveys.

*Fourth*, AB seeks documents relating to Plaintiffs' claim that they have been damaged. Citing baseless relevance objections, Plaintiffs have only agreed to produce select documents on which they intend to rely, while withholding those

that may tend to disprove the harm they have alleged.

*Fifth*, AB served a series of RFAs in which it provided Plaintiffs with an example of a third party use of PATAGONIA-formative marks, and asked whether Plaintiffs contend that the use is likely to cause confusion, dilute Plaintiffs' trademarks, or create a false association. These are not hypothetical situations, but actual third-party uses. AB seeks to understand Plaintiffs' *contentions* with regard to these other marks, which is unquestionably permissible under Rule 36(a)(1)(A).

Plaintiffs only agreed to search for and produce a fraction of the information requested, raising frivolous relevance and burden objections.  For example, they refuse to identify whose files they searched, search for records outside their "trademark department," and refused to search beyond beer or wine (despite claiming wide-ranging rights).  Plaintiffs cannot claim that additional searching is burdensome or disproportionate to the needs of the case when Plaintiffs have not attempted to identify all custodians likely to have discoverable information, or to have made a reasonable search among those custodians' documents (searches that Plaintiffs could tailor beyond just searching for "Patagonia").  Plaintiffs pat themselves on the back for producing some responsive documents and argue that their responsibilities under the Federal Rules end there.  Likewise, Plaintiffs' sweeping pronouncements about AB "ignoring" their document productions served after AB sent its portion of this joint statement on January 17 are a red herring.  At bottom, Plaintiffs have not agreed to produce all of the documents AB requested, and AB's motion is based on Plaintiffs' actual discovery responses, not their last-minute attempt to claim they went above and beyond what they offered.  Nor has AB "reneged" on meet and confer agreements – this motion is about the documents Plaintiffs have not agreed to search for or produce.  Finally, argument about the timing of AB's motion is a distraction: Plaintiffs knew in September that their responses were insufficient and that AB planned to move to compel; AB again raised the intended motion in late December.  Plaintiffs' purported surprise in

receiving the motion is irrelevant to the question of whether they have complied with their discovery obligations.  They have not.

The Court should order Plaintiffs to conduct good faith interviews to identify relevant custodians and document locations, and to conduct a reasonable search for and produce documents and information responsive to AB's discovery requests within two weeks of the Court's order granting this motion.

### B. Plaintiffs' Introductory Statement

Not one of the requests contained in AB's motion is supported with evidence or legal reasoning.  Instead it is built on casual speculation and wishful thinking about troves of documents that do not exist and, if they did, would be cumulative of the broad document production to which Patagonia already has agreed.  AB's arguments ignore the Federal Rules' requirements of proportionality and the Local Rules' expectation of cooperation.  The only possible purposes AB had for bringing it are (a) to ensure that AB had raised a discovery dispute of its own contemporaneous with Patagonia's motion for AB to produce basic documents that it agreed to produce months ago, or (b) because AB truly believes it has the right to require its opponents to scour files for, at best, marginally relevant information irrespective of the burden.  Neither is proper.

AB's motion also reflects disdain toward the meet and confer process.  The parties spent many thousands of dollars so their lawyers could discuss these requests – months ago before Patagonia amended its responses in accordance with those discussions, and reviewed and produced tens of thousands of documents. On every occasion where AB's motion sets out Patagonia's supplemental response, the compromise reflected in that response was the product of the parties' meet and confer discussions.

As the Court will see, Patagonia attempted to satisfy AB on many fronts, and to reach agreement and understanding about what Patagonia would produce. Where limits on the production were imposed, Patagonia agreed to work with

requests for information that AB desired and that, with additional specificity from AB, would be less burdensome to identify and produce. AB twists the record when it says that an "impasse" was reached or that AB "insisted" on additional responses in September, or that "entire categories of crucial documents have been omitted" from Patagonia's productions. When AB would not confirm any meet and confer agreements, or that Patagonia's offers would produce a final compromise, Patagonia voluntarily amended its responses. Then, AB simply went dark for three months until New Year's Eve (when it produced its first documents), *after Patagonia had complained about AB's lack of production.*

Patagania has not made "sweeping pronouncements" about documents produced *after* AB served its motion. To the contrary, Patagonia's production should have revealed to AB that there was no need for this motion and that it should follow up with specifics as discussed in the meet and confer. For example, after receiving Patagonia's response to AB's original draft of this motion, AB questioned Patagonia's claim to already having produced – three days before AB sent its draft motion – documents relating to nearly 100 third party enforcement matters. AB requested and received bates numbers for those documents. Decl. of Ryan Bricker ("Bricker Decl.") ¶ 7. To the extent that AB was unable to locate them without Patagonia's direction, AB's difficulty reveals the burden involved in AB's insistence that Patagonia ought to make far-flung searches of its employees for references to "Patagonia" as used by third parties. *Id.* To the extent AB was quibbling with whether the production reflected 100 or fewer disputes, the request – made while AB plowed forward with this motion – underscores AB's improper focus on imposing burden by demanding "more" rather than considering the information Patagonia has provided and conferring about legitimate discovery needs. *Id.* This motion ignores AB's duty to cooperatively develop proportional means by which relevant discovery is obtained. *See, e.g., Uniloc USA, Inc. v. Apple Inc.*, No. 18-CV-00362-PJH (LB), 2018 WL 2002979, at *3 (N.D. Cal.

1   Apr. 30, 2018) (pointing to cooperation and proportionality requirements).

2       Because the documents Patagonia has agreed to produce are more than

3   sufficient to address AB's concerns, the motion is often imprecise in its aim

4   (circling back on broad statements of relevance that in fact already are addressed

5   by Patagonia's response).  Patagonia already has reviewed and produced over

6   60,000 pages of documents, from more than 550 gigabytes of collected data.

7   Bricker Decl., ¶ 2.  AB's must provide more than its airy justifications about the

8   potential relevance of "all" requested documents before demanding that Patagonia

9   be required to do more.

10      Among the five categories in AB's motion, the first three – Patagonia's

11  awareness of AB and AB's registration, Patagonia's enforcement of its

12  trademarks, and the strength of Patagonia's trademarks – ignore that Patagonia

13  has either produced, or agreed to produce, the only likely relevant material that

14  AB seeks.  In multiple cases, the documents that Patagonia already has produced

15  would allow AB to tailor specific requests, but it has refused to do so. The fourth

16  category makes no sense and asks for evidence that "proves Patagonia has not

17  been damaged," or "undermines" Patagonia's damages theories. Patagonia agreed

18  to produce documents on which it will rely to prove its damages, the categories of

19  which it outlined (to the extent it now can) in its responses.  Patagonia should not

20  have to guess what AB might believe "undermines" Patagonia's damages claims.

21  The fifth category asks the Court to require Patagonia – in the context of RFAs –

22  to announce its "position" on several legal questions which would require multi-

23  factor factual and legal analyses. This kind of hypothetical exercise is far beyond

24  any legitimate purpose for RFAs.

25      AB has added, in correcting mistakes it made in its original draft, another

26  argument that requires addressing.  It claims that Patagonia has refused to identify

27  the custodians it will search.  To the contrary, many of Patagonia's responses

28  describe limitations on searches to custodians who Patagonia believes will have

Cooley LLP
Attorneys At Law
Los Angeles

6

Joint Stip. Re Defendant's Motion to Compel
CASE NO. 2:19-CV-02702-VAP (JEMx)

responsive documents.  Patagonia, moreover, proposed an ESI protocol and followed up orally with AB about whether it would agree to identify custodians for ESI searches.  AB has been sitting on the proposed ESI protocol (claiming it is more elaborate than what it had in mind), and refused to agree that both parties should disclose custodians.  Bricker Decl. ¶¶ 6-8, Exs. B and C.

The Court should deny AB's motion, instruct AB to meet and confer and compromise going forward, and order payment of Patagonia's fees.

## II.    PARTIES' STATEMENTS ON SPECIFIC DOCUMENT REQUESTS

### A.    Requests Relating to Plaintiffs' Awareness and Understanding of AB's Trademark Rights and Plaintiffs' Expansion into Beer (Interrogatory 2; RFP Nos. 1, 2, 7, 45, and 46)[1]

| Request | Response |
| --- | --- |
| **Requests Relating to Plaintiffs' Expansion into Beer** | |
| | |
| **RFP NO. 1**:  All DOCUMENTS CONCERNING YOUR decision to use the LONG ROOT ALE trademark in connection with alcoholic beverages, including, but not | RESPONSE TO RFP NO. 1: In addition to the general objections, Patagonia objects to this Request as overbroad and disproportionate to the needs to this case to the extent it seeks "[a]ll documents" concerning the identified subject matter, which conceivably encompasses every document referring to the use |

[1] As required by Civil L.R. 37-2.1, AB has included each of the requests and responses at issue.  For the Court's ease of reference, AB has attempted to group each set of requests together based on commonality of issues involved.  Where Plaintiffs have amended their responses, AB includes only the amended responses, not the original response.

Patagonia disagrees that this approach follows the local rule which requires that the joint stipulation address the issues regarding each discovery request separately. The "batching" done by AB violates the juxtaposition of the parties' arguments on each issue contemplated by the rule in favor of lengthy preludes and discussions involving several requests. While this makes sense for the discrete issue relating to RFAs, its use elsewhere makes the motion unwieldy and repetitive.

| Request | Response |
|---|---|
| limited to, DOCUMENTS the refer or relate to alternative brand names, and the reasons that YOU did not use the trademark PATAGONIA on those products. | of the LONG ROOT ALE trademark. To the extent that the Request seeks documents concerning brand names that Patagonia did not use and decided not to pursue, Patagonia further objects to the Request on grounds that it seeks information not relevant to the claims or defenses asserted is action. Patagonia further objects to this Request as vague and ambiguous to the extent that the phrase "DOCUMENTS that refer or relate to alternative brand names" is unintelligible.<br><br>As a consequence, Patagonia will produce non-privileged documents reflecting Patagonia's decision to use LONG ROOT ALE as a trademark for beer. |
| **RFP NO. 2**:  All DOCUMENTS that refer or relate to alternative product or brand names (i.e. product or brand names that did not include the term or mark "Patagonia") that YOU considered as the name or brand for alcoholic beverages, and the reasons that YOU did not use the trademark PATAGONIA on any alcoholic beverages. | RESPONSE TO RFP NO. 2<br>In addition to the general objections, asserted is action to the extent that the Request seeks documents concerning product and brand names that Patagonia did not use and decided not to pursue.  As a consequence, Patagonia will produce non-privileged documents reflecting the reasons Patagonia chose to adopt the LONG ROOT PALE ALE and LONG ROOT WIT brands for beer and, therefore, chose not to use the PATAGONIA mark.<br><br>Supplemental Response: Based on the parties meet and confer, between Nos. 1, 2, and 7, Patagonia will produce all non-privileged documents located in an agreed ESI search or otherwise reasonably located that refer to the decision or reasons to use or refer to LONG ROOT PALE ALE, LONG ROOT WIT, Patagonia, Patagonia, Inc., Patagonia Provisions Inc., and not to use PATAGONIA OR PATAGONIA PROVISIONS on beer products. Patagonia will also make a reasonable ESI search for and produce non-privileged documents that discuss the potential impact of AB's rights on any |

| Request | Response |
|---|---|
| | decision to use or not use PATAGONIA on other alcoholic beverages. |
| **RFP No. 7:** All DOCUMENTS CONCERNING YOUR plans to sell alcoholic beverages using the designation PATAGONIA. | RESPONSE TO RFP NO. 7<br>In addition to the general objections, Patagonia objects to this Request as vague and ambiguous as to the use of the undefined phrase "the designation PATAGONIA" as it's unclear whether the Request is seeking documents concerning use of PATAGONIA as trademark or other designation, such as an entity or trade name. Patagonia further objects to this Request as unduly burdensome and disproportionate to the needs of the case and not relevant to the claims or defenses asserted in this action to the extent that it seeks "[a]ll" documents concerning the identified subject matter, which conceivably encompasses every document referring to the use of Patagonia, Patagonia Provisions, Patagonia Inc., or Patagonia Provisions, Inc. in connection with alcoholic beverages.<br>As a consequence, Patagonia will produce non-privileged documents reflecting its business plans, if any, to sell or market beer in connection with the terms Patagonia, Patagonia Provisions, Patagonia Inc., or Patagonia Provisions, Inc. |
| **Requests Relating to Plaintiffs' First Awareness of a PATAGONIA Beer by AB or its Predecessors in Interest** | |
| **ROG NO. 2**:<br>State all facts relating to YOUR first awareness of the distribution or sale of PATAGONIA beer – whether by AB, Cerveceria Y Malteria Quilmes, or Warsteiner Importers Agency – in the U.S. or South America, including who first became aware of such fact, how the person | AMENDED RESPONSE TO ROG NO. 2: In addition to the general objections, Patagonia objects that it is vague, ambiguous, and compound. In seeking a date of awareness of sales of Quilmes-produced beer, the interrogatory is also overbroad, unduly burdensome and disproportionate to the needs of the case in that it seeks an answer that would require Patagonia to search all employee files and email accounts and/or interview the same swath of individuals to determine the earliest mention of Quilmes, despite the fact that the answer itself is of suspect |

Cooley LLP
Attorneys At Law
Los Angeles

9

Joint Stip. Re Defendant's Motion to Compel
CASE NO. 2:19-CV-02702-VAP (JEMx)

| Request | Response |
|---|---|
| became aware of it, and what actions, if any, YOU took in response to such awareness. | relevance to the matter, purportedly limited to showing that AB "had access" to beer produced by its alleged related company.<br><br>As a consequence of those objections, and with a reservation of Patagonia's right with respect to relevancy of such information, Patagonia responds that, as a result of IP enforcement activities against Quilmes in Argentina, Rob Tadlock was aware of Quilmes' distribution of PATAGONIA-brand beer in South America in March 2017. Patagonia further responds that, in accordance with Rule 33(d), Patagonia will produce documents reflecting that awareness.<br><br>Based on the parties' meet and confer, Patagonia also amends its response to provide additional details about its first awareness of AB's sale of PATAGONIA brand beer in the United States.<br><br>As a consequence of its objections, Patagonia responds that it is unaware of any sales, at any time, of PATAGONIA brand beer in the United States by Warsteiner. Patagonia became aware of AB's trademark registration in approximately 2013 in connection with investigating the possible use of the mark, when it was implementing a small venture with New Belgium. Those responsible for this venture and trademarks within Patagonia, to that point, had not observed such use in United States commerce. In late 2018, many employees within Patagonia became aware that AB was starting to sell PATAGONIA beer in Vail, Colorado. This was then reported to both members of the company's trademark department, including Rob Tadlock and Traci Escamilla, and the leader of the Patagonia Provisions brand, Birgit Cameron, among several others within Patagonia Inc. and Provisions. Through further reports, those individuals learned of AB's launch of a PATAGONIA brand beer through billboards and pop-up bars offering PATAGONIA brand |

Cooley LLP
Attorneys At Law
Los Angeles

10

Joint Stip. Re Defendant's Motion to Compel
CASE NO. 2:19-CV-02702-VAP (JEMx)

| Request | Response |
|---|---|
| | beer, distributed by people – presumably AB employees or contractors – wearing and giving away apparel products, including beanies, scarves and jackets, displaying the PATAGONIA mark. After Patagonia learned of AB's launch of PATAGONIA brand beer in late 2018, it filed this lawsuit, Case No. 2:19-CV-02702, in order to prevent AB from co-opting the PATAGONIA brand and the reputation and goodwill that Patagonia has spent decades developing. |
| | After this lawsuit was filed, Patagonia received a report from Joe Davis, COO and General Counsel at New Belgium Brewing, that PATAGONIA beer possibly had been offered for sale some time earlier in a tasting room managed by an AB affiliate in Colorado, which appeared to be beer produced by Quilmes.  On information and belief, Mr. Davis may be contacted through New Belgium Brewing Company, 500 Linden Street, Fort Collins, CO 80524. |
| **RFP No. 45**: All COMMUNICATIONS between YOU and AB, including but not limited to any COMMUNICATIONS relating to the use of "Patagonia" on beer or other alcoholic products. | RESPONSE TO RFP NO. 45<br>In addition to the general objections, Patagonia objects to this Request as unduly burdensome to the extent it seeks documents that are equally available to AB.<br><br>As a consequence, Patagonia will produce its communications with AB related to beer.<br><br>Supplemental Response: Patagonia will make a reasonable ESI search about AB's use of PATAGONIA or "Patagonia" on alcoholic beverages and will produce non-privileged documents referring to communications with AB. |
| **RFP No. 46:**  Copies of all internal DOCUMENTS that refer to AB and/or AB's registration of the mark PATAGONIA for beer. | RESPONSE TO RFP NO. 46<br>In addition to the general objections, Patagonia objects to this Request as overbroad in seeking "all internal DOCUMENTS" referring to the stated subject matter to the extent that it requires |

Cooley LLP
Attorneys At Law
Los Angeles

11

Joint Stip. Re Defendant's Motion to Compel
CASE NO. 2:19-CV-02702-VAP (JEMx)

| Request | Response |
|---------|----------|
| | Patagonia to search the internal files outside of its trademark department within the legal department. Patagonia further objects to the extent that the Request seeks documents protected from disclosure by the attorney-client privilege, the work product doctrine, and any other applicable privilege. As a consequence, Patagonia will search its trademark department files and produce non-privileged documents referencing AB's U.S. registration Reg. No. 4,226,102 for the PATAGONIA mark for beer. |
| | <u>Supplemental Response</u>: Patagonia will also make a reasonable ESI search – of its relevant custodians responsible for producing and marketing beer – and produce non-privileged documents referencing AB's trademark registrations for PATAGONIA for beer. |

### 1.     AB's Argument in Support of Motion to Compel

<u>Summary of Issue</u>

On a motion to compel, the party seeking to compel discovery bears the initial burden of showing that its discovery request satisfies the relevancy requirements of Rule 26(b)(1).  *See Soto v. City of Concord*, 162 F.R.D. 603, 610 (N.D. Cal. 1995). Once the propounding party establishes that the request seeks relevant information, "[t]he party who resists discovery has the burden to show discovery should not be allowed, and has the burden of clarifying, explaining, and supporting its objections." *Superior Commc'ns v. Earhugger, Inc.*, 257 F.R.D. 215, 217 (C.D. Cal. 2009); *see Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975) (requiring defendants "to carry heavy burden of showing why discovery was denied").

Interrogatory No. 2 and RFP Nos. 45 and 46 all relate to Plaintiffs' knowledge and awareness of AB, its trademark registration for PATAGONIA in connection with beer, and its importation and sale of beer in the United States.  Such

Cooley LLP
Attorneys At Law
Los Angeles

12

Joint Stip. Re Defendant's Motion to Compel
Case No. 2:19-cv-02702-VAP (JEMx)

information is highly relevant to AB's laches defense given that Plaintiffs appear to have waited for years after learning of AB's rights before attacking them. The length and reason for the delay are key to the laches inquiry. *See Eat Right Foods Ltd. v. Whole Foods Market, Inc.*, 880 F. 3d 1109, 1115-16 (9th Cir. 2018) ("Determining whether a delay was unreasonable requires answering two questions: how long was the delay, and what was the reason for it?"). Similarly, Interrogatory No. 1 and RFP Nos. 1, 2, and 7 seek information and documents relating to Plaintiffs' expansion into the beer market, including its decision whether to use the PATAGONIA trademark in connection with beer, and the reasons it avoided the mark (*e.g.*, to avoid infringing AB's rights (*see* Dkt. 42 (Answer) ¶ 124). Plaintiffs' responses attempt to dodge the crux of the issue. They improperly seek to limit their search to documents relating to AB's trademark registration or use of PATAGONIA for beer (rather than any consumable or alcoholic beverage), will not search outside their so-called "trademark department" and "those responsible for producing and marketing beer," and otherwise improperly limit the scope of the requests without any valid objection. In so doing, Plaintiffs seek to avoid producing documents and information tending to prove that they unreasonably delayed in bringing the current claims.

**ROG No. 2** seeks facts relating to Plaintiffs' awareness of use of the PATAGONIA mark on beer by AB, its related company Quilmes, or its predecessor-in-interest Warsteiner. Plaintiffs object that the interrogatory is "vague, ambiguous, and compound" without explaining what is vague or ambiguous, or how it is compound, given that there are no discreet subparts. Plaintiffs also object: "In seeking a date of awareness of sales of Quilmes-produced beer, the interrogatory is also overbroad, unduly burdensome and disproportionate to the needs of the case in that it seeks an answer that would require Patagonia to search all employee files and email accounts and/or interview the same swath of individuals to determine the earliest mention of Quilmes . . . ." Plaintiffs' objection

Cooley LLP
Attorneys At Law
Los Angeles

13

Joint Stip. Re Defendant's Motion to Compel
Case No. 2:19-cv-02702-VAP (JEMx)

is not well taken, as the Interrogatory does not require them to do anything more than satisfy their obligations under the Rules to make a reasonable inquiry. It is not reasonable for Plaintiffs to have focused their inquiry on their in-house trademark counsel Robert Tadlock, who was apparently aware of AB's PATAGONIA beer in 2017, especially when they admitted in their Answer that they were aware of AB's rights to PATAGONIA *by August 2013*. (Dkt. 42 ¶ 124.) Nor, for the same reason, is Plaintiffs' invocation of Rule 33(d) appropriate: those documents (which have yet not been identified as required by Rule 33(d)), would not include any information about Plaintiffs' admitted knowledge of AB's rights predating 2017. Accordingly, Plaintiffs must conduct a reasonable search and inquiry, including among at least: (a) those responsible for Plaintiffs' expansion into beverages (including beer); (b) their present and former in-house legal personnel's files (not just Mr. Tadlock, who joined the company in 2014, well after AB and the other entities' use of PATAGONIA on beer); and (c) those responsible for Plaintiffs' marketing and branding from 2012 through at least 2016.

**RFP Nos. 1, 2, and 7** collectively seek documents regarding Plaintiffs' decision to use (or not to use) "Patagonia" as a trademark or trade name on any alcoholic beverages, why Plaintiffs chose to use other marks on alcoholic beverages, and Plaintiffs' business plans regarding use of "Patagonia" in any manner on alcoholic beverages (beer, wine, or spirits)—a far cry from Plaintiffs' apparel business. This follows from the fact, stated above, that AB informed Plaintiffs of its trademark rights in 2013 in connection with Plaintiffs' collaboration with New Belgium Brewing Co. to release the "Long Root" beer, which AB understands was *not* offered under the PATAGONIA mark. The documents requested are relevant to show, among other things, that Plaintiffs were aware of AB's rights to PATAGONIA for beer and chose to forego use of "Patagonia" to avoid infringing AB's rights, which belies Plaintiff's current litigation position and/or that Plaintiffs opted not to use the PATAGONIA trademark on beer for other

Cooley LLP
Attorneys At Law
Los Angeles

14

Joint Stip. Re Defendant's Motion to Compel
Case No. 2:19-cv-02702-VAP (JEMx)

reasons.

In response to the Requests, Plaintiffs have agreed to produce documents: (i) "that refer to the decision or reasons to use or refer to LONG ROOT PALE ALE, LONG ROOT WIT, Patagonia, Patagonia, Inc., Patagonia Provisions Inc., and not to use PATAGONIA or PATAGONIA PROVISIONS on beer products"; (ii) that "discuss the potential impact of AB's rights on any decision to use or not use PATAGONIA on other alcoholic beverages;" and (iii) "reflecting its business plans, if any, to sell or market beer" in connection with the term "Patagonia."

Plaintiffs purport to limit their production to documents reflecting "business plans" to market "beer."  Although Plaintiffs stated during meet and confer that they would produce business plans relating to the use of Patagonia on wine, they have not done so.  Nor have they agreed to produce business plans relating to other alcoholic beverages, such as spirits or hard seltzers.  This is improper, as courts have routinely found that beer, wine and spirits are highly related products.  Further, the response still improperly purports to exclude relevant documents *relating to* such plans or demonstrating the strategic decision that went into crafting those plans.  Finally, Plaintiffs refused to respond during meet and confer to the question of whether they are intending to exclude marketing plans by referring to "business plans."

In sum, Plaintiffs should be ordered to produce business and marketing plans, as well as documents and communications relating to those plans, reflecting or discussing any decision to use or not use "Patagonia" in connection with any alcoholic beverage (including beer, wine, or other alcoholic beverages).

**RFP Nos. 45 and 46** seeks documents that refer to AB *or* AB's registration for the PATAGONIA mark for beer.  Plaintiffs responded that they will search their "trademark department files" within the legal department and "relevant custodians responsible for producing and marketing beer," but only for references to "AB's U.S. registration Reg. No. 4,226,102."  As evident on its face, Plaintiffs' response

Cooley LLP
Attorneys At Law
Los Angeles

15

Joint Stip. Re Defendant's Motion to Compel
CASE NO. 2:19-CV-02702-VAP (JEMx)

is too narrow.  First, internal communications about AB's PATAGONIA beer or its trademark rights are highly relevant to a number of issues, including AB's laches defense, as they would show when Plaintiffs *actually* knew about AB's sales of PATAGONIA-branded beer or its claim to trademark rights apart from its registration.  Among other things, such communications may reflect Plaintiffs' awareness of the PATAGONIA brand in South America, AB's expansion of the PATAGONIA brand from South America into the United States, or AB's use of PATAGONIA or sales of PATAGONIA beer.  Plaintiffs do not object that the Request is unduly burdensome.  Individuals **beyond** just those "responsible for producing and marketing beer" are likely to have relevant communications; for example, Plaintiffs have also applied to register PATAGONIA-formative marks for *wine* and those involved in any actual or potential alcoholic product should be included in Plaintiffs' inquiry.  Further, those involved in (a) business strategy for Patagonia Provisions or Patagonia Inc., or areas such as (b) social media or (c) consumer research, (d) line expansions, (e) new product development, and (f) customer support may have relevant communications relating to AB's beer.  AB is aware, for example, that Patagonia, Inc,'s Phil Graves (https://www.patagonia.com/ phil-graves.html) contacted AB in May 2015 to attempt to purchase or license AB's PATAGONIA rights for beer.  He is listed as "Director of Corporate Development," which falls in neither category offered by Plaintiffs.

In sum, Plaintiffs should be ordered to undertake a good faith inquiry to identify relevant custodians or file locations through interviews and conduct a reasonable search for and produce all documents that reference not just AB's trademark registration (as improperly narrowed by Plaintiffs), but AB's PATAGONIA mark and beer, AB's relationship with Quilmes, and knowledge of the Quilmes' PATAGONIA beer in South America (which was imported into the U.S)  That search should include the aforementioned groups (a)-(e); Plaintiffs' legal department files going back to at least 2006 – the filing date of PATAGONIA

Cooley LLP
Attorneys At Law
Los Angeles

16

Joint Stip. Re Defendant's Motion to Compel
Case No. 2:19-cv-02702-VAP (JEMx)

registration for beer; as to the Plaintiffs' "trademark department," a reasonable search would include historical emails and records, not just the records of its current trademark personnel given that at least one of them (e.g. in-house counsel Robert Tadlock) only joined the company in 2014.

## 2.    Plaintiffs' Opposition

**Introduction:**  AB has one rationale for batching these seven discovery requests: it wants to show that Patagonia was aware of AB's use and registration of the PATAGONIA mark for beer.  This is supposed to be related to AB's desire for evidence "tending to prove that they [plaintiffs] unreasonably delayed in bringing the current claims."  The requests come at this simple question from multiple directions, all imposing a variety of unique – and wholly unnecessary – burdens.

Patagonia's answers to interrogatories and documents already have revealed the following: Patagonia learned of AB's purported registration for PATAGONIA for beer when it worked on a project in 2013 to produce a beer in collaboration with New Belgium.  It made decisions accordingly about how to present the beer with this knowledge in mind.  It further encountered AB's brand when it applied for a PATAGONIA registration for wine.  Patagonia enforced its rights in Argentina in 2017 after Quilmes, used the PATAGONIA mark on apparel and other products.  Documents showing each of these encounters have been produced.  In addition to these explicit responses (dating to roughly the very beginning of AB's registration and claimed use), the trademark lawyers in the Patagonia legal department and all of the people involved in developing Patagonia's beer products have been searched for documents reflecting their awareness of AB's registration or use.

In producing these documents and information, Patagonia already agreed to expand its searches and production of information from what were entirely sound

objections to some breathtakingly broad requests. In doing this, Patagonia made it very clear to AB that – exactly as AB has done – would be burdensome and oppressive. During the meet and confer, Patagonia stated as follows when it could not get a straight answer about whether the meet and confer was intended to resolve the disputes, or was just a search for one-way commitments from Patagonia:

> "In our meet and confer session, you told us you would take each of our proposals back for approval by your client (which I have asked you more than once to affirm, which requests remain outstanding). I am not telling you that we have to reach agreement on all requests before we will amend any; but I do not want to provide an amended response to a particular request, search for documents according to that amended response, and then be told that AB did not approve that response so you are moving to compel. So, I say again, if you tell us that the offers regarding each of the requests is agreed, then we will amend our responses to conform to our offers. If you have counter-proposals, we will entertain those. But, we will not just voluntarily compromise and amend our objections and responses, many of which are wholly legitimate and were prepared in timely responses, "no later than tomorrow." We will amend within a reasonable time after we know that our amendment is acceptable to your client."

Peterson Decl. Exh. D at 9.

When no response ever was given to this reasonable request, Patagonia amended its responses and now, three months later, is being put to the very burden of leaving itself open to AB's "reservation of rights" after already having performed the bulk of the work necessary to provide documents and answers that establish the propositions that AB claims to need with all the clarity AB reasonably could expect. Nonetheless, AB seeks to, for example, expand custodians –*in search of Patagonia's awareness of a third party's PATAGONIA beer sold in South America* – "***beyond*** (emphasis in original) just those 'responsible for producing and marketing beer' to include custodians responsible for "spirits or hard seltzers" (*which Patagonia has told AB do not exist – Peterson Decl. Ex. D at 4*) and to include "those involved in (a) business strategy for Patagonia Provisions or Patagonia Inc., or areas such as (b) social media or (c) consumer research, (d) line expansions, (e) new product development, and (f)

Cooley LLP
Attorneys At Law
Los Angeles

18

Joint Stip. Re Defendant's Motion to Compel
Case No. 2:19-cv-02702-VAP (JEMx)

customer support…"  Although Patagonia has tried – in its responses, objections, and production – to avoid disputes by catering to a large degree already to AB's overbroad rationale, AB's persistence on these requests has all the qualities of "discovery for sport."

Patagonia's responses and production also include reports it received, before and after the lawsuit, referring to AB (including to the fact that AB was making no use or token use of the purported registration).  AB's arguments about Interrogatory No. 2, and RFPs 1, 2, 7, 45 and 46 are overt attempts to transform a simple, already-answered, inquiry into an unduly burdensome one.  The Court should confirm that (i) Patagonia fully answered the interrogatory  and (ii) Patagonia's agreement to search the files of custodians likely to have information responsive to the RFPs is sufficient.

**Interrogatory No. 2:**  In this interrogatory, AB asked Patagonia about its first knowledge of sales of PATAGONIA brand beer by AB, Warsteiner, and Quilmes, in the United States or South America, and what steps Patagonia took in response to such awareness.  Although AB feigns that there are no "discreet [sic] subparts" to this interrogatory, the interrogatory asks about three separate corporations and multiple geographies, all of which were addressed by the answer and objections.

In the parties' meet and confer meetings, Patagonia questioned the relevance of Patagonia's first awareness that Quilmes was selling beer in South America and pointed out that the only consequential awareness would be among those in the legal department who might take action upon learning AB or Quilmes or Warsteiner were using a PATAGONIA brand.  Patagonia also explained the burden of trying to search electronically for awareness of any "PATAGONIA" beer among "Patagonia" employees, and to the utter irrelevance that an employee somewhere in the company may have visited Argentina and encountered a Quilmes beer.  Declaration of Robert D. Tadlock ("Tadlock Decl."), ¶ 3.  AB does

Cooley LLP
Attorneys At Law
Los Angeles

19

Joint Stip. Re Defendant's Motion to Compel
Case No. 2:19-cv-02702-VAP (JEMx)

not contest that trademarks have territorial limits.

In response, AB said that Patagonia's first knowledge of sales in Argentina by Quilmes – identified by AB as a separate company without a subsidiary relationship to AB – would or could show that AB had "access to" beer that AB could sell in the United States.  Patagonia offered to stipulate that AB had access to beer at all relevant times.  AB declined.

AB's contention that it needs expansive searching of Patagonia's employees for potential stray knowledge of Quilmes' PATAGONIA beer in Argentina is particularly hypocritical given AB's responses in which it argues that sales outside of the United States are irrelevant to the dispute.  In response to Patagonia's RFP No. 14, AB said: "AB objects to the definition of Quilmes Patagonia Beer as overbroad and seeking documents that are not relevant and not proportionate to the needs of the case to the extent it refers to beer not sold by AB in the United States." Certainly AB cannot stand on this objection and simultaneously seek discovery that speculates about how Patagonia's awareness of the *same* sales of Quilmes beer in Argentina somehow might inform any issues.

In an effort to resolve the apparent dispute, Patagonia agreed to provide – and did provide (in addition to detailed information regarding the registration and alleged use of the PATAGONIA mark by AB and Warsteiner) – a response acknowledging that Patagonia was aware of Quilmes' sale of Patagonia beer in Argentina in 2017, when Patagonia was forced to challenge to Quilmes' use of apparel to market such beer.  Patagonia volunteered to and has produced documents reflecting this challenge.  It is not clear at all for what AB is now looking.  AB apparently objects to Patagonia's reference to Rule 33(d) and production of documents that were not even called for by the interrogatory on grounds that such documents won't address AB's rights "pre-dating" 2017.  This is true, but the text of the interrogatory answer contains highly detailed responses

Cooley LLP
Attorneys At Law
Los Angeles

20

Joint Stip. Re Defendant's Motion to Compel
CASE NO. 2:19-CV-02702-VAP (JEMx)

about Patagonia's earlier knowledge of the AB registration and use.[2]  This answer is reflected in documents that have been produced and it is completely unclear why this answer and the documents produced has not satisfied AB.

**RFP Nos. 1, 2 and 7:**  AB's argument on these requests is equally unintelligible.  Here, AB seeks to expand the scope of Patagonia's search and production *beyond what it asked for – and what the parties discussed Patagonia would do in accordance with supplemental responses – during the parties' meet and confer.*  Local Rule 37-1 requires parties to meet and confer in good-faith.  If parties are permitted to hide what they want or expect during the meet and confer process, or refuse to make actual agreements on grounds that the attorneys or individuals negotiating don't have authority or need to obtain client approval that never is forthcoming, only to substantively change course when they decide to file a motion, the Court will be inundated with disputes that have never been discussed among counsel.

RFP Nos. 1, 2 and 7 ask for documents reflecting Patagonia's plans for alcoholic beverages under different names or potential names, including PATAGONIA (No. 7), LONG ROOT (No. 1), or others (No. 2).  Patagonia initially agreed to produce documents as they relate to Patagonia's decision-making about names for beer products, explaining that the case is about beer (noting that AB is a beer company), and it would be overbroad and unduly burdensome to require Patagonia to provide information about other products.  Patagonia further explained that every document "relating to" or "concerning"

---

[2] To the extent that AB complains that Patagonia has not provided a specific bates number of the thousands of documents that relate to its interrogatories, this is also likely unduly burdensome.  For example, Patagonia recently identified 1500 pages of documents related to enforcement records that were referred to in other interrogatories.  At any rate, AB never met and conferred about any defects in the descriptions of the documents given in any 33(d) responses Patagonia made and the parties surely do not need to involve the Court in this issue.

such decision making would be unreasonably broad and would require searches and review parsing whether thousands of documents relating to a particular project might be characterized as having some connection to the ultimate naming decision.

During meet and confer, AB focused on two issues.  One, it wanted documents relating to wine plans and names as well as beer.  *See* Exhibit D to the Peterson Decl., at 4.  Two, in the context of RFP No. 1, AB explained that the purpose of its requests was to understand "what Plaintiffs knew and believed regarding AB's rights and their rights, what they could and could not do with Patagonia, and whether Plaintiffs expressed at the time that they needed or wanted to use 'Patagonia' and believed that not using that name would undermine the success of the product." *Id.* at 3.[3]

Without agreeing that any of this would be relevant to the dispute, Patagonia agreed on both points, offering to produce certain documents relating to both beer and wine, and offering to look for documents discussing "the potential impact of AB's rights on any decision to use or not to use PATAGONIA" on alcoholic beverages."  In making this offer, Patagonia stressed that it did not see any differences between business and marketing plans and that it would be limiting its response to "plans" in the conventional sense, rather than an onerous search for documents that might include a comment or discussion of

---

[3] To avoid confusion, AB's motion is wrong about the facts.  AB argues that it informed Patagonia of its rights in 2013, while Patagonia was working with New Belgium Brewing to put out a beer.  In fact, Patagonia, as it has answered, knew about the registration in connection with that project.  Moreover, AB sent its letter to New Belgium Brewing, not Patagonia.  Patagonia and New Belgium Brewing were working on "California Route" beer.  Long Root, referred to in the request, is the name of Patagonia Provisions' later line of beers.  Again highlighting its mistaken view that discovery obligations are not reciprocal, AB has yet to produce a copy of or discussions about its letter to New Belgium Brewing that it references in its motion.

Cooley LLP
Attorneys At Law
Los Angeles

22

Joint Stip. Re Defendant's Motion to Compel
Case No. 2:19-CV-02702-VAP (JEMx)

commercializing or marketing beer or wine.  Patagonia also – inconsistent with AB's new arguments about hard seltzer and the like – stressed that alcoholic beverages would be beer and wine, if any, because there were no other products.

AB has received in discovery extensive documentation of Patagonia's plans relating to beer, including productions from Patagonia itself, and both of Patagonia's collaborators, New Belgium and Hopworks.  These documents discuss the parties' awareness of AB's mark, the decision to use other branding, and discussion of facts related to AB's non-use of the PATAGONIA mark.  AB now has a complete history, past and present, regarding Patagonia's plans for its beer business.  Patagonia's application for a PATAGONIA PROVISIONS registration for *wine* was made on an intent-to-use basis and, though no formal business plans yet have been located, will be produced if they are.

AB's entrenched position on requests like these – calling for "all documents" "relating to" these and other subjects, while refusing to tailor or limit the breadth of those requests – is fundamentally improper.  "'All encompassing' production requests do not meet Rule 34's reasonable particularity requirement and the discovery rules do not allow a requesting party 'to engage in the proverbial fishing expedition, in the hope that there might be something of relevance ....'" *Mailhoit v. Home Depot U.S.A., Inc.*, 285 F.R.D. 566, 572 (C.D. Cal. 2012) (citations omitted); *see also Sanchez Ritchie v. Energy,* 2015 WL 12914435, at *2 (S.D.Cal., 2015) ("Particularly when a party stands on an overly broad request and does not make a reasonable attempt to narrow it or to explain the need for such a broad range of documents and/or information, the Court will not rewrite a party's discovery request to obtain the optimum result for that party.") (citations omitted).

AB's request is further out of bounds in light of Patagonia's efforts to accommodate in meet and confer.  Having heard AB's specific area of interest – i.e., the impact of AB's purported registration on Patagonia's plans for branding

CooleyLLP
Attorneys At Law
Los Angeles

23

Joint Stip. Re Defendant's Motion to Compel
CASE NO. 2:19-CV-02702-VAP (JEMx)

alcoholic beverages – Patagonia agreed to take reasonable steps to find relevant and responsive documents. AB maintains the same rationale for the request in this motion, while refusing to acknowledge that the rationale does not support or justify the breadth of its request. By doing so, it tosses Patagonia's accommodation aside and asks that the Court order that Patagonia must undertake a burdensome hunt for every document "relating to" a business plan for any alcoholic beverage, a universe of documents that obviously does not fit the purpose of assessing any impact caused by AB's registration.

Patagonia has produced – as set out in its supplemental responses – documents "between request Nos. 1, 2 and 7 …that discuss the potential impact of AB's rights on any decision to use or not use PATAGONIA on other alcoholic beverages." These documents were supplemented by productions made by its collaborators. Short of producing every document within Patagonia or Provisions that mentions the word "beer" or the word "wine," Patagonia has indulged AB completely on these requests. Such an endeavor is not relevant to Patagonia's awareness of AB's alleged mark or registration, or to how Patagonia chose its branding for beer. It would be extraordinarily burdensome, given that preliminary searches for these terms among the employees who have worked on the alcoholic beverage business indicate that there would be more than 80,000 documents to review. Bricker Decl., ¶ 3.

Patagonia has collected and produced documents that answer AB's questions about its product names and related strategies. The Court should deny AB's bid to expand the scope of its requests and impose unreasonable and frivolous burdens on Patagonia.

**RFP No. 45:** AB's narrative and rationale fail to support its challenge to Patagonia's response. Patagonia agreed in response to the request, after meeting and conferring, to make a reasonable search – *not limited to trademark lawyers or the employees responsible for producing and marketing beer* – for and to produce

CooleyLLP
Attorneys At Law
Los Angeles

24

Joint Stip. Re Defendant's Motion to Compel
CASE NO. 2:19-CV-02702-VAP (JEMx)

all documents that refer to AB's use of PATAGONIA on alcohol, and any communications with AB about beer.

**RFP No. 46:**  AB's interpretation of this request – first announced in this motion – borders on the absurd.   This request asks for "documents that refer to AB and/or AB's registration of the mark PATAGONIA for beer."  Despite the fact that Patagonia agreed in No. 45 to produce documents referring to AB's use of the mark, and despite the admissions made in response to interrogatory No. 2 (and the related documents that were produced), AB would have the Court order Patagonia to search seven ambiguously-defined groups of employees for information about *Quilmes* – going back to *2006* (six years before AB supposedly started selling PATAGONIA beer).  AB had not previously revealed this unsupportable interpretation of the reach of its request *that refers only to AB*.

Even the actual request, particularly given the overlap with Request No. 45, is gratuitously burdensome and overbroad.  Between the two requests, Patagonia agreed to make a reasonable search for and produce documents (i) that refer to AB's use of PATAGONIA on alcohol, (ii) communications with AB about beer, and (iii) references to AB's PATAGONIA trademark for beer (confined to the only people reasonably likely to have such documents – in the legal department and in the marketing and product groups responsible for beer).  Patagonia's searches of legal department files cover those currently handling matters relevant to these requests, and those who handled these matters dating back to at least 2012.  Tadlock Decl., ¶¶ 2 and 6.  Patagonia made these agreements despite having admitted knowing of AB's registration since 2013 – *the year AB told the USPTO it had acquired it* – the timing of which is the stated rationale for these burdensome and overlapping requests (see Patagonia's response to AB's RFA No. 96).  Even while making additional concessions that it had been led to believe would avoid this motion, Patagonia was fully justified in its objections, that  the request was overbroad particularly in the absence of any cogent explanation how

CooleyLLP
Attorneys At Law
Los Angeles

25

Joint Stip. Re Defendant's Motion to Compel
CASE NO. 2:19-CV-02702-VAP (JEMx)

the then demanded search, now exponentially expanded well beyond the language of the request, possibly could yield discoverable information.

Amidst rhetorical hand-waving ("among other things;" "a number of issues"), the only issue AB identifies to which these requests relate is "laches." AB says that the requested documents will reveal "when Plaintiffs *actually* (emphasis in original) knew about AB's sales of PATAGONIA-branded beer or its claim to trademark rights apart from its registration." AB first engaged in *any* activity with respect to the PATAGONIA mark in the United States in 2012 (*i.e.,* acquiring Warsteiner's ITU, as we now know) or 2013 (according to records and statements that AB submitted to the USPTO). Patagonia has admitted it knew about AB's registration in 2013, but did not see any use by AB until October 2018. It is clear that this motion is really an attack on Patagonia's answer that it was not aware of any use until 2018, as AB is desperate for evidence that someone at Patagonia came across one of AB's alleged token sales between 2012-2018.

The only likely Patagonia employees to have a record of any such encounter with a PATAGONIA beer (produced by a third party) are the people responsible for beer and trademark work. Tadlock Decl., ¶ 4. There is no obvious, legitimate reason to extend the search to throngs of Patagonia employees (in addition to the gigabytes of data already reviewed) whose files AB wants Patagonia to gratuitously review for references to PATAGONIA beer, when a search for PATAGONIA will not limit anything, and when any document such employees might possess would merely duplicate information he or she provided to the individuals Patagonia already has searched. A party seeking to compel another party to search the files of additional custodians bears the burden of "demonstrate[ing] that the additional requested custodians would provide *unique* relevant information not already obtained." *Fort Worth Employees' Ret. Fund v. J.P. Morgan Chase & Co.*, 297 F.R.D. 99, 107 (S.D.N.Y.

2013) (emphasis in original).

AB also has mischaracterized the responses. Patagonia agreed to make a reasonable search for a reference to AB's use of PATAGONIA on beer (or other alcohol) across all custodians responsible for producing and marketing beer, including (as AB would know if it reviewed Patagonia's productions) Phil Graves' files. Patagonia has repeatedly explained that it identified and searched the personnel likely to possess relevant information responsive to this and all other requests. *See* Peterson Decl., Exh. D at 7-8 (Greg Gilchrist's email to Dina Roumiantseva, September 18, 2019).[4] Patagonia also agreed to investigate and produce documents on this topic – the companies' awareness of AB's activities – in response to other requests. For example, Patagonia agreed to produce non-privileged documents showing investigations that Patagonia conducted or commissioned relating to AB or the competitor from which AB bought the PATAGONIA mark, Warsteiner, in response to RFP No. 36. And, though AB refused to discuss Patagonia's offer to consider additional custodians regarding a search for references to "Anheuser-Busch," Patagonia in fact searched for the term across other relevant custodians who were identified and produced those documents as well, irrespective of whether they mentioned AB's purported trademark. AB would know this if it had not brought its motion out of the blue.

AB's motion fails to demonstrate that the more-than-reasonable categories of documents and custodians covered by Patagonia's responses, discussed at great length during the parties' meet and confer months ago, do not contain all

---

[4] Patagonia explained that it would "make a reasonable ESI search … of its relevant custodians responsible for producing and marketing beer." When AB would not say that it was satisfied with that agreement, Patagonia offered that "[w]e can agree to discuss with you how we search – beyond the people involved with beer – for references to 'Anheuser-Busch.' But if you if you want to move on the proposition that we should search the entire company for 'Anheuser-Busch,' then we agree [the dispute] is ripe."

reasonably accessible information, at least to the extent any of this information is actually relevant to a real issue.   The fishing expedition that AB asks to compel would be pointless and unreasonably burdensome.  Tadlock Decl., ¶ 4.

**B.**    **Discovery Requests Relating to Plaintiffs' Awareness and Tolerance of Third-Party Uses or Registration of "Patagonia" (Interrogatory 4; RFP Nos. 6, 9, 11, 21, 34, 35, 40, 42, 43)**

| Request | Response |
|---|---|
| **RFP No. 6:**  All DOCUMENTS CONCERNING YOUR awareness of any PERSON using the designation PATAGONIA in connection with the sale of alcoholic beverage products. | RESPONSE TO RFP NO. 6<br>In addition to the general objections, Patagonia objects to this Request as unduly burdensome and overbroad in that the request for "[a]ll" documents concerning the identified subject matter to the extent it requires Patagonia to search the internal files outside of its trademark department within the legal department.  Patagonia further objects that Patagonia's awareness of third-party use of the term Patagonia is not relevant to the claims or defenses asserted in this action. As a consequence, Patagonia will search its trademark related files and produce non-privileged documents showing Patagonia's enforcement of its rights in the PATAGONIA trademark against any third-party in connection with the sale of alcoholic beverage products since 2006 to the present, as well as Patagonia's trademark file for its applications for trademark registrations for any PATAGONIA-formative mark covering alcoholic beverages. |
| **RFP No. 9:**  Copies of any licenses relating to the use or registration of any of the PATAGONIA MARKS, which YOU have provided to any PERSON, including any COMMUNICATIONS with that PERSON relating to such license. | RESPONSE TO RFP NO. 9<br>In addition to the general objections, Patagonia objects to this Request to extent it seeks information about licenses that are not relevant to the issues of infringement, dilution, or priority. Patagonia further objects to the Request as overly broad as the Request is not limited in time. As a consequence, Patagonia will produce copies of any licenses relating to the use or registration of its PATAGONIA marks that Patagonia is relying upon in support of its claims. |

| Request | Response |
|---|---|
| | <u>Supplemental Response</u>: Patagonia will produce all licenses for use of the PATAGONIA marks referred to in the lawsuit in effect since 2012. |
| **RFP No. 11:** All agreements (including but not limited to concurrent use, co-existence, consent agreements, or settlement agreements) that YOU have entered into, or proposed to enter into, with a third party CONCERNING the use or registration of a trademark or name comprised, in whole or part, of the term PATAGONIA – whether that agreement pertained to YOUR ability to use or register a PATAGONIA name or trademark, or to a third party's ability to use or register a PATAGONIA name or trademark – including but not limited to any COMMUNICATIONS with each third party relating to such agreement(s). | RESPONSE TO RFP NO. 11<br>In addition to the general objections, Patagonia objects to this Request as unduly burdensome and disproportionate to the needs of the case to the extent the Request seeks all "proposed" agreements and communications concerning such agreements that were never entered into. Patagonia further objects to the Request as overbroad given that it is not limited in time.<br><br>As a consequence, Patagonia will produce copies of final coexistence agreements, consent agreements, settlement agreements, and concurrent use agreements between Patagonia and third parties concerning the use or registration of a PATAGONIA-formative mark, if any, as well as non-privileged communications with third parties concerning any such agreements. |
| **RFP No. 34:** All DOCUMENTS CONCERNING YOUR awareness of the use of | RESPONSE TO RFP NO. 34<br>In addition to the general objections, Patagonia objects to this Request as duplicative of Request for Production No. 6. Patagonia further objects to |

Cooley LLP
Attorneys At Law
Los Angeles

29

Joint Stip. Re Defendant's Motion to Compel
CASE NO. 2:19-CV-02702-VAP (JEMx)

| Request | Response |
|---|---|
| the designation "Patagonia" in the marketing or sale of any good or service offered by third parties. | this Request as unduly burdensome and disproportionate to the needs of the case in that the request for "[a]ll" documents concerning the identified subject matter to the extent it requires Patagonia to search the internal files outside of its trademark department within the legal department and is not confined to uses in the United States. Patagonia further objects to the Request as overbroad as it is not limited in time. Patagonia further objects that Patagonia' awareness of third-party use of the term Patagonia is not relevant to the claims or defenses asserted in this action. As a consequence, Patagonia will search its trademark enforcement files and will produce non-privileged documents showing Patagonia' initial enforcement and the outcome if any of its rights in the PATAGONIA trademark against third parties using a PATAGONIA-formative trademark or term. |
| **RFP No. 35:** All DOCUMENTS CONCERNING any efforts by YOU to ascertain whether YOUR use of the any of the PATAGONIA MARKS conflicts with the rights of others, including, but not limited to, any trademark clearance searches, studies, investigations, or analyses. | RESPONSE TO RFP NO. 35 In addition to the general objections, Patagonia objects to the Request as vague and ambiguous by use of the undefined terms "studies, investigations, or analyses" and "conflicts." Patagonia further objects to the extent that the Request seeks documents protected from disclosure by the attorney-client privilege, the work product doctrine, and any other applicable privilege. As a consequence, Patagonia will produce a copy of any non-privileged search report results it received in connection with trademark clearance searches conducted prior to its filing of U.S. trademark applications for PATAGONIA-formative trademarks for alcoholic beverages. |
| **RFP No. 40:** All DOCUMENTS CONCERNING YOUR | RESPONSE TO RFP NO. 40 In addition to the general objections, Patagonia objects to this Request as overbroad in seeking |

Cooley LLP
Attorneys At Law
Los Angeles

**Joint Stip. Re Defendant's Motion to Compel
Case No. 2:19-cv-02702-VAP (JEMx)**

| Request | Response |
|---|---|
| awareness, including but not limited to when YOU first became aware, of a beer product sold under the name or trademark PATAGONIA. | "[a]ll" documents concerning the identified subject matter to the extent it requires Patagonia to search the internal files outside of its trademark department within the legal department. Patagonia further objects on grounds that this request conceivably extends beyond the United States. As a consequence, Patagonia will search trademark department files and produce non-privileged documents sufficient to show the approximate date that Patagonia became aware of the registration Reg. No. 4,226,102 for the PATAGONIA mark for beer. The Complaint identifies when Patagonia became aware that PATAGONIA was used on beer sold in the United States, and AB's own documents will show when it sold its PATAGONIA beer in the United States. |
| **RFP No. 42:** All DOCUMENTS CONCERNING any efforts by YOU to enforce YOUR rights in the PATAGONIA MARKS. | RESPONSE TO RFP NO. 42<br>In addition to the general objections, Patagonia objects to this Request as unduly burdensome in that it seeks "[a]ll" documents concerned the identified subject matter, which includes every document that Patagonia has filed with the trademark office and in any way related to assertions of trademark infringement or dilution. To the extent that such documents are relevant and reasonably sought in discovery, this Request is duplicative of other requests.<br><br>Supplemental Response: Due to the number of matters and years covered, Patagonia will produce non-privileged documents sufficient to show how it originated and concluded matters involving enforcement of the Patagonia Marks. |
| **RFP No. 43:** All DOCUMENTS CONCERNING YOUR decision not to enforce YOUR rights in the | RESPONSE TO RFP NO. 43<br>In addition to the general objections, Patagonia objects to the Request as overbroad as it not limited in time. Patagonia further objects to the extent that the Request seeks documents protected |

Cooley LLP
Attorneys At Law
Los Angeles

31

Joint Stip. Re Defendant's Motion to Compel
CASE NO. 2:19-CV-02702-VAP (JEMx)

| Request | Response |
|---|---|
| PATAGONIA MARKS against any third party. | from disclosure by the attorney-client privilege, the work product doctrine, and any other applicable privilege. To the extent there are any non-privileged documents, Patagonia will produce such documents that refer to AB's purported PATAGONIA trademark registration for beer.<br><br>Supplemental Response: Patagonia is producing many files showing awareness of third party uses in response to other requests. To the extent that AB specifically and reasonably identifies a third party use about which it wants the requested information, Patagonia agrees to conduct a reasonable ESI search of its trademark department custodians and to provide non-privileged documents that refer to a decision not to enforce Patagonia's trademark rights. |
| ROG No. 4: State all facts regarding each third-party use or trademark registration of "Patagonia" in the United States, whether alone or with other words, of which YOU are aware, including how and when YOU became of aware each use or registration, what if anything YOU did when YOU became so aware, and persons most knowledgeable thereof. | RESPONSE TO ROG NO. 4:<br>In addition to the general objections, Patagonia objects that its awareness of any use or registration containing the term Patagonia is not relevant and would create burdens on Patagonia that, to the extent such uses or registrations are relevant, properly belong with AB.<br>As a consequence, see Rule 33(d). Patagonia will produce trademark enforcement files to the extent they show its awareness of such third-party registrations or uses, and the outcome of any actions taken regarding such trademarks containing a Patagonia term. |

## 1.    AB's Argument in Support of Motion to Compel

**Summary of Issue:** Plaintiffs claim that the PATAGONIA mark is famous among the general consuming public of the entire U.S., such that AB should be

Cooley LLP
Attorneys At Law
Los Angeles

32

Joint Stip. Re Defendant's Motion to Compel
CASE NO. 2:19-CV-02702-VAP (JEMx)

precluded from using the PATAGONIA trademark on beer (in spite of AB's longstanding registration and use). The federal dilution statute includes as an element of fame "substantially exclusive use of the mark." *See* 15 U.S.C. § 1125(c)(2)(iii). Similarly, Plaintiffs' cancellation claim based on false suggestion of a connection under Section 1052(a) requires a showing that when registered for beer in 2012 (the date of AB's registration), the PATAGONIA mark pointed "uniquely and unmistakably" to Plaintiff Patagonia, Inc. *See Univ. of Notre Dame Du Lac v. J.C. Gourmet Food Imports Co., Inc.* 703 F.2d 1372, 1375-78 (Fed. Cir. 1983). In essence, Plaintiffs have alleged that in the U.S., "PATAGONIA" refers *only* to them – not any other company, region, product, or service.

AB requested documents to test these claims, specifically to demonstrate that Plaintiffs are and were aware of numerous third party uses of PATAGONIA. The requested documents will show that, until more recently, Plaintiffs cared very little—if at all—about third party uses of PATAGONIA outside of apparel. This demonstrates that their new attempt to claim rights in beer, beverages, and other non-apparel categories is an overreach – and certainly inconsistent with their burdens under 15 U.S.C. §§ 1125 (c)(2)(iii) and 1052(a). Plaintiffs cannot draw an arbitrary line on what they will agree to search, or selectively withhold documents showing their knowledge and tolerance of, agreements with, and enforcement against third party uses of PATAGONIA. Moreover, these documents are not only relevant to the aforementioned burdens, but also highly relevant to the alleged strength of Plaintiffs' rights, particularly outside of clothing, the alleged "household" fame of its trademark across the general U.S. population (and not just upper middle class suburbs that make up their key demographic), and the alleged damage/dilution/irreparable harm that Plaintiffs claim to be suffering due to AB's use of PATAGONIA on beer. *See Farouk Sys. v. Chi Nail Franchises, LLC*, No. CV 13-7533 FMO (SHx), 2015 U.S. Dist. LEXIS 192204, at *3-5 (C.D. Cal. Nov. 19, 2015) ("evidence of third-party use of the mark 'chi' is relevant to both

CooLEY LLP
Attorneys At Law
Los Angeles

33

Joint Stip. Re Defendant's Motion to Compel
CASE NO. 2:19-CV-02702-VAP (JEMx)

plaintiff's trademark infringement and dilution claims."). The documents and communications, along with the licenses, co-existence agreements, and other dealings with third parties would tend to disprove this allegation, from Plaintiffs' very own files.

Plaintiffs agreed to produce only a small subset of documents responsive to these requests, such as cease and desist letters and final agreements with alleged infringers. During the meet and confer process, AB made clear these limitations were too narrow, but agreed to review Plaintiffs' document production before moving to compel. (Peterson Decl. at ¶6.) Nonetheless, as evident from Plaintiffs' production of December 27 and subsequent correspondence, it clear that Plaintiffs indeed intend to cherry pick which documents they will produce, exclude any communications relating to those documents (e.g. the back-and-forth over a co-existence agreement, which may reveal evidence of the extent of the third party's use of the PATAGONIA name or mark, and Plaintiffs' awareness of that), and focus their production from their "trademark department" files.

In that regard, it is not sufficient for Plaintiffs to produce only the documents showing "how [they] originated and concluded matters involving enforcement of the Patagonia Marks." Resp. to RFP No. 42. Rather than affirmatively ***removing*** from an enforcement file correspondence between Plaintiff(s) and a third party, Plaintiffs should include those in their production. That back-and-forth may reveal that a third party openly used a PATAGONIA name or trademark for years, that Plaintiffs knew or were informed of that use, and that Plaintiffs nevertheless took no action over a period of time—all of which is highly relevant here. *See Rebelution , LLC v. Perez*, 732 F. Supp. 2d 883, 892-883 (N.D. Cal. 2010) ("The evidence presented suggests that plaintiff's mark was weakened; however, without evidence of the scope of use by third-parties, the degree to which plaintiff's mark was weakened by these users cannot be determined.").

Similarly, as to any consent or co-existence agreements (Resp. to RFP No.

Cooley LLP
Attorneys At Law
Los Angeles

34

Joint Stip. Re Defendant's Motion to Compel
CASE NO. 2:19-CV-02702-VAP (JEMx)

11), AB requests correspondence relating to those agreements, not just the "final" agreements.

It also inappropriate, as Plaintiffs' amended responses suggest (e.g. Resp. to RFP No. 43), for them to shift the burden to AB to identify particular third party uses or registrations in which AB might have particular interest.  As explained above, third party use is relevant to multiple aspects of this case, and Plaintiffs should produce the information they have as to all third parties, not some smaller, selective subset.

At a minimum, Plaintiffs should make a reasonable inquiry through their marketing and branding groups, legal department files (not just their so-called "trademark department") including files of personnel who handled trademark issues before Mr. Tadlock's tenure began in 2014, and of their personnel who submitted documents to the USPTO, as these are all likely keepers of the aforementioned information.  And, as outlined, the Court should order Plaintiffs to fully answer Interrogatory No. 4 and to broaden their scope of production accordingly.

**RFP Nos. 6 and 34** seek documents regarding Plaintiffs' awareness of any person using the designation PATAGONIA in connection with the sale of alcoholic beverage products and other goods and services.  Plaintiffs respond that they will search only their "trademark related files" for documents showing (i) enforcement of their rights against any third-party in connection with the sale of alcoholic beverage products[5] and (ii) their initial cease and desist letter and final closing letter sent to third parties.  Plaintiffs' responses are deficient for a number of reasons.  First, Plaintiffs again purport to limit their search to trademark files in their legal department, without any indication that they have taken steps to determine whether

---

[5] Plaintiffs have so greatly narrowed the scope of their response to ensure that no responsive documents exist given that Plaintiffs claim to have not used the PATAGONIA trademark on alcoholic beverages, and thus they would have no rights to enforce.

relevant materials may exist elsewhere relating to their awareness of third-party use of "Patagonia."    It is likely that those in marketing, customer experience, communications, PR, social media, or other business units or leaders were aware of third-party use of Patagonia.  Plaintiffs have provided no support for their assertion that such a search would be unduly burdensome.  Significantly, as set out in the accompanying Peterson Declaration, numerous employees of Patagonia Inc. have, for example, submitted declarations and made statements under oath regarding the PATAGONIA trademark, including Vice Presidents, Presidents, CFO, corporate Secretary, and CEOs.  (Peterson Decl. ¶8.)  This further indicates that Plaintiffs' offer to search only the "trademark department" is evasive and improper.   They must search the legal department's files (electronic and paper), and identify custodians who have been involved in the protection, licensing, and prosecution of the PATAGONIA trademark, which would include at least members of the management team.  Plaintiffs, not AB, are in the best position to conduct a thorough and proper search.   But, as is evident from Plaintiffs' anemic production to date of only one cease and desist letter and one settlement agreement, it is not enough for Plaintiffs to produce selective, recent agreements and enforcement, while omitting the underlying correspondence, including arguments the third parties made in defense of their uses of PATAGONIA, information about the nature and extent of use of their marks, and Plaintiffs' inaction over a period of time, as well as admissions Plaintiffs made in the course of the discussions, or internal discussions about third party uses Plaintiffs chose not to police.  It is not burdensome for Plaintiffs to produce complete enforcement files, which are likely kept in the same location as the cease and desist letter they have already produced.

There is no question that these materials are relevant and discoverable.  Again, documents relating to third-party use are relevant to show that Plaintiffs cannot prevail on one of the dilution factors (substantially exclusive use of the mark), and relevant to the strength of Plaintiffs' trademark. *See Sand Hill Advisors,*

*LLC v. Sand Hill Advisors*, *LLC*, 680 F. Supp. 2d 1107, 1118–1119, 93 U.S.P.Q.2d 1789 (N.D. Cal. 2010) (SAND HILL is weak in view of the many financial businesses which use it in their name); *Halo Mgmt, LLC v. Interland, Inc.*, 308 F. Supp. 2d 1019 (N.D. Cal. 2003) (preliminary injunction denied: third party use evidence relevant to strength of plaintiff's mark and the allegation that it will be irreparably harmed by defendant's continued use of the mark); *Nissan Motor Co. v. Nissan Computer Corp.*, 378 F.3d 1002, 1014 (9th Cir. 2004) ("That other unaffiliated companies use 'Nissan' in their names at a minimum raises a question whether the mark can be considered a famous mark eligible for dilution protection."); *Avery Dennison Corp. v. Sumpton*, 189 F.3d 868, 878 (9th Cir. 1999) (five trademark registrations for "Avery" and several businesses with "Avery" and "Dennison" in their names "makes it unlikely that either can be considered a famous mark eligible for the dilution cause of action"). The documents are also relevant to disprove Plaintiffs' Section 1052(a) claim that the name "Patagonia" pointed "unmistakably" to Plaintiffs. And contrary to Plaintiff's contention during the meet and confer process that AB can identify third-party uses in the marketplace itself, Plaintiffs' awareness of, admissions regarding, and tolerance of third-party uses are relevant to show its own understanding on the limits of its own rights, which runs counter to its position in this litigation. *See e.g.*, *Pebble Beach Co. v. Laub Am. Corp.*, No. C-84-20125 RPA SJ, 1985 WL 5584, at *28 (N.D. Cal. Dec. 27, 1985) (finding third-party uses of mark highly relevant to mark's strength, and finding noteworthy communications with a third party where trademark owner reversed its position). Accordingly, the Court should order Plaintiffs to conduct an appropriate and reasonable search (not restricted to its current "trademark department"), including files of personnel who handled trademark issues before Mr. Tadlock joined the company in 2014, and of their personnel who submitted documents to the USPTO, and produce all documents responsive to Request Nos. 6 and 34, including communications between Plaintiffs and third parties related to each

enforcement matter, and non-privileged internal communications relating to the decision to allow a third party to use the PATAGONIA brand or otherwise to forego enforcement measures.

**RFP No. 35** seeks documents relating to Plaintiffs' efforts to ascertain whether their use of PATAGONIA marks conflicts with the rights of others, including trademark clearance searches, studies, investigations, or analyses. In response, Plaintiffs agree to produce only non-privileged "search report results" obtained "in connection with trademark clearance searches conducted prior to its filing of U.S. trademark applications for PATAGONIA-formative trademarks for alcoholic beverages." Plaintiffs improperly attempt to limit their production to: (i) "search report results"; (ii) from a pre-filing search; and (3) for marks pertaining to alcoholic beverages. Plaintiffs, however, have alleged broad trademark rights in connection with a wide range of goods and services in their complaint. (SAC ¶¶ 36, 38, 60, 66, 70, 76.) The requested documents are directly relevant to the scope of those rights. By way of example, Plaintiffs may have ordered a third party use report (e.g. through a vendor) outside of the context of their April 2019 trademark filings for beer. Such reports, whether conducted in 2019, 2012 (AB's registration), or 2006 (the filing date of the PATAGONIA beer mark now owned by AB), are relevant, as they would tend to reveal (a) actual knowledge of AB's PATAGONIA trademark filing, or (b) actual knowledge of third party trademark or corporate filings that include the term "PATAGONIA." It is important that Plaintiffs' production include all such reports – not tied to their recent trademark filing, but a reasonable search through their legal and marketing files.

Finally, Plaintiffs have no valid basis for their refusal to produce responsive documents, having only objected based on privilege and that certain terms were vague and ambiguous (which AB offered to clarify during meet and confer). Accordingly, the Court should order Plaintiffs to produce all documents responsive to Request No. 35, including searches that were not performed in connection with

Cooley LLP
Attorneys At Law
Los Angeles

38

Joint Stip. Re Defendant's Motion to Compel
Case No. 2:19-cv-02702-VAP (JEMx)

a particular trademark filing, searches for goods outside of alcoholic beverages, and communications or documents other than "formal" search report results.

**RFP No. 40** seeks documents relating to Plaintiffs' awareness of beer sold under the PATAGONIA name or trademark. Plaintiffs respond that they will search their "trademark department" files and produce documents sufficient to show the approximate date that they became aware only of AB's registration. Plaintiffs refuse to produce documents relating to their awareness that others have sold beer under the PATAGONIA name or trademark, or even other documents relating to AB's sale of PATAGONIA beer.

As discussed above, documents relating to Plaintiffs' awareness and decisions on whether or not to enforce their rights against use of the PATAGONIA mark or any other uses of PATAGONIA on beer are highly relevant to Plaintiffs' claims and AB's laches defense. Further, Plaintiffs' awareness of PATAGONIA beer sold in South America by AB's related company (Quilmes) is relevant to whether Plaintiffs knew or should have known of AB's expansion of the brand into the United States and also to Plaintiffs' awareness that the specimen in the statement of use submitted to the USPTO was based on an established brand in South America with no alleged intent to trade on Plaintiffs' goodwill. Plaintiffs' objection that the Request "conceivably extends beyond the United States" is not a valid legal objection that would excuse Plaintiffs from their obligation to produce relevant documents, as even goods sold in other jurisdictions may garner consumer awareness in the United States and may put Plaintiffs on notice of those rights. *See Grupo Gigante SA De CV v. Dallo & Co.,* 391 F.3d 1088, 1094 (9th Cir. 2004) ("Commerce crosses borders. In this nation of immigrants, so do people. Trademark is, at its core, about protecting against consumer confusion and 'palming off.' There can be no justification for using trademark law to fool immigrants into thinking that they are buying from the store they liked back home.").

Second, Plaintiffs again seek to limit their search to "trademark department

files."   As explained, Plaintiffs cannot preemptively narrow their search in this manner.  Plaintiffs must conduct a reasonable search for such documents, wherever they reside within the company.   Accordingly, the Court should issue an order requiring Plaintiffs to conduct a reasonable inquiry, including those in marketing, customer experience, communications, PR, social media, and their past and present legal files, and to produce documents responsive to RFP No. 40.

**RFP No. 9** seeks documents and communications relating to license agreements between Plaintiffs and any third party regarding the marks alleged in the SAC.  Plaintiffs respond that they will produce licenses in effect since 2012 only.

However, as discussed above, communications about whether and why Plaintiffs are allowing a third party to use a PATAGONIA mark (for any good or service) are relevant to the scope of Plaintiffs' rights.  By way of example, such communications may contain Plaintiffs' explanations of which uses of the mark it has found acceptable, for example allowing use on other food or beverage items but not clothing, which are likely to contradict Plaintiffs' arguments in this case.  These communications may also show why a third party opted not to license the mark, or refused to do so.  These communications are also likely to show that—contrary to their claims in this case—Plaintiffs are aware that "Patagonia" does not uniquely and unmistakably point only to Patagonia, Inc.  These documents demonstrate Plaintiffs' awareness and tolerance of third party uses in fields outside of clothing; its acceptance of the fact that it does not have a monopoly on the word PATAGONIA; and in the course of its discussions with third parties, it likely learned of other examples of which it is now pleading ignorance.

Lastly, Plaintiffs cannot restrict production to "licenses for use of the PATAGONIA marks referred to in the lawsuit in effect since 2012."  If a license was not "in effect in 2018" but in effect at any time between 2011 and 2017, it would undoubtedly be relevant, but Plaintiffs would withhold it.  Likewise, a

license signed in 2008, and active between 2008 and 2013, would still be relevant, but would not fall within Plaintiffs' narrow definition.  Plaintiffs should be required to produce any licenses, and communications relating thereto, that were signed or in effect at any time between 2012 and 2019 that relate to a PATAGONIA or PATAGONIA formative trademark.

**RFP No. 11** seeks documents relating to coexistence and similar agreements between Plaintiffs and any third party regarding the use of a trademark or name that includes "Patagonia."   Plaintiffs refuse to produce communications and draft agreements relating to agreements that were never finalized.  Such documents, however, are relevant for the same reasons as stated above.  Plaintiffs' awareness and acceptance of third-party uses of Patagonia is relevant to the rights it has asserted in the SAC.  Such documents are likely to contain admissions about the scope of Plaintiffs' rights.  For example, if Plaintiffs sought to enforce their mark in relation to food or beverage products, and then ceased those efforts, that would be highly relevant.  Similarly, if a third party sought to enforce its rights against Plaintiffs via a proposed coexistence agreement and Plaintiffs ceased efforts to expand into that product territory, that would also be relevant.  Plaintiffs must search for and produce all such documents.

**RFP Nos. 42 and 43** seek documents concerning any efforts by Plaintiffs to enforce their rights in the PATAGONIA marks and decisions not to enforce their rights in the PATAGONIA marks against any third party.  As explained above, these documents are relevant to the scope of Plaintiffs' claimed rights in their marks.  Plaintiffs agree to produce only "documents sufficient to show how it originated and concluded matters involving enforcement of the Patagonia Marks" and "documents that refer to AB's purported registration."  With respect to Request No. 42, Plaintiffs requested similar documents from AB (which AB agreed to produce), so Plaintiffs acknowledge that the documents are relevant.

Further, the requested documents are relevant to the scope of Plaintiffs'

Cooley LLP
Attorneys At Law
Los Angeles

41

Joint Stip. Re Defendant's Motion to Compel
Case No. 2:19-cv-02702-VAP (JEMx)

asserted rights in the PATAGONIA marks, and there is no basis for Plaintiffs to limit their production solely to documents showing how Plaintiffs "originated and concluded" enforcement matters.   Plaintiffs also refuse to produce documents relating to their decision not to enforce their rights against third parties, except as to AB.  Plaintiffs' only substantive objection is to the extent the Request is not limited by time, so there is no legal basis for them to refuse to produce these relevant documents.  Plaintiffs should be ordered to do so.

As to **ROG No. 4,** Plaintiffs' offer to produce documents—especially in view of all of the above-concerns—is not enough.   The interrogatory seeks critical information such as "how and when" the company became aware of such use, and Plaintiffs' response, if any.  This is not information inherently apparent from the documents themselves, and certainly not apparent from any documents produced to date.  Given the relevance of this information to so many issues in the case, the Court should compel Plaintiffs to list out the relevant third parties and provide a complete response to the Interrogatory.

### 2.     Plaintiffs' Opposition

**Introduction:**  Patagonia has never taken the position that evidence of third party use of PATAGONIA as a branding element is irrelevant to questions of exclusive use and strength of the mark.  That is why Patagonia agreed to produce and has produced approximately 100 different examples of third party uses that were the subject of enforcement proceedings or agreements or settlements. Although AB admits that, during meet and confer, AB "agreed to review Plaintiffs' document production before moving to compel, " it provides no reasoned basis for having now reneged on that agreement.   AB provides no explanation why the agreed upon procedure – that AB would make reasonable requests for additional records if a third party use or agreement warranted – is not acceptable or would not reconcile the proportionate burdens.  The inclusion of these requests in the motion, without apparently even reviewing Patagonia's production, is therefore yet another

example of AB's disregard for the Court's meet and confer requirement and the discovery rule of proportionality. The Court should deny AB's requests.

AB fails to acknowledge that the importance of third party use is an empirical proposition that depends on evidence of public use, not trademark registrations such as may appear in some of the files that AB has requested, or as a result of Patagonia's "awareness" of such uses. The law is clear that, to the extent that third party uses of similar marks bear on strength or fame of a plaintiff's mark, the inquiry must be focused on the degree to which any such third party mark has had an impact on the consumers in the marketplace. Put another way, trivial or inconsequential uses will not have a significant impact on a claim of strength or fame. USPTO records, without marketplace context, are just pieces of paper. *Nike, Inc. v. Nikepal Int'l, Inc.*, No. 2:05-CV-1468-GEB-JFM, 2007 WL 2782030, at *7 (E.D. Cal. Sept. 18, 2007) (disregarding evidence of a third party trademark registration for NIKE, and the business name "Nike Hydraulics," where there was no evidence of how consumers encounter those marks in the marketplace) (citing *AMF Inc. v. Am. Leisure Prod., Inc.*, 474 F.2d 1403, 1406 (C.C.P.A.1973) (finding that third-party registrations are "not evidence of what happens in the market place" nor are they evidence of consumer familiarity with the mark)); *Lesley Hornby a/k/a Lesley Lawson a/k/a Twiggy v. Tjx Cos., Inc.,* No. 92044369, 2008 WL 1808555, at *16 (T.T.A.B. Mar. 4, 2008) ("[T]hird-party registrations and applications are not evidence that the marks which are the subjects thereof are in use and that the public is familiar with the use of those marks.").

The case AB cites – *Pebble Beach Co. v. Laub Am. Corp.*, No. C-84-20125 RPA SJ, 1985 WL 5584, at *28 (N.D. Cal. Dec. 27, 1985) – supports Patagonia's position, not AB's. In *Pebble Beach*, the court observed that "it may be noteworthy" that plaintiff concluded a prior enforcement matter, three years before suing the defendant for use of PEBBLE BEACH on apparel and other merchandise, by explicitly permitting a third party to use PEBBLE BEACH on shirts. The court

CooLEY LLP
Attorneys At Law
Los Angeles

43

**Joint Stip. Re Defendant's Motion to Compel
Case No. 2:19-cv-02702-VAP (JEMx)**

did not rely on a comment made in the midst of negotiations, and did not rely on the plaintiff's awareness that a third party use existed. Instead, it focused on the resolution of the dispute – the very type of document that Patagonia already has agreed to produce – expressing tolerance of use of a mark, and the evidence submitted about the extent of use of that third party mark, sales volume by the third party, and conclusions about consumer recognition of the third party's brand. *Id.* at *21 and *28.

AB also misstates the case it cites for the argument that Patagonia's claims depend on the term referring only to plaintiffs and not, for example, to a region. *Univ. of Notre Dame Du Lac v. J.C. Gourmet Food Imports Co., Inc.* 703 F.2d 1372, 1375-78 (Fed. Cir. 1983), AB states that Patagonia has alleged that 'Patagonia' refers *only* to Patagonia, Inc., and that the opinion in *Univ. of Notre Dame Du Lac* requires as much. Both statements are untrue. Patagonia's claim is that, when AB's asserted registration was issued in 2012, use of PATAGONIA for beer would have been understood by consumers to point to Patagonia. That is the test for a false suggestion claim, not AB's misleading narrative – espoused in most documents it has prepared in the case – that Patagonia is trying to prove that its brand has supplanted any geographically descriptive meaning of the Patagonia name. The court in *Notre Dame* recognized the validity of Patagonia's claim, specifically acknowledging that there is a religious figure and several churches that use the name, and that the University could nevertheless win its false suggestion claim if it showed, for example, that the defendant cheese importer intended to evoke the University's reputation by adopting the "Notre Dame" name. *Univ. of Notre Dame Du Lac.*, 703 F.2d at 1377.

The discovery purpose of AB's requests, accordingly, is to identify third party uses for AB so it can investigate further if it believes such a use is relevant. Patagonia did not stonewall AB on any of its third party use requests. It agreed to conduct a reasonable search and produce (a) documents reflecting enforcement

CooleyLLP
Attorneys At Law
Los Angeles

44

Joint Stip. Re Defendant's Motion to Compel
Case No. 2:19-cv-02702-VAP (JEMx)

against use of PATAGONIA in connection with alcoholic beverages since 2006 (RFP No. 6), (b) licenses for use of the PATAGONIA marks since 2012 (RFP No. 9), (c) co-existence agreements, consent agreements, settlement agreements, and concurrent use agreements between Patagonia and third parties regarding PATAGONIA-formative marks (RFP No. 11), (d) documents showing Patagonia's enforcement of its rights against third parties and the outcome of those enforcement matters (RFP Nos. 34, 42 and 43), (e) results of search reports related to Patagonia's filing of applications to register PATAGONIA-formative marks for alcoholic beverages (RFP No. 35), and (f) documents sufficient to show the earliest date on which Patagonia learned of AB's purported registration for PATAGONIA for beer (RFP No. 40).  Patagonia determined that the personnel in its legal department responsible for trademark-related matters are the custodians most likely to have information about those matters, and explained – where appropriate – to AB that those files would be searched.

With respect to the enforcement files Patagonia agreed to produce, Patagonia offered – in light of the burden of searching for "Patagonia" within a company that has "Patagonia" on each and every, or nearly all, documents that exist within its files, email repositories, etc. – was  to identify the location in the company where third party uses would be sent and acted on, the trademark group within the legal department.  Tadlock Decl., ¶¶ 5-6.  Patagonia proposed, and AB admits it agreed, that Patagonia would produce documents showing awareness of third parties and, if there was an enforcement proceeding, to provide the original challenge and the document showing how the matter was resolved.  This would permit AB to investigate further or ask for more documents if it felt the use and search was helpful to its argument.

If AB identified a use that was not included among Patagonia's production from this source, Patagonia agreed it would consider searching for  information about the use, particularly as an identified use would provide additional clues to

make a search reasonable (e.g., a specific company name that includes additional terms beyond "Patagonia,").  Patagonia also agreed that if a particular enforcement matter potentially warranted additional related files, AB could request and Patagonia would consider it.  Through this process, Patagonia has identified approximately 100 third party uses and produced the documents.  AB has not asked any questions about these documents, or about any third party uses not reflected in Patagonia's production (other than the legal conclusions it has sought about third party USPTO registration files, addressed in Section E of AB's motion below).

AB claims this approach somehow constitutes cherry picking, but it has no support for the allegation and its vague and incomplete reference to Patagonia's December 27 production and "subsequent correspondence" as some kind of justification reveals as much.  AB's counsel asked on December 31, 2019 about Patagonia's production of additional enforcement and third party use documents (probably not coincidentally the day after Patagonia protested to AB that AB had produced *no* documents).  Patagonia's counsel responded on January 3, explaining that the production of enforcement-related documents was not complete, and that documents were being prepared for production.  Bricker Decl., Exh. A.  Patagonia produced hundreds of documents responsive to RFP Nos. 11 and 34 on January 14, 2020, several days before AB served its motion (which failed to reference the recent production or the promise it was forthcoming).  Presumably AB has not reviewed the January 14 production, despite its agreement to do so, and instead proceeded with a motion.

The elaborate search that AB seeks would be unduly burdensome to collect and review, and of little to no value in the case.  Tadlock Decl., ¶ 6.  While AB identifies the general relevance of third party use, AB barely pays lip service to why it wants *additional* material beyond what Patagonia has produced.  There is a telling mismatch between the purported gaps in Patagonia's responses and AB's purported rationale.  Documents have been produced that allow AB to investigate

CooleyLLP
Attorneys At Law
Los Angeles

46

Joint Stip. Re Defendant's Motion to Compel
Case No. 2:19-cv-02702-VAP (JEMx)

third party uses and gain a head start based on Patagonia's knowledge or, if a use has been addressed by enforcement and a resolution, avoid a dead end in its investigations.  All of these purposes have been met by Patagonia's existing responses.

**RFP Nos. 6 and 34:**  AB first speculates over a paragraph and a half about who – outside of Patagonia's legal department – might have information about third party uses, referencing five departments, "other business units or leaders," and each declarant who, for example, signed a document that verified to the USPTO that Patagonia was in fact using PATAGONIA for jackets and hats, books, salmon, etc.

Assuming AB is referencing statements of use submitted to the USPTO, this is another *non sequitur* as a statement of use does not require examination of third party uses, and searching the files belonging to any of these signatories presents the same challenges, burdens and waste of resources as searches within any other employee's files.

AB concludes by admitting that "Plaintiffs, not AB, are in the best position to conduct a thorough and proper search."  AB is correct.  Patagonia has determined that information about third party uses is highly likely to reside with and is supposed to be forwarded to those responsible for trademark work in the legal department.[6]  Random searching for third party uses anywhere in the company where someone may have encountered a third party use is not feasible when the search would be for "Patagonia."  It is particularly absurd when it is highly likely that, if a third party use was documented, it would be for the purpose

---

[6] AB's characterization of the timeframe of Patagonia's production is misleading. AB comments that the Court should order Patagonia to search legal department files prior to Mr. Tadlock, Patagonia's in-house IP counsel, joined the Company in 2014.  Patagonia has never limited its production in response to these RFPs to 2014-present.  Patagonia agreed to search its files from 2006 to present for responsive documents as indicated.

1   of sending it to the legal department and its brand protection personnel.  Tadlock

2   Decl., ¶¶ 5-6.  There is no rule or mechanism through which AB can dictate

3   through speculation whose files Patagonia should search, and courts regularly

4   reject efforts to do so.  *See Mortg. Resolution Servicing, LLC v. JPMorgan Chase*

5   *Bank,* N.A., No. 15CIV0293LTSJCF, 2017 WL 2305398, at *2 (S.D.N.Y. May

6   18, 2017) (rejecting imposition of additional custodian searching based on the

7   lack of evidence that they possess unique information, and the substantial burden

8   presented by searching their files, observing that "[t]he game is simply not worth

9   the candle"); *see also Fort Worth Employees' Ret. Fund,* 297 F.R.D. 99 at 107.

10       AB calls Patagonia's production of enforcement documents and settlement

11  agreements "anemic."  But, it offers no examples of third party uses of which it is

12  aware that are missing from Patagonia's production.  As noted above, it decided

13  to move fourteen days after being told that Patagonia would produce additional

14  documents and several days after 200 additional documents were produced

15  showing third party marks and its enforcement work.  Had AB respected its

16  agreement to review documents and ask for follow up before moving, this dispute

17  may not have required input from the Court at all.

18       AB belittles, without support, the burden that is associated with producing

19  the almost certainly irrelevant "back and forth" of Patagonia's exchanges toward

20  resolution of an enforcement matter.  It argues that Patagonia is "removing" this

21  type of correspondence from its files rather than simply leaving the files intact, as

22  if there are paper files at hand from which all this information may be extracted.

23  AB knows how it really works; there are emails back and forth about minutiae

24  that may not be in a file, there are sometimes letters that sometimes are

25  electronically filed (with a date) but no real way of telling until the electronic

26  document is opened, reviewed for privileged and work product, whether it is to be

27  produced.  The initial and closing documents in a dispute are almost alwaysfield

28  and are  therefore accessible and not privileged.  The unnecessary additions

required to ensure that a comprehensive, non-privileged electronic "file" is re-created are not easily located or separated from privileged files.  The exercise AB proposes would need to be repeated for, in this case, 100 matters and an unknown number of documents.  Most of these – as the documents AB has received would reveal – show only routine agreements by third party users to stop trademark use. Identifying the originating and closing documents is not simple or easy (and is already done pursuant to the parties' agreement), but is far more manageable than the pointless exercise of producing settlement correspondence and "all" related documents when AB can follow up regarding any specific matters that appear truly relevant.

If, as AB speculates, Patagonia has resolved a dispute with an agreement to tolerate a third party use of a PATAGONIA-formative mark, it will be reflected in the documents Patagonia agreed to produce, which include all documents memorializing outcomes.  If AB identifies a reasonable set of matters for which it would like to review related correspondence, and has a concrete reason for requesting that Patagonia spend time and resources gathering that correspondence, Patagonia has agreed to consider the request and respond to it.  The Court should reject AB's request to require that Patagonia unearth "all" these documents, particularly given that AB could only genuinely be curious about those, if any, that continue to be used  in the marketplace in a consequential matter.

**RFP No. 35:**  AB also bases its request for trademark search reports on its arguments about third parties uses.  Its request for these reports again ignores the fact that a trademark or corporate registration does not bear on the strength of Patagonia's marks – the extent of use and market penetration by a third party controls relevance of these marks, if they are relevant at all.

Patagonia does not believe that any search reports that it ordered are relevant to the dispute, but offered to produce reports related to alcoholic beverages in an effort to avoid a dispute, and to provide AB with yet another assurance that AB

Cooley LLP
Attorneys At Law
Los Angeles

49

Joint Stip. Re Defendant's Motion to Compel
Case No. 2:19-cv-02702-VAP (JEMx)

would receive materials showing when Patagonia was aware of AB's purported registration. Contrary to the misleading argument in AB's portion of its brief, Patagonia did not limit its production of those alcohol-related clearance reports to 2019; Patagonia agreed to produce any such non-privileged reports. As noted above, to the extent third party references are relevant, it is the commercial use of those marks that must be analyzed, not the appearance of a serial or registration number on a clearance report. Against that background, Patagonia's general objection that AB is seeking information that is equally available to AB – i.e., whether anyone is in the marketplace using "Patagonia" as a brand – is applicable.

Finally, AB again expands the scope of its request in its motion, far beyond what was discussed in meet and confer. When the parties discussed the request and exchanged emails about its scope in September, AB focused on search reports themselves. AB now asks for all search reports, "as well as communications or documents other than 'formal' search report results." Documents discussing search reports, of course, are almost certainly privileged and are highly unlikely to yield any information that relates to AB's contentions about its desire to show marketplace use by third parties. AB's expansion highlights the applicability of Patagonia's objection to AB's definition of "concerning" as grossly overbroad. Given the burden of locating these documents, the likelihood most are privileged and the minimal (if any) relevance, AB's request should be denied.

**RFP No. 40:** In response to RFP No. 45, Patagonia has searched for and collected documents within its trademark department and employees responsible for Patagonia's beer business that reflect knowledge of any use of the PATAGONIA mark in connection with beer by AB, from 2012 to present. This request, No. 40 seeks all documents concerning Patagonia's awareness of a beer sold under the PATAGONIA mark (including those without any connection to AB). It thus again presents near-impossible challenges with respect to searching and collecting documents. Tadlock Decl., ¶¶ 3-6. At least a search can be constructed

CooleY LLP
Attorneys At Law
Los Angeles

50

Joint Stip. Re Defendant's Motion to Compel
Case No. 2:19-cv-02702-VAP (JEMx)

for AB's use of PATAGONIA.

AB once again focuses on its purported need to establish that Patagonia, if it became aware of Quilmes, might have been able to divine that AB, a different party, might expand into the United States, something Quilmes never has purported to do. The facts are that Patagonia already has conceded knowing that AB was purporting – at least within the USPTO – to sell PATAGONIA beer in the United States almost contemporaneously with the claimed start of its use.  AB gains no benefit by toting at *Grupo Gigante SA De CV v. Dallo & Co.,* 391 F.3d 1088, 1094 (9th Cir. 2004), in a brain twisting effort to make Quilmes' use in Argentina relevant.  The *Grupo Gigante* doctrine, if it had any conceivable application here, would require Quilmes, a non-party, to show that the brand is well known by *consumers* (not Patagonia) in the United States through Quilmes' use of the brand in Argentina.  None of this is alleged, of course, and there is a good reason.  AB's rights, if they exist, derive from an assignment from *Warsteiner*.  Such rights as AB posits might reside in Quilmes under *Grupo Gigante* would invalidate Warsteiner's purported rights (as Warsteiner's rights would be subordinate to Quilmes' rights under AB's theory). AB has not asserted this self-defeating defense and the fact that it is offering the theory to support burdensome discovery that would be almost impossible to provide reflects the absence of merit to the motion.

If the lack of logic is not enough, the Court can consider AB's objections, set out in Patagonia's discussion of Interrogatory No. 2 above.  Consistent with its view that discovery is not reciprocal, AB has argued that information about Quilmes' sales in Argentina are "not proportionate to the needs of the case" because they were made outside the United States.  Again, AB should not be permitted to stand on its objections while issuing to Patagonia demands about similar information.

The Court should deny any relief to AB.

**RFP No. 9:**  AB requested licenses that Patagonia has provided to third parties who want to use the company's PATAGONIA formative marks, and

correspondence relating to those agreements.  Patagonia agreed to produce any licenses relating to marks asserted in its Second Amended Complaint that have been in effect since 2012.

Half of AB's argument on this request relates to hairsplitting about the syntax used in Patagonia's response.  AB could have resolved this with an email or a phone call, but instead decided to submit it to the Court.  Patagonia is not confining its production to licenses that are in effect now and were in effect as of 2012, as AB claims in its contorted argument about Patagonia's response.  Patagonia's response conveys that it agreed to  produce licenses relating to marks asserted in its Second Amended Complaint that were in effect at any time since 2012.  This should resolve half of the apparent dispute.

The remainder of AB's argument is another fishing expedition, untethered to any actual issue in the case.  Patagonia's licenses are only relevant, if at all, as bearing on the nature of PATAGONIA products that are sold under the mark.  The type of uses Patagonia "finds acceptable" are reflected in the licenses themselves, already produced, but Patagonia's "thought processes" about the licenses are of no explained consequence.  As Patagonia explained in meet and confer, hunting down "all' correspondence "related to" licenses would be unreasonably burdensome, and the documents, if found, would have no bearing on the claims or defenses in the case (or at least no conceivable bearing that outweighs the burden).  Patagonia's licenses themselves – not the correspondence that might relate to them – set out boundaries for acceptable use, as all licenses do.  Communications about Patagonia's licenses will not, as AB contends, show that Patagonia is aware of third party uses of PATAGONIA, or that Patagonia was aware that PATAGONIA does not unmistakably point to Plaintiffs.  Licenses permit third parties to use a mark, with the goodwill inuring to the licensor (here, Patagonia).  Bona fide licenses do not degrade or fracture a trademark owner's rights.  AB knows this and, if for some reason AB believes that discovery about a particular license has some significance,

it can tailor a request to that license.  There is no justification, however, for speculating that "all" communications about "all" licenses will satisfy any discovery need.  This request for relief should again be denied.

**RFP No. 11:** Patagonia agreed to produce all responsive agreements, settlements, concurrent use agreements, etc.  AB speculates about agreements that did not come to fruition and about the potential relevance of "communications" related to those agreements or "proposed" agreements (though AB now ostensibly extends "proposed" agreements to cover "drafts" even if there is a final agreement).  It says, "if Plaintiffs sought to enforce their mark in relation to food or beverage products, and then ceased those efforts, that would be highly relevant."  This is not true; what would be relevant would be the use made by the third party, if any.  But, AB already would have documents evidencing that hypothetical situation as Patagonia has agreed in response to AB's RFP Nos 6 and 35 to produce documents showing origination of the supposed enforcement matter.  AB, accordingly would know of any unresolved matter, and can conduct its investigation from there.

By the same token, AB's bewildering hypothetical that Patagonia may have "abandoned" a product category expansion project because it received an offer of coexistence but withdrew rather than reaching an agreement is apropos of nothing in reality.  But, in any event, Patagonia agreed in response to No. 57 (not part of this motion) to produce documents showing any such instance in which a third party asserted rights in a PATAGONIA-formative mark against Patagonia, if any exist.  No relief is necessary to meet the stated needs, which themselves are enormously speculative, and certainly is unwarranted given the burden.

**RFP Nos. 42 and 43:** AB argues that Patagonia should be obligated to produce every piece of correspondence related to its trademark enforcement.  In this sense the motion raises carbon copy issues that have already been discussed at length. See Nos. 6, 11, and 35. In connection with **RFP No. 42**, AB offers a new argument: Patagonia should respond with all communications about an

Cooley LLP
Attorneys At Law
Los Angeles

53

Joint Stip. Re Defendant's Motion to Compel
CASE NO. 2:19-CV-02702-VAP (JEMx)

enforcement matter, AB claims, because AB agreed to produce documents in response to Patagonia's request for documents reflecting AB's enforcement of rights to its PATAGONIA trademark.  The argument reflects an egregious false parallel.  AB has not denied that it has one enforcement matter – a letter it sent to New Belgium in 2013.  If there were more and AB offered what Patagonia has proposed, Patagonia would have accepted.  Patagonia faces a far greater burden collecting all correspondence related to approximately 100 enforcement matters, already produced, than AB does collecting correspondence related to one.  Unsurprisingly, despite invoking its own response, AB has not even produced a copy of its letter to New Belgium as of the date of this motion.

**RFP No. 43** squarely targets privileged documents, seeking documents concerning Patagonia's decision *not* to enforce its rights against third parties.  Beyond what already has been agreed to be produced (Nos. 6, 34, 35, 42), it is difficult to imagine a responsive document that would not be privileged.  Additionally, as Patagonia explained in meet and confer, the request presents yet another challenge (and undue burden) in calling for a search of documents that reflect a negative – the lack of enforcement of a right.  If there is an identified third party use about which AB wants such information, Patagonia's response after meet and confer was that Patagonia would search for responsive documents about particular third parties that AB identifies so that a specific search may be made.  It is difficult to imagine, why it would be unreasonable to ask AB to identify the uses about which it is interested so that Patagonia can determine if it affirmatively decided not to pursue a matter rather than engaging in a wild goose chase, unbounded by time, trying to find matters that Patagonia did not pursue.

**ROG 4**:  This interrogatory seeks all facts regarding each third party use or registration for a PATAGONIA-formative mark known to Patagonia.  It is overbroad on its face, and given the number of enforcement matters Patagonia has handled – and agreed to produce documents reflecting – the burden involved in

CooLEY LLP
Attorneys At Law
Los Angeles

54

**Joint Stip. Re Defendant's Motion to Compel
CASE NO. 2:19-CV-02702-VAP (JEMx)**

responding readily justifies Patagonia's reliance on Fed. R. Civ. Proc. 33(d) in its response.   Any meaningful information responsive to this interrogatory will be contained in the documents already  agreed to be produced.

### C.    Discovery Requests Relating to Alleged Strength of Plaintiffs' PATAGONIA Marks (RFP Nos. 13, 14, 15, 21, 37, and 38)

| Request | Response |
| --- | --- |
| **RFP No. 13:** All DOCUMENTS that YOU have received from the U.S. Patent & Trademark Office ("USPTO") in which the USPTO has rejected YOUR application to register the mark PATAGONIA (alone or with other terms), for any goods or services, due to a perceived likelihood of confusion with a preexisting application or registration, along with YOUR response(s) thereto, and any non-privileged COMMUNICATIONS within YOUR company relating these subjects (e.g. internal emails referring to the USPTO rejection or information needed for the response). | RESPONSE TO RFP NO. 13 In addition to the general objections, Patagonia objects to this Request as unduly burdensome to the extent it seeks public USPTO records which are equally available to AB. Patagonia further objects that the Request is overbroad and disproportionate to the needs of the case to the extent it demands that Patagonia search its internal files for all non-privileged communications concerning a USPTO likelihood-of-confusion refusal for any trademark application Patagonia has filed for a PATAGONIA-formative mark. As a consequence, Patagonia will produce non-privileged communications, if any, discussing any 2(d) refusal issued by the USPTO for its applications to register a PATAGONIA-formative trademark for alcoholic beverages. The USPTO records are publicly available on the USPTO's website. <br><br> Supplemental Response: If Anheuser Busch reasonably requests information regarding other Patagonia applications for marks including PATAGONIA – that were denied by the PTO based on Section 2(d) – Patagonia will produce or authenticate public records for such applications and will produce non-privileged documents that reasonably can be located with an ESI search which discuss such refusal. |
| **RFP No. 14:** All DOCUMENTS that | RESPONSE TO RFP NO. 14 In addition to the general objections, Patagonia |

Cooley LLP
Attorneys At Law
Los Angeles

55

Joint Stip. Re Defendant's Motion to Compel
CASE NO. 2:19-CV-02702-VAP (JEMx)

| Request | Response |
|---|---|
| YOU have received from the USPTO in which the USPTO has indicated that the term PATAGONIA refers to a region in South America, along with YOUR response(s) thereto, and any non-privileged COMMUNICATIONS within YOUR company relating these subjects (e.g. internal emails referring to the USPTO's findings or information needed to respond to that finding). | objects to this Request as unduly burdensome to the extent it seeks public USPTO records which are equally available to AB. Patagonia further objects that the Request is overbroad and disproportionate to the needs of the case to the extent it demands that Patagonia search its internal files for all non-privileged communications concerning any indication by the USPTO that the term Patagonia refers to a region in South America. As a consequence, Patagonia will produce non-privileged communications discussing any finding by the USPTO that the term Patagonia refers to a region in South America, in connection with Patagonia's applications to register a PATAGONIA-formative trademark for alcoholic beverages. The USPTO records are publicly available on the USPTO's website.<br><br>Supplemental Response: Patagonia will search trademark law department custodians for the terms "South America," "Patagonia region" or "geographically descriptive" and, if a reasonable number of documents are identified (@ 200), it will review them for responsiveness. More is unduly burdensome given that any such documents are publicly available and are of marginal relevance beyond the documents already agreed to be produced. |
| **RFP No. 15:** All DOCUMENTS CONCERNING consumer survey(s) or research YOU have commissioned, directed, or received that relate to a likelihood of confusion between | RESPONSE TO RFP NO. 15<br>In addition to the general objections, Patagonia objects to this Request as unduly burdensome to the extent it seeks "[a]ll documents" concerning the identified subject matter, which conceivably encompasses every document referring to a survey even if the survey was not completed. Patagonia further objects to the Request as overbroad as it is not limited in time. |

Cooley LLP
Attorneys At Law
Los Angeles

56

Joint Stip. Re Defendant's Motion to Compel
Case No. 2:19-CV-02702-VAP (JEMx)

| Request | Response |
|---|---|
| YOUR use of PATAGONIA on the one hand, and another PERSON's use of the name or mark PATAGONIA on the other hand. | As a consequence, Patagonia will produce non-privileged documents relating to surveys conducted at Patagonia's request since 2006 to the present regarding any likelihood of confusion between Patagonia's use of its PATAGONIA marks and a third party's use of a PATAGONIA mark on alcoholic beverages. <br><br> Supplemental Response: Patagonia will produce the documents it agreed to produce, except it will also produce such documents relating to surveys for confusion regarding charitable or environmental services, or for apparel. |
| **RFP No. 21:** DOCUMENTS sufficient to show the identities of any PERSON to which YOU have granted permission to place that PERSON's corporate brand on YOUR products, including, but not limited to, instances where YOU allowed a third party to put its logo on a jacket made by YOU. | RESPONSE TO RFP NO. 21 <br> In addition to the general objections, Patagonia objects to the Request as disproportionate to the nature of the case and not relevant to the claims and defenses asserted in this action. Patagonia further objects that this Request is overbroad as it is not limited in time. <br><br> Supplemental Response: Patagonia will make a reasonable ESI search for and produce documents showing any approval or rejection of approval of AB's use or request to use a corporate logo on a PATAGONIA branded product. |
| **RFP No. 37:** All DOCUMENTS CONCERNING any efforts by YOU to ascertain whether YOUR use of the designation "Patagonia" is descriptive, misdescriptive, or deceptive. | RESPONSE TO RFP NO. 37 <br> In addition to the general objections, Patagonia objects to this Request as vague and ambiguous as the Request is not limited to any specific goods and services and thus it's impossible to determine whether a mark is descriptive, misdescriptive, or deceptive. |
| **RFP No. 38:** All | RESPONSE TO RFP NO. 38 |

| Request | Response |
|---|---|
| DOCUMENTS CONCERNING surveys or other studies conducted by YOU, that refer or relate to consumer recognition of the PATAGONIA MARKS. | In addition to the general objections, Patagonia objects to this Request as overbroad in that it seeks "[a]ll" documents concerning the identified subject matter, which conceivably encompasses every document referring to a consumer recognition survey even if the survey was not completed. As a consequence, Patagonia will produce non-privileged survey results relating to consumer recognition of the PATAGONIA marks. <br><br> Supplemental Response: To the extent responsive survey results are identified, Patagonia agrees to produce non-privileged documents sufficient to show the survey methodology. |

## 1.    AB's Argument in Support of Motion to Compel

**Summary of Issue**:   As explained above, Plaintiffs make numerous assertions about the strength of their PATAGONIA mark—including that it "enjoys strong consumer recognition" and that "[t]he PATAGONIA trademarks are distinctive, arbitrary, and fanciful, entitled to the broadest scope of protection." (SAC ¶¶ 42, 46.)   Yet the USPTO refused Plaintiffs' applications to register PATAGONIA for wine, because it found the term to be geographically descriptive (of the Patagonia region) and not capable of functioning as a trademark.  (Dkt.16-1, Exs. B, C.)   Similar findings by the USPTO and Plaintiffs' own internal discussions of such findings, as well as documents related to Plaintiffs' efforts to determine the strength of its PATAGONIA marks through surveys or other investigations, are highly relevant to the claims asserted in this action.

**RFP Nos. 13 and 14** seek documents relating to USPTO refusals of Plaintiffs' applications on the grounds of likelihood of confusion with third-party marks and on the grounds of descriptiveness, as well as any non-privileged communications discussing such refusals.  Plaintiffs respond that they will produce

Cooley LLP
Attorneys At Law
Los Angeles

58

Joint Stip. Re Defendant's Motion to Compel
CASE NO. 2:19-CV-02702-VAP (JEMx)

such refusals *only if* AB identifies the specific applications where the refusal was issued for RFP No. 13, and only if less than 200 documents are identified after running a narrow set of search terms for RFP No. 14.  Although Plaintiff argues that the Request seeks publicly-available USPTO files, digital USPTO records are available only for more recent applications, while older applications utilized paper records that are not available online.  (Peterson Decl. ¶9.)  Moreover, even for online documents, the USPTO's records are not searchable by key words, whereas it appears that Plaintiffs' files are searchable (although Plaintiffs refused to directly answer that question).  As Plaintiffs' response to RFP No. 14 shows, Plaintiffs can conduct keyword searches of their trademark files, and thus it is far less burdensome for Plaintiffs to identify and produce these relevant documents pertaining to the strength of their marks.  Plaintiffs' attempt to limit their review of documents to only 200 is arbitrary and unreasonable.  To identify potentially relevant USPTO documents, AB proposed the following search terms:  "likelihood of confusion" or "geographic location" or "geographic place" or "geographic indication" or "South America" or "Patagonia region" or (Patagonia w/2 region) or "geographically descriptive"—all terms located in the USPTO refusals of which AB is aware.  Plaintiffs have refused to search for these terms to identify the USPTO filings, yet have provided no support for their claim that the search results would be unduly burdensome to review.  Accordingly, the Court should order Plaintiffs to produce documents and communications responsive to RFP Nos. 13 and 14, without Plaintiffs' arbitrary limitations.

**RFP No. 15** seeks documents concerning consumer surveys or research received by Plaintiffs pertaining to the likelihood of confusion of its PATAGONIA marks with any third-party marks, while **RFP Nos. 37 and 38** seek similar documents pertaining to surveys or other efforts to ascertain whether Plaintiffs' PATAGONIA marks are descriptive or mis-descriptive with respect to any of its goods or services.  In response to RFP No. 15, Plaintiffs refuse to produce

documents relating to incomplete surveys (*e.g.*, surveys that were started and not completed) and surveys relating to educational goods or services, which they allege are at issue in their SAC. (SAC ¶¶ 40, 66, 79.) Notably, Plaintiffs did not state whether these documents actually exist. Plaintiffs also refuse to produce any documents in response to RFP No. 37, and agree to produce only "survey results" and "documents sufficient to show the survey methodology" in response to RFP No. 38. Again, Plaintiffs have sought similar documents from AB yet refuse to produce them in response to AB's requests. Incomplete surveys as to the recognition of Plaintiffs' PATAGONIA marks, dilution, or likelihood of confusion with other companies that use PATAGONIA, or regarding whether consumers associate Plaintiffs' PATAGONIA products with the Patagonia region are relevant. For example, if Plaintiffs commissioned a survey that returned poor results (e.g. that Plaintiffs' PATAGONIA mark is not well known nationally or in parts of the U.S.), and then chose not to conclude the survey, the documents are still highly relevant to the strength and alleged fame of Plaintiffs' marks. Or, if Plaintiffs commissioned a study to determine how consumers might perceive the use of PATAGONIA on alcoholic beverages (whether that beer came from Plaintiffs or a third party), and after obtaining data, Plaintiffs opted not to complete it, those partial results would still be probative.

Although Plaintiffs object that RFP No. 37 is vague and ambiguous, it is not, and AB clarified that it relates to any goods or services covered by the marks asserted in the SAC. As Patagonia is a geographic region, the term could be descriptive, mis-descriptive, or deceptive in connection with any good or service. Plaintiffs also have no basis for refusing to produce communications regarding those surveys. Plaintiffs' discussions of surveys relating to its marks are relevant to their asserted trademark rights. Accordingly, as outlined above, the Court should issue an order requiring Plaintiffs to produce all documents responsive to RFP Nos. 15, 37, and 38.

## 2.    Plaintiffs' Opposition

**Introduction:**  This batch of discovery requests relates to public filings at and actions taken by the USPTO, and surveys, together with all documents or communications discussing them.  These requests are more examples of AB's refusal to accept or entertain proportionate responses with the opportunity to follow up on any matters that are genuinely of interest.  None of the requests have any reasonable boundaries and largely depend on AB's speculative ruminations about what it hopes or wishes it might find if only Patagonia would agree to look harder.

In response to every request, Patagonia has made accommodations, met and conferred and tried to reach a reasonable resolution (thinking it had regarding every request within this group only to find them the subject of this unwieldly motion).  Most or all of the requested documents that Patagonia has not agreed to produce are privileged.  All of the requested documents are either irrelevant, or of marginal relevance that could not justify the burden.

**RFP Nos. 13 and 14:**  AB's motion as to the USPTO files raises the question whether AB has to bear any proportion of the burden of its discovery, or to provide any specificity beyond "all" documents that it hopes may be relevant to its defenses.  Every trademark application that was denied due to descriptiveness or likelihood of confusion relating to at least the past 20 years is available online.  All of the registered trademarks Patagonia has used since that time are either online or incontestable and cannot be challenged on any of the grounds AB says it wants to explore.  The live registrations that precede those dates are also online.

To avoid the obvious reasonableness of Patagonia's response, AB pretends that it is too burdensome to identify any trademark applications beyond the alcohol related applications (with related documents) that Patagonia already has agreed to produce.  Instead, it demands that Patagonia review all documents revealed by a

half dozen barely restrictive search terms and tells the Court that reviewing more than 200 such documents for production is insufficient to spare AB the trouble of spending an hour or two online and telling Patagonia to look for something specific.

Patagonia's applications for PATAGONIA for wine and beer, as AB has indicated, were denied by the USPTO on both grounds of likely confusion – with AB's registration – and geographic descriptiveness. Patagonia agreed to produce the requested refusals and documents discussing them for the alcoholic beverage applications. AB fails to explain why documents related to these applications (obviously the most relevant, if any of these are relevant at all) are not cumulative of any other discussions of similar USPTO refusals.

Patagonia has explained that because of the nature of the requests – Patagonia's actions or documents written about USPTO refusals – any responsive documents undoubtedly will be privileged. Non-lawyers do not discuss technical details of USPTO refusals with their business colleagues. To the extent Patagonia has non-privileged copies of USPTO files, they almost certainly are the exact same documents as those available on the USPTO system. If they are not privileged or public, Patagonia's internal conversations among business people, if any, about a USPTO refusal are highly unlikely to be relevant or probative of any issue.

AB has provided any support for its conjecture that there could be a conversation among business people about a USPTO refusal. Its requests in this motion can be denied on that basis alone. AB's glib suggestion that Patagonia should search more than 20 year old paper files, if they could be located, for such tangential and, by definition, outdated records is self-explanatory about the overbreadth of these requests.

**RFP No. 21:** AB quotes but makes no argument about this request.

**RFP Nos. 15, 37 and 38:** Patagonia met and conferred about these requests extensively and supplemented its responses in accordance with an expanded agreement to produce documents. As Patagonia explained, the problem with

agreeing to produce additional documents, beyond those agreed, is that much of the request is an exercise in logging privileged documents. If there are non-privileged surveys (none have been located so far, something AB would know if it had followed up since the meet and confer), there is no reason why AB can't follow up with specific requests tailored to the information it needs rather than sending Patagonia to its computers to make searches for "all" documents discussing a survey created in preparation of litigation and then listing them on a privilege or work product log.

Once again, there is little question that AB is overreaching in its demands. The breadth of documents AB seeks relating to likelihood of confusion and consumer recognition surveys (which is essentially the mirror of descriptiveness surveys) is more expansive than the material that will be discoverable relating to surveys *conducted in this case*. *Cf.* Fed. R. Civ. P. 26(b)(4)(B)-(D).

### D.    Discovery Requests Relating to Damages (RFP Nos. 33 and 44)

| Request | Response |
|---|---|
| **RFP No. 33**: From YOUR inception to present, DOCUMENTS sufficient to show YOUR audited and unaudited annual profit and loss statements. | RESPONSE TO RFP NO. 33<br>Subject to the general objections, Patagonia objects to this Request as irrelevant except to the extent that it is duplicative of other requests. |
| **RFP No. 44:** All DOCUMENTS CONCERNING any damages suffered by YOU as a result of any actions by AB, including, but not limited to, all DOCUMENTS relating to any lost sales or | RESPONSE TO RFP NO. 44<br>In addition to the general objections, Patagonia objects to this Request as premature as Patagonia' investigation is ongoing. Patagonia further objects to the Request to the extent it calls for expert testimony and opinion.<br><br>Supplemental Response: Patagonia will, once it has identified them, produce any documents upon which it intends to rely to show damages, |

Cooley LLP
Attorneys At Law
Los Angeles

63

Joint Stip. Re Defendant's Motion to Compel
Case No. 2:19-cv-02702-VAP (JEMx)

| Request | Response |
|---|---|
| profits by YOU or any harm to YOU or YOUR reputation. | including corrective advertising expenses, reduced sales, lost profits, lost opportunities resulting from the AB registration, and other damages that are identified. |

### 1.    AB's Argument in Support of Motion to Compel

**RFP Nos. 33 and 34** seek, respectively, Plaintiffs' profit and loss statements and all documents concerning any damages suffered by Plaintiffs as a result of any actions by AB.  Plaintiffs improperly refuse to produce profit and loss statements and purport to limit their production of documents relating to damages to those upon which they intend to rely.  Plaintiffs' profits (or losses) are relevant to their claimed damages, and AB's ability to challenge and verify those alleged damages. For example, if Plaintiffs operate at a loss in connection with the PATAGONIA marks, they can hardly argue that they have been harmed by any alleged actions by AB.  Further, with respect to documents concerning their damages, Plaintiffs must produce all responsive documents, including documents that demonstrate they have not, in fact, been damaged, or that otherwise undermine their claimed damages. Plaintiffs cannot unilaterally decide to produce only those damages documents that help their case, while depriving AB of relevant information critical to its defenses. Thus, the Court should order Plaintiffs to produce documents fully responsive to these RFPs.

### 2.    Plaintiffs' Opposition

**RFP Nos. 33 and 44:**  AB offers nothing but overly simplistic hypotheticals that add no justification for AB to rummage through Patagonia's P&Ls "since [its] inception," a time frame that drops any pretense of searching for genuine damages related evidence.  Patagonia has agreed to produce sales volume information (RFP No. 29 – all of Patagonia); sales revenue (RFP No. 30 – all of Patagonia); sales revenue (RFP No. 31 – beer); and all documents that it relies on to support its damages claims (RFP No. 34.  It is clear from these requests that AB knows what

it might want to look for in order to support any damage rebuttal. Patagonia's P&L for its overall business (mostly apparel)has nothing to do with damages it suffered due to AB's interference with its right to use the PATAGONIA mark on beer, and its infringement and dilution of the PATAGONIA mark. Certainly there is no truth to AB's logic for receiving the P&Ls that, if Patagonia lost money it could not have suffered any damages.

AB also complains that Plaintiffs are, in response to the request for damages information, excluding "documents that demonstrate they have not, in fact, been damaged, or that otherwise undermine their claimed damages." First, this is not true; Patagonia committed to producing the documents it relied on, whether all information contained in them is supportive or not; information contained in such documents may well undermine Patagonia's claims in AB's view. Second, nothing in the rules requires Patagonia to try and divine what arguments AB may want to make that "undermine" Patagonia's damages claims. The request asks for documents concerning "damages." By any definition these documents are the ones that support the claimed harm. If it is not a harm that is claimed, then it is not "damages." AB is fully capable of asking specifically for any documents it needs to support a claim that there has been no damage; Patagonia should not be required to guess what AB might like to pursue, nor would it be possible. Patagonia has, in its response, outlined potential damages so that AB has guidance about what it might want to seek.

### E.    Requests for Admission Relating to Specific Examples of Third-Party Use Provided in AB's Discovery

| Request[7] | Response |
|---|---|
| No. 1 - Admit that the PATAGONIAMALT trademark, as | Patagonia interprets the Request as seeking information about content |

---

[7] Identical RFAs were served on Plaintiff Patagonia Provisions, Inc., and must also be answered.

Cooley LLP
Attorneys At Law
Los Angeles

65

Joint Stip. Re Defendant's Motion to Compel
Case No. 2:19-cv-02702-VAP (JEMx)

| | |
|---|---|
| shown in U.S. Registration 4,407,659, does not create a false suggestion of a connection with Patagonia, Inc. | shown in the registration certificate associated with the cited registration number. Patagonia objects to the Request as improper in that it assumes that the cited term is used or has been used as a trademark. Patagonia is unaware of how the term has been used (if at all), whether it has been used as a trademark, and whether any use or other context suggests an intent to associate the purported mark – which is not identical to the Patagonia name – with Patagonia's identity. Patagonia further objects to the Request as improper in that it calls for a legal conclusion as to the application of the false suggestion doctrine. The Request does not require a response due to its improper structure and substance. |
| No. 6 - Admit that YOU do not contend that Malterias Unidas S.A.'s use of the PATAGONIAMALT trademark shown in U.S. Registration 4,407,659 creates a likelihood of confusion with any of Patagonia, Inc.'s trademarks. | Patagonia interprets the Request as seeking information about content shown in the specimen associated with the cited registration number because, to the extent that the mark has been used at all, the specimen shows how the registrant purports to have rendered or displayed the cited term. Patagonia objects to the Request as improper in that it assumes that the cited term is used or has been used as a trademark. Patagonia is unaware of how the term has been used (if at all), and whether it has been used as a trademark. Patagonia further objects to the Request as improper in that it calls for a legal conclusion as to the application of the likelihood of confusion doctrine. The Request does not require a response due to its improper structure and substance. |

Cooley LLP
Attorneys At Law
Los Angeles

66

Joint Stip. Re Defendant's Motion to Compel
CASE NO. 2:19-CV-02702-VAP (JEMx)

| No. 7 - Admit that YOU do not contend that Malterias Unidas S.A.'s use of the PATAGONIAMALT trademark shown in U.S. Registration 4,407,659 is likely to cause dilution of any of Patagonia Inc.'s trademarks. | Patagonia interprets the Request as seeking information about content shown in the specimen associated with the cited registration number because, to the extent that the mark has been used at all, the specimen shows how the registrant purports to have rendered or displayed the cited term. Patagonia objects to the Request as improper in that it assumes that the cited term is used or has been used as a trademark. Patagonia is unaware of how the term has been used (if at all), and whether it has been used as a trademark. Patagonia further objects to the Request as improper in that it calls for a legal conclusion as to the application of the likelihood of dilution doctrine. The Request does not require a response due to its improper structure and substance. |
| No. 8 - Admit that the PATAGONIA BERRIES trademark, as shown in U.S. Registration 4,809,266, does not create a false suggestion of a connection with Patagonia, Inc. | Patagonia interprets the Request as seeking information about content shown in the registration certificate associated with the cited registration number. Patagonia objects to the Request as improper in that it assumes that the cited term is used or has been used as a trademark. Patagonia is unaware of how the term has been used (if at all), whether it has been used as a trademark, and whether any use or other context suggests an intent to associate the purported mark – which is not identical to the Patagonia name – with Patagonia's identity. Patagonia further objects to the Request as improper in that it calls for a legal conclusion as to the application of the false suggestion doctrine. The |

Cooley LLP
Attorneys At Law
Los Angeles

67

Joint Stip. Re Defendant's Motion to Compel
Case No. 2:19-cv-02702-VAP (JEMx)

| | |
|---|---|
| | Request does not require a response due to its improper structure and substance. |
| **No. 13** - Admit that YOU do not contend that Make It Happen S.A.'s use of the PATAGONIA BERRIES trademark shown in U.S. Registration 4,809,266 creates a likelihood of confusion with any of Patagonia, Inc.'s trademarks | Patagonia interprets the Request as seeking information about content shown in the specimen associated with the cited registration number because, to the extent that the mark has been used at all, the specimen shows how the registrant purports to have rendered or displayed the cited term. Patagonia objects to the Request as improper in that it assumes that the cited term is used or has been used as a trademark. Patagonia is unaware of how the term has been used (if at all), and whether it has been used as a trademark. Patagonia further objects to the Request as improper in that it calls for a legal conclusion as to the application of the likelihood of confusion doctrine. The Request does not require a response due to its improper structure and substance. |
| **No. 14** - Admit that YOU do not contend that Make It Happen S.A.'s use of the PATAGONIA BERRIES trademark shown in U.S. Registration 4,809,266 is likely to cause dilution of any of Patagonia Inc.'s trademarks. | Patagonia interprets the Request as seeking information about content shown in the specimen associated with the cited registration number because, to the extent that the mark has been used at all, the specimen shows how the registrant purports to have rendered or displayed the cited term. Patagonia objects to the Request as improper in that it assumes that the cited term is used or has been used as a trademark. Patagonia is unaware of how the term has been used (if at all), and whether it has been used as a trademark. Patagonia further objects to the Request as improper in that it calls |

Cooley LLP
Attorneys At Law
Los Angeles

68

Joint Stip. Re Defendant's Motion to Compel
CASE NO. 2:19-CV-02702-VAP (JEMx)

| | |
|---|---|
| | for a legal conclusion as to the application of the likelihood of dilution doctrine. The Request does not require a response due to its improper structure and substance. |
| No. 20 - Admit that the WILD PATAGONIA trademark, as shown in U.S. Registration 4,175,612, does not create a false suggestion of a connection with Patagonia, Inc. | Patagonia interprets the Request as seeking information about content shown in the registration certificate associated with the cited registration number. Patagonia objects to the Request as improper in that it assumes that the cited term is used or has been used as a trademark. Patagonia is unaware of how the term has been used (if at all), whether it has been used as a trademark, and whether any use or other context suggests an intent to associate the purported mark – which is not identical to the Patagonia name – with Patagonia's identity. Patagonia further objects to the Request as improper in that it calls for a legal conclusion as to the application of the false suggestion doctrine. The Request does not require a response due to its improper structure and substance. |
| No. 24 – "Admit that YOU do not contend that Aristocrat Technologies Australia Pty Ltd.'s use of the WILD PATAGONIA trademark shown in U.S. Registration 4,175,612 creates a likelihood of confusion with any of Patagonia, Inc.'s trademarks. | Patagonia interprets the Request as seeking information about content shown in the specimen associated with the cited registration number because, to the extent that the mark has been used at all, the specimen shows how the registrant purports to have rendered or displayed the cited term. Patagonia objects to the Request as improper in that it assumes that the cited term is used or has been used as a trademark. Patagonia is unaware of how the term has been used (if at all), |

CooleyLLP
Attorneys At Law
Los Angeles

69

Joint Stip. Re Defendant's Motion to Compel
CASE NO. 2:19-CV-02702-VAP (JEMx)

| | |
|---|---|
| | and whether it has been used as a trademark. Patagonia further objects to the Request as improper in that it calls for a legal conclusion as to the application of the likelihood of confusion doctrine. The Request does not require a response due to its improper structure and substance. |
| No. 25 - Admit that YOU do not contend that Aristocrat Technologies Australia Pty Ltd.'s use of the WILD PATAGONIA trademark shown in U.S. Registration 4,175,612 is likely to cause dilution of any of Patagonia Inc.'s trademarks. | Patagonia interprets the Request as seeking information about content shown in the specimen associated with the cited registration number because, to the extent that the mark has been used at all, the specimen shows how the registrant purports to have rendered or displayed the cited term. Patagonia objects to the Request as improper in that it assumes that the cited term is used or has been used as a trademark. Patagonia is unaware of how the term has been used (if at all), and whether it has been used as a trademark. Patagonia further objects to the Request as improper in that it calls for a legal conclusion as to the application of the likelihood of dilution doctrine. The Request does not require a response due to its improper structure and substance. |
| No. 26 - Admit that the PATAGONIA trademark, as shown in U.S. Registration 4,384,331, does not create a false suggestion of a connection with Patagonia, Inc. | Patagonia interprets the Request as seeking information about content shown in the registration certificate associated with the cited registration number. Patagonia objects to the Request as improper in that it assumes that the cited term is used or has been used as a trademark. Patagonia is unaware of how the term has been used (if at all), whether it has been used as a trademark, and whether any |

Cooley LLP
Attorneys At Law
Los Angeles

70

Joint Stip. Re Defendant's Motion to Compel
CASE NO. 2:19-CV-02702-VAP (JEMx)

| | |
|---|---|
| | use or other context suggests an intent to associate the purported mark – which is not identical to the Patagonia name – with Patagonia's identity. Patagonia further objects to the Request as improper in that it calls for a legal conclusion as to the application of the false suggestion doctrine. The Request does not require a response due to its improper structure and substance. |
| No. 30 - Admit that YOU do not contend that Tireco, Inc.'s use of the PATAGONIA trademark shown in U.S. Registration 4,384,331 creates a likelihood of confusion with any of Patagonia, Inc.'s trademarks. | Patagonia interprets the Request as seeking information about content shown in the specimen associated with the cited registration number because, to the extent that the mark has been used at all, the specimen shows how the registrant purports to have rendered or displayed the cited term. Patagonia objects to the Request as improper in that it assumes that the cited term is used or has been used as a trademark. Patagonia is unaware of how the term has been used (if at all), and whether it has been used as a trademark. Patagonia further objects to the Request as improper in that it calls for a legal conclusion as to the application of the likelihood of confusion doctrine. The Request does not require a response due to its improper structure and substance. |
| No. 31 - Admit that YOU do not contend that Tireco, Inc.'s use of the PATAGONIA trademark shown in U.S. Registration 4,384,331 is likely to cause dilution of any of Patagonia Inc.'s trademarks. | Patagonia interprets the Request as seeking information about content shown in the specimen associated with the cited registration number because, to the extent that the mark has been used at all, the specimen shows how the registrant purports to have rendered or displayed the cited term. |

Cooley LLP
Attorneys At Law
Los Angeles

71

Joint Stip. Re Defendant's Motion to Compel
CASE NO. 2:19-CV-02702-VAP (JEMx)

| | |
|---|---|
| | Patagonia objects to the Request as improper in that it assumes that the cited term is used or has been used as a trademark. Patagonia is unaware of how the term has been used (if at all), and whether it has been used as a trademark. Patagonia further objects to the Request as improper in that it calls for a legal conclusion as to the application of the likelihood of dilution doctrine. The Request does not require a response due to its improper structure and substance. |
| No. 32 - Admit that the PATAGONIA & Design trademark, as shown in U.S. Registration 4,665,133, does not create a false suggestion of a connection with Patagonia, Inc. | Patagonia interprets the Request as seeking information about content shown in the registration certificate associated with the cited registration number. Patagonia objects to the Request as improper in that it assumes that the cited term is used or has been used as a trademark. Patagonia is unaware of how the term has been used (if at all), whether it has been used as a trademark, and whether any use or other context suggests an intent to associate the purported mark – which is not identical to the Patagonia name – with Patagonia's identity. Patagonia further objects to the Request as improper in that it calls for a legal conclusion as to the application of the false suggestion doctrine. The Request does not require a response due to its improper structure and substance. |
| No. 35 - Admit that YOU do not contend that Maximilien de Hoop Cartier's use of the PATAGONIA trademark shown in U.S. Registration 4,665,133 creates a likelihood of | Patagonia interprets the Request as seeking information about content shown in the specimen associated with the cited registration number because, to the extent that the mark has been |

Cooley LLP
Attorneys At Law
Los Angeles

72

Joint Stip. Re Defendant's Motion to Compel
Case No. 2:19-cv-02702-VAP (JEMx)

| | |
|---|---|
| confusion with any of Patagonia, Inc.'s trademarks. | used at all, the specimen shows how the registrant purports to have rendered or displayed the cited term. Patagonia objects to the Request as improper in that it assumes that the cited term is used or has been used as a trademark. Patagonia is unaware of how the term has been used (if at all), and whether it has been used as a trademark. Patagonia further objects to the Request as improper in that it calls for a legal conclusion as to the application of the likelihood of confusion doctrine. The Request does not require a response due to its improper structure and substance. |
| No. 36 - Admit that YOU do not contend that Maximilien de Hoop Cartier's use of the PATAGONIA trademark shown in U.S. Registration 4,665,133 is likely to cause dilution of any of Patagonia Inc.'s trademarks. | Patagonia interprets the Request as seeking information about content shown in the specimen associated with the cited registration number because, to the extent that the mark has been used at all, the specimen shows how the registrant purports to have rendered or displayed the cited term. Patagonia objects to the Request as improper in that it assumes that the cited term is used or has been used as a trademark. Patagonia is unaware of how the term has been used (if at all), and whether it has been used as a trademark. Patagonia further objects to the Request as improper in that it calls for a legal conclusion as to the application of the likelihood of dilution doctrine. The Request does not require a response due to its improper structure and substance. |
| No. 37 - Admit that the PATAGONIA trademark, as shown in U.S. Registration 3,612,456, does not create | Patagonia interprets the Request as seeking information about content shown in the registration certificate |

| | |
|---|---|
| a false suggestion of a connection with Patagonia, Inc. | associated with the cited registration number. Patagonia objects to the Request as improper in that it assumes that the cited term is used or has been used as a trademark. Patagonia is unaware of how the term has been used (if at all), whether it has been used as a trademark, and whether any use or other context suggests an intent to associate the purported mark – which is not identical to the Patagonia name – with Patagonia's identity. Patagonia further objects to the Request as improper in that it calls for a legal conclusion as to the application of the false suggestion doctrine. The Request does not require a response due to its improper structure and substance. |
| No. 41 - Admit that YOU do not contend that Patagonia Foods Corp.'s use of the PATAGONIA trademark shown in U.S. Registration 3,612,456 creates a likelihood of confusion with any of Patagonia, Inc.'s trademarks. | Patagonia interprets the Request as seeking information about content shown in the specimen associated with the cited registration number because, to the extent that the mark has been used at all, the specimen shows how the registrant purports to have rendered or displayed the cited term. Patagonia objects to the Request as improper in that it assumes that the cited term is used or has been used as a trademark. Patagonia is unaware of how the term has been used (if at all), and whether it has been used as a trademark. Patagonia further objects to the Request as improper in that it calls for a legal conclusion as to the application of the likelihood of confusion doctrine. The Request does not require a response due to its improper structure and substance. |

| No. 42 - Admit that YOU do not contend that Patagonia Foods Corp.'s use of the PATAGONIA trademark shown in U.S. Registration 3,612,456 is likely to cause dilution of any of YOUR trademarks. | Patagonia interprets the Request as seeking information about content shown in the specimen associated with the cited registration number because, to the extent that the mark has been used at all, the specimen shows how the registrant purports to have rendered or displayed the cited term. Patagonia objects to the Request as improper in that it assumes that the cited term is used or has been used as a trademark. Patagonia is unaware of how the term has been used (if at all), and whether it has been used as a trademark. Patagonia further objects to the Request as improper in that it calls for a legal conclusion as to the application of the likelihood of dilution doctrine. The Request does not require a response due to its improper structure and substance. |
|---|---|
| No. 43 - Admit that the PATAGONIA SUN trademark, as shown in U.S. Registration 4,426,583, does not create a false suggestion of a connection with Patagonia, Inc. | Patagonia interprets the Request as seeking information about content shown in the registration certificate associated with the cited registration number. Patagonia objects to the Request as improper in that it assumes that the cited term is used or has been used as a trademark. Patagonia is unaware of how the term has been used (if at all), whether it has been used as a trademark, and whether any use or other context suggests an intent to associate the purported mark – which is not identical to the Patagonia name – with Patagonia's identity. Patagonia further objects to the Request as improper in that it calls for a legal conclusion as to the application of the false suggestion doctrine. The |

Cooley LLP
Attorneys At Law
Los Angeles

75

Joint Stip. Re Defendant's Motion to Compel
Case No. 2:19-cv-02702-VAP (JEMx)

| | Request does not require a response due to its improper structure and substance. |
|---|---|
| No. 47 - Admit that YOU do not contend that Eduardo C. Engler's use of the PATAGONIA SUN trademark shown in U.S. Registration 4,426,583 creates a likelihood of confusion with any of Patagonia, Inc.'s trademarks. | Patagonia interprets the Request as seeking information about content shown in the specimen associated with the cited registration number because, to the extent that the mark has been used at all, the specimen shows how the registrant purports to have rendered or displayed the cited term. Patagonia objects to the Request as improper in that it assumes that the cited term is used or has been used as a trademark. Patagonia is unaware of how the term has been used (if at all), and whether it has been used as a trademark. Patagonia further objects to the Request as improper in that it calls for a legal conclusion as to the application of the likelihood of confusion doctrine. The Request does not require a response due to its improper structure and substance. |
| No. 48 - Admit that YOU do not contend that Eduardo C. Engler's use of the PATAGONIA SUN trademark shown in U.S. Registration 4,426,583 is likely to cause dilution of any of Patagonia Inc.'s trademarks. | Patagonia interprets the Request as seeking information about content shown in the specimen associated with the cited registration number because, to the extent that the mark has been used at all, the specimen shows how the registrant purports to have rendered or displayed the cited term. Patagonia objects to the Request as improper in that it assumes that the cited term is used or has been used as a trademark. Patagonia is unaware of how the term has been used (if at all), and whether it has been used as a trademark. Patagonia further objects to the Request as improper in that it calls |

| | | for a legal conclusion as to the application of the likelihood of dilution doctrine. The Request does not require a response due to its improper structure and substance. |
|---|---|---|
| No. 49 - Admit that the PATAGONIA SEAFARMS trademark, as shown in U.S. Registration 4,677,235, does not create a false suggestion of a connection with Patagonia, Inc. | | Patagonia interprets the Request as seeking information about content shown in the registration certificate associated with the cited registration number. Patagonia objects to the Request as improper in that it assumes that the cited term is used or has been used as a trademark. Patagonia is unaware of how the term has been used (if at all), whether it has been used as a trademark, and whether any use or other context suggests an intent to associate the purported mark – which is not identical to the Patagonia name – with Patagonia's identity. Patagonia further objects to the Request as improper in that it calls for a legal conclusion as to the application of the false suggestion doctrine. The Request does not require a response due to its improper structure and substance. |
| No. 53 - Admit that YOU do not contend that Patagonia SeaFarms, Inc.'s use of the PATAGONIA SEAFARMS trademark shown in U.S. Registration 4,677,235 creates a likelihood of confusion with any of Patagonia, Inc.'s trademarks. | | Patagonia interprets the Request as seeking information about content shown in the specimen associated with the cited registration number because, to the extent that the mark has been used at all, the specimen shows how the registrant purports to have rendered or displayed the cited term. Patagonia objects to the Request as improper in that it assumes that the cited term is used or has been used as a trademark. Patagonia is unaware of how the term has been used (if at all), |

| | |
|---|---|
| | and whether it has been used as a trademark. Patagonia further objects to the Request as improper in that it calls for a legal conclusion as to the application of the likelihood of confusion doctrine. The Request does not require a response due to its improper structure and substance. |
| No. 54 - Admit that YOU do not contend that Patagonia SeaFarms, Inc.'s use of the PATAGONIA SEAFARMS trademark shown in U.S. Registration 4,677,235 is likely to cause dilution of any of Patagonia Inc.'s trademarks. | Patagonia interprets the Request as seeking information about content shown in the specimen associated with the cited registration number because, to the extent that the mark has been used at all, the specimen shows how the registrant purports to have rendered or displayed the cited term. Patagonia objects to the Request as improper in that it assumes that the cited term is used or has been used as a trademark. Patagonia is unaware of how the term has been used (if at all), and whether it has been used as a trademark. Patagonia further objects to the Request as improper in that it calls for a legal conclusion as to the application of the likelihood of dilution doctrine. The Request does not require a response due to its improper structure and substance. |
| No. 55 - Admit that the PATAGONIA REBELDE trademark, as shown in U.S. Registration 5,200,215, does not create a false suggestion of a connection with Patagonia, Inc. | Patagonia interprets the Request as seeking information about content shown in the registration certificate associated with the cited registration number. Patagonia objects to the Request as improper in that it assumes that the cited term is used or has been used as a trademark. Patagonia is unaware of how the term has been used (if at all), whether it has been used as a trademark, and whether any |

Cooley LLP
Attorneys At Law
Los Angeles

78

Joint Stip. Re Defendant's Motion to Compel
CASE NO. 2:19-CV-02702-VAP (JEMx)

| | |
|---|---|
| | use or other context suggests an intent to associate the purported mark – which is not identical to the Patagonia name – with Patagonia's identity. Patagonia further objects to the Request as improper in that it calls for a legal conclusion as to the application of the false suggestion doctrine. The Request does not require a response due to its improper structure and substance. |
| No. 59 - Admit that YOU do not contend that Invina Limitada's use of the PATAGONIA REBELDE trademark shown in U.S. Registration 5,200,215 creates a likelihood of confusion with any of Patagonia, Inc.'s trademarks. | Patagonia interprets the Request as seeking information about content shown in the specimen associated with the cited registration number because, to the extent that the mark has been used at all, the specimen shows how the registrant purports to have rendered or displayed the cited term. Patagonia objects to the Request as improper in that it assumes that the cited term is used or has been used as a trademark. Patagonia is unaware of how the term has been used (if at all), and whether it has been used as a trademark. Patagonia further objects to the Request as improper in that it calls for a legal conclusion as to the application of the likelihood of confusion doctrine. The Request does not require a response due to its improper structure and substance. |
| No. 60 - Admit that YOU do not contend that Invina Limitada's use of the PATAGONIA REBELDE trademark shown in U.S. Registration 5,200,215 is likely to cause dilution of any of Patagonia Inc.'s trademarks. | Patagonia interprets the Request as seeking information about content shown in the specimen associated with the cited registration number because, to the extent that the mark has been used at all, the specimen shows how the registrant purports to have rendered or displayed the cited term. |

| | |
|---|---|
| | Patagonia objects to the Request as improper in that it assumes that the cited term is used or has been used as a trademark. Patagonia is unaware of how the term has been used (if at all), and whether it has been used as a trademark. Patagonia further objects to the Request as improper in that it calls for a legal conclusion as to the application of the likelihood of dilution doctrine. The Request does not require a response due to its improper structure and substance. |
| No. 61 - Admit that the PATAGONIA CONCHA Y TORO trademark, as shown in U.S. Registration 5,751,555, does not create a false suggestion of a connection with Patagonia, Inc. | Patagonia interprets the Request as seeking information about content shown in the registration certificate associated with the cited registration number. Patagonia objects to the Request as improper in that it assumes that the cited term is used or has been used as a trademark. Patagonia is unaware of how the term has been used (if at all), whether it has been used as a trademark, and whether any use or other context suggests an intent to associate the purported mark – which is not identical to the Patagonia name – with Patagonia's identity. Patagonia further objects to the Request as improper in that it calls for a legal conclusion as to the application of the false suggestion doctrine. The Request does not require a response due to its improper structure and substance. |
| No. 65 - Admit that YOU do not contend that Viña Concha y Toro S.A.'s use of the PATAGONIA CONCHA Y TORO trademark shown in U.S. Registration 5,751,555 creates | Patagonia interprets the Request as seeking information about content shown in the specimen associated with the cited registration number because, to the extent that the mark has been |

Cooley LLP
Attorneys At Law
Los Angeles

80

Joint Stip. Re Defendant's Motion to Compel
CASE NO. 2:19-CV-02702-VAP (JEMx)

| | |
|---|---|
| a likelihood of confusion with any of Patagonia, Inc.'s trademarks. | used at all, the specimen shows how the registrant purports to have rendered or displayed the cited term. Patagonia objects to the Request as improper in that it assumes that the cited term is used or has been used as a trademark. Patagonia is unaware of how the term has been used (if at all), and whether it has been used as a trademark. Patagonia further objects to the Request as improper in that it calls for a legal conclusion as to the application of the likelihood of confusion doctrine. The Request does not require a response due to its improper structure and substance. |
| No. 66 - Admit that YOU do not contend that Viña Concha y Toro S.A.'s use of the PATAGONIA CONCHA Y TORO trademark shown in U.S. Registration 5,751,555 is likely to cause dilution of any of Patagonia, Inc.'s trademarks. | Patagonia interprets the Request as seeking information about content shown in the specimen associated with the cited registration number because, to the extent that the mark has been used at all, the specimen shows how the registrant purports to have rendered or displayed the cited term. Patagonia objects to the Request as improper in that it assumes that the cited term is used or has been used as a trademark. Patagonia is unaware of how the term has been used (if at all), and whether it has been used as a trademark. Patagonia further objects to the Request as improper in that it calls for a legal conclusion as to the application of the likelihood of dilution doctrine. The Request does not require a response due to its improper structure and substance. |
| No. 67 - Admit that the PATAGONIA ORGANICS LLC trademark, as shown in U.S. Registration 5,719,364, does | Patagonia interprets the Request as seeking information about content shown in the registration certificate |

Cooley LLP
Attorneys At Law
Los Angeles

81

Joint Stip. Re Defendant's Motion to Compel
Case No. 2:19-cv-02702-VAP (JEMx)

| | |
|---|---|
| not create a false suggestion of a connection with Patagonia, Inc. | associated with the cited registration number. Patagonia objects to the Request as improper in that it assumes that the cited term is used or has been used as a trademark. Patagonia is unaware of how the term has been used (if at all), whether it has been used as a trademark, and whether any use or other context suggests an intent to associate the purported mark – which is not identical to the Patagonia name – with Patagonia's identity. Patagonia further objects to the Request as improper in that it calls for a legal conclusion as to the application of the false suggestion doctrine. The Request does not require a response due to its improper structure and substance. |
| No. 71 - Admit that YOU do not contend that Patagonia Organics LLC's use of the PATAGONIA ORGANICS LLC trademark shown in U.S. Registration 5,719,364 creates a likelihood of confusion with any of Patagonia, Inc.'s trademarks. | Patagonia interprets the Request as seeking information about content shown in the specimen associated with the cited registration number because, to the extent that the mark has been used at all, the specimen shows how the registrant purports to have rendered or displayed the cited term. Patagonia objects to the Request as improper in that it assumes that the cited term is used or has been used as a trademark. Patagonia is unaware of how the term has been used (if at all), and whether it has been used as a trademark. Patagonia further objects to the Request as improper in that it calls for a legal conclusion as to the application of the likelihood of confusion doctrine. The Request does not require a response due to its improper structure and substance. |

| No. 72 - Admit that YOU do not contend that Patagonia Organics LLC's use of the PATAGONIA ORGANICS LLC trademark shown in U.S. Registration 5,719,364 is likely to cause dilution of any of Patagonia Inc.'s trademarks. | Patagonia interprets the Request as seeking information about content shown in the specimen associated with the cited registration number because, to the extent that the mark has been used at all, the specimen shows how the registrant purports to have rendered or displayed the cited term. Patagonia objects to the Request as improper in that it assumes that the cited term is used or has been used as a trademark. Patagonia is unaware of how the term has been used (if at all), and whether it has been used as a trademark. Patagonia further objects to the Request as improper in that it calls for a legal conclusion as to the application of the likelihood of dilution doctrine. The Request does not require a response due to its improper structure and substance. |
|---|---|

### 1.    AB's Argument in Support of Motion to Compel

In light of Plaintiffs' broad claim of rights against AB, and their allegation that AB's use of PATAGONIA for beer causes them harm, infringes and dilutes their rights, and falsely creates an association with Patagonia, Inc., AB served a series of RFAs in which it (a) provided Plaintiffs with an example of a third party use, and (b) asked whether Plaintiffs contend that the particular use causes confusion, dilutes Plaintiffs' trademark, or creates a false suggestion of a connection with Plaintiffs.

For each third-party use, AB supplied Defendants with an exhibit or URL at which the third party use could be viewed.  The purpose of the request was to obtain Plaintiffs' position as to their view as to how these third party uses affect it.  In other words, is one problematic from Plaintiffs' perspective, but others are not? That would enable AB to focus its discovery and assess the boundaries of Plaintiffs'

asserted trademark rights, as it conceives of them.  These RFAs are the best and most efficient way to obtain this information in preparation for depositions. Plaintiffs' chief objection is that the RFAs call for a "legal conclusion," but as written, the RFAs do not.  They do not seek a legal determination whether the third party uses, in fact, "infringe" or "dilute" Plaintiff's rights, but whether Plaintiff takes the position that it does.  The answer need not be "right" or "wrong" or draw upon a legal conclusion.  The company is in the best position to tell the Court and AB how it perceives these marks: does Plaintiff/s believe that PATAGONIAMALT for "malt for brewing and distilling," PATAGONIA BERRIES for preserves, or PATAGONIA CONCHA Y TORO for wine is impairing its rights or causing confusion?

Even if Plaintiffs' interpretation is correct and the RFAs ask Plaintiffs to apply the law to the facts of each third party use, the RFAs would still be proper. *See* Rule 36(a)(1)(A) (permitting requests for admissions as to "facts, the application of law to fact, or opinions about either"); *Watterson v. Garfield Beach CVS LLC*, No. 14CV01721HSGDMR, 2015 WL 2156857, at *3 (N.D. Cal. May 7, 2015) (requiring responses to RFAs as to whether Plaintiff's program was a "wellness program" as defined by the law because "Rule 36 explicitly permits RFAs that require the application of law to fact . . . "); *C & C Jewelry Mfg., Inc. v. W.*, No. C09–01303 JF HRL, 2011 WL 768642, at *2 (N.D. Cal. Feb. 28, 2011) (RFA asking party bringing patent infringement claim to admit that certain design and manufacturing processes were "known or used by others," "in public use or on sale," or "described in printed publication" as those terms are used in the patent statute sought an admission about underlying facts or mixed questions of law and fact, and was therefore proper); *Adobe Sys. Inc. v. Christenson,* No. 2:10–CV–00422–LRH, 2011 WL 540278, at *7 (D. Nev. Feb. 7, 2011) (RFAs requiring defendants "to admit that their advertisement, offer for sale, sale or distribution of the DISPUTED PRODUCT infringed Plaintiff's exclusive rights in the

Cooley LLP
Attorneys At Law
Los Angeles

84

Joint Stip. Re Defendant's Motion to Compel
Case No. 2:19-cv-02702-VAP (JEMx)

COPYRIGHTS" properly asked for application of law to facts).  Accordingly, the
Court should order Plaintiffs to answer these RFAs.

### 2.    Patagonia's Argument

AB's RFAs proposing that Patagonia reach legal conclusions regarding
likely confusion and other legal theories from pages showing trademark
registrations are facially improper.  They would require Patagonia to undertake
burdensome, multi-factor, fact-dependent analyses of purported, third-party
trademarks as those marks appear on the online trademark register.  Suggesting that
Patagonia apply trademark law doctrines of false suggestion of a connection,
likelihood of confusion, and likelihood of dilution, so that it can announce its
irrelevant "feelings" on these subjects, is far outside the proper scope and purpose
of requests for admission.

The RFAs refer to USPTO files as the example of purported use of each third-
party mark.  The registrations referenced in AB's RFAs are pieces of paper – they
do not themselves show use, and are neither "evidence that the marks which are the
subjects thereof are in use" (*Lesley Hornby,* 2008 WL 1808555, at *16 (quoting *In
Re White,* No. 78146926, 2006 WL2049628 (T.T.A.B. Jan. 4, 2006))), nor
"evidence of what happens in the market place." *AMF Inc.,* 474 F.2d at 1406.  As
a result, the entire exercise proposed by AB's RFAs is hypothetical.  Patagonia
objected to each RFA in this motion on these grounds.

AB's RFAs can be organized into three categories:  One set asks Patagonia
to answer whether a mark "shown in" a registration creates a false suggestion of a
connection with Patagonia (RFA Nos. 1, 8, 20, 26, 32, 37, 43, 49, 55, 61, and 67).
The second asks Patagonia to answer whether a mark "shown in" a registration
creates a likelihood of confusion with "any of Patagonia, Inc.'s trademarks" (RFA
Nos. 6, 13, 24, 30, 35, 41, 47, 53, 59, 65, and 71).  The third asks Patagonia to
answer whether a mark "shown in" a registration is likely to cause dilution of "any

of Patagonia's trademarks" (RFA Nos. 7, 14, 25, 31, 36, 42, 48, 54, 60, 66, and 72).

A false suggestion of connection claim involves questions of whether a defendant (or potential defendant) has applied to register an identical or close approximation of a plaintiff's trademark, such that the mark would point to the plaintiff if used on the goods or services covered by the defendant's trademark application. *Buffett v. Chi-Chi's, Inc.,* 1985 WL 73060, at *3 (T.T.A.B. June 13, 1985). The claim involves questions about the context of the defendant's offerings, including the adjacency of the goods offered by the plaintiff and defendant. *New York Yankees P'ship v. Evil Enters., Inc.,* No. 91192764, 2013 WL 1305332, at *9 (T.T.A.B. Feb. 8, 2013). It also involves questions about the defendant's intent, including whether there is evidence that the defendant purposefully sought to cause an association with the plaintiff. *Univ. of Notre Dame du Lac v. J.C. Food Imps. Co.,* 703 F.2d 1372, 1377 (Fed. Cir. 1983). The legal conclusion as to whether a "false suggestion" exists flows from the analysis of these factual inputs, not Patagonia's gut instinct upon review of a bare registration.

Analyses of likelihood of confusion and likelihood of dilution claims call for at least as much investigation and judgment as a false suggestion claim. Questions of confusion involve the *Sleekcraft* factors (proximity of the goods, similarity of the marks, evidence of actual confusion, marketing channels used, type of goods and the degree of care likely to be exercised by the purchaser, defendant's intent in selecting the mark; and likelihood of expansion of the product lines). *AMF Inc. v. Sleekcraft Boats,* 599 F.2d 341, 348-49 (9th Cir. 1979). Questions of dilutive effect involve statutory factors that overlap with the *Sleekcraft* factors (degree of similarity between the marks, whether the defendant intended to create an association, and actual association between the defendant's mark and the famous mark). 15 U.S.C. § 1125(c)(2)(B). Dilution by tarnishment adds the question of whether the plaintiff's trademark's reputation would be harmed. 15 U.S.C. § 1125(c)(2)(C).

1    In order to answer AB's RFAs, Patagonia would need to venture (far) outside
2    the four corners of the RFAs themselves, locate information on which to base an
3    assessment of the various factors relevant to each of the three species of claims,
4    weigh the outcome on those factors, and produce a legal conclusion. The task is
5    burdensome and entirely inappropriate – akin to showing an earner's gross income
6    and the amount of tax paid and asking for an admission, from that spare
7    information, that the proper amount of income tax was paid.

8    Requests for admissions cannot be used to compel an admission of a
9    conclusion of law. *Playboy Enterprises, Inc. v. Welles*, 60 F. Supp. 2d 1050, 1057
10   (S.D. Cal. 1999) (citing *Reliance Ins. Co. v. Marathon LeTourneau Co.,* 152 F.R.D.
11   524, 525 (S.D.W.Va. 1994)). The Court in *Playboy Enterprises* added that –
12   contrary to AB's argument – that even requests for admission that merely require
13   application of law to a non-disputed fact are disfavored because they could create
14   disputes that are best resolved in the presence of the judge. *Id.* (quoting Advisory
15   Committee Notes to the 1970 Amendment of Federal Rule of Civil Procedure 36).
16   Requests for admission "are not a discovery device at all, 'since [they] presuppose[
17   ] that the party proceeding under [Rule 36] knows the facts or has the document and
18   merely wishes its opponent to concede their genuineness.'" *Pasternak v. Dow Kim,*
19   2011 WL 4552389, at *5 (S.D.N.Y. Sept. 28, 2011) (quoting 8B Wright, Miller, &
20   Marcus, Federal Practice and Procedure § 2253 at 324).

21   AB's argument that the RFAs merely ask for Patagonia's "position" or
22   "perception," and therefore do not call for legal conclusions, is specious. AB's
23   RFAs do not, in any sense, call for an appropriate application of law to known facts
24   as occurred in the cases that AB cites. Each of these illustrates how different (and
25   improper) AB's RFAs are from those which courts have permitted. In *Watterson*
26   and *Adobe Sys. Inc.*, the court instructed parties to answer requests that were about
27   the responding party's own conduct, *i.e.*, whether the employer in *Watterson*
28   considered certain events to be "wellness programs" that would satisfy its

CooleY LLP
Attorneys At Law
Los Angeles

87

Joint Stip. Re Defendant's Motion to Compel
Case No. 2:19-cv-02702-VAP (JEMx)

requirement that its employees attend those programs, and whether the defendants in *Adobe* were aware that their sales of pirated copies of Adobe software violated Adobe's rights. The dispute in *C & C Jewelry Mfg., Inc.* was about whether an RFA shaded toward an improper request for a legal conclusion because it used a three-word phrase ("it was known") taken from 35 U.S.C. § 102, the statute defining conditions for patentability. The court concluded that borrowing that language did not render the requests improper, because the requests asked only about knowledge of facts.

When confronted with nearly-identical requests to AB's RFAs, this Court rejected the requests as improper. In *Gibson Brands Inc. v. John Hornby Skewes & Co.*, No. CV 14-0609 DDP (SS), 2015 WL 12681376, at *6 (C.D. Cal. July 20, 2015), the Court reviewed RFAs that asked the plaintiff, Gibson Brands, whether it contended that various third party guitar body and peghead designs infringe one of Gibson's six trade dress registrations. The Court held that this type of RFA seeks an improper legal conclusion. It explained that "[t]he use of RFAs as discovery devices to obtain new information, particularly when that information may require complex judgments and nuanced appraisals, is generally improper," and reminded the defendant that RFAs "are best reserved for authentication of documents and confirmation of undisputed facts." *Id.*

Like *Gibson*, Patagonia must not be required to conduct investigations and make complex judgments at AB's behest, investing substantial and unwarranted investigative resources in the process. Tadlock Decl., ¶ 7. The Court should reject AB's motion on its RFAs for the same reason it rejected this type of request and argument in *Gibson*.[8]

---

[8] Patagonia discussed this case with AB in meet and confer, but AB decided to move on its improper requests anyway.

### F.    Patagonia's Requests for Attorneys' Fees

Patagonia seeks its legal expenses, totaling – at a conservative estimate – at least $9,000, spent responding to this motion (excluding any further time necessary for attending the hearing).  Bricker Decl., ¶ 5.  Rule 37(a)(5)(B) provides: "If [a motion to compel] is denied, the court may issue any protective order authorized under Rule 26(c) and must, after giving an opportunity to be heard, require the movant, the attorney filing the motion, or both to pay the party or deponent who opposed the motion its reasonable expenses incurred in opposing the motion, including attorney's fees."

Further (and in addition to the fact that AB's prepared and filed its motion for improper purposes, including to preempt Patagonia's motion and deflect from AB's own abuse of the discovery process), AB made Patagonia's response unnecessarily difficult by violating the Local Rules in multiple places.  Although, it corrected some of these errors (while trying to impose gratuitous and burdensome time limitations on Patagonia in a race to file its motion, AB unduly complicated Patagonia's preparation of the response (and no doubt the Court's review of the parties' responses that are not juxtaposed as required, but are pages apart).  These violations also warrant an award of fees pursuant to Local Rule 37-4, which provides that "the failure of any counsel to comply with or cooperate in the [District's] procedures may result in the imposition of sanctions."  Patagonia asks, if a fee award is granted, for the opportunity to submit its billing records for the Court's review.

1    DATED:  February 3, 2020                COOLEY LLP

2

3                                           */s/ Marcus Peterson*

4                                           Bobby Ghajar
                                            Amanda Main
5                                           Marcus Peterson

6                                           Attorneys for Defendant
                                            ANHEUSER-BUSCH, LLC
7

8    DATED:  February 3, 2020                KILPATRICK TOWNSEND & STOCKTON
9                                           LLP

10

11

12                                          */s/ Ryan T. Bricker*

13                                          Gregory S. Gilchrist
                                            Ryan T. Bricker
                                            Sophy Manes
14                                          Hannah T. Yang

15                                          Attorneys for Plaintiffs
                                            PATAGONIA, INC. and PATAGONIA
16                                          PROVISIONS, INC.

17

18

19

20

21

22

23

24

25

26

27

28

**DECLARATION OF CONSENT TO ELECTRONIC SIGNATURE:**

Pursuant to Central Dist. LR 5-4.3.4(a)(2), the electronic filer of this Stipulation, Marcus Peterson, hereby attests that all other signatories listed, and on whose behalf the filing is sumbitted, concur in the filing's content and have authorized this filing.

Dated:     February 3, 2020          */s/ Marcus Peterson*
                                                      Marcus Peterson

KILPATRICK TOWNSEND 72982259 1

# Exhibit 1

Exhibit 1
Pg. 92

# United States District Court
## Central District of California

| | |
|---|---|
| PATAGONIA, INC. , et al. | CASE NO:<br>**2:19–cv–02702–VAP–JEM** |
| Plaintiff(s), | **Civil Trial Scheduling Order** |
| v. | Hearing date to Amend:<br>April 27, 2020 |
| ANHEUSER BUSCH, LLC | Deadline for Initial Designation of Expert<br>Witnesses: June 2, 2020 |
| Defendant(s). | Deadline for Designation of Rebuttal Expert<br>Witnesses: June 16, 2020 |
| | Discovery Cut–Off: July 3, 2020 |
| | Summary Judgment Motion Hearing Cut–Off:<br>August 17, 2020 at 2:00 p.m. |
| | Last Day to Conduct Mediation:<br>April 1, 2020 |
| | Pretrial Conference:<br>October 5, 2020 at  02:30 PM |
| | Jury Trial:<br>October 13, 2020 at  08:30 AM |
| | Trial Estimate: 4 Days |

This case is set for trial before the Honorable Virginia A. Phillips, Chief United States District Judge, Courtroom 8A, First Street Courthouse, 350 West 1st Street, Los Angeles, California.

## **Motions**

Judge Phillips hears motions in civil cases on Mondays at 2:00 p.m. The cut-off date for hearing motions is the last day on which motions will be heard, i.e., the motion must be filed at least 28 days before the deadline in accordance with the requirements of Local Civil Rule 6-1.

\\\

\\\

Exhibit 1
Page 93
1

**Mandatory chambers copies. The Court requires ONE mandatory chambers copy of ONLY the following filed documents:**

**a.     Motions and related documents;**

**b.     *Ex parte* applications and related documents;**

The cut-off date applies to all non-discovery motions except motions directly related to the conduct of trial, e.g., motions in limine and motions to sever parties or bifurcate issues for trial. If a cut-off date for hearing motions has not been set by the Court, the cut-off date shall be at least twenty-one (21) days before the Pretrial Conference. All motions in limine and other trial-related motions must be properly noticed for hearing no later than the date of the Pretrial Conference. Each side is limited to three (3) motions in limine and each motion shall not be compound; i.e., each motion shall address only one item of evidence or witness or, if common grounds for exclusion or admission apply to multiple items of evidence or witnesses, only one category of evidence or witnesses. A party seeking to make more than three motions in limine must request leave of court to do so. The parties are reminded that the purpose of a motion in limine is to make a threshold determination of the admissibility of specific evidence, not to determine the legal sufficiency of a party's claims or defenses.

**All parties and counsel must comply with Local Rule 7-16, which provides as follows:**

**Any moving party who intends to withdraw the motion before the hearing date shall file and serve a withdrawal of the motion, not later than (7) days preceding the hearing. Any opposing party who no longer intends to oppose the motion, shall file and serve a withdrawal of the opposition, not later than seven (7) days preceding the hearing.**

Exhibit 1
Page 94
2

Failure to comply with this notification requirement may result in the imposition of sanctions on the offending counsel and party.

### Discovery

Counsel shall initiate all discovery other than depositions at least forty-five (45) days prior to the cut-off date. The Court will not approve stipulations between counsel which permit responses to be served after the cut-off date except in unusual circumstances and for good cause shown.

All depositions must be completed by the discovery cut-off deadline. Counsel shall lodge all original depositions that will be used in trial with the Courtroom Deputy Clerk on the first day of trial.

Discovery should be kept to a minimum and should focus only on issues genuinely in dispute. Counsel are expected to resolve discovery problems without the assistance of the Court. Discovery disputes have been referred to the United States Magistrate Judge assigned to this case. The **discovery cut-off** is the last date to complete discovery, including expert discovery. It is also the last day for hearing any discovery motion.

If not separately set forth above, the required expert disclosures shall be made seventy (70) days before the discovery cut-off date.

### Settlement Procedures

Local Rule 16-2.9 requires the parties in every case to participate in a formal settlement proceeding. Counsel must complete the settlement conference or mediation by the date listed above and shall include in the proposed Pretrial Conference Order a status report detailing what procedure has been followed, and and the status of settlement efforts. The following procedures are available:

Exhibit 1
Page 95
3

1    **Settlement Procedure No. 1** - Unless an alternative settlement procedure

2    has been selected by the parties, and with the concurrence of the Court, the parties

3    shall appear before the Court or before the Magistrate Judge assigned to the case

4    for such settlement proceedings as the Court may conduct or direct.

5    **Settlement Procedure No. 2** - The parties shall appear before an attorney

6    selected from the Attorney Settlement Officer Panel, or before an attorney

7    appointed by the Court for settlement proceedings.

8    **Settlement Procedure No. 3** - The parties shall appear before a retired

9    judicial officer or other private dispute resolution body for settlement proceedings.

10    Unless otherwise ordered by the Judge or the Magistrate Judge conducting a

11    settlement conference (whose procedures will apply if different from those set forth

12    here), the parties shall follow the "Requirements for Settlement Procedures" set

13    forth in Local Rule 16-15.5.

14    If a settlement is reached, it shall be reported immediately to this Court as

15    required by Local Rule 16-15.7. **In all cases set for jury trial, the parties must**

16    **notify the Court, no later than the Wednesday preceding the Tuesday trial**

17    **date, of any settlement, so that the necessary arrangements can be made to**

18    **bring in a different case for trial or notify the members of the public who**

19    **would otherwise be reporting for jury duty that their services are not needed**

20    **that date.**

21    **Failure to comply with this notification requirement may result in the**

22    **imposition of sanctions on counsel for one or more parties, or their clients,**

23    **or both.**

24    ## Pretrial Conference

25    The Court will conduct a Pretrial Conference in this case pursuant to Federal

26    Rule of Civil Procedure 16 and Local Rule 16 on the date and time listed above.

Exhibit 1
Page 96
4

1   Each party appearing in this action shall be represented at the Pretrial Conference

2   and at all pretrial meetings by the lead trial counsel. Counsel should be prepared to

3   discuss streamlining the trial, including presentation of testimony by deposition

4   excerpts, time limits, stipulations as to undisputed facts, and qualification of experts

5   by admitted resumes. In rare cases where the Pretrial Conference is waived by the

6   Court, counsel must follow Local Rule 16-11.2

7

8   **Pretrial Filings**

9        Counsel shall submit carefully prepared Memoranda of Contentions of Fact

10  and Law (which may also serve as the trial briefs) and a proposed Pretrial

11  Conference Order in accordance with the provisions of Local Rules 16-4

12  through 16-7. The form of the proposed Pretrial Conference Order shall be in

13  conformity with the form set forth in Appendix A to the Local Rules.

14       The Memoranda of Contentions of Fact and Law shall be served not later

15  than twenty-one (21) calendar days before the Pretrial Conference. The proposed

16  Pretrial Conference Order shall be lodged eleven (11) calendar days before the

17  Pretrial Conference.

18       In drafting the proposed Pretrial Conference Order, counsel shall make a

19  good faith effort to agree on and set forth as many uncontested facts as possible.

20  The Court may read the uncontested facts to the jury at the start of the trial.

21  Carefully drafted and comprehensively stated stipulations of facts will reduce the

22  length of trial and increase the jury's understanding of the case.

23       In drafting the factual issues in dispute for the proposed Pretrial Conference

24  Order, the issues of fact should track the elements of a claim or defense upon which

25  the jury would be required to make findings. Counsel should attempt to state issues

26  in ultimate fact form, not in the form of evidentiary fact issues (i.e., "was the

Exhibit 1
Page 97
5

defendant negligent," "was such negligence the proximate cause of injury to the plaintiff," "was the plaintiff negligent;" not, "was the plaintiff standing on the corner of 5th and Spring at 10:00 a.m. on May 3"). Counsel may list sub-issues under the headings of ultimate fact issues, but should not use this as a device to list disputes over evidentiary matters. In general, the issues of fact should set forth the disputed elements of the claims or affirmative defenses.

Issues of law should state legal issues upon which the Court will be required to rule after the Pretrial Conference, including during the trial, and should not list ultimate fact issues to be submitted to the trier of fact.

If expert witnesses are to be called at trial, each party shall list and identify its respective expert witnesses. Failure of a party to list and identify an expert witness in the proposed Pretrial Conference Order shall preclude a party from calling that expert witness at trial.

**Exhibit and Witness Lists**

Counsel are to prepare their exhibits by placing them in 3-hole notebooks which are tabbed down the right side with exhibit numbers. The notebooks are to be prepared with an original for the Courtroom Deputy Clerk, which shall be tagged with the appropriate exhibit tags in the upper right hand corner of the first page of each exhibit, and one copy for the Court. Each notebook shall contain a list of the included exhibits. The exhibits are to be numbered in accordance with Local Rule 26-3. Counsel can obtain exhibit tags at the Clerk's Office, 4th Floor, First Street Court House, 350 West 1st Street, Los Angeles.

The Court requires the following to be submitted to the Courtroom Deputy Clerk on the first day of trial:

\\\

Exhibit 1
Page 98
6

- The original exhibits with the Court's exhibit tags. The parties shall use yellow tags for plaintiff and blue tags for defendant, which shall be stapled to the front of the exhibit on the upper right corner with the case number, case name, and exhibit number placed on each tag.
- One bench book with a copy of each exhibit for use by the Court, tabbed with numbers as described above. (Court's exhibit tags not necessary.)
- Three (3) copies of exhibit lists.

The exhibit lists shall be in the form indicated by the following example:

Case Title: _____     Case No. _____

| No. of Exhibit | Description | Date Identified | Date Admitted |
| --- | --- | --- | --- |
| 3 | Letter from Doe to Roe | | |

- Three (3) copies of witness lists in the order in which the witnesses may be called to testify.

The witness lists shall be in the form indicated by the following example:

Case Title: _____     Case No. _____

| Name of Witness | Date called to testify |
| --- | --- |
| 1. John Doe | _____ |
| 2. Jane Roe | _____ |

All counsel are to meet no later than ten (10) calendar days before trial and to stipulate to the extent possible to foundation, waiver of the best evidence rule, and

Exhibit 1
Page 99
7

1   which exhibits may be received into evidence at the start of trial. The exhibits to be

2   received will be noted on the extra copies of the exhibit lists.

3

4   **<u>Jury Instructions</u>**

5        Fourteen (14) calendar days prior to the Rule 16-2 Meeting of Counsel,

6   counsel shall exchange proposed jury instructions and special verdict forms (if

7   applicable). Seven (7) calendar days prior to the Rule 16-2 meeting, counsel shall

8   exchange any objections to the instructions and special verdict forms. Prior to, or

9   at the time of the Rule 16-2 meeting, counsel shall meet and confer with the goal

10  of reaching agreement to one set of joint, undisputed jury instructions and one

11  special verdict form.

12       The parties must file proposed jury instructions seven (7) calendar days

13  before the Pretrial Conference. As always, the parties must submit courtesy copies

14  directly to the Court. In addition, the parties must submit electronic versions

15  (Word.docx format) to the Court at the following electronic mail address:

16  VAP_Chambers@cacd.uscourts.gov.

17       As noted above, the parties must act jointly to submit proposed jury

18  instructions. The parties must submit one set of agreed upon jury instructions. The

19  parties must submit another set of jury instructions containing the instructions upon

20  which the parties disagree and the objections to those instructions.

21       Where the parties disagree on an instruction, the party opposing the

22  instruction must attach a short (i.e., one to two paragraphs) statement supporting

23  the objection and the party submitting the instruction must attach a short statement

24  supporting the instruction. Each statement should be on a a separate page and

25  should follow directly after the disputed instruction.

26  \\\

Exhibit 1
Page 100
8

Accordingly, the parties ultimately will submit one document or, if the parties disagree over any proposed jury instructions, two documents. If the parties submit two documents, those documents should consist of: (1) a set of agreed upon jury instructions and (2) a set of disputed jury instructions along with reasons supporting and opposing each disputed instruction.

The parties should make every attempt to agree upon the jury instructions before submitting them to the Court. In addition, where the Manual of Model Civil Jury Instructions for the Ninth Circuit (2007 edition) provides a version of a requested instruction, the parties should submit the Model instruction. Where California law applies, the Court prefers counsel to use *Judicial Council of California, Civil Instructions* - ("CACI"). If neither of the above sources has an instruction on the subject, counsel are directed to Kevin F. O'Malley, et al., *Federal Jury Practice and Instructions – Civil* (6th ed.). Each requested jury instruction shall cover only one subject or principle of law and shall be numbered and set forth in full on a separate page, citing the authority or source of the requested instruction (except for the jury copy discussed infra).

The Court will send a copy of the jury instructions into the jury room for use by the jury during deliberations. Accordingly, in addition to the file copies described above, the parties shall file with the Courtroom Deputy Clerk on the first day of the trial a "clean set" of joint and/or proposed jury instructions which contain only the text of each instruction set forth in full on each page, with the caption "Court's Instruction Number ____"(eliminating titles, supporting authority, indication of party proposing, etc.). This will be referred to as the "Jury Copy" of the jury instructions.

An index page shall accompany all jury instructions submitted to the Court.

Exhibit 1
Page 101
9

The index page shall indicate the following:

- The number of the instruction;
- A brief title of the instruction;
- The source of the instruction and any relevant case citations; and
- The page number of the instruction.

EXAMPLE:

| Number | Title | Source | Page |
|--------|-------|--------|------|
| 1 | Burden of Proof | 9th Circ. 12.02 | 7 |

**Joint Statement of the Case**

Counsel shall prepare a joint statement of the case which will be read by the Court to the prospective panel of jurors prior to the commencement of voir dire. The statement should not be longer than two or three paragraphs. The statement shall be filed with the Court seven (7) calendar days before the Pretrial Conference.

**Matters to be Discussed at the Pretrial Conference**

Counsel shall be prepared to discuss the following matters with the Court at the Pretrial Conference:

- the witnesses all parties intend to call during their respective cases, and the amount of time necessary for direct and cross examination of each witness;
- any anticipated problems in scheduling witnesses;
- any evidentiary issues, including anticipated objections under Rule 403, and objections to exhibits;
- jury selection procedures;
- all pretrial motions, including motions in limine, to bifurcate and to sever;

\\\

Exhibit 1
Page 102
10

- any disputed jury instructions, and the form of the instructions which will be given to the jury at the outset of the case, i.e., before opening statements and presentation of evidence;
- whether any counsel intends to use any evidence or demonstrative aid in opening statement; and
- motions to exclude witnesses from the courtroom during trial testimony.

If counsel for any party need to arrange for the installation of its own equipment, such as video monitors, tape or compact disk players, notebooks or overhead projectors, counsel shall notify the Courtroom Deputy Clerk no later than 4:00 p.m. two (2) days before trial so that the necessary arrangements can be made.

**Trial**

The Court sets firm trial dates. Counsel shall arrive at the Courtroom not later than 8:30 a.m. each day of trial. The Court reserves the time from 8:30 to 9:00 a.m. to handle legal and administrative matters outside the presence of the jury. The trial will commence promptly at 9:00 a.m. Counsel shall anticipate matters which may need discussion or hearing outside the presence of the jury and to raise them during this period.

The Court is in session with the jury on Tuesdays through Fridays, 9:00 a.m. to 4:30 p.m., with a morning and an afternoon break and a lunch recess from approximately 12:00 to 1:15 p.m. In most cases, jury selection is completed on the first morning of trial, and counsel should be prepared to give opening statements and begin presentation of evidence immediately thereafter.

All counsel are asked to observe the following practices during trial:

Exhibit 1
Page 103
11

1    • All counsel, defendants, and parties shall rise when the jury enters and leaves
2        the courtroom.
3    • Counsel shall stand when addressing the Court, including when objecting to
4        opposing counsel's questions.
5    • When objecting, counsel should state only "objection," and the legal ground
6        for the objection (e.g., hearsay, irrelevant, etc.). Counsel should refrain from
7        arguing the legal basis for the objection unless permission is granted to do so.
8    • Counsel must seek leave to approach the Courtroom Deputy Clerk or the
9        witness, and should question witnesses while standing at the lectern.
10   • Counsel must address all witnesses, including their clients, by the witness's
11       surname. Young witnesses, i.e., children younger than age 15, may be
12       addressed by first names, however.
13   • Counsel shall not discuss the law or argue the case in opening statements.
14   • Counsel shall address all remarks to the Court, and should not directly
15       address the Courtroom Deputy Clerk, the Court Reporter, opposing counsel
16       or the jury (except in opening statement and closing argument). Counsel
17       must ask the Court for permission to talk off the record in order to speak with
18       opposing counsel.
19   • Counsel shall not make an offer of stipulation unless he or she has conferred
20       with opposing counsel and believes that the stipulation will be accepted. Any
21       stipulation of fact will require the defendant's personal concurrence and shall
22       be submitted to the Court in writing for approval.
23   • While Court is in session, counsel may not leave the counsel table to confer
24       with witnesses, colleagues or assistants in the back of the courtroom unless
25       the Court grants permission to do so in advance.
26   \\\

Exhibit 1
Page 104
12

- When a party has more than one lawyer, only one of the lawyers may conduct the examination of a given witness and only that same lawyer may handle objections during the testimony of that witness.
- If a witness was on the stand before a recess or adjournment, counsel shall have the witness back on the stand and ready to proceed when Court resumes.
- If there is more than a brief delay between witnesses, the Court may deem that the party has rested.
- The Court attempts to cooperate with witnesses and will, except in
- extraordinary circumstances, accommodate them by permitting them to be examined out of sequence. Counsel should discuss any scheduling issues with opposing counsel. If there is an objection, confer with the Court in advance.

**<u>Trial Preparation for Court Trials</u>**

Fourteen (14) calendar days before the trial date, each party shall prepare and serve on opposing counsel copies of the proposed Findings of Fact and Conclusions of Law. Each party shall review the other party's proposed Findings and Conclusions and make such changes in the party's own proposed Findings and Conclusions as necessary following such review. Seven (7) calendar days before the trial date, each party shall lodge two copies of its proposed Findings of Fact and Conclusions of Law with the Court, also serving other parties if changes have been made. The parties shall be prepared to submit to the Court, and to exchange among themselves, supplemental Findings of Fact and Conclusions of Law during the course of the trial.

\\\

Exhibit 1
Page 105
13

**Internet Site**

Counsel are encouraged to review the Central District's website for additional information. The address is "http://www.cacd.uscourts.gov".

The Courtroom Deputy Clerk is ordered to serve a copy of this Order personally or by mail on counsel for all parties to this action.

**IT IS SO ORDERED.**

DATED: December 9, 2019

_____
Virginia A. Phillips
Chief United States District Judge

Exhibit 1
Page 106
14

Mon 12/9/2019 5:02 PM

cacd_ecfmail@cacd.uscourts.gov

Activity in Case 2:19-cv-02702-VAP-JEM Patagonia, Inc. et al v. Anheuser Busch, LLC
Pretrial-Trial Scheduling Order - form only

To    ☐ ecfnef@cacd.uscourts.gov

**[External]**

---

**This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.**
***NOTE TO PUBLIC ACCESS USERS*** Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing. However, if the referenced document is a transcript, the free copy and 30 page limit do not apply.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### Notice of Electronic Filing

The following transaction was entered on 12/9/2019 at 5:02 PM PST and filed on 12/9/2019
**Case Name:**       Patagonia, Inc. et al v. Anheuser Busch, LLC
**Case Number:**     2:19-cv-02702-VAP-JEM
**Filer:**
**Document Number:** 55

**Docket Text:**
**CIVIL TRIAL SCHEDULING ORDER by Judge Virginia A. Phillips. Initial Designation of Expert Witnesses due by: June 2, 2020, Designation of Rebuttal Expert Witnesses due by: June 16, 2020, Summary Judgment Motion hearing cut-off by August 17, 2020 at 2:00 p.m., Last day to conduct mediation: April 1, 2020, Trial Estimate: 4 days. Amended Pleadings due by 4/27/2020. Discovery cut-off 7/3/2020. Pretrial Conference set for 10/5/2020 02:30 PM before Judge Virginia A. Phillips. Jury Trial set for 10/13/2020 08:30 AM before Judge Virginia A. Phillips. (bh)**

**2:19-cv-02702-VAP-JEM Notice has been electronically mailed to:**

Bobby A Ghajar     jra@cooley.com, mhuston@cooley.com, efiling-notice@ecf.pacerpro.com,
jalvarez@cooley.com, bghajar@cooley.com

Gregory S Gilchrist    vhopper@kilpatricktownsend.com, ggilchrist@kilpatricktownsend.com,
bobrown@ktslaw.com

Ryan T Bricker    vhopper@kilpatricktownsend.com, streposkoufes@kilpatricktownsend.com,
rbricker@kilpatricktownsend.com

Amanda A Main    jcorrell@cooley.com, amain@cooley.com

Exhibit 1
Page 107

Marcus D Peterson     mpeterson@cooley.com, jra@cooley.com, efilingnotice@cooley.com, efiling-notice@ecf.pacerpro.com, jalvarez@cooley.com

Alexandra Nicole Martinez     amartinez@kilpatricktownsend.com, promero@kilpatricktownsend.com

Sophy Tabandeh Manes     smanes@kilpatricktownsend.com, streposkoufes@kilpatricktownsend.com

Dina Roumiantseva     droumiantseva@cooley.com, eperez@mofo.com

**2:19-cv-02702-VAP-JEM Notice has been delivered by First Class U. S. Mail or by other means <u>BY THE FILER</u> to :**

Exhibit 1
Page 108