COOLEY LLP
BOBBY GHAJAR (198719)
bghajar@cooley.com
MARCUS PETERSON (265339)
mpeterson@cooley.com
1333 2nd Street, Suite 400
Santa Monica, CA  90401
Telephone: (310) 883-6400
Facsimile:  (310) 883-6500

COOLEY LLP
AMANDA A. MAIN (260814)
amain@cooley.com
DINA ROUMIANTSEVA (300576)
droumiantseva@cooley.com
3175 Hanover Street
Palo Alto, CA  94304
Telephone: (650) 843-5000
Facsimile:  (650) 843-7400

Attorneys for Defendant and Counter-Claimant
ANHEUSER-BUSCH, LLC

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION – LOS ANGELES

| | |
|---|---|
| PATAGONIA, INC. and PATAGONIA PROVISIONS, INC., <br><br> Plaintiffs, <br><br> v. <br><br> ANHEUSER-BUSCH, LLC dba PATAGONIA BREWING CO. , <br><br> Defendant. | Case No.  2:19-cv-02702-VAP (JEMx) <br><br> **[DISCOVERY MATTER]** <br><br> **DECLARATION OF MARCUS PETERSON IN SUPPORT OF DEFENDANT'S MOTION TO COMPEL RESPONSES TO INTERROGATORIES, REQUESTS FOR PRODUCTION, AND REQUESTS FOR ADMISSION** |
| ANHEUSER-BUSCH, LLC dba PATAGONIA BREWING CO. , <br><br> Counter-Claimant, <br><br> v. <br><br> PATAGONIA, INC. and PATAGONIA PROVISIONS, INC., <br><br> Counter-Defendants. | Magistrate Judge:  Hon. John E. McDermott <br> Date: February 25, 2020 <br> Time: 10:00 am <br> Dept.:640, 6th Floor <br><br> Discovery Cut-off Date: July 3, 2020 <br> Pretrial Conf. Date:  Oct. 5, 2020 <br> Trial Date:  October 13, 2020 |

I, Marcus Peterson, hereby declare as follows:

1.      I am an attorney at the law firm of Cooley LLP, counsel for Defendant Anheuser-Busch, LLC ("AB") in this action.  Unless otherwise stated, I have personal knowledge of the facts set forth in this declaration and, if called upon to testify, I could and would testify to such facts.

2.      AB first served the discovery requests at issue in the motion on Plaintiffs on July 8, 2019 and Plaintiffs provided their initial responses and objections on August 7, 2019.

3.      My co-counsel sent several letters to Plaintiffs' counsel in an attempt to meet and confer regarding Plaintiffs' responses.  For example, my colleague sent a letter regarding Plaintiffs' First Set of Interrogatory responses on August 23, 2019; regarding Plaintiffs' responses to AB's First Set of Requests for Production of Documents ("RFP") on August 27; and regarding Plaintiffs' responses to AB's Requests for Admission ("RFA") on September 16.  Attached as **Exhibits A-C** are true and correct copies of the letters, identifying for discussion the perceived deficiencies in Plaintiffs' discovery responses.

4.      I understand that the parties' counsel spoke on September 3 regarding Plaintiffs' Interrogatory and RFP responses, and spoke several times afterward to discuss those as well as Plaintiffs' RFA responses.  The parties also exchanged email communications that summarized the parties' positions.  Attached as **Exhibit D** are true and correct copies of this email correspondence among counsel for the parties, consisting of emails dated September 4, 6, 12, 13, 16, 17, 18, 19; October 4, 7, 8, 11, 14, 15, 18, 23, 28, 30, 31; and November 1.

5.      Plaintiffs served supplemental responses to some of the Interrogatories and RFPs at issue on September 23, and served supplemental responses to some of the RFAs on November 8, but did not amend any of the RFA responses that are the subject of this motion.

6.      The parties reached an impasse regarding Plaintiffs' unwillingness to

adequately search for and produce various categories of responses, including documents regarding: (a) Plaintiffs' awareness of AB and its use of and registration for PATAGONIA in connection with beer; (b) Plaintiffs' decision not to brand their beer products with the PATAGONIA trademark; (c) Plaintiffs' awareness of, tolerance of, and coexistence with various third parties using the PATAGONIA trademark; and (d) documents relevant to Plaintiffs' damages.  Plaintiffs' supplemental responses agreed to produce only a subset of the documents requested, and I am aware that my colleague informed Plaintiffs' counsel during the meet and confer process that the narrow set of documents would be insufficient.

7.    After the Court entered a Protective Order in this case in early December 2019, AB's counsel believed that Plaintiffs would produce the narrower set of documents they had agreed to produce, after which AB could determine whether Plaintiffs' production was sufficient to fully respond to the discovery requests.

8.    I am aware that Plaintiffs have filed numerous trademark filings with the USPTO that were signed by high-ranking officers within Plaintiffs' organization.  For example, based on a review of Plaintiffs' USPTO filings that are publicly available, Plaintiffs have filed with the USPTO trademark applications, statements of use, statements of continued use, renewals, and office action responses signed by individuals including Founder Yvon Chouinard; CEOs David Olsen and Michael Crooke; Presidents Patrick O'Donnell, Kristine McDivitt, and Alison May; COO Robert Kelleher; CFO Neil Edwards; and Vice President William Kulczycki.  Plaintiffs have taken the position that they are not required to interview or produce documents from the files of any of these individuals.

9.    Some of Plaintiffs' USPTO filings are not fully available online.  For example, even for trademark files that have public documents available, my experience is that many trademark filings older than 2000 are not available online.  And even for those that may be available online, the files have been scanned by the USPTO in such a way that they are not searchable.

1    I declare under penalty of perjury that the foregoing is true and corrected.

2    Executed on this 3rd day of February, 2020 in Santa Monica, California.

3

4                                    */s/ Marcus Peterson*

5                                    Marcus Peterson

6

7    218461965

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# Exhibit A

Exhibit A

Pg. 4



Amanda A. Main                                           By Email to: ggilchrist@kilpatricktownsend.com
+1 650 843 5914
amain@cooley.com

August 23, 2019

Gregory S. Gilchrist
Kilpatrick Townsend & Stockton LLP
Two Embarcadero Center, Suite 1900
San Francisco, CA 94111-3834

**Re:     Plaintiffs' Inadequate Responses to Defendant's First Set of Interrogatories**
         *Patagonia, Inc., et al. vs. Anheuser-Busch, LLC, et al.*

Dear Greg:

Pursuant to the Local Rules, we seek to meet and confer with you regarding Plaintiffs Patagonia Inc.'s ("PI") and Patagonia Provisions, Inc.'s ("PPI") inadequate responses to the First Set of Interrogatories propounded by Defendant Anheuser-Busch, LLC ("AB"). Please let us know your availability within the next ten days to meet and confer by phone.

Given that Plaintiffs' responses are substantively identical for the most part, we address them together, unless otherwise noted.

As a preliminary matter, Plaintiffs recently complained that AB's responses include general and boilerplate objections, yet Plaintiffs purport to "specifically incorporate" five "General Objections" into each of their responses. (*See, e.g.,* Plaintiff Patagonia, Inc.'s Resp. & Obj. to AB's First Set of Interrogatories, at ¶ 6 and each specific response (stating "In addition to the general objections" and "Subject to the general objections").) In view of Plaintiffs' position, please confirm that Plaintiffs do not intend to rely on their General Objections as a basis to object to each Interrogatory.

**Interrogatory No. 2**:  Interrogatory No. 2 asks Plaintiffs to: "State all facts relating to YOUR first awareness of the distribution or sale of PATAGONIA beer – whether by AB, Cerveceria Y Malteria Quilmes, or Warsteiner Importers Agency – in the U.S. or South America, including who first became aware of such fact, how the person became aware of it, and what actions, if any, YOU took in response to such awareness."

Plaintiffs' response is deficient in a number of respects. First, Plaintiffs claim that the request seeks information that is "not pertinent (e.g. sales in South America)." The request does not seek information regarding sales in South America but instead regarding Plaintiffs' awareness of sales of PATAGONIA beer. This information is relevant to at least AB's laches defense. Second, Plaintiffs' response is incomplete, in that it does not include who first became aware, how the person became aware, and what actions, if any, Plaintiffs took in response to such awareness. Please advise whether Plaintiffs will voluntarily amend their response.

**Interrogatory No. 3**:  Interrogatory No. 3 asks Plaintiffs to:  "State all facts relating to YOUR first awareness of Warsteiner Importers Agency, Inc.'s application to register the PATAGONIA trademark on beer, including who first became aware of such fact, how the person became aware of it, and what actions, if any, YOU took in response to such awareness."

Plaintiffs have asserted privilege. Please explain the basis of Plaintiffs' belief that who, when, and how Plaintiffs first became aware of Warsteiner's intent-to-use application is protected by the attorney-client

# Cooley

Gregory S. Gilchrist
August 23, 2019
Page Two

privilege or work product doctrines.  If Plaintiffs intend to rely on this objection, they must provide sufficient information for AB to assess their claim of privilege as required by Federal Rule of Civil Procedure 26(b)(5), including the date of the communication, the names of the individuals involved in such communications, and the basis for the claim of privilege.  We understand that it is early in the case, so if you need a reasonable time to provide this information, we can reach agreement on that.

**Interrogatory No. 4**:  Interrogatory No. 4 asks Plaintiffs to:  "State all facts regarding each third-party use or trademark registration of "Patagonia" in the United States, whether alone or with other words, of which YOU are aware, including how and when YOU became of aware each use or registration, what if anything YOU did when YOU became so aware, and persons most knowledgeable thereof."

Plaintiffs have objected on grounds of relevance, which is baseless.  The requested information is relevant at least to Plaintiffs' dilution claim.  To the extent Plaintiffs' rely on Rule 33(d), Plaintiffs must produce documents that contain information to fully respond to this interrogatory.  AB disagrees with the premise that Plaintiffs' "trademark files" will reflect Plaintiffs' full awareness of each third-party use or trademark registration of "Patagonia."  That is not the case, and Plaintiffs must respond to this interrogatory.

**Interrogatory No. 5**:  Interrogatory No. 5 asks Plaintiffs to:  "For every third-party use of "Patagonia" (whether as the name of a company or as the name or trademark on a product or service) of which YOU are or have been aware (since your first such awareness to present), state all facts regarding YOUR decision not to object to or enforce YOUR alleged rights in the PATAGONIA trademark (whether alone or with another term) against each such third party."

Plaintiffs' incorporation of its objections and response to Interrogatory No. 4 is problematic for reasons discussed above.  Further, Plaintiffs claim that the information is privileged but do not provide information that would enable AB to assess their claim of privilege as required by Federal Rule of Civil Procedure 26(b)(5), including the date of the communication, the names of the individuals involved in such communications, and the basis for the claim of privilege.  Still, Plaintiffs must provide any information that is not allegedly privileged, including identifying any third-party uses of which they were aware, but to which they did not object.  Please supplement Plaintiffs' response.

**Interrogatory No. 6**:  Interrogatory No. 6 asks Plaintiffs to:  "State all facts relating to each instance of confusion of which YOU are aware regarding any of YOUR goods or services on the one hand, and AB's goods or services on the other hand, whether confusion by affiliation, connection, association, sponsorship, or approval, including for each such instance who was allegedly confused, when such confusion occurred, what the person reported, any documents relating thereto, and YOUR response thereto, if any."

Plaintiffs' response states that they have identified only "representative examples" of confusion.  Are Plaintiffs aware of other instances of confusion that they have not identified?  Why is that the case?  Further, to the extent Plaintiffs produce documents, please confirm that those documents will include all instances of confusion of which Plaintiffs are aware, and confirm when Plaintiffs intend to produce such documents.  Further, the Interrogatory asks Plaintiffs to state the date when the confusion allegedly occurred and that information is unclear from the chart reproduced in the response.

**Interrogatory No. 7**:  Interrogatory No. 7 asks Plaintiffs to:  "State all facts relating to any damage(s) (including all such damage alleged in YOUR COMPLAINT) that YOU contend YOU have suffered due to AB's conduct, as alleged in YOUR COMPLAINT, including the amount of any monetary damages, the legal or equitable theory on which YOUR entitlement to such damage is based, the quantification and calculation of damages, an identification of any supporting DOCUMENTS and witnesses, and whether and how YOUR damage is distinct (i.e., different) from the damage allegedly suffered by [your co-Plaintiff]."

# Cooley

Gregory S. Gilchrist
August 23, 2019
Page Three

Plaintiffs state that their witnesses will be "identified through disclosures at the appropriate time."  Plaintiffs have an obligation to provide that information now to the extent known or reasonably available.  Each Plaintiff also fails to explain how the damages they seek are distinct from the damages sought by their co-Plaintiff.  Plaintiffs must fully answer this Interrogatory.

We look forward to meeting and conferring on these matters.

Sincerely,

Amanda A. Main

cc:     Bobby Ghajar; Ryan T. Bricker

210203867

# Exhibit B



Dina Roumiantseva                                                                VIA EMAIL
+1 415 693 2141                                          ggilchrist@kilpatricktownsend.com
droumiantseva@cooley.com

August 27, 2019

Gregory S. Gilchrist
Kilpatrick Townsend & Stockton LLP
Two Embarcadero Center, Suite 1900
San Francisco, CA 94111-3834

**Re:     Plaintiffs' Inadequate Responses to Defendant's Requests for Production**
         *Patagonia, Inc., et al. vs. Anheuser-Busch, LLC, et al.*

Dear Greg:

Pursuant to the Local Rules, we seek to meet and confer with you regarding Plaintiffs Patagonia Inc.'s ("PI") and Patagonia Provisions, Inc.'s ("PPI") inadequate responses to the First Set of Requests for Production propounded by Defendant Anheuser-Busch, LLC ("AB"). Please let us know your availability within the next ten days to meet and confer by phone.

We address Plaintiffs' responses together, unless otherwise noted. For your ease of reference, attached to this letter is a chart identifying the deficiencies in each of Plaintiffs' responses to AB's First Set of Requests for Production.

Before we delve into the specific deficiencies, we note that Plaintiffs recently complained that AB's responses include general and boilerplate objections. We have responded to that letter. We note, however, that Plaintiffs attempt to "specifically incorporate" seven "General Objections" into each of their responses. (*See, e.g.,* Plaintiff Patagonia, Inc.'s Resp. & Obj. to AB's First Set of RFPs, at ¶ 8 and each specific response (stating "In addition to the general objections" and "Subject to the general objections").) Although AB stands by its position that its general objections substantively differ from Plaintiffs', in view of Plaintiffs' complaint, we assume Plaintiffs do not intend to rely on their General Objections. Please confirm.

Second, with respect to 49 of the 50 document requests, Plaintiffs do not state that they will produce responsive documents. Thus, it is unclear regarding whether Plaintiffs intend to withhold responsive documents and, if so, what documents they intend to withhold, and why. Please state whether Plaintiffs are withholding any responsive materials on the basis of their objections. *See* Fed. R. Civ. Proc. 34(2)(C). Otherwise, Plaintiffs' responses fail to do so. As one example, Request for Production No. 3 seeks documents "sufficient to show [Plaintiffs'] relationship with New Belgium Brewing Co." Plaintiffs' only specific objection is that the term "relationship" is undefined and ambiguous, yet Plaintiffs do not state that they will produce responsive documents. Plaintiffs instead state that they "will produce the formal agreement between New Belgium Brewing Co. and Patagonia concerning the production of a beer in collaboration with one another." It is thus unclear whether Plaintiffs intend to produce responsive documents sufficient to show the full spectrum of any relationship between them and New Belgium Brewing Co. beyond this

# Cooley

August 27, 2019
Page Two

agreement.   If Plaintiffs are withholding responsive documents, we need to understand which documents and the legal basis for withholding those documents.

Third, in response to Requests for Production Nos. 6, 34, 40, and 46, Plaintiffs respond that it would be unduly burdensome to search any files "outside of [their] trademark department within the legal department."  What is the basis of this objection?  Is there legal authority upon which Plaintiffs rely?  Plaintiffs have an obligation to conduct a reasonable search of documents in their possession, custody, or control.  A reasonable search is not limited to records maintained in one group within Plaintiffs' legal department, which in any event, over which Plaintiffs may attempt to claim privilege.

We look forward to meeting and conferring on these matters.

Sincerely,

Dina Roumiantseva

cc: Bobby A. Ghajar, Amanda A. Main, Ryan T. Bricker

Enclosure: Chart of Deficiencies

210138245

| No. | Request | Plaintiffs' Response[1] | Deficiencies |
|---|---|---|---|
| 1 | All DOCUMENTS CONCERNING YOUR decision to use the LONG ROOT ALE trademark in connection with alcoholic beverages, including, but not limited to, DOCUMENTS the refer or relate to alternative brand names, and the reasons that YOU did not use the trademark PATAGONIA on those products. | In addition to the general objections, Patagonia objects to this Request as overbroad and disproportionate to the needs to this case to the extent it seeks "[a]ll documents" concerning the identified subject matter, which conceivably encompasses every document referring to the use of the LONG ROOT ALE trademark. To the extent that the Request seeks documents concerning brand names that Patagonia did not use and decided not to pursue, Patagonia further objects to the Request on grounds that it seeks information not relevant to the claims or defenses asserted is action. Patagonia further objects to this Request as vague and ambiguous to the extent that the phrase "DOCUMENTS the refer or relate to alternative brand names" is unintelligible. As a consequence, Patagonia will produce non-privileged documents reflecting Patagonia's decision to use LONG ROOT ALE as a trademark for beer. | "All documents" refers to "YOUR decision to use the LONG ROOT ALE trademark" and there is no basis for the objection that this "conceivably encompasses every document referring to the use of the LONG ROOT ALE trademark." With respect to documents concerning brand names that Plaintiffs did not use, those documents are relevant to Plaintiffs' knowledge of AB's registration and exclusive right to use PATAGONIA on beer and its laches defense. Thus, Plaintiffs must produce documents regarding relating to alternative brand names and its decision not to use PATAGONIA. Finally, we do not understand Plaintiffs' claim that the request is unintelligible. "DOCUMENTS the refer or relate to alternative brand names" clearly means documents that refer or relate to alternative brand names for the LONG ROOT ALE beer. By removing the word "all," it is unclear to what extent Plaintiffs intend to withhold responsive documents. If Plaintiffs intend to withhold responsive documents, please explain what documents Plaintiffs intend to withhold and why. Please confirm Plaintiffs will produce all responsive documents. |

[1] Plaintiff Patagonia Provisions, Inc.'s responses are identical to Plaintiff Patagonia, Inc.'s responses.

1

| No. | Request | Plaintiffs' Response[1] | Deficiencies |
|---|---|---|---|
| 2 | All DOCUMENTS that refer or relate to alternative product or brand names (i.e. product or brand names that did not include the term or mark "Patagonia") that YOU considered as the name or brand for alcoholic beverages, and the reasons that YOU did not use the trademark PATAGONIA on any alcoholic beverages. | In addition to the general objections, Patagonia objects to the Request on grounds that it seeks information not relevant to the claims or defenses asserted is action to the extent that the Request seeks documents concerning product and brand names that Patagonia did not use and decided not to pursue. As a consequence, Patagonia will produce non-privileged documents reflecting the reasons Patagonia chose to adopt the LONG ROOT PALE ALE and LONG ROOT WIT brands for beer and, therefore, chose not to use the PATAGONIA mark. | As with Request No. 1, this request is relevant to Plaintiffs' knowledge of AB's registration and exclusive right to use PATAGONIA on beer and its laches defense.  Plaintiffs' response suggests that it does not intend to produce documents relating to alcoholic beverages other than Long Root Pale Ale and Long Root Wit.  Documents relating to other alcoholic beverages, even if never ultimately sold, are relevant and must be produced.  Please also confirm that Plaintiffs will produce responsive documents that reflect the reasons why they did not use the PATAGONIA mark on any alcoholic beverages, regardless of whether such documents also reflect the reasons Plaintiffs chose another name. |
| 3 | DOCUMENTS sufficient to show YOUR relationship with New Belgium Brewing Co. | In addition to the general objections, Patagonia objects to this Request as vague and ambiguous by use of the undefined term "relationship." As a consequence, Patagonia will produce the formal agreement between New Belgium Brewing Co. and Patagonia concerning the production of a beer in collaboration with one another. | It is unclear whether Plaintiffs have agreed to produce responsive documents sufficient to show the full spectrum of any relationship between them and New Belgium Brewing Co. – is Plaintiffs' relationship with NBB limited to the production of a beer?  Is there only one agreement? |
| 4 | COMMUNICATIONS between YOU and New Belgium Brewing Co. CONCERNING AB's PATAGONIA trademark or any trademark either YOU or New Belgium Brewing Co. considered for use in connection with any alcoholic beverage product, including but not limited to any COMMUNICATIONS relating to | In addition to the general objections, Patagonia objects that the Request is disproportionate to the needs of the case and not relevant to the claims and defenses  asserted in this action to the extent it seeks documents relating to marks that Patagonia did not use and decided not to pursue. As a consequence, Patagonia will produce communications between Patagonia and New Belgium Brewing Co. relating to (1) AB's PATAGONIA trademark and (2) letters | Please confirm that Plaintiffs agree to produce communications relating to the use or potential use of the term or mark "Patagonia," regardless of whether AB is mentioned in those communications. |

| No. | Request | Plaintiffs' Response[1] | Deficiencies |
|-----|---------|-------------------------|--------------|
| | letters that New Belgium Brewing Co. sent to or received from AB. | exchanged between New Belgium Brewing Co. and AB. | |
| 6 | All DOCUMENTS CONCERNING YOUR awareness of any PERSON using the designation PATAGONIA in connection with the sale of alcoholic beverage products. | In addition to the general objections, Patagonia objects to this Request as unduly burdensome and overbroad in that the request for "[a]ll" documents concerning the identified subject matter to the extent it requires Patagonia to search the internal files outside of its trademark department within the legal department. Patagonia further objects that Patagonia's awareness of third-party use of the term Patagonia is not relevant to the claims or defenses asserted in this action. As a consequence, Patagonia will search its trademark related files and produce non-privileged documents showing Patagonia's enforcement of its rights in the PATAGONIA trademark against any third-party in connection with the sale of alcoholic beverage products since 2006 to the present, as well as Patagonia's trademark file for its applications for trademark registrations for any PATAGONIA-formative mark covering alcoholic beverages. | The objection that the request is "unduly burdensome and overbroad in that ... it requires Patagonia to search the internal files outside of its trademark department within the legal department" is unfounded. Plaintiffs' knowledge of the use of "Patagonia" in connection with the sale of alcoholic beverages is relevant to several of the claims in their complaint. Plaintiffs are obligated to conduct a reasonable search of records in their possession, custody, or control, and that is not limited to records of the trademark group within their legal department, which Plaintiffs may claim are privileged. Further, Plaintiffs' production should not be limited to documents showing its awareness since 2006. |

3

| No. | Request | Plaintiffs' Response[1] | Deficiencies |
|---|---|---|---|
| 7 | All DOCUMENTS CONCERNING YOUR plans to sell alcoholic beverages using the designation PATAGONIA. | In addition to the general objections, Patagonia objects to this Request as vague and ambiguous as to the use of the undefined phrase "the designation PATAGONIA" as it's unclear whether the Request is seeking documents concerning use of PATAGONIA as trademark or other designation, such as an entity or trade name. Patagonia further objects to this Request as unduly burdensome and disproportionate to the needs of the case and not relevant to the claims or defenses asserted in this action to the extent that it seeks "[a]ll" documents concerning the identified subject matter, which conceivably encompasses every document referring to the use of Patagonia, Patagonia Provisions, Patagonia Inc., or Patagonia Provisions, Inc. in connection with alcoholic beverages. As a consequence, Patagonia will produce non-privileged documents reflecting its business plans, if any, to sell or market beer in connection with the terms Patagonia, Patagonia Provisions, Patagonia Inc., or Patagonia Provisions, Inc. | To the extent Plaintiffs are confused by AB's use of the word "designation," AB clarifies that this request seeks all documents concerning Plaintiffs' plans to sell alcoholic beverages using the word "Patagonia" (alone or with another term) as a trademark or brand name or in connection with their marketing or sale of any alcoholic beverage. Presumably, based on their objection regarding proportionality, Plaintiffs only agree to produce business plans relating to beer, thus refusing to produce (a) documents relating to its marketing plans and (b) documents relating to other alcoholic beverages beyond beer. Given that alcoholic beverages are not Plaintiffs' primary lines of business, we see no basis for Plaintiffs' objection based on undue burden. |

4

| No. | Request | Plaintiffs' Response[1] | Deficiencies |
|-----|---------|------------------------|--------------|
| 9 | Copies of any licenses relating to the use or registration of any of the PATAGONIA MARKS, which YOU have provided to any PERSON, including any COMMUNICATIONS with that PERSON relating to such license. | In addition to the general objections, Patagonia objects to this Request to extent it seeks information about licenses that are not relevant to the issues of infringement, dilution, or priority. Patagonia further objects to the Request as overly broad as the Request is not limited in time. As a consequence, Patagonia will produce copies of any licenses relating to the use or registration of its PATAGONIA marks that Patagonia is relying upon in support of its claims. | Please confirm that Plaintiffs will produce copies of licenses relating to the trademarks identified in paragraph 36 of their complaint.<br><br>The request calls for communications relating to the license, including the enforcement of any provisions of the license, the correspondence preceding the license, and – by way of example – correspondence relating to modifications to, or the termination of such licenses.<br><br>As for the time period of the request, we trust that Plaintiffs are aware of any license that it has granted, or received, as those licenses defined the scope of Plaintiffs' use, or of a third party's ability to use, a PATAGONIA mark. For the purposes of this request only, and without waiver of AB's rights, AB will limit this request to 2006 to present. |
| 10 | To the extent YOU did not provide such DOCUMENTS in response to the above request, provide a copy of YOUR agreement and/or license with Patagonia Provisions relating to the use and exploitation of the name and mark PATAGONIA. | In addition to the general objections, Patagonia objects that this Request is duplicative of Request for Production No. 9. Patagonia further objects that the Request is vague and ambiguous by use of the undefined term "exploitation." As a consequence, Patagonia will produce a copy of the current license agreement, if any, between Patagonia and Patagonia Provisions, Inc. relating to the use of the PATAGONIA marks. | Please confirm Plaintiffs will produce any agreement relating to the use of the PATAGONIA name and mark.<br><br>Also, there is no basis to limit Plaintiffs' production to the "current" agreement. Please confirm Plaintiffs' will produce agreements from 2012 to the present. If there are numerous agreements such that Plaintiffs would claim undue burden, please let us know. |

5

| No. | Request | Plaintiffs' Response[1] | Deficiencies |
|---|---|---|---|
| 11 | All agreements (including but not limited to concurrent use, co-existence, consent agreements, or settlement agreements) that YOU have entered into, or proposed to enter into, with a third party CONCERNING the use or registration of a trademark or name comprised, in whole or part, of the term PATAGONIA – whether that agreement pertained to YOUR ability to use or register a PATAGONIA name or trademark, or to a third party's ability to use or register a PATAGONIA name or trademark – including but not limited to any COMMUNICATIONS with each third party relating to such agreement(s). | In addition to the general objections, Patagonia objects to this Request as unduly burdensome and disproportionate to the needs of the case to the extent the Request seeks all "proposed" agreements and communications concerning such agreements that were never entered into. Patagonia further objects to the Request as overbroad given that it is not limited in time. As a consequence, Patagonia will produce copies of final coexistence agreements, consent agreements, settlement agreements, and concurrent use agreements between Patagonia and third parties concerning the use or registration of a PATAGONIA-formative mark, if any, as well as non-privileged communications with third parties concerning any such agreements. | This request is relevant to Plaintiffs' efforts to enforce its mark, and potentially relevant to the scope of their rights, as plead in the complaint. Plaintiffs must produce all non-privileged communications and negotiations pertaining to such agreements, including non-final agreements.<br><br>Please also confirm Plaintiffs are not withholding any documents based on their objection that the Request is not limited in time. |
| 13 | All DOCUMENTS that YOU have received from the U.S. Patent & Trademark Office ("USPTO") in which the USPTO has rejected YOUR application to register the mark PATAGONIA (alone or with other terms), for any goods or services, due to a perceived likelihood of confusion with a preexisting application or registration, along with YOUR response(s) thereto, and any non-privileged | In addition to the general objections, Patagonia objects to this Request as unduly burdensome to the extent it seeks public USPTO records which are equally available to AB. Patagonia further objects that the Request is overbroad and disproportionate to the needs of the case to the extent it demands that Patagonia search its internal files for all non-privileged communications concerning a USPTO likelihood-of-confusion refusal for any trademark application Patagonia has filed for a PATAGONIA-formative mark. As a consequence, Patagonia will produce non- | This response inappropriately narrows the request to use of PATAGONIA on alcoholic beverages. The requested documents are relevant to the scope and limitations of Plaintiffs' rights, and their affirmative trademark infringement claims, and thus Plaintiffs must also produce documents relating to applications to register for any goods or services – not just alcoholic beverages.<br><br>Further, the fact that certain documents are publicly available does not excuse Plaintiffs from their obligation to produce such documents that |

| No. | Request | Plaintiffs' Response[1] | Deficiencies |
|---|---|---|---|
| | COMMUNICATIONS within YOUR company relating these subjects (e.g. internal emails referring to the USPTO rejection or information needed for the response). | privileged communications, if any, discussing any 2(d) refusal issued by the USPTO for its applications to register a PATAGONIA-formative trademark for alcoholic beverages. The USPTO records are publicly available on the USPTO's website. | are within their possession, custody, and control. If Plaintiffs wish to provide links to the public USPTO records in lieu of printing them, and represent that such records are complete, let us know. |
| 14 | All DOCUMENTS that YOU have received from the USPTO in which the USPTO has indicated that the term PATAGONIA refers to a region in South America, along with YOUR response(s) thereto, and any non-privileged COMMUNICATIONS within YOUR company relating these subjects (e.g. internal emails referring to the USPTO's findings or information needed to respond to that finding). | In addition to the general objections, Patagonia objects to this Request as unduly burdensome to the extent it seeks public USPTO records which are equally available to AB. Patagonia further objects that the Request is overbroad and disproportionate to the needs of the case to the extent it demands that Patagonia search its internal files for all non-privileged communications concerning any indication by the USPTO that the term Patagonia refers to a region in South America. As a consequence, Patagonia will produce non-privileged communications discussing any finding by the USPTO that the term Patagonia refers to a region in South America, in connection with Patagonia's applications to register a PATAGONIA-formative trademark for alcoholic beverages. The USPTO records are publicly available on the USPTO's website. | This response inappropriately narrows the request to use of PATAGONIA on alcoholic beverages. The requested documents are relevant to the scope and limitations of Plaintiffs' rights, and their affirmative trademark infringement claims, and thus Plaintiffs must also produce documents relating to applications to register for any goods or services – not just alcoholic beverages.

Further, the fact that certain documents are publicly available does not excuse Plaintiffs from their obligation to produce such documents that are within their possession, custody, and control. If Plaintiffs wish to provide links to the public USPTO records in lieu of printing them, and represent that such records are complete, let us know. |

7

| No. | Request | Plaintiffs' Response[1] | Deficiencies |
|---|---|---|---|
| 15 | All DOCUMENTS CONCERNING consumer survey(s) or research YOU have commissioned, directed, or received that relate to a likelihood of confusion between YOUR use of PATAGONIA on the one hand, and another PERSON's use of the name or mark PATAGONIA on the other hand. | In addition to the general objections, Patagonia objects to this Request as unduly burdensome to the extent it seeks "[a]ll documents" concerning the identified subject matter, which conceivably encompasses every document referring to a survey even if the survey was not completed. Patagonia further objects to the Request as overbroad as it is not limited in time. As a consequence, Patagonia will produce non-privileged documents relating to surveys conducted at Patagonia's request regarding any likelihood of confusion between Patagonia's use of its PATAGONIA marks and a third party's use of a PATAGONIA mark on alcoholic beverages. | This response inappropriately narrows the request to use of PATAGONIA on alcoholic beverages. The requested documents are relevant to the scope and limitations of Plaintiffs' rights, and their affirmative trademark infringement claims, among other claims in the complaint. Thus, Plaintiffs must produce responsive documents relating to use of PATAGONIA on any goods and services, and not just alcoholic beverages. |
| 17 | DOCUMENTS sufficient to show the font (typeface) used by YOU in connection with each of YOUR PATAGONIA MARKS. | In addition to the general objections, Patagonia objects to this Request as overbroad and disproportionate to the needs of the case as the Request encompasses numerous trademarks used by Patagonia and is not limited in time. Patagonia further objects as seeking documents that are not relevant to the claims or defenses asserted in this action as Patagonia owns registrations for word marks that are not limited to any particular font or style. As a consequence, Patagonia will produce documents sufficient to show the font Patagonia currently uses in connection with the P-6 Logo, as defined in paragraph 7 in the First Amended Complaint, and the PATAGONIA PROVISIONS (stylized) mark. | Plaintiffs have no meaningful objection to their refusal to produce documents sufficient to show the font used for marks other than the P-6 logo, which are relevant to Plaintiffs' trademark infringement and false designation claims. |

Exhibit B
Pg. 18

| No. | Request | Plaintiffs' Response[1] | Deficiencies |
|---|---|---|---|
| 18 | DOCUMENTS sufficient to show the origin and meaning of each of YOUR PATAGONIA MARKS, including, but not limited to, the P-6 Logo YOU identified in Paragraph 7 of the COMPLAINT. | As a consequence, Patagonia will produce documents showing the origin and intended meaning, if any, of the P-6 Logo and PATAGONIA brand in connection with the goods and services offered by Patagonia. | It is unclear from your response whether you are withholding any requested documents. Please clarify. |
| 19 | ALL DOCUMENTS CONCERNING any statement by Robert Tadlock to any PERSON, including, but not limited to, Outside Magazine that "Patagonia knew about a trademark registering 'Patagonia's as the name for a beer company as early as 2013." | Subject to the general objections, Patagonia will produce non-privileged documents reflecting statements by Robert Tadlock to any third-party about Patagonia's awareness of "a trademark registering 'Patagonia's as the name for a beer company as early as 2013." | Plaintiffs state no objection yet their response indicates that they are refusing to produce documents *concerning* Mr. Tadlock's statement (in other words, not limited to documents reflecting the statement) and documents concerning Mr. Tadlock's statement to *any person* (in other words, not limited to third parties). Please confirm Plaintiffs will produce all responsive documents. |
| 20 | ALL DOCUMENTS CONCERNING YOUR spokesperson Corley Kenna's statement to any PERSON, including, but not limited to, Outside Magazine that AB has made a "really brazen attempt to rip off our [YOUR] logo." | Subject to the general objections, Patagonia will produce non-privileged documents reflecting statements by Corley Kenna to any third-party about AB's "brazen attempt to rip off [YOUR] logo." | Plaintiffs state no objection yet their response indicates that they are refusing to produce documents *concerning* Ms. Kenna's statement (in other words, not limited to documents reflecting the statement) and documents concerning Ms. Kenna's statement to *any person* (in other words, not limited to third parties). Please confirm Plaintiffs will produce all responsive documents. Please confirm Plaintiffs will produce all responsive documents. |
| 21 | DOCUMENTS sufficient to show the identities of any PERSON to which YOU have granted permission to place that PERSON's corporate brand on YOUR products, including, but not limited to, instances where | In addition to the general objections, Patagonia objects to the Request as disproportionate to the nature of the case and not relevant to the claims and defenses asserted in this action. Patagonia further objects that this Request is overbroad as it is not limited in time. | Plaintiffs do not agree to produce any documents, yet this request narrowly seeks documents sufficient to show each person who Plaintiffs have allowed to put corporate branding on their products. Such documents are relevant to show the scope of Plaintiffs' rights, and the number of third parties that have been allowed to use the PATAGONIA mark with Plaintiffs' |

| No. | Request | Plaintiffs' Response[1] | Deficiencies |
|---|---|---|---|
|  | YOU allowed a third party to put its logo on a jacket made by YOU. |  | knowledge. Based on the allegations of the complaint, AB believes that such examples would tend to increase the association between Patagonia, Inc. and another company, if for example, the marks appear as a co-brand on an article of clothing. If unlicensed, those examples would also bear on the scope and limitations of Plaintiffs' rights. |
| 22 | DOCUMENTS sufficient to show the meaning or significance of the term "Patagonia." | In addition to the general objections, to the extent it is relevant, the Request is duplicative of Request No. 18, the response to which is incorporated here. | This request is not duplicative of No. 18 because No. 18 asks about the meaning and origin of Plaintiffs' marks and this request seeks documents about the meaning or significance of the term "Patagonia." Please confirm that Plaintiffs will produce documents sufficient to show the meaning or significance of the term "Patagonia." |
| 26 | All DOCUMENTS CONCERNING YOUR claimed first use date(s) as stated in each of YOUR U.S. trademark filings for the PATAGONIA MARKS. | In addition to the general objections, Patagonia objects to this Request as overbroad and unduly burdensome to the extent the Request seeks "[a]ll documents" concerning the identified subject matter, which conceivably encompasses any document that references Patagonia' claimed first-use dates, such as its trademark filings. As a consequence, Patagonia will produce non-privileged documents sufficient to show the first-use date of its PATAGONIA marks. | Plaintiffs state that they will produce documents sufficient to show the first-use date of their PATAGONIA marks. Please confirm this includes documents substantiating the validity of such date, like sales records or photos. |
| 27 | DOCUMENTS sufficient to show any television commercials, billboard advertisements, or other advertisements that YOU have conducted in connection with the PATAGONIA MARKS. | Subject to its general objections, Patagonia will produce documents sufficient to show representative examples of its television commercials, billboard advertisements, and other advertising materials that Patagonia has used since its inception. | OK with representative examples so long as Plaintiffs will not seek to rely on any other unproduced examples to support the claims in their complaint. |

| No. | Request | Plaintiffs' Response[1] | Deficiencies |
|---|---|---|---|
| 29 | From YOUR inception to present, for each month that YOU have offered goods or services under the PATAGONIA MARKS, DOCUMENTS sufficient to show the volume of sales for each such good or service. | Subject to its general objections, Patagonia will produce documents sufficient to show aggregate sales for all goods and services offered under the PATAGONIA marks in the manner such records are maintained, divided by broad categories of goods and services, if available. | What do Plaintiffs mean by "aggregate sales"? |
| 30 | From YOUR inception to present, DOCUMENTS sufficient to show the monthly revenues associated with the sale of any goods or services offered by YOU under the PATAGONIA MARKS. | Subject to the general objections, Patagonia will produce documents sufficient to show revenues associated with the sales of all goods and services offered under the PATAGONIA marks in the manner such records are maintained and on an annual basis, if available. | Are Plaintiffs intending to aggregate revenue for "all goods and services offered under the PATAGONIA marks"?  If so, why? |
| 32 | DOCUMENTS sufficient to show the online or retail outlets that offer for sale and/or sell YOUR Long Root Ale product. | Subject to the general objections, Patagonia will produce documents sufficient to identify the online or retail outlets that currently offer for sale Patagonia' Long Root Ale beer product in the United States. | Plaintiffs state no specific objection yet suggest that they will not produce documents sufficient to show the online or retail outlets that have *previously* offered the Long Root Ale product. Please confirm Plaintiffs will produce all such responsive documents, not limited to "current" outlets. |
| 33 | From YOUR inception to present, DOCUMENTS sufficient to show YOUR audited and unaudited annual profit and loss statements. | Subject to the general objections, Patagonia objects to this Request as irrelevant except to the extent that it is duplicative of other requests. | Plaintiffs claim that this request is irrelevant except to the extent it is duplicative of other requests.  Plaintiffs identify no allegedly duplicative requests.  Request nos. 29 and 30 ask for monthly sales volume and revenue, while this request seeks annual profit and loss statements. Please confirm Plaintiffs will produce audited and unaudited annual profit and loss statements. |

Exhibit B
Pg. 21

| No. | Request | Plaintiffs' Response[1] | Deficiencies |
|---|---|---|---|
| 34 | All DOCUMENTS CONCERNING YOUR awareness of the use of the designation "Patagonia" in the marketing or sale of any good or service offered by third parties. | In addition to the general objections, Patagonia objects to this Request as duplicative of Request for Production No. 6. Patagonia further objects to this Request as unduly burdensome and disproportionate to the needs of the case in that the request for "[a]ll" documents concerning the identified subject matter to the extent it requires Patagonia to search the internal files outside of its trademark department within the legal department and is not confined to uses in the United States. Patagonia further objects to the Request as overbroad as it is not limited in time. Patagonia further objects that Patagonia' awareness of third-party use of the term Patagonia is not relevant to the claims or defenses asserted in this action. As a consequence, Patagonia will search its trademark enforcement files and will produce non-privileged documents showing Patagonia' initial enforcement and the outcome if any of its rights in the PATAGONIA trademark against third parties using a PATAGONIA-formative trademark or term. | This request is not duplicative of No. 6, which is limited to alcoholic beverages, and Plaintiffs improperly purport to limit their search for responsive documents to their trademark enforcement files. This request is relevant to, at a minimum, the scope and limitation of Plaintiffs' rights and their infringement claims in the complaint. Please confirm Plaintiffs will produce all responsive documents. |
| 35 | All DOCUMENTS CONCERNING any efforts by YOU to ascertain whether YOUR use of the any of the PATAGONIA MARKS conflicts with the rights of others, including, but not limited to, any trademark clearance searches, studies, investigations, or analyses. | In addition to the general objections, Patagonia objects to the Request as vague and ambiguous by use of the undefined terms "studies, investigations, or analyses" and "conflicts." Patagonia further objects to the extent that the Request seeks documents protected from disclosure by the attorney-client privilege, the work product doctrine, and any other applicable privilege. As a consequence, Patagonia will produce a copy of any non- | The terms "studies, investigations, or analyses" and "conflicts" are not ambiguous and are used in their ordinary sense. If needed, we can meet and confer to ensure that Plaintiffs understand their plain meaning.<br><br>Further, Plaintiffs improperly narrow the request by purporting to limit their production to "search report results," which were received before the filing of certain trademark applications for |

| No. | Request | Plaintiffs' Response[1] | Deficiencies |
|---|---|---|---|
| | | privileged search report results it received in connection with trademark clearance searches conducted prior to its filing of U.S. trademark applications for PATAGONIA-formative trademarks for alcoholic beverages. | certain PATAGONIA marks. Plaintiffs must produce all documents concerning their search and screening efforts with respect to all of the PATAGONIA-formative trademarks that are identified in the complaint, which may include investigations of third party rights or use, or other non-privileged research.<br><br>Also, the response suggests that "search report results" are only obtained before Plaintiffs file a USPTO application; that is not necessarily so and Plaintiffs cannot limit its production as such. |
| 36 | All DOCUMENTS CONCERNING any investigation(s) commissioned or conducted by YOU or at YOUR direction that relate to AB or Warsteiner Importers Agency, Inc. | In addition to the general objections, Patagonia objects to the extent that the Request seeks documents protected from disclosure by the attorney-client privilege, the work product doctrine, and any other applicable privilege. As a consequence, Patagonia responds that at this time, Patagonia is not aware of any non-privileged documents responsive to this Request. | What is the basis for Plaintiffs' claim that they are not aware of any non-privileged documents? Did Plaintiffs conduct a reasonable search for such documents? |
| 37 | All DOCUMENTS CONCERNING any efforts by YOU to ascertain whether YOUR use of the designation "Patagonia" is descriptive, misdescriptive, or deceptive. | In addition to the general objections, Patagonia objects to this Request as vague and ambiguous as the Request is not limited to any specific goods and services and thus it's impossible to determine whether a mark is descriptive, misdescriptive, or deceptive. | This request is not vague or ambiguous, as it applies to any goods or services offered by Plaintiffs. Plaintiffs must search for and produce all such documents. |

| No. | Request | Plaintiffs' Response[1] | Deficiencies |
|---|---|---|---|
| 38 | All DOCUMENTS CONCERNING surveys or other studies conducted by YOU, that refer or relate to consumer recognition of the PATAGONIA MARKS. | In addition to the general objections, Patagonia objects to this Request as overbroad in that it seeks "[a]ll" documents concerning the identified subject matter, which conceivably encompasses every document referring to a consumer recognition survey even if the survey was not completed. As a consequence, Patagonia will produce non-privileged survey results relating to consumer recognition of the PATAGONIA marks. | Plaintiffs' only objection is that the request conceivably encompasses every document relating to surveys that were not completed, yet Plaintiffs purport to limit their production to survey results. Plaintiffs must produce documents concerning those surveys, all tentative and final survey results, and also any studies. Whether the survey was completed has no bearing on its relevance: by way of example, if a survey covered 60 out of 80 respondents, AB is entitled to see those results. |
| 39 | DOCUMENTS sufficient to show YOUR corporate structure, including corporate organizational charts and employee organizational charts. | In addition to the general objections, Patagonia objects to this Request as overbroad as the Request is not limited in time or to any particular organization that may be relevant to the claims and defenses asserted in this action. As a consequence, Patagonia will produce the current organization chart if any covering responsibilities related to the sale or promotion of beer. | This is a standard request to identify potentially relevant individuals. Plaintiffs must produce such documents for the entire company, and not limited to beer, given that Plaintiffs' claims are not limited to beer. Plaintiffs must also produce such documents reflecting the corporate structure at least from 2012 to the present. |
| 40 | All DOCUMENTS CONCERNING YOUR awareness, including but not limited to when YOU first became aware, of a beer product sold under the name or trademark PATAGONIA. | In addition to the general objections, Patagonia objects to this Request as overbroad in seeking "[a]ll" documents concerning the identified subject matter to the extent it requires Patagonia to search the internal files outside of its trademark department within the legal department. Patagonia further objects on grounds that this request conceivably extends beyond the United States. As a consequence, Patagonia will search trademark department files and produce non-privileged documents sufficient to show the approximate date that Patagonia became aware of the registration | Plaintiffs unreasonably attempt to limit their search to their trademark department files. Plaintiffs' awareness is a key issue and thus Plaintiffs must conduct a reasonable search for such documents (not limited to its trademark files that they may attempt to argue are privileged).<br><br>Plaintiffs state no legal objection supporting their attempt to limit the request to Plaintiffs' awareness of beer sold under the PATAGONIA mark in the US. Accordingly, Plaintiffs must produce all documents concerning their |

| No. | Request | Plaintiffs' Response[1] | Deficiencies |
|---|---|---|---|
| | | Reg. No. 4,226,102 for the PATAGONIA mark for beer. The Complaint identifies when Patagonia became aware that PATAGONIA was used on beer sold in the United States, and AB's own documents will show when it sold its PATAGONIA beer in the United States. | awareness of beer sold under the PATAGONIA mark, regardless of where such beer was sold, and beyond the files of their trademark group. |
| 42 | All DOCUMENTS CONCERNING any efforts by YOU to enforce YOUR rights in the PATAGONIA MARKS. | In addition to the general objections, Patagonia objects to this Request as unduly burdensome in that it seeks "[a]ll" documents concerned the identified subject matter, which includes every document that Patagonia has filed with the trademark office and in any way related to assertions of trademark infringement or dilution. To the extent that such documents are relevant and reasonably sought in discovery, this Request is duplicative of other requests. | Plaintiffs do not identify which request this would be duplicative of.

Please confirm Plaintiffs will produce all responsive documents. |
| 43 | All DOCUMENTS CONCERNING YOUR decision not to enforce YOUR rights in the PATAGONIA MARKS against any third party. | In addition to the general objections, Patagonia objects to the Request as overbroad as it not limited in time. Patagonia further objects to the extent that the Request seeks documents protected from disclosure by the attorney-client privilege, the work product doctrine, and any other applicable privilege. To the extent there are any non-privileged documents, Patagonia will produce such documents that refer to AB's purported PATAGONIA trademark registration for beer. | This response improperly narrows the request to AB's registration.

Plaintiffs must search for and produce all documents concerning their decision not to enforce their rights in the PATAGONIA MARKS against any third party, not just AB. Plaintiffs' decision not to pursue or enforce rights against other uses of the term or mark PATAGONIA is relevant to the scope and limitation of its rights, and the allegations in the complaint. |
| 44 | All DOCUMENTS CONCERNING any damages suffered by YOU as a result of any actions by AB, including, but not limited to, all DOCUMENTS relating to any lost | In addition to the general objections, Patagonia objects to this Request as premature as Patagonia' investigation is ongoing. Patagonia further objects to the Request to the extent it calls for expert testimony and opinion. | To the extent Plaintiffs refuse to produce documents concerning damages they have allegedly suffered, Plaintiffs concede they have suffered no damages. |

| No. | Request | Plaintiffs' Response[1] | Deficiencies |
|---|---|---|---|
| | sales or profits by YOU or any harm to YOU or YOUR reputation. | | Do Plaintiffs currently have any responsive documents? |
| 45 | All COMMUNICATIONS between YOU and AB, including but not limited to any COMMUNICATIONS relating to the use of "Patagonia" on beer or other alcoholic products. | In addition to the general objections, Patagonia objects to this Request as unduly burdensome to the extent it seeks documents that are equally available to AB. As a consequence, Patagonia will produce its communications with AB related to beer. | Plaintiffs have limited the scope of the communications that they will produce to those related to beer. Plaintiffs must also produce communications relating to the parties' trademarks or any alcoholic products. There is no basis for Plaintiffs' refusal to do so, particularly given that Plaintiffs also request documents from AB that are equally available to them. |
| 46 | Copies of all internal DOCUMENTS that refer to AB and/or AB's registration of the mark PATAGONIA for beer. | In addition to the general objections, Patagonia objects to this Request as overbroad in seeking "all internal DOCUMENTS" referring to the stated subject matter to the extent that it requires Patagonia to search the internal files outside of its trademark department within the legal department. Patagonia further objects to the extent that the Request seeks documents protected from disclosure by the attorney-client privilege, the work product doctrine, and any other applicable privilege. As a consequence, Patagonia will search its trademark department files and produce non-privileged documents referencing AB's U.S. registration Reg. No. 4,226,102 for the PATAGONIA mark for beer. | Plaintiffs improperly purport to limit their search to documents in their trademark department files.\n\nPlaintiffs must conduct a reasonable search for responsive documents in its possession, custody or control not limited to their trademark department files, and not limited to a particular registration number. The search should cover references to AB, references to the trademark filing that matured to registration, or to the trademark registration.\n\nThese documents are highly relevant to AB's defenses, including its laches defense, as well as Plaintiffs' entitlement to any relief, including equitable relief. |

| No. | Request | Plaintiffs' Response[1] | Deficiencies |
|-----|---------|------------------------|--------------|
| 48 | DOCUMENTS sufficient to show YOUR relationship with Patagonia Provisions, Inc. | In addition to the general objections, Patagonia objects to this Request as vague and ambiguous by use of the undefined term "relationship." To the extent that this Request can be understood and is relevant, it is duplicative of other requests. | Plaintiffs do not identify which request this is duplicative of.

Please confirm Plaintiffs will produce all responsive documents. |
| 50 | All DOCUMENTS YOU relied on in responding to any interrogatory, either served concurrently herewith or in the future. | In addition to the general objections, Patagonia objects to this Request as vague and ambiguous to the extent it seeks Patagonia' agreement to produce documents in connection with future discovery requests that Patagonia has not yet seen. | This request is not vague and ambiguous as Plaintiffs are aware what documents they have relied upon in responding to interrogatories, and applies to any subsequent interrogatories served in this action.

Plaintiffs must agree to produce such documents. Plaintiffs do not even agree to produce documents they relied on in responding to the interrogatories that were previously served yet state no objection that would excuse their obligation to produce such documents. |

210122530

17

Exhibit B
Pg. 27

# Exhibit C

Exhibit C
Pg. 28



Amanda A. Main
+1 650 843 5914
amain@cooley.com

By Email to: ggilchrist@kilpatricktownsend.com

September 16, 2019

Gregory S. Gilchrist
Kilpatrick Townsend & Stockton LLP
Two Embarcadero Center, Suite 1900
San Francisco, CA 94111-3834

**Re:** **Plaintiffs' Inadequate Responses to Defendant's First Set of Requests for Admissions**
*Patagonia, Inc., et al. vs. Anheuser-Busch, LLC, et al.*

Dear Greg:

I am writing under the Local Rules to meet and confer with you regarding Plaintiffs Patagonia Inc.'s ("PI") and Patagonia Provisions, Inc.'s ("PPI") responses to the First Set of Requests for Admissions propounded by Defendant Anheuser-Busch, LLC ("AB"). Given that Plaintiffs' responses are substantively identical for the most part, we address them together, unless otherwise noted. Please let us know your availability within the next ten days to meet and confer by phone.

We ask Plaintiffs to promptly amend their responses to cure the deficiencies discussed below.

As mentioned in correspondence relating to Plaintiffs' other responses, Plaintiffs have complained that AB's discovery responses include general and boilerplate objections, yet Plaintiffs purport to "specifically incorporate" seven "General Objections" into each of their responses. (*See, e.g.,* Plaintiff Patagonia, Inc.'s Resp. & Obj. to AB's First Set of Requests for Admissions, at ¶ 8). In view of Plaintiffs' position, please confirm that Plaintiffs do not intend to rely on their General Objections as a basis for objecting to the Requests for Admission.

**Refusal to Respond**

As to the specific responses, PI fails to respond to Request for Admission Nos. 1, 8, 15, 20, 26, 32, 37, 43, 49, 55, 61, and 67, which ask PI to admit that certain third-party PATAGONIA-formative trademarks, as reflected in their registrations, do not create a false suggestion of a connection with Patagonia, Inc. PI objects that the Requests are improper in that they assume that the cited term is used or has been used as a trademark and that PI is unaware how the mark has been used. As PI knows, the registrations themselves were issued to the registrants only after evidence of use was provided to the USPTO, and even a basic investigation (as required by Rule 36) would reveal their use. PI has sufficient information to provide its response. For example, unless PI believes that the third-party's use of the mark identified in the Request, in connection with the goods listed in the registration, points "uniquely and unmistakably to" PI, then PI must admit the Request. PI's objection that the Request calls for a legal conclusion as to the application of the false suggestion doctrine is meritless. Federal Rule of Civil Procedure 36(a)(1) specifically authorizes a request to admit the application of law to fact, which is precisely what these Requests seek. PI must immediately amend their responses to admit or deny these Requests.

Plaintiffs' responses to Request for Admission Nos. 6, 13, 24, 30, 35, 41, 47, 53, 59, 65, and 71 (and corresponding Request Nos. 5, 11, 20, 25, 29, 34, 39, 44, 49, 54, and 59 to PPI) are deficient for the same reasons. These Requests ask Plaintiffs to admit that they do not contend that certain third-parties' uses of other PATAGONIA-formative trademarks, as reflected in their registrations, create a likelihood of confusion with Plaintiffs' trademarks. Plaintiffs object that the Requests assume that the marks have been used.

# Cooley

Gregory S. Gilchrist
September 16, 2019
Page Two

Again, as Plaintiffs are well aware, the registrations were only issued after the registrants presented evidence of use to the PTO.  Regardless of whether Plaintiffs are (or were) aware of such use, Plaintiffs are still able to admit or deny whether they contend there is a likelihood of confusion based on the information provided in the RFA.  If Plaintiffs are not aware of how the marks have been used or whether they have been used at all, then Plaintiffs presumably do not contend there is a likelihood of confusion.  Plaintiffs' objection that the Requests call for an improper legal conclusion also fails because, as explained above, Rule 36 expressly permits a party to seek an admission relating to the application of law to fact.  These same flaws also apply to Plaintiffs' responses to Request for Admission Nos. 7, 14, 19, 25, 31, 36, 42, 48, 54, 60, 66, and 72 (and corresponding Request Nos. 6, 12, 21, 26, 30, 35, 40, 45, 50, 55, and 60 to PPI), which ask Plaintiffs to admit that they do not contend that certain third-party uses of PATAGONIA-formative trademarks cause dilution to any of Plaintiffs' trademarks.  Accordingly, Plaintiffs must immediately withdraw their objections and either admit or deny the Requests.

**Other Deficient Responses**

Plaintiffs' responses to Request for Admission Nos. 2, 9, 16, 21, 27, 33, 38, 44, 50, 56, 62, and 68 (and corresponding Request Nos. 1, 7, 13, 17, 22, 27, 31, 36, 41, 46, 51, and 56 to PPI) are also deficient.  These Requests ask Plaintiffs to admit that an exhibit attached to the Requests shows use of a certain word mark in connection with a specific good or service.  Plaintiffs admit that the attached exhibit shows the term and discusses the good or service, yet state that they lack sufficient information to admit or deny the remainder of the Request, including whether the exhibit shows use of the cited term as a mark and the authenticity of the exhibit.  The Requests do not ask Plaintiffs to authenticate the exhibits.  But even if they did, Plaintiffs do not lack sufficient information to do so, given that the webpage from which the exhibit was taken is clearly identified on the exhibit itself.  Even with the basic diligence required under Rule 36, Plaintiffs could go to those websites and verify that the exhibits match the actual websites.  Further, given that Plaintiffs can see how the word mark is used, they do not lack sufficient information to confirm that the words are in fact used as marks.  Also undermining Plaintiffs' position, other Requests and publicly available documents put Plaintiffs on notice that such marks have been registered with the USPTO.  Moreover, to deny the Requests based on insufficient knowledge, Plaintiffs must state that they have "made reasonable inquiry" and that the information they know or can readily obtain is insufficient to enable them to admit or deny the Requests.  Fed. R. Civ. P. 36(a)(4).  Plaintiffs' responses are thus facially improper.  Plaintiffs must immediately amend their responses to either admit or deny the Requests (and not deny the Requests based on a lack of information).

With respect to Request for Admission Nos. 3 and 10 (and corresponding Request Nos. 2 and 8 to PPI), Plaintiffs assert meritless objections in an attempt to improperly avoid an unqualified admission.  These Requests ask Plaintiffs to admit that certain PATAGONIA-formative word and design marks, as reflected in their USPTO registrations, contain a mountain design element.  Plaintiffs object that the Requests seek irrelevant information, but such information is relevant to show the existence of third-party marks using PATAGONIA in connection with a mountain design element, like AB, which Plaintiffs complain infringes on their own marks.  (*See* Compl. at ¶ 3.)  Plaintiffs' objection that the documents speak for themselves and that the requested information is equally available to AB are not valid objections and do not relieve Plaintiffs from their obligation respond.  Plaintiffs' responses also do not admit or deny the Requests but instead respond that some aspect of the designs "could be interpreted as containing a mountain design element."  Plaintiffs must immediately withdraw their frivolous objections and admit these Requests, without qualification.

Request for Admission Nos. 5, 12, 15, 23, 29, 34, 40, 46, 52, 58, 64, 70 to PI (and corresponding Requests Nos. 4, 10, 19, 24, 28, 33, 38, 43, 48, 53, 58 to PPI), ask Plaintiffs to admit that they have not objected to certain uses or applications to register PATAGONIA-formative trademarks by third parties.  In response,

# Cooley

Gregory S. Gilchrist
September 16, 2019
Page Three

Plaintiffs state that the term "objected" is vague and ambiguous and that they interpret the term to mean "initiating formal proceedings, including civil litigation or an action before the Trademark Trial and Appeal Board." "Objected" also plainly includes sending a cease and desist letter or engaging in any other contact or negotiation with the owner of the identified application or registration in which PI and PPI have asserted their objection to that third party's use or registration of a PATAGONIA formative mark or name. Plaintiffs must amend their responses to these Requests in accordance with this definition. Further, Plaintiffs state that they lack information about the extent or context of use of the trademark, yet do not state that they have "made reasonable inquiry" and that the information they know or can readily obtain is insufficient to enable them to admit or deny the Requests. Fed. R. Civ. P. 36(a)(4). Plaintiffs' responses are thus facially improper. Plaintiffs have no objection supporting their qualified admissions, and thus must withdraw their admissions and admit these Requests.

Request for Admission No. 92 to PI (and corresponding Request for Admission No. 77 to PPI), asks Plaintiffs to admit that they have entered into co-existence agreements with companies that use the term PATAGONIA. In response, Plaintiffs state that it is "not relevant to the claims or defenses asserted in this action as it is not limited in time or to any particular goods and services." This Request applies to all goods and services offered by Plaintiffs and is relevant to at least Plaintiffs' Section 2(a), trademark infringement, and dilution claims, as well as the scope of its alleged rights to the term PATAGONIA. Plaintiffs must immediately amend their responses.

Plaintiffs' responses to Request for Admission Nos. 73 and 74 (and corresponding responses in PPI's responses to Request for Admission Nos. 61 and 62) refer to "Exhibit A to these responses" but no exhibits were attached to the responses. Please immediately serve the intended Exhibit A to Plaintiffs' responses so that we are able to evaluate the sufficiency of the response.

Plaintiffs' response to Request for Admission No. 87 (and corresponding Request for Admission No. 72 to PPI) contains improper commentary intending to dilute what should otherwise be an unqualified admission. This Request asks Plaintiffs to admit that they never challenged AB's registration for PATAGONIA on beer until they filed this lawsuit. Plaintiffs admit this but only after they inject a narrative purporting to excuse their delay. Plaintiffs' volunteered statements, which are not objections or qualified denials, must be removed from their responses. Please confirm that you will supplement this RFA response.

Plaintiffs' fail to provide proper responses to Request for Admission No. 88 (and corresponding Request for Admission No. 73 to PPI). Plaintiffs object to an "improperly truncated quote" from Plaintiffs' founder with no explanation as to the basis for their objection; for example, Plaintiffs do not claim that the "truncated quote" is misleading or materially incorrect. Plaintiffs again then volunteer their own narrative instead of admitting the Request as framed, which is improper. And then Plaintiffs include self-serving commentary that the intent in selecting Plaintiffs' names have no bearing on the consumer impressions of the marks today. Whether or not that is actually the case, this commentary is irrelevant to the request for admission. Plaintiffs must amend their responses to state an unqualified admission.

Plaintiffs must strike their improper objection that Request for Admission No. 89 (and the corresponding Request for Admission to PPI) calls for a legal conclusion. The Requests ask Plaintiffs to admit that they were aware of AB's sale of beer as of a certain date. This clearly does not call for a legal conclusion. Plaintiffs must amend their responses.

Finally, Request for Admission No. 76 asks PI to admit that it has never sold beer in the United States. PI responds: "Admitted on the basis that third party distributors have been responsible for all distribution and sales of beer branded and promoted by Plaintiffs." First, this Request asks PI to admit that it (not Plaintiffs together) has never sold beer, and thus its response does not respond to the specific Request. Second,



Gregory S. Gilchrist
September 16, 2019
Page Four

the Request seeks an admission as to whether PI has ever sold beer in the United States – either it has or it has not.  PI's answer suggests that PI sold beer to third-party distributors, but it is unclear as PI has provided an evasive "response."  PI must amend and respond to the Request as framed.

We look forward to meeting and conferring on these matters.

Sincerely,

Amanda A. Main

cc:      Bobby Ghajar; Ryan T. Bricker

210366083

# Exhibit D

**Peterson, Marcus D.**

| | |
|---|---|
| **From:** | Gilchrist, Gregory <ggilchrist@kilpatricktownsend.com> |
| **Sent:** | Thursday, September 19, 2019 4:08 PM |
| **To:** | Roumiantseva, Dina; Bricker, Ryan |
| **Cc:** | Ghajar, Bobby A.; Main, Amanda; Galicki, Alexander; Manes, Sophy |
| **Subject:** | RE: Patagonia v. AB - Meet and Confer re: Documents and Interrogatories |

I think by now our color coded chart and hours on the phone have probably satisfied any obligation we had to meet and confer.  On your notes below, I take issue with a few things (i) We will decide who will deal with your side on various issues; we don't agree there was miscommunication or inefficiency on our end; (ii) We disagree with your premise that we made binding agreements about which we might renege while you are not bound by anything and still have failed to tell us if we amend in certain ways that you will not move to compel; and (iii) On RFP 43, no, it does not mean we will search for all responsive documents.   "OK" meant I understood you did not want to rehash the reasons why you felt it was inappropriate to see what we produced and then to tell us if there were specific other uses about which you wanted us to make searches.

We will take your comments on board and will amend (as we see fit unless you want to assure us that you are in agreement with some of the proposed amendments) by early next week; hopefully Monday (though we need to resolve the issue of the protective order first).

Regards, Greg

**Gregory Gilchrist**
He | Him
**Kilpatrick Townsend & Stockton LLP**
Two Embarcadero Center | Suite 1900 | San Francisco, CA 94111
office 415 273 7564 | fax 415 723 7216
ggilchrist@kilpatricktownsend.com | My Profile | vCard

---

**From:** Roumiantseva, Dina <droumiantseva@cooley.com>
**Sent:** Thursday, September 19, 2019 3:36 PM
**To:** Gilchrist, Gregory <ggilchrist@kilpatricktownsend.com>; Bricker, Ryan <rbricker@kilpatricktownsend.com>
**Cc:** Ghajar, Bobby A. <bghajar@cooley.com>; Main, Amanda <amain@cooley.com>; Galicki, Alexander <agalicki@cooley.com>; Manes, Sophy <SManes@kilpatricktownsend.com>
**Subject:** RE: Patagonia v. AB - Meet and Confer re: Documents and Interrogatories

Greg,

Please see below my further responses below, as needed, in **bold purple**.  We believe the back and forth hand-offs between you and Ryan may have led to some miscommunication on your end, and it certainly created more work on our end.  We would appreciate it going forward if we hear from someone who was involved in the discussions to avoid inefficiencies and misunderstandings.  If you needed an additional day to respond and that could have saved Ryan time and us time having to respond twice, that would have been fine with us with a heads up.

**Dina Roumiantseva**
Cooley LLP
101 California Street, 5th Floor
San Francisco, CA  94111-5800
+1 415 693 2141 office
droumiantseva@cooley.com

**From:** Gilchrist, Gregory <ggilchrist@kilpatricktownsend.com>
**Sent:** Wednesday, September 18, 2019 9:47 PM
**To:** Roumiantseva, Dina <droumiantseva@cooley.com>; Bricker, Ryan <rbricker@kilpatricktownsend.com>
**Cc:** Ghajar, Bobby A. <bghajar@cooley.com>; Main, Amanda <amain@cooley.com>; Galicki, Alexander <agalicki@cooley.com>; Manes, Sophy <SManes@kilpatricktownsend.com>
**Subject:** RE: Patagonia v. AB - Meet and Confer re: Documents and Interrogatories

Dina, see interlineations below in red.  I will respond since Sophy and I were there for our discussion of documents; Ryan was relying on our report.

**Gregory Gilchrist**
He | Him
**Kilpatrick Townsend & Stockton LLP**
Two Embarcadero Center | Suite 1900 | San Francisco, CA 94111
office 415 273 7564 | fax 415 723 7216
ggilchrist@kilpatricktownsend.com | My Profile | vCard

---

**From:** Roumiantseva, Dina <droumiantseva@cooley.com>
**Sent:** Wednesday, September 18, 2019 4:46 PM
**To:** Bricker, Ryan <rbricker@kilpatricktownsend.com>
**Cc:** Ghajar, Bobby A. <bghajar@cooley.com>; Main, Amanda <amain@cooley.com>; Galicki, Alexander <agalicki@cooley.com>; Gilchrist, Gregory <ggilchrist@kilpatricktownsend.com>; Manes, Sophy <SManes@kilpatricktownsend.com>
**Subject:** RE: Patagonia v. AB - Meet and Confer re: Documents and Interrogatories

Ryan,

The purpose of this email exchange is to discuss Plaintiffs' deficient responses to document requests and interrogatories, so it is unclear why you keep trying to interject irrelevant points about your discovery into the discussion.  As you know, AB served supplemental responses to Plaintiffs' document requests and interrogatories yesterday.  Yes, we received. Thank you.  Some answers were given.  I am sure we will have some follow up on others. Plaintiffs, on the other hand, have not yet amended their responses.  We disagree entirely with your characterization that AB did not give "any" answers to most of the interrogatories.  That is demonstrably false.  Initially, AB objected to only three of fifteen (more with sub-parts) of Plaintiffs' interrogatories as premature.  As we said that we would, AB has since amended its answers to those interrogatories.  Also, your email attempts to attack AB's production of public documents, but Plaintiffs' production also consists of entirely of public materials.  Neither party has produced confidential information This is a false parallel as you know **[we disagree]** because a protective order is not yet in place; we will address that discussion in a separate email.  This needs to happen immediately or we will have to move for an order; the promise of a "separate" (long awaited) email is unfortunately placed next to your claim not to have delayed.  **[As already stated, we will be reaching out in a separate email regarding the protective order.]**

For the record, your team met and conferred regarding our discovery letters on the last day permitted by local rules (as did you) and then, when the meet and confer was not completed as to the document requests, Plaintiffs took another seven (7) days to provide their position on those remaining requests, which occurred after we sent a follow-up.  We are still waiting for a response about whether we are reaching agreement or are just amending.  **[Where you have agreed to amend and have otherwise refused to provide information we insist should be provided, there is no agreement and thus Plaintiffs should amend those to the extent stated and we will assess whether to file a motion to compel at this time.  Where we have had outstanding questions or been waiting to hear back from your team, your team has unnecessarily dragged their feet during this process, failing to provide any of the information that you agreed to provide]** This is not the same situation as you were in – having stonewalled providing any answers to many requests.  You had to amend because you were unwinding your "premature" objections.  **[You are wrong, in addition to those requests that we objected to as premature, our amended responses addressed nearly**

2
Exhibit D
Pg. 35

all of the specific requests identified in Plaintiffs' letter]  It is therefore unproductive for you to accuse AB or us of delay.

Your attempt to push the burden onto our client is not well taken.  We have complied with the local rules by identifying in writing the specific issues we have with Plaintiffs' responses, and meeting and conferring with Plaintiffs about those issues.  We then confirmed Plaintiffs' position in writing and clearly identified the outstanding issues where we believe Plaintiffs are standing on their objections.  There is nothing more for us to do with respect to those requests.  It is not really a meet and confer if you cannot make any commitments.  [We are entitled to consult with our client before agreeing to narrow our requests – Plaintiffs have unreasonably sought to narrow almost every single request]

Significantly, your response below fails to provide *any* information that your team agreed to provide on September 6.  There is no justification for Plaintiffs' delay.  We intend to move forward with a motion to compel where the parties have not come to an agreement.  I gather that our proposals for compromise were rejected by your client and we should amend our responses as we see fit?  We will likely serve amended responses by Monday.  [We look forward to receiving your amended responses on Monday.  To the extent Plaintiffs made any actual proposals to compromise, those have been addressed below.]

With respect to the specific requests, I have copied the information from your email below, noting that our prior summary is in blue, your response is in green, and our further response is in orange.  We have not copied any of the RFPs in which it is clear from your response that there is an irresolvable difference, and we will seek relief with the Court.

RFP 1:  You agreed to produce all documents relating to consideration of LONG ROOT ALE or PATAGONIA trademark for beer as well as discussions relating to whether to use Patagonia designations in connection with beer, including whether "Patagonia, Inc." or "Patagonia Provisions" could appear on the beer.  You stand on your objection to producing documents relating to any other trademarks considered by Plaintiffs for beer on the grounds of relevance. We proposed to produce all documents that discuss the decision and reasons why the LONG ROOT ALE mark was chosen for beer. Additionally, we offered to produce documents that discuss the decision to use Patagonia, Inc. or Patagonia Provisions on beer. We said we would not be producing documents relating to any other trademarks considered. Your response is confusing and we do not understand what you are attempting to clarify. You state, "[w]e proposed to produce all documents that discuss the decision and reasons why the LONG ROOT ALE mark was chosen for beer," but that is precisely what Plaintiffs already stated in their initial responses, so that adds nothing to the discussion. We agreed to produce documents referring to decisions to use corporate names on the beer.  We summarized where Greg's agreement on our September 6th phone call. We responded because your summary was not accurate. We did not agree to search for or produce all documents "relating to consideration" of certain marks for beer; we did agree to produce documents referring to the decision-making regarding these marks. [Our concern is that Plaintiffs are attempting to unreasonably narrow their production.  Reasonable minds could differ on whether a document refers to the "decision-making" regarding the marks.  Do Plaintiffs intend to produce all documents concerning whether to use or not use Patagonia and Long Root Ale as well as any decisions that were made regarding such use?] Do Plaintiffs still agree to produce all documents relating to the consideration of LONG ROOT ALE or PATAGONIA for beer as well as discussions relating to whether to use the Patagonia designations in connection with beer – yes or no?  We never said this.  So, no.  If no, please explain what Plaintiffs are refusing to produce.  We are not searching for or producing the fuzzily identified "all documents related to consideration" of this largely irrelevant topic.  We have told you that Patagonia was aware of AB's registration as our discovery shows.  We don't know what else you are looking for other than this knowledge which was your stated basis for the request.  To answer the request as you drafted it, we would have to look also for documents that do not refer to the decision to adopt the requested marks, and conceivably do not even refer to the marks.  This is too burdensome without any relevance to a disputed issue.  [We are entitled to documents showing exactly what Plaintiffs knew and believed regarding AB's rights and their rights, what they could and could not do with Patagonia, and whether Plaintiffs expressed at the time that they needed or wanted to use "Patagonia" and believed that not using that name would undermine the success of the product. This is relevant to Plaintiffs' claims and AB's forthcoming laches defense]  As already noted, we understand that Plaintiffs are refusing to produce documents relating to other trademarks considered by Plaintiffs.

RFP 2:  You agreed to produce all documents relating to consideration of LONG ROOT ALE, LONG ROOT WIT, or PATAGONIA trademark for beer as well as discussions relating to whether to use Patagonia designations in connection with beer, including whether "Patagonia, Inc." or "Patagonia Provisions" could appear on the beer.  You stated you will

consider whether to search for discussions regarding the use of any PATAGONIA mark in connection with other alcoholic beverages.  As we explained, such documents are relevant and Plaintiffs should search for and produce them.  Please provide your position.  We agreed to produce all documents that discuss the decision and reasons why the LONG ROOT ALE and LONG ROOT WIT marks were chosen, and not the PATAGONIA mark, for beer. Additionally, we agreed to produce documents that discuss the decision to use Patagonia, Inc. or Patagonia Provisions on beer. Again, your first sentence essentially parrots Plaintiffs' initial responses to this document request.  What specifically do you take issue with regarding our summary of what Plaintiffs' agreed to produce?  It is not at all clear what you are attempting to carve out and whether Plaintiffs are reneging on their September 6th verbal agreement. If you are going to use this language, you need to answer the question we have asked you repeatedly since we met and conferred.  We specifically told you then that, if you were not committing your client to any agreements, neither were we.  Don't speak so lightly about reneging on agreements you specifically have refused to make.  See No. 1.  [Greg, you agreed that Plaintiffs would produce certain documents.  We did not agree that that would resolve the dispute entirely, and we made that clear.] Greg also agreed to get back to us on whether Plaintiffs would produce documents regarding the use of Patagonia in connection with other alcoholic beverages besides beer.  Do you intend to get back to us your position?  When?  We will agree to produce documents referring to decisions to use Patagonia on wine and represent that there are no other alcoholic beverages to consider as I stated on the phone. [We appreciate this, but are concerned about your limitation of "documents referring to decisions to use Patagonia" – please confirm Plaintiffs will produce all documents concerning whether to use or not use Patagonia as well as any decisions that were made regarding such use.]

**RFP 4**:  You confirmed that you will produce responsive documents, regardless of whether such documents mention AB, and you agreed to amend this response. We agreed to produce communications between Plaintiffs and New Belgium concerning the PATAGONIA mark, regardless of whether such documents mention AB. We did not agree to provide communications discussing other trademarks that Patagonia or New Belgium considered.  To avoid any confusion, we assume Plaintiffs agree to produce communications regarding the use or potential use of the term or mark "Patagonia," which is what we specifically asked Plaintiffs to confirm in my August 27 letter.  [We assume you agree.]  Assuming that is the case, AB reserves its right to pursue documents regarding other names after we receive and review Plaintiffs' production.  As you are reserving your rights, we will consider amending as proposed if we think it is appropriate.  [Plaintiffs have agreed to produce documents beyond what their responses state they will produce and thus an amendment is appropriate]

**RFP 6:**  You failed to mention this request in your September 17 email.  We asked you to confirm when you will produce these files, and you have not responded.  When are your documents going to be produced?  [You have asked us to consider compromising on this request after we review these documents.  We have asked when you are going to produce these files, but apparently you are not willing to answer the question.]

**RFP 7**:  Your position is that you needed to investigate whether it is "burdensome" to search for documents relating to consideration of the mark PATAGONIA for wine, but objected to producing discussions of whether Plaintiffs' company names should be included on wine labels.  Both categories of documents are relevant and must be produced.  Please confirm you will produce such documents.  Also, please confirm your position as to whether Plaintiffs will produce documents relating to any plans they have to sell or market wine. We are still investigating how many additional custodians would be involved, but our position was that we would look into producing plans to use the PATAGONIA mark, Patagonia Provisions, Patagonia, Inc., or Patagonia Provisions, Inc. for *wine*.  I still believe it is unduly burdensome, given the irrelevance, to look for how or if the corporation would be listed on a wine label using another brand.  We have been waiting for an answer since September 6th and you still have not stated whether you will produce the documents requested.  Also, for the sake of clarity this request seeks documents concerning use of the designation Patagonia, alone or with other words, and whether as a trademark or not, on alcoholic beverages, so it should not be limited to use of PATAGONIA only as a mark.  It adds confusion, not clarity to say that our agreement should not be limited to PATAGONIA only as a mark when our response did not say that.  [Ryan's response above refers to "PATAGONIA mark, Patagonia Provisions, Patagonia, Inc., or Patagonia Provisions, Inc.," which is why we clarified that Patagonia alone must also be included.  Looks like you agree.] We will produce the indicated business plans for using the Patagonia mark or term on wine.  [If you are attempting to narrow the request by referring to "business plans," please specifically say so.  The request seeks documents relating to plans and the request is not limited to "business" plans and would include marketing plans.  In other words, please confirm Plaintiffs will produce documents concerning their plans to sell or market alcoholic beverages using the designation Patagonia, alone or with other words, and whether as a trademark or not, on alcoholic beverages (which you have confirmed is limited to beer and wine).]

4

Exhibit D
Pg. 37

**RFP 9:**  You agreed to produce licenses relating to the PATAGONIA marks that Plaintiffs cited in their complaint and documents reflecting enforcement efforts with respect to the PATAGONIA marks.  Plaintiffs, however, refuse to produce communications relating to the negotiation or enforcement of such licenses based on their relevance objection.  Documents relating to the uses Plaintiffs have permitted of their PATAGONIA marks are relevant to Plaintiffs' tolerance and supervision of such use. We agreed to provide copies of any licenses relating to the use or registration of its PATAGONIA marks that Patagonia is relying upon in support of its claims. As stated above, Greg agreed that Plaintiffs would produce licenses relating to the PATAGONIA marks cited in the complaint – we assume that your response is not intended to change that but instead reiterating what we have already stated. As noted above, we also have agreed to provide numerous enforcement files.  We have not agreed to produce information regarding skirmishes (if any) with licensees (if any).  If you have something other than random fishing in mind, please provide a request limited to that issue.  We understand that Plaintiffs are refusing to produce communications regarding the negotiation, enforcement, follow-up, or oversight of their licenses.  Correct; there is no foundation that this is pertinent to your, as yet unstated, defenses.  We agreed to produce any agreements related to our claims and offered to follow up on those if there were a specific reason.  **[You agreed to produce any licenses related to the marks identified in your complaint, not "agreements related to [your] claims." I think this is what you meant but clarifying.]**  As already mentioned, this information is relevant to Plaintiffs' tolerance and supervision of third-party use of their marks.

**RFPs 13 and 14:**  You stated that, with respect to PTO filings, those records are publicly available and AB should bear the time and burden of collecting them.  To the extent Plaintiffs have agreed to produce documents, you stated that Plaintiffs will only produce documents regarding applications for alcoholic beverages.  You stated that you would also produce non-privileged communications relating to other applications if we identify specific applications, so long as you deem our request to be reasonable.  We are considering your proposal with our client.  I said that AB's burden was not higher than ours and that the fastest way for either of us to identify the applications was to use online resources.  Beyond what we agreed to produce, if AB believes that specific application(s) covering goods/services beyond alcoholic beverages are relevant, AB should identify the specific application so that Plaintiffs can determine whether a search for non-privileged documents discussing the registration refusal for that specific application is reasonable and not burdensome.  Plaintiffs are in the best position to search their records for documents they received from the PTO regarding likelihood of confusion and where the PTO has indicated that the term "Patagonia" refers to South America.  There are straightforward search terms that Plaintiffs could apply to locate these records.  As stated in my prior email, Greg agreed to investigate whether the trademark department's files are maintained electronically and searchable by keywords.  If the files are not searchable, Greg agreed to let us know what searching capabilities exist. Your team still has not provided this information despite your agreement to do so on September 6th.  We spoke earlier than September 6 with you and just yesterday received proposed responses, in many cases for the first time.  Please re-read the blue above.   Your summary did not refer to what is now in orange.  **[It did, actually – see reference to RFP 14 in my Sept. 12 email.]**  At one point, I agreed that we might review whether trademark files are searchable; there is no way to be sure it would be as comprehensive as the online records.  Please tell us what straightforward search terms you think should be run and I will see whether a search will save any time by running them (if they are reasonable and straightforward) on trademark related custodians.  **[We take it that the files are searchable.  Also, you have not indicated whether your client keeps separate files for each US trademark filing; if it does, that is relevant to the alleged burden (and you client could produce the entire file, minus any privileged communications).  If further diligence is needed because your client does not maintain separate files for each US trademark filing, to find the PTO records, we propose the following search terms: "likelihood of confusion" or "geographic location" or "geographic place" or "geographic indication" or "South America" or ("Patagonia region" or (Patagonia / 2 region) or "geographically descriptive." The terms would differ when searching for communications.  As noted, if Plaintiffs maintain trademark records in trademark files, irrespective of custodians, those files should be searched.]**

**RFP 15**:  You initially agreed to produce surveys regarding any goods or services that have been challenged in the complaint, and then stated that Plaintiffs would not produce surveys conducted in connection with litigation, which may be work product or privileged.  You agreed to investigate whether any such surveys or research exist and, if so, whether Plaintiffs will conduct a reasonable search.  If Plaintiffs intend to withhold **any** surveys or research, please let us know as soon as possible and confirm the basis.  If Plaintiffs refuse to produce surveys and research performed in connection with litigation on the basis of privilege, please also make that clear.   We did not agree to log privileged documents before you have produced any documents and will provide a privilege log in connection with your agreement to produce one.  You still have not provided any of the information that your team promised to provide on September 6th.  We did not ask for a privilege log.  Greg agreed to investigate as explained above and let us know whether Plaintiffs intend to withhold any surveys or research based on privilege.  Plaintiffs are not entitled to delay this dispute by suggesting that they will not inform us whether they are withholding responsive documents until at some unknown time in the future when they

provide a privilege log.  As we sit here we do not know of any non-privileged surveys.  Our search for potential surveys is not complete.  **[When do you expect to have an update?  We assume any privileged surveys will appear on a privilege log.  Even if Plaintiffs intend to assert privilege, we believe Plaintiffs should amend their response to state they will produce responsive documents.  One issue here is that Plaintiffs attempted to limit the documents they would produce to surveys relating to a third-party's use of PATAGONIA on alcoholic beverages.  As mentioned, this should not be limited to alcoholic beverages and should encompass surveys relating to any goods and services.  Please confirm Plaintiffs will produce responsive documents.]**

**RFP 19:**  You failed to mention this request in your September 17 email, and thus have not confirmed, as previously requested, whether Plaintiffs agree to conduct a reasonable search for responsive documents.  Please give us your position.  We will make a reasonable search of Mr. Tadlock's files for non-privileged documents referring to the referenced statements.  **[As stated in my initial email, we discussed that the request seeks documents beyond those referencing the statements and include documents concerning Mr. Tadlock's statement about Patagonia's knowledge, including documents and communications reflecting his preparation in making such statements or commentary about his statements.  We assume such documents would be produced.]**

**RFP 20**:  You agreed to search Corley Kenna's email for responsive non-privileged communications and otherwise conduct a reasonable search of other custodians' documents.  We proposed to search Ms. Kenna's emails, not other custodians.  To the extent Plaintiffs are aware of other custodians who may have responsive information that is not in Ms. Kenna's emails, then Plaintiffs' limitation of its search to Ms. Kenna's emails only is unreasonable.  Will Plaintiffs conduct a reasonable search for the requested information, including other custodians' documents, to the extent Plaintiffs have conducted a reasonable inquiry and believe others have responsive information? There is no reasonable way to make the requested search in view of the almost complete irrelevance of the request.  **[It is unclear how you can claim that a statement made by one of Plaintiffs' employees to the public that our client made an allegedly "brazen attempt to rip off" Patagonia Inc.'s logo can be irrelevant.  All we ask is that Plaintiffs comply with their obligations and agree to conduct a reasonable search for responsive materials.]**

**RFP 26:**  You failed to mention this request in your September 17 email.  Your team agreed on September 6 to discuss further with your client whether Plaintiffs agree to produce documents substantiating first use dates for the marks identified in the complaint.  You still have not provided this information.  We agreed with your summary; to the extent that such documents reasonably can be located we will produce such documents without limiting ourselves to the types of documents you have identified.  **OK**

**RFPs 29 and 30:**  You failed to mention this request in your September 17 email.  On September 6, your team promised to investigate further regarding the sales information that Plaintiffs intended to produce.  We still have not received a response.  When will you provide the sales information you promised to provide?  We agreed to produce the requested information to the extent that the records are kept or reportable in the way you requested.  You will find out when we are able to gather and produce the documents.  **OK**

**RFP 38:**  You failed to mention this request in your September 17 email.  As previously noted, your team agreed on September 6 to investigate whether any such surveys or research exists and, if so, would let us know which surveys Plaintiffs intend to produce.  How much longer with Plaintiffs delay before providing this information?  See above.  **[Our agreement to produce responsive docs in response to your RFP 85, 86, 87 is contingent on your agreement to do the same]**

**RFP 42:**  No. 42: [proposed]  "Patagonia will produce non-privileged documents sufficient to show how it originated and concluded matters involving enforcement of the Patagonia Marks."  Plaintiffs should produce all documents and non-privileged communications pertaining to any efforts to enforce rights in the PATAGONIA marks.  These documents are relevant to the scope of Plaintiffs' asserted rights in the PATAGONIA marks.  There is no reason to limit to document sufficient to show how Plaintiffs "originated" and "concluded" enforcement matters only.  Unless you tell us otherwise, we suspect that your client has files or emails that pertain to each matter, and producing complete files should not be burdensome.  We stand by our proposed amendment.  Plaintiffs requested similar documents from AB, which AB has agreed to produce.  It would be unreasonable for Plaintiffs to refuse to produce the same.  Please identify what you are talking about.  **[see RFP 92]**

**RFP 43:**  No. 43 [proposed]  "Patagonia is producing many files showing awareness of third party uses in response to other requests.  To the extent that AB specifically and reasonably identifies a third party use about which it wants the requested information, Patagonia agrees to conduct a reasonable ESI search of its trademark department custodians and

to provide non-privileged documents that refer to a decision not to enforce Patagonia's trademark rights." While Plaintiffs state that they will produce files showing their awareness of third-party uses in response to other requests, Plaintiffs refuse to produce documents concerning their decision not to enforce their rights in the PATAGONIA marks against third parties. Plaintiffs' proposal that it will conduct a reasonable search, limited to its "trademark department" (i.e. a sub-set of its legal department) custodians, only if AB takes on the burden of "specifically and reasonably" identifying specific uses is unreasonable. Plaintiffs are in possession of the requested information, not AB. AB cannot guess the third-party uses against or relating to which Plaintiffs have decided not to enforce their rights. As explained, such documents are relevant to the scope and limitation of Plaintiffs' rights and the allegations in the Complaint, including by way of example only, that the mark PATAGONIA refers uniquely and unmistakably to Patagonia, Inc. or that the mark is famous for the purposes of the federal dilution law. We reiterate our request that Plaintiffs agree to conduct a reasonable search for such documents, and that their reasonable search is not be limited to "trademark department" custodians. Unless you agree to do so, this issue is ripe for a motion to compel. Please advise. Searching for a negative is nearly impossible unless you are nakedly seeking privileged documents. The documents requested are almost certainly privileged and irrelevant. Searching for third party references to the term Patagonia (or descriptive uses or notes in books or other "Patagonia" references) – and also for non-privileged decisions not to pursue these potential infringements– is a ludicrous proposition. Again, if you want to tell us that you think you have identified an important third party use and want to know if there are non-privileged documents relating to a decision not to pursue enforcement, it is not unreasonable (after you have reviewed our other discovery) to ask us to look for something specific. This request is the privileged side of the coin that is request nos. 6 and 34. <mark>Plaintiffs are able to conduct custodial interviews to determine the instances in which Plaintiffs have decided not to enforce their rights against third-parties, and can then conduct reasonable searches for this information. This is far from a "nearly impossible" task. We already explained our position on this request and will not re-hash that again. OK.</mark> **[OK meaning that Plaintiffs will search for and produce responsive documents?]**

**RFP 44:** [proposed] "Amended Response: Patagonia will, once it has identified them, produce any documents upon which it intends to rely to show damages, including corrective advertising expenses, reduced sales, lost profits, lost opportunities resulting from the AB registration, and other damages that are identified." Plaintiffs' proposal is inadequate in several respects. The Request seeks all documents concerning any damages allegedly suffered by Plaintiffs. Plaintiffs only agree to produce documents upon which they intend to rely to show damages, but Plaintiffs must also produce documents relating to those damages, including documents that may undermine Plaintiffs' claims that they suffered damages. Further, with respect to the documents that Plaintiffs agree to produce, Plaintiffs state that they will do so "once it has identified them." What does this mean? Plaintiffs filed a complaint – and now a further amended complaint -- alleging that they have suffered various damages, yet your response suggests that Plaintiffs are currently unaware of any documents supporting their claim for damages. Please advise. We have advised. You can ask for the types of documents that you would like to address the damage theories we have outlined. We would not presume to know which ones you think are related to our theories. First, you did not respond to our question about Plaintiffs reference to "once it has identified them." Second, you refer to the damages theories you have outlined, yet Plaintiffs refused to provide this information in response to the interrogatory we served (although it is our understanding that at some point – you still have not confirmed when – we will receive amended responses). Third, we asked for all documents concerning any damages Plaintiffs claim to have suffered. We ask that you confirm that Plaintiffs intend produce all responsive documents, not limited to those which they intend to rely on. We stand by our objections. We don't even know how to respond to your apparent request that we prematurely engage in legal work to identify documents showing damages (without the benefit of discovery from AB) and then try to figure out what you might think is "related" to our claim beyond what we would be relying on.

**RFP 45:** Plaintiffs' proposal below contradicts their prior agreement to produce all communications between Plaintiffs and AB, not just those relating to use of PATAGONIA on alcoholic beverages. Are Plaintiffs reneging on their prior agreement? If that is the case, that will affect our reciprocal agreement. Please clarify your position immediately. The request is limited to alcoholic products. Please focus on real disputes. The request is not so limited. It seeks "all communications between you and AB, including but not limited to any communications relating to the use of Patagonia on beer or other alcoholic products." This is a "real dispute" and involves Plaintiffs potentially reneging on their prior reciprocal agreement. <mark>Again, are you reneging on the prior agreement to produce all communications? See prior comments regarding your accusations. AB makes beer; we don't have any idea what non-alcohol communications you think may exist. If there are communications with AB that don't relate to alcoholic beverages we will produce them, but we are not adding custodians to other searches in random pursuit of such communications.</mark>

**RFP 46:** [proposed] "Patagonia will make a reasonable ESI search -- of its relevant custodians responsible for producing and marketing beer -- for and produce non-privileged documents referencing AB's trademark registrations for PATAGONIA for beer. Plaintiffs do not appear to agree to do anything other than what they already said they would do in their initial

responses. For the reasons stated, Plaintiffs must conduct a reasonable search, which should not be limited to custodians responsible for producing and marketing beer and which should not be limited to documents referencing AB's trademark registration. Among others, these documents are highly relevant to AB's defenses, including its laches defense, as well as Plaintiffs' entitlement to any relief. Given Plaintiff's response, we assume that this issue is ripe for a motion to compel. We can agree to discuss with you how we search – beyond the people involved with beer – for references to "Anheuser Busch." But if you want to move on the proposition that we should search the entire company for "Anheuser Busch," then we agree it is ripe. You only address part of the issue and again attempt to push the burden onto AB who is not privy to information about which of Plaintiffs' employees may have responsive information. Do Plaintiffs agree to conduct a reasonable search for all internal documents referring to AB <u>or</u> its registration for PATAGONIA – yes or no? The request provides no basis for understanding what might be a "reasonable" search; it simply asks us to make some kind of unbounded and uninformed search for random and almost certainly irrelevant documents. We have said where we will search which is where we expect there to be relevant and responsive documents. If that is not good enough for your client, yes, we are pushing it back to AB to tell us what it wants so we might be able to figure out where to look. **[Again, you fail to state whether Plaintiffs agree to produce documents relating to AB or its registration for PATAGONIA – are we in agreement that Plaintiffs will do so? Separately, with respect to the scope of the search, Plaintiffs previously stated that they will search their trademark department files and now also offer to search those involved in producing and marketing beer. It is your obligation to conduct inquiries to determine who may have relevant information. All we ask is that you comply with your obligation to conduct a reasonable search and do not believe that is limited to those employees who market or produce beer. Our supplemental agreement to produce docs in response to Plaintiffs' RFPs 68, 69, 76 is contingent on your agreement to conduct a reasonable search for responsive documents. Please confirm you will do so.]**

**RFP 50**: Finally, we did not receive your position on RFP 50. As previously stated, Plaintiffs' response does not state that they will produce any documents. Unless you tell us otherwise, we take from your lack of response that Plaintiffs do not intend to supplement its response and production, and that the issue is ripe for a motion to compel.

We are bewildered by your comments and agree it apparently is ripe. We agreed to produce documents you asked for that we can conceivably identify; ie. documents we relied on for answering the interrogatories we have received. Thank you for noting your agreement to produce those documents, as the chart attached to my August 27 letter inadvertently omitted Plaintiffs' substantive response. We did not agree to produce documents relating to interrogatories "served concurrently herewith **or in the future**." We don't know what AB's next interrogatories might contain, and we're not pre-agreeing to produce any underlying documents. Frankly, the proposition that we should is absurd. To the extent such documents are relied on in responding to future interrogatories, they are clearly relevant. It is not "absurd" to ask Plaintiffs to produce those documents in due course and there is no basis for their objection. We need to see the interrogatories before we will agree to produce all documents that are relied on to respond to interrogatories.

**AB's interrogatories:**

**Interrogatory No. 2:** We have objected because we do not agree that general knowledge of Patagonia beer being sold in South America is relevant; i.e. evidence that someone at Patagonia had a Quilmes PATAGONIA beer in South America. We cannot subscribe to your argument that it is important to establish this knowledge because it shows that Patagonia should have known that AB – a purportedly related but entirely separate company, according to your explanation, without any direct subsidiary or parent tie to Quilmes – "had access" to beer that AB could (or "was likely") to sell in the United States." We will stipulate, if it helps, that Patagonia was aware AB had access to beer. AB's own responses argue that sales in other territories are irrelevant. Its response to RFP No. 14, says "AB objects to the definition of Quilmes Patagonia Beer as overbroad and seeking documents that are not relevant and not proportionate to the needs of the case to the extent it refers to beer not sold by AB in the United States." Without addressing the propriety of your objection, AB's specific request is unduly burdensome in asking Patagonia to search all files for an earlier mention of "Patagonia" beer sold in South America when the relevance of the answer is suspect at best. We will, in a reasonable review within the legal department (the place most likely to hold such information), provide a date by when Patagonia knew of such sales. We will amend our answer accordingly, but will not investigate further, and we will expect production of sales reports for Quilmes-produced beer in South America in light of AB's argument.

You have mischaracterized our description of the relationship between Quilmes and Anheuser-Busch, LLC. As stated several times, they have the same parent company. Your proposed stipulation that Patagonia was aware AB had access to beer is not helpful, and you know that. You state that Plaintiffs are limiting their review for this information to the legal department, but that is not reasonable. What about employees in the marketing / branding / PR / Comms or those

who were involved in planning a beer collaboration (presumably those plans were in progress before 2013)?  Moreover, while you state that Plaintiffs will provide a date, we assume Plaintiffs are refusing to provide other facts relating to this awareness, as requested by the interrogatory.  For reasons already explained, AB will not be producing sales reports for Quilmes-produced beer in South America.  Our proposed stipulation directly addressed your rationale for this request and attempt to distinguish it from your own objections.  We cannot find any conceivable basis for your double standard.  If our response is not good enough, we don't know how to improve it.

**Interrogatory No. 3:**  We are continuing to investigate and will amend this response to include non-privileged information regarding the time when Patagonia learned of the application.  As it is unclear what additional information Plaintiffs intend to provide, we will assess Plaintiffs' amended response once we receive it.  When are Plaintiffs going to serve their amended responses?  We will likely provide amended responses on Monday.

**Interrogatory Nos. 4 and 5:**  These questions, as you know, are nearly impossible to answer without regard to business records.  We have agreed to provide non-privileged records.  We have objected and referred you to our responses to the identical document requests.  See RRP Nos. 6, 34 and 43.  Plaintiffs have only agreed to produce trademark enforcement files to the extent they show their awareness of third-party registrations or uses and the outcome of any actions taken regarding trademarks containing a Patagonia term.  With respect to Plaintiffs' reference to its responses to certain requests for production, we object to Plaintiffs' limitation for reasons stated in connection with those responses.  Plaintiffs are attempting to produce a narrow sub-set of documents that won't provide the information requested.  Plaintiffs have no valid objection to avoid answering these interrogatories.  We have already explained how the information is relevant and the burden cannot be shifted to AB because the interrogatories seek information relating to ***Plaintiffs'*** awareness.    We are not avoiding answering the interrogatories and have proposed a reasonable way to respond.  Most of the burden is not placed on AB, but again, once the likely source of such awareness is exhausted, it is reasonable to ask AB what it wants to know about public uses just as accessible to AB as to Patagonia.

Dina Roumiantseva
Cooley LLP
101 California Street, 5th Floor
San Francisco, CA  94111-5800
+1 415 693 2141 office
droumiantseva@cooley.com

**From:** Bricker, Ryan <rbricker@kilpatricktownsend.com>
**Sent:** Tuesday, September 17, 2019 11:19 PM
**To:** Main, Amanda <amain@cooley.com>; Roumiantseva, Dina <droumiantseva@cooley.com>
**Cc:** Ghajar, Bobby A. <bghajar@cooley.com>; Galicki, Alexander <agalicki@cooley.com>; Gilchrist, Gregory <ggilchrist@kilpatricktownsend.com>; Manes, Sophy <SManes@kilpatricktownsend.com>
**Subject:** Patagonia v. AB - Meet and Confer re: Documents and Interrogatories

Dina and Amanda:  We remain concerned about AB's apparent belief that it is important for you and your client to take as much time as you want while demanding simultaneously that we respond on your accelerated timetable despite the fact that our answers and responses, meet and confer proposals, and document production are all far more advanced that AB's.  We wrote to AB several weeks ago because AB had not bothered to give us *any* answers to our requests or most of our interrogatories.  We drafted a motion and sent it to you because you refused to change your responses until the court ruled on your motion to dismiss.  Then, when the motion was denied, you said you would amend my responses – not because you had agreed to any resolutions reached during our meet and confer sessions – but because your objections had become moot and you wanted time to produce the responses that should have been provided in the first place (we take the position any further objections are waived).  We just received the first responses indicating whether you are willing to produce anything in response to a large number of our requests and interrogatories, remain in the dark about what you are specifically proposing (with your client's approval) as a means to resolve other issues, and have not received any documents (your production having been limited thus far to printouts of public documents).

Meanwhile, we timely met and conferred with you about your letter and offered to compromise on a number of requests for documents.  Though you did not get them all correct (see below), you summarized our proposals in an email.  In our meet and confer session, you told us you would take each of our proposals back for approval by your client (which I have asked you more than once to affirm, which requests remain outstanding).  I am not telling you that we have to reach agreement on all requests before we will amend any; but I do not want to provide an amended response to a particular

request, search for documents according to that amended response, and then be told that AB did not approve that response so you are moving to compel.  So, I say again, if you tell us that the offers regarding each of the requests is agreed, then we will amend our responses to conform to our offers.  If you have counter-proposals, we will entertain those.  But, we will not just voluntarily compromise and amend our objections and responses, many of which are wholly legitimate and were prepared in timely responses, "no later than tomorrow."  We will amend within a reasonable time after we know that our amendment is acceptable to your client.

Regarding your specific summaries, we have interlineated your comments with ours in green (some issues are minor, others are more significant, and all offers are to produce non-privileged documents located after a reasonable search).  We have not included the items where we agree with your summary of our discussion (though we do not agree with new arguments or demands you may have included):

**RFP 1**:  You agreed to produce all documents relating to consideration of LONG ROOT ALE or PATAGONIA trademark for beer as well as discussions relating to whether to use Patagonia designations in connection with beer, including whether "Patagonia, Inc." or "Patagonia Provisions" could appear on the beer.   You stand on your objection to producing documents relating to any other trademarks considered by Plaintiffs for beer on the grounds of relevance. We proposed to produce all documents that discuss the decision and reasons why the LONG ROOT ALE mark was chosen for beer. Additionally, we offered to produce documents that discuss the decision to use Patagonia, Inc. or Patagonia Provisions on beer. We said we would not be producing documents relating to any other trademarks considered.

**RFP 2**:  You agreed to produce all documents relating to consideration of LONG ROOT ALE, LONG ROOT WIT, or PATAGONIA trademark for beer as well as discussions relating to whether to use Patagonia designations in connection with beer, including whether "Patagonia, Inc." or "Patagonia Provisions" could appear on the beer.  You stated you will consider whether to search for discussions regarding the use of any PATAGONIA mark in connection with other alcoholic beverages.  As we explained, such documents are relevant and Plaintiffs should search for and produce them.  Please provide your position. We agreed to produce all documents that discuss the decision and reasons why the LONG ROOT ALE and LONG ROOT WIT marks were chosen, and not the PATAGONIA mark, for beer. Additionally, we agreed to produce documents that discuss the decision to use Patagonia, Inc. or Patagonia Provisions on beer.

**RFP 3**:  You confirmed that you will produce any other contracts if more than one contract exists, or other documents sufficient to show the contractual relationship between Plaintiffs and New Belgium Brewing Co.  You agreed to amend this response. We agreed to amend the response to state that we will produce documents sufficient to show the "contractual relationship" between Plaintiffs and New Belgium.

**RFP 4**:  You confirmed that you will produce responsive documents, regardless of whether such documents mention AB, and you agreed to amend this response. We agreed to produce communications between Plaintiffs and New Belgium concerning the PATAGONIA mark, regardless of whether such documents mention AB. We did not agree to provide communications discussing other trademarks that Patagonia or New Belgium considered.

**RFP 7**:  Your position is that you needed to investigate whether it is "burdensome" to search for documents relating to consideration of the mark PATAGONIA for wine, and objected to producing discussions of whether Plaintiffs' company names should be included on wine labels.  Both categories of documents are relevant and must be produced.  Please confirm you will produce such documents.  Also, please confirm your position as to whether Plaintiffs will produce documents relating to any plans they have to sell or market wine. We are still investigating how many additional custodians would be involved, but our position was that we would look into producing plans to use the PATAGONIA mark, Patagonia Provisions, Patagonia, Inc., or Patagonia Provisions, Inc. for *wine*.  I still believe it is unduly burdensome, given the irrelevance, to look for how or if the corporation would be listed on a wine label using another brand.

**RFP 9:**  You agreed to produce licenses relating to the PATAGONIA marks that Plaintiffs cited in their complaint and documents reflecting enforcement efforts with respect to the PATAGONIA marks.  Plaintiffs, however, refuse to produce communications relating to the negotiation or enforcement of such licenses based on their relevance objection.  Documents relating to the uses Plaintiffs have permitted of their PATAGONIA marks are relevant to Plaintiffs' tolerance and supervision of such use.  We agreed to provide copies of any licenses relating to the use or registration of its PATAGONIA marks that Patagonia is relying upon in support of its claims. As noted above, we also have agreed to provide numerous enforcement files.  We have not agreed to produce information regarding skirmishes (if any) with licensees (if any).  If you have something other than random fishing in mind, please provide a request limited to that issue.

**RFPs 13 and 14:** You stated that, with respect to PTO filings, those records are publicly available and AB should bear the time and burden of collecting them. To the extent Plaintiffs have agreed to produce documents, you stated that Plaintiffs will only produce documents regarding applications for alcoholic beverages. You stated that you would also produce non-privileged communications relating to other applications if we identify specific applications, so long as you deem our request to be reasonable. We are considering your proposal with our client. I said that AB's burden was not higher than ours and that the fastest way for either of us to identify the applications was to use online resources. Beyond what we agreed to produce, if AB believes that specific application(s) covering goods/services beyond alcoholic beverages are relevant, AB should identify the specific application so that Plaintiffs can determine whether a search for non-privileged documents discussing the registration refusal for that specific application is reasonable and not burdensome.

**RFP 15**: You initially agreed to produce surveys regarding any goods or services that have been challenged in the complaint, and then stated that Plaintiffs would not produce surveys conducted in connection with litigation, which may be work product or privileged. You agreed to investigate whether any such surveys or research exist and, if so, whether Plaintiffs will conduct a reasonable search. If Plaintiffs intend to withhold *any* surveys or research, please let us know as soon as possible and confirm the basis. If Plaintiffs refuse to produce surveys and research performed in connection with litigation on the basis of privilege, please also make that clear. We did not agree to log privileged documents before you have produced any documents and will provide a privilege log in connection with your agreement to produce one.

**RFP 17**: You represented that the vast majority of fonts used in the past as well as all fonts currently in use and as principally used are reflected in representative advertising that will be produced. We agreed that we would produce documents that covered most of the stylized fonts as they are used commercially. We did not agree to search for the vast majority of fonts used to the extent that would require separate searches.

**RFP 20**: You agreed to search Corley Kenna's email for responsive non-privileged communications and otherwise conduct a reasonable search of other custodians' documents. We proposed to search Ms. Kenna's emails, not other custodians.

**RFP 35:** You stated that you would produce search reports in connection with US trademark applications for PATAGONIA-formative marks, but only for alcoholic beverages. You proposed that we review the documents produced in response to RFP 6 and 34 above, and consider whether a search for any specific third party is needed. Clearance search reports or investigations regarding use of PATAGONIA mark in connection with any non-apparel goods or services are relevant and should be produced. Please confirm you will produce these documents and also that the search reports you intend to produce are not limited to those conducted prior to the filing of an application. Our discovery response limits this production to searches conducted prior to filing trademark applications for PATAGONIA-formative marks for alcoholic beverages. We did not agree to produce additional documents.

**RFP 40**: You confirmed that Plaintiffs will produce documents concerning Plaintiffs' awareness of sales of PATAGONIA beer in the United States. Please also confirm that Plaintiffs will conduct a reasonable search for responsive documents not limited to their trademark department's files. In response to your concern that it would be difficult to locate such documents, we noted that "Quilmes" would be at least one relevant search term. You refused to search for that term. If you believe a search for "Quilmes" would be unduly burdensome, please provide us with information substantiating that claim. We maintained our response as drafted. In our response, we agreed to search the trademark department files and produce non-privileged documents sufficient to show the approximate date that Patagonia became aware of AB's registration for the PATAGONIA mark for beer. We indicated that we could not identify a reasonable search beyond the custodians in the trademark department for "Patagonia."

**RFP 42:** No. 42: [proposed] "Patagonia will produce non-privileged documents sufficient to show how it originated and concluded matters involving enforcement of the Patagonia Marks."
Plaintiffs should produce all documents and non-privileged communications pertaining to any efforts to enforce rights in the PATAGONIA marks. These documents are relevant to the scope of Plaintiffs' asserted rights in the PATAGONIA marks. There is no reason to limit to document sufficient to show how Plaintiffs "originated" and "concluded" enforcement matters only. Unless you tell us otherwise, we suspect that your client has files or emails that pertain to each matter, and producing complete files should not be burdensome. We stand by our proposed amendment.

**RFP 43:** No. 43 [proposed] "Patagonia is producing many files showing awareness of third party uses in response to other requests. To the extent that AB specifically and reasonably identifies a third party use about which it wants the requested information, Patagonia agrees to conduct a reasonable ESI search of its trademark department custodians and to provide non-privileged documents that refer to a decision not to enforce Patagonia's trademark rights."

While Plaintiffs state that they will produce files showing their awareness of third-party uses in response to other requests, Plaintiffs refuse to produce documents concerning their decision not to enforce their rights in the PATAGONIA marks against third parties.  Plaintiffs' proposal that it will conduct a reasonable search, limited to its "trademark department" (i.e. a sub-set of its legal department) custodians, only if AB takes on the burden of "specifically and reasonably" identifying specific uses is unreasonable.   Plaintiffs are in possession of the requested information, not AB.  AB cannot guess the third-party uses against or relating to which Plaintiffs have decided not to enforce their rights.  As explained, such documents are relevant to the scope and limitation of Plaintiffs' rights and the allegations in the Complaint, including by way of example only, that the mark PATAGONIA refers uniquely and unmistakably to Patagonia, Inc. or that the mark is famous for the purposes of the federal dilution law.  We reiterate our request that Plaintiffs agree to conduct a reasonable search for such documents, and that their reasonable search is not be limited to "trademark department" custodians.  Unless you agree to do so, this issue is ripe for a motion to compel.   Please advise.   Searching for a negative is nearly impossible unless you are nakedly seeking privileged documents.  The documents requested are almost certainly privileged and irrelevant.  Searching for third party references to the term Patagonia (or descriptive uses or notes in books or other "Patagonia" references) – and also for non-privileged decisions not to pursue these potential infringements– is a ludicrous proposition.  Again, if you want to tell us that you think you have identified an important third party use and want to know if there are non-privileged documents relating to a decision not to pursue enforcement, it is not unreasonable (after you have reviewed our other discovery) to ask us to look for something specific.  This request is the privileged side of the coin that is request nos. 6 and 34.

**RFP 44:**   [proposed] "Amended Response:  Patagonia will, once it has identified them, produce any documents upon which it intends to rely to show damages, including corrective advertising expenses, reduced sales, lost profits, lost opportunities resulting from the AB registration, and other damages that are identified."
Plaintiffs' proposal is inadequate in several respects.  The Request seeks all documents concerning any damages allegedly suffered by Plaintiffs.  Plaintiffs only agree to produce documents upon which they intend to rely to show damages, but Plaintiffs must also produce documents relating to those damages, including documents that may undermine Plaintiffs' claims that they suffered damages.  Further, with respect to the documents that Plaintiffs agree to produce, Plaintiffs state that they will do so "once it has identified them."  What does this mean?  Plaintiffs filed a complaint – and now a further amended complaint -- alleging that they have suffered various damages, yet your response suggests that Plaintiffs are currently unaware of any documents supporting their claim for damages.  Please advise.  We have advised.  You can ask for the types of documents that you would like to address the damage theories we have outlined.  We would not presume to know which ones you think are related to our theories.

**RFP 45:**   Plaintiffs' proposal below contradicts their prior agreement to produce all communications between Plaintiffs and AB, not just those relating to use of PATAGONIA on alcoholic beverages.  Are Plaintiffs reneging on their prior agreement?  If that is the case, that will affect our reciprocal agreement.  Please clarify your position immediately.  The request is limited to alcoholic products.  Please focus on real disputes.

**RFP 46:**   [proposed] "Patagonia will make a reasonable ESI search -- of its relevant custodians responsible for producing and marketing beer -- for and produce non-privileged documents referencing AB's trademark registrations for PATAGONIA for beer.  Plaintiffs do not appear to agree to do anything other than what they already said they would do in their initial responses.  For the reasons stated, Plaintiffs must conduct a reasonable search, which should not be limited to custodians responsible for producing and marketing beer and which should not be limited to documents referencing AB's trademark registration.  Among others, these documents are highly relevant to AB's defenses, including its laches defense, as well as Plaintiffs' entitlement to any relief.  Given Plaintiff's response, we assume that this issue is ripe for a motion to compel.  We can agree to discuss with you how we search – beyond the people involved with beer – for references to "Anheuser Busch."  But if you want to move on the proposition that we should search the entire company for "Anheuser Busch," then we agree it is ripe.

Finally, we did not receive your position on **RFP 50**.  As previously stated, Plaintiffs' response does not state that they will produce any documents.  Unless you tell us otherwise, we take from your lack of response that Plaintiffs do not intend to supplement its response and production, and that the issue is ripe for a motion to compel.

We are bewildered by your comments and agree it apparently is ripe.  We agreed to produce documents you asked for that we can conceivably identify; ie. documents we relied on for answering the interrogatories we have received.  We did not agree to produce documents relating to interrogatories "served concurrently herewith **or in the future**."  We don't know what AB's next interrogatories might contain, and we're not pre-agreeing to produce any underlying documents.  Frankly, the proposition that we should is absurd.

**For AB's interrogatories:**

**Interrogatory No. 2:**  We have objected because we do not agree that general knowledge of Patagonia beer being sold in South America is relevant; i.e. evidence that someone at Patagonia had a Quilmes PATAGONIA beer in South America.   We cannot subscribe to your argument that it is important to establish this knowledge because it shows that Patagonia should have known that AB – a purportedly related but entirely separate company, according to your explanation, without any direct subsidiary or parent tie to Quilmes – "had access" to beer that AB could (or "was likely") to sell in the United States."  We will stipulate, if it helps, that Patagonia was aware AB had access to beer.  AB's own responses argue that sales in other territories are irrelevant.  Its response to RFP No. 14, says "AB objects to the definition of Quilmes Patagonia Beer as overbroad and seeking documents that are not relevant and not proportionate to the needs of the case to the extent it refers to beer not sold by AB in the United States."  Without addressing the propriety of your objection, AB's specific request is unduly burdensome in asking Patagonia to search all files for an earliest mention of "Patagonia" beer sold in South America when the relevance of the answer is suspect at best.  We will, in a reasonable review within the legal department (the place most likely to hold such information), provide a date by when Patagonia knew of such sales.  We will amend our answer accordingly, but will not investigate further, and we will expect production of sales reports for Quilmes-produced beer in South America in light of AB's argument.

**Interrogatory No. 3:**  We are continuing to investigate and will amend this response to include non-privileged information regarding the time when Patagonia learned of the application.

**Interrogatory Nos. 4 and 5:**  These questions, as you know, are nearly impossible to answer without regard to business records.  We have agreed to provide non-privileged records.  We have objected and referred you to our responses to the identical document requests.  See RRP Nos. 6, 34 and 43.

**Ryan Bricker**
**Kilpatrick Townsend & Stockton LLP**
Two Embarcadero Center | Suite 1900 | San Francisco, CA 94111
office 415 273 4368 | fax 415 354 3467
rbricker@kilpatricktownsend.com | My Profile | vCard

---

**From:** Main, Amanda <amain@cooley.com>
**Sent:** Monday, September 16, 2019 6:47 PM
**To:** Bricker, Ryan <rbricker@kilpatricktownsend.com>; Gilchrist, Gregory <ggilchrist@kilpatricktownsend.com>; Manes, Sophy <SManes@kilpatricktownsend.com>
**Cc:** Ghajar, Bobby A. <bghajar@cooley.com>; Roumiantseva, Dina <droumiantseva@cooley.com>; Galicki, Alexander <agalicki@cooley.com>
**Subject:** RE: Patagonia v. AB - Meet and Confer Letter

Ryan,

We have not receive any response to my email below or any commitment that Plaintiffs will revise their responses.  If we do not hear from you tomorrow, we will assume that Plaintiffs do not intend to cure the deficiencies in their responses.

Amanda

**Amanda A. Main**
Cooley LLP
3175 Hanover Street
Palo Alto, CA  94304-1130
+1 650 843 5914 office
+1 650 849 7400 fax
amain@cooley.com

---

**From:** Main, Amanda <amain@cooley.com>
**Sent:** Wednesday, September 11, 2019 12:30 PM

**To:** Bricker, Ryan <rbricker@kilpatricktownsend.com>; Gilchrist, Gregory <ggilchrist@kilpatricktownsend.com>; Manes, Sophy <SManes@kilpatricktownsend.com>
**Cc:** Ghajar, Bobby A. <bghajar@cooley.com>; Roumiantseva, Dina <droumiantseva@cooley.com>; Galicki, Alexander <agalicki@cooley.com>
**Subject:** RE: Patagonia v. AB - Meet and Confer Letter

Ryan:

We have provided a date certain by when we will serve A-B's supplemental responses, whereas Plaintiffs have failed to do the same. Plaintiffs have instead responded with additional questions and, in some cases, just rehash the arguments already addressed during our call.

With respect to Interrogatory No. 2, we have not agreed and do not agree that facts relating to Plaintiffs' awareness of the sale or distribution of PATAGONIA beer in South America is irrelevant, as explained below. Your comparison of the relevance of such information to AB's knowledge of Patagonia apparel in Japan falls flat as such knowledge would not establish that Patagonia, Inc. is famous, and AB's knowledge of Patagonia apparel in Japan is not relevant to any claim or defense. Plaintiffs' knowledge of the sale of PATAGONIA beer in South America by Quilmes shows, at a minimum, that Plaintiffs reasonably should have known (if they did in fact not know) that AB had access to existing PATAGONIA beer that was already marketed and sold to consumers and that its use of the mark in the US was likely, especially given that the publicly-filed specimen showed AB's use of the mark on beer produced by Quilmes. If you will Plaintiffs will not supplement your response, please let us know immediately.

With respect to Interrogatory Nos. 4 and 5, we provided the clarification you requested as to the scope of these requests. We do not know what you mean by your question of whether it "exclude[s] references on products that appear to signal Patagonia, the country." As we have already explained, we are seeking information relating to third party use of PATAGONIA as a source identifier, company name, or URL. In a final attempt to avoid a dispute, and to provide further explanation: we do not agree that you may subjectively determine whether such use refers to the region and therefore exclude it. We are not seeking examples of the use of the term "Patagonia" in common parlance, for example, a website called "Super Adventures" that says "we organize tours of Patagonia." But if a company has "Patagonia" in its name or uses that term as a brand that information is relevant and responsive, whether or not the company intends to allude to or describe the Patagonia region. If you have any remaining questions about the scope of this request, let us know. Otherwise, please provide your position and provide a date certain by which you will supplement these interrogatory responses.

Finally, with respect to Interrogatory No. 3, Plaintiffs claim that the circumstances relating to when they became aware of Warsteiner's intent-to-use application is subject to privilege yet provide no information from which we can assess this claim and decide whether a motion to compel is warranted. Please explain why you believe Plaintiffs may refuse to answer an interrogatory based on a claim that responsive information is privileged yet fail to provide any information to substantiate that claim of privilege until a privilege log is provided "in the normal course of the litigation." In any event, the date of Plaintiffs' awareness and the identity of the individual who first became aware are not privileged. Please provide such information as soon as possible as it has been more than two weeks since we first requested it.

Thank you,
Amanda

**Amanda A. Main**
Cooley LLP
3175 Hanover Street
Palo Alto, CA  94304-1130
+1 650 843 5914 office
+1 650 849 7400 fax
amain@cooley.com

**From:** Bricker, Ryan <rbricker@kilpatricktownsend.com>
**Sent:** Friday, September 6, 2019 4:57 PM
**To:** Main, Amanda <amain@cooley.com>; Gilchrist, Gregory <ggilchrist@kilpatricktownsend.com>; Manes, Sophy <SManes@kilpatricktownsend.com>
**Cc:** Ghajar, Bobby A. <bghajar@cooley.com>; Roumiantseva, Dina <droumiantseva@cooley.com>
**Subject:** RE: Patagonia v. AB - Meet and Confer Letter

Amanda,

First, prompt responses are not a one-way obligation. We discussed your plans to talk to your client about virtually every single request we discussed during marathon meet and confer sessions, and received nothing in terms of substantive commitments, except proposals about 4 or 5 requests. I have information for you regarding AB's interrogatories, and am working on the rest. AB will need to decide if we have been relatively prompt, as will we. But your demand that we respond in three days must be measured against the time AB took (and continues to take). I can say that if we have accessible information to which you are entitled, we will turn it over and I am in agreement that we may be able to find some additional information related to your interrogatories (though not much of value because we did a good job of answering them in the first place).

We thought, when discussing your responses, that we had reached agreement that South America, or other parts of the world, were irrelevant. Knowledge of beer sales in South America is not any more relevant to laches than knowledge of Patagonia apparel in Japan would be to Anheuser Busch's knowledge that the Patagonia, Inc. brand was famous. In any event, I am not clear about what you think we ought to have "reasonably known," assuming we knew that Quilmes was selling Patagonia brand beer in South America, or who at Patagonia you think we are supposed to ask whether they knew about such sales. Can you explain so our client can assess what it is being asked to do?

We will amend Interrogatories 6 and 7. We'll need some time to do that.

We're discussing your requests as to Interrogatories 4 and 5 with our client, noting that your "narrowing" of the term Patagonia remains difficult to understand. Does it exclude references on products that appear to signal Patagonia, the country? Otherwise, you have essentially excluded "Made in Patagonia" (if it appears in small print) from the interrogatory. There is good reason to limit the response to enforcement matters because that is where the knowledge of such things, to the extent there is any basis to believe they would remain part of Patagonia's institutional knowledge, would be retained. Moreover, AB has equal access to any meaningful third party uses. You can ask us about any you think that might matter and at least we would have something specific to ask our client (we do not agree to do that until you make a request and we have a chance to assess it). We will be producing dozens of examples of awareness of third party uses, as you've defined that, from the legal department. We propose that you review those as a first step. As a practical matter, I believe it would be extraordinarily burdensome to interview an ill-defined set of cohorts from within the company about whether they've observed third parties using the term "Patagonia" in a commercial context (and excluding the large number we already will have disclosed). I also don't see how it would be relevant to anything, if it is so obscure that AB is unaware of it, in any case. We will amend our privilege objection (see below).

Our information about the privilege claims in response to Interrogatories 3 and 5 will be provided when we provide our privilege log in the normal course of the litigation. The context for the objections is obvious as the requests seek information about trademark office filings. Mostly lawyers are the ones who see that stuff first. The specifics about who exactly was involved and who received the privileged advice that was given, and when that happened, will require some further investigation. If you want it by a specific date, let us know why you believe there is urgency on the issue, and we will propose a mutual exchange date for information supporting privilege claims asserted by AB as well.

Regards,
Ryan


**Ryan Bricker**
Kilpatrick Townsend & Stockton LLP
Two Embarcadero Center | Suite 1900 | San Francisco, CA 94111
office 415 273 4368 | fax 415 354 3467
rbricker@kilpatricktownsend.com | My Profile | vCard

Exhibit D
Pg. 48

**From:** Main, Amanda <amain@cooley.com>
**Sent:** Wednesday, September 4, 2019 10:47 AM
**To:** Gilchrist, Gregory <ggilchrist@kilpatricktownsend.com>; Bricker, Ryan <rbricker@kilpatricktownsend.com>; Manes, Sophy <SManes@kilpatricktownsend.com>
**Cc:** Ghajar, Bobby A. <bghajar@cooley.com>; Roumiantseva, Dina <droumiantseva@cooley.com>
**Subject:** RE: Patagonia v. AB - Meet and Confer Letter

Ryan,

We appreciate your time on the meet and confer call yesterday afternoon regarding Plaintiffs' responses to AB's First Set of Interrogatories. For each of the issues below, we ask for a response by the end of the day Friday, September 6. To the extent you agree to provide amended responses, please confirm that you will cure the deficiencies set forth in my August 23 letter and provide a date certain when Plaintiffs will serve their amended responses.

**Interrogatory No. 2**

At your request, we clarified any confusion that the request to state "who" requires Plaintiffs to identify specific individuals. We also asked that Plaintiffs amend their responses to state, for each fact, "who first became aware of such fact, how the person became aware of it, and what actions, if any, [Plaintiffs] took in response to such awareness." You stated that Plaintiffs have no obligation to provide that information for facts set forth in the first and fourth sentences of Plaintiffs' responses, because those facts were provided for context only. However, as explained, the Interrogatory asks Plaintiffs to *"[s]tate all facts relating to* [their] first awareness of the distribution or sell of PATAGONIA beer . . . , including" the information noted above. Plaintiffs responded with facts regarding their knowledge in 2013 and 2019, and having conceded that such facts relate to their first awareness, cannot avoid providing the information expressly sought by the Interrogatory. You agreed to discuss further with your client and let us know if Plaintiffs will supplement to provide the missing information. We also invited you to provide authority, to the extent any exists, supporting your position.

With respect to the third sentence of Plaintiffs' responses ("In late 2018, Patagonia became aware that AB was starting to sell PATAGONIA beer in Vail, Colorado"), you indicated that many individuals were aware of such fact and agreed to discuss further with your client and let us know whether Plaintiffs will state who specifically first became aware of such fact, how the person became aware of it, and what actions, if any, Plaintiffs took in response to such awareness, as expressly requested by the Interrogatory.

With respect to Plaintiffs' objection, we explained that Plaintiffs' awareness of the distribution or sale of PATAGONIA beer in South America is at least relevant to AB's laches defense. Such information reflects Plaintiffs' knowledge or what Plaintiffs should have reasonably known given that AB's parent also holds a majority stake in Quilmes, a producer of PATAGONIA beer in South America. You stated that Plaintiffs intend to stand on this objection. Please confirm that is the case.

**Interrogatory No. 3**

Plaintiffs claim that the "circumstances relating to when [Plaintiffs] became aware of [] Warsteiner's intent-to-use application are subject to attorney-client privilege and work product." We asked Plaintiffs to provide the information required by FRCP 26(b)(5) so that AB could assess Plaintiffs' privilege claim. You stated that you did not have any information to provide (which makes the claim questionable) but that Plaintiffs would agree to a mutual exchange of privilege logs for privilege asserted in response to interrogatories. I explained that there was no need for a mutual exchange of privilege logs as AB only withheld information from one interrogatory based on privilege and Plaintiffs currently have sufficient information to evaluate that claim of privilege, while Plaintiffs have not provided such information so that AB can assess their claim. Please confirm that you will provide sufficient information for AB to assess Plaintiffs' privilege claim by the end of the week, as requested in my August 23 letter.

**Interrogatory Nos. 4 and 5**

In response to your question about the scope of this Interrogatory, we confirm that we are willing to limit it to third-party uses of "PATAGONIA" as a URL, trademark, slogan, product or service name, or company name.  You stated that you would discuss with your client additional steps it is willing to take to obtain responsive information that is not limited to the production of documents from Plaintiffs' "trademark enforcement files."  We discussed information potentially known by Plaintiffs' founders, executives, or management, but you should also consider discussing with individuals in branding, marketing, and social media.  You also stated that Plaintiffs would provide information to substantiate their claim of privilege for interrogatory no. 5.

**Interrogatory No. 6**

You agreed that Plaintiffs will amend their responses to provide information regarding any other known instances of alleged actual confusion and to clarify that the response is complete and not limited to "representative examples."

**Interrogatory No. 7**

You agreed that Plaintiffs will amend their responses to set forth the legal or equitable theory on which their entitlement to damages is based.  You agreed to discuss with your client and let us know whether Plaintiffs will also amend their responses to identify supporting documents and witnesses and explain how the respective Plaintiffs' damages are different from one another.

Thank you,
Amanda

**Amanda A. Main**
Cooley LLP
3175 Hanover Street
Palo Alto, CA  94304-1130
+1 650 843 5914 office
+1 650 849 7400 fax
amain@cooley.com

---

**From:** Main, Amanda
**Sent:** Friday, August 23, 2019 4:34 PM
**To:** Gilchrist, Gregory <ggilchrist@kilpatricktownsend.com>; Bricker, Ryan <rbricker@kilpatricktownsend.com>; Manes, Sophy <SManes@kilpatricktownsend.com>
**Cc:** Ghajar, Bobby A. <bghajar@cooley.com>; Roumiantseva, Dina <droumiantseva@cooley.com>
**Subject:** Patagonia v. AB - Meet and Confer Letter

Greg,

Please find attached correspondence.

Thanks,
Amanda

**Amanda A. Main**
Cooley LLP
3175 Hanover Street
Palo Alto, CA  94304-1130
+1 650 843 5914 office
+1 650 849 7400 fax
amain@cooley.com

www.cooley.com

Exhibit D
Pg. 50

Cooley is one of Fortune's **100 Best Companies to Work For**

Cooley GO > **Start and build your business**

This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message. If you are the intended recipient, please be advised that the content of this message is subject to access, review and disclosure by the sender's Email System Administrator.

Confidentiality Notice:
This communication constitutes an electronic communication within the meaning of the Electronic Communications Privacy Act, 18 U.S.C. Section 2510, and its disclosure is strictly limited to the recipient intended by the sender of this message. This transmission, and any attachments, may contain confidential attorney-client privileged information and attorney work product. If you are not the intended recipient, any disclosure, copying, distribution or use of any of the information contained in or attached to this transmission is STRICTLY PROHIBITED. Please contact us immediately by return e-mail or at 404 815 6500, and destroy the original transmission and its attachments without reading or saving in any manner.

***DISCLAIMER*** Per Treasury Department Circular 230: Any U.S. federal tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message. If you are the intended recipient, please be advised that the content of this message is subject to access, review and disclosure by the sender's Email System Administrator.

This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message. If you are the intended recipient, please be advised that the content of this message is subject to access, review and disclosure by the sender's Email System Administrator.

This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message. If you are the intended recipient, please be advised that the content of this message is subject to access, review and disclosure by the sender's Email System Administrator.

**Peterson, Marcus D.**

| | |
|---|---|
| **From:** | Roumiantseva, Dina |
| **Sent:** | Tuesday, September 17, 2019 1:06 PM |
| **To:** | Gilchrist, Gregory; Bricker, Ryan; Manes, Sophy |
| **Cc:** | Main, Amanda; Ghajar, Bobby A.; Galicki, Alexander |
| **Subject:** | RE: Patagonia v. AB - Meet and Confer re Plaintiffs' Responses to RFPs |

Greg:

Twenty-one (21) days have passed since you received my letter and 11 days have passed since our meet and confer call and we still have not received answers to the outstanding issues on our document requests. Would you please provide the requested information no later than tomorrow?

In your email below, you state that Plaintiffs will not amend their responses until there is a commitment that the amendments will resolve the disputes. Plaintiffs have already agreed to amend several of their responses; are you saying that their agreement is now contingent on AB's agreement that all disputes identified in my prior letter have been resolved? To the extent Plaintiffs will amend their responses, they must do so without delay, as AB has agreed to do. At a minimum, that will narrow the number of issues in dispute, and streamline the presentation of any remaining issues to the Court.

As to the other RFPs in your email:

RFP 42: Plaintiffs should produce all documents and non-privileged communications pertaining to any efforts to enforce rights in the PATAGONIA marks. These documents are relevant to the scope of Plaintiffs' asserted rights in the PATAGONIA marks. There is no reason to limit to document sufficient to show how Plaintiffs "originated" and "concluded" enforcement matters only. Unless you tell us otherwise, we suspect that your client has files or emails that pertain to each matter, and producing complete files should not be burdensome.

RFP 43: While Plaintiffs state that they will produce files showing their awareness of third-party uses in response to other requests, Plaintiffs refuse to produce documents concerning their decision not to enforce their rights in the PATAGONIA marks against third parties. Plaintiffs' proposal that it will conduct a reasonable search, limited to its "trademark department" (i.e. a sub-set of its legal department) custodians, only if AB takes on the burden of "specifically and reasonably" identifying specific uses is unreasonable. Plaintiffs are in possession of the requested information, not AB. AB cannot guess the third-party uses against or relating to which Plaintiffs have decided not to enforce their rights. As explained, such documents are relevant to the scope and limitation of Plaintiffs' rights and the allegations in the Complaint, including by way of example only, that the mark PATAGONIA refers uniquely and unmistakably to Patagonia, Inc. or that the mark is famous for the purposes of the federal dilution law. We reiterate our request that Plaintiffs agree to conduct a reasonable search for such documents, and that their reasonable search is not be limited to "trademark department" custodians. Unless you agree to do so, this issue is ripe for a motion to compel. Please advise.

RFP 44: Plaintiffs' proposal is inadequate in several respects. The Request seeks all documents concerning any damages allegedly suffered by Plaintiffs. Plaintiffs only agree to produce documents upon which they intend to rely to show damages, but Plaintiffs must also produce documents relating to those damages, including documents that may undermine Plaintiffs' claims that they suffered damages. Further, with respect to the documents that Plaintiffs agree to produce, Plaintiffs state that they will do so "once it has identified them." What does this mean? Plaintiffs filed a complaint – and now a further amended complaint -- alleging that they have suffered various damages, yet your response suggests that Plaintiffs are currently unaware of any documents supporting their claim for damages. Please advise.

RFP 45:  Plaintiffs' proposal below contradicts their prior agreement to produce all communications between Plaintiffs and AB, not just those relating to use of PATAGONIA on alcoholic beverages.  Are Plaintiffs reneging on their prior agreement?  If that is the case, that will affect our reciprocal agreement.  Please clarify your position immediately.

RFP 46:  Plaintiffs do not appear to agree to do anything other than what they already said they would do in their initial responses.  For the reasons stated, Plaintiffs must conduct a reasonable search, which should not be limited to custodians responsible for producing and marketing beer and which should not be limited to documents referencing AB's trademark registration.  Among others, these documents are highly relevant to AB's defenses, including its laches defense, as well as Plaintiffs' entitlement to any relief.  Given Plaintiff's response, we assume that this issue is ripe for a motion to compel.

Finally, we did not receive your position on RFP 50.  As previously stated, Plaintiffs' response does not state that they will produce any documents.  Unless you tell us otherwise, we take from your lack of response that Plaintiffs do not intend to supplement its response and production, and that the issue is ripe for a motion to compel.

Regards,
Dina

**Dina Roumiantseva**
Cooley LLP
101 California Street, 5th Floor
San Francisco, CA  94111-5800
+1 415 693 2141 office
droumiantseva@cooley.com

---

**From:** Gilchrist, Gregory <ggilchrist@kilpatricktownsend.com>
**Sent:** Friday, September 13, 2019 10:09 AM
**To:** Roumiantseva, Dina <droumiantseva@cooley.com>; Bricker, Ryan <rbricker@kilpatricktownsend.com>; Manes, Sophy <SManes@kilpatricktownsend.com>
**Cc:** Main, Amanda <amain@cooley.com>; Ghajar, Bobby A. <bghajar@cooley.com>; Galicki, Alexander <agalicki@cooley.com>
**Subject:** RE: Patagonia v. AB - Meet and Confer re Plaintiffs' Responses to RFPs

Dina:  I don't have time right now to read your summary.  I can say that we don't plan on amending the responses until we have a commitment that the amendments will resolve the disputes.  I will review your summary when I can (soon) and let you know any further response.  Please let me know when we can expect to hear whether your client is agreeable to the changes we discussed.

On the searches we did not specifically discuss, we would propose modifying the responses as follows, always subject to all privileges:

No. 42: [proposed]  "Patagonia will produce non-privileged documents sufficient to show how it originated and concluded matters involving enforcement of the Patagonia Marks."

No. 43 [proposed]  "Patagonia is producing many files showing awareness of third party uses in response to other requests.  To the extent that AB specifically and reasonably identifies a third party use about which it wants the requested information, Patagonia agrees to conduct a reasonable ESI search of its trademark

Exhibit D
Pg. 53

department custodians and to provide non-privileged documents that refer to a decision not to enforce Patagonia's trademark rights."

No. 44 [proposed] "Amended Response:  Patagonia will, once it has identified them, produce any documents upon which it intends to rely to show damages, including corrective advertising expenses, reduced sales, lost profits, lost opportunities resulting from the AB registration, and other damages that are identified."

No. 45 [proposed] "Patagonia will make a reasonable ESI search for and will produce non-privileged communications referring to communications with AB about the use of PATAGONIA or "Patagonia" on alcoholic beverages.

No. 46: [proposed] "Patagonia will make a reasonable ESI search -- of its relevant custodians responsible for producing and marketing beer -- for and produce non-privileged documents referencing AB's trademark registrations for PATAGONIA for beer.

No. 48 [proposed] "Patagonia agrees to produce documents sufficient to show the corporate affiliation of the Plaintiffs."

Regards, Greg

**Gregory Gilchrist**
He | Him
**Kilpatrick Townsend & Stockton LLP**
Two Embarcadero Center | Suite 1900 | San Francisco, CA 94111
office 415 273 7564 | fax 415 723 7216
ggilchrist@kilpatricktownsend.com | My Profile | vCard

**From:** Roumiantseva, Dina <droumiantseva@cooley.com>
**Sent:** Thursday, September 12, 2019 11:07 PM
**To:** Gilchrist, Gregory <ggilchrist@kilpatricktownsend.com>; Bricker, Ryan <rbricker@kilpatricktownsend.com>; Manes, Sophy <SManes@kilpatricktownsend.com>
**Cc:** Main, Amanda <amain@cooley.com>; Ghajar, Bobby A. <bghajar@cooley.com>; Galicki, Alexander

<agalicki@cooley.com>
**Subject:** Patagonia v. AB - Meet and Confer re Plaintiffs' Responses to RFPs

Greg,

We appreciate your and Sophy's time on the meet and confer call last Friday afternoon regarding Plaintiffs' responses to AB's First Set of Requests for Production.  As noted in Amanda's email yesterday to Ryan, we agreed that, in lieu of continuing our call, you could provide Plaintiffs' position in writing on the remaining requests that we did not have an opportunity to discuss last Friday.

A week has passed, and we still have not yet received your position as to those requests.  As you know, the local rules require the parties to meet and confer within 10 days and we are now way beyond that.  Please confirm you will provide Plaintiffs' position on those requests tomorrow.

As to the requests we discussed last Friday, we have also been waiting to hear from you on the issues noted below.  Please provide a response as soon as possible.  To the extent you agree to provide amended responses, please confirm that you will cure the deficiencies set forth in our August 27 letter and provide a date certain when Plaintiffs will serve their amended responses.

If you disagree with our summary below, let us know.   To be clear, our summary is not intended to accept Plaintiffs' position or any attempt to put the burden back on AB; we are merely summarizing our understanding of your position, and asking for you to follow-up where you indicated that you would.

**RFP 1**:  You agreed to produce all documents relating to consideration of LONG ROOT ALE or PATAGONIA trademark for beer as well as discussions relating to whether to use Patagonia designations in connection with beer, including whether "Patagonia, Inc." or "Patagonia Provisions" could appear on the beer.   You stand on your objection to producing documents relating to any other trademarks considered by Plaintiffs for beer on the grounds of relevance.

**RFP 2**:  You agreed to produce all documents relating to consideration of LONG ROOT ALE, LONG ROOT WIT, or PATAGONIA trademark for beer as well as discussions relating to whether to use Patagonia designations in connection with beer, including whether "Patagonia, Inc." or "Patagonia Provisions" could appear on the beer.  You stated you will consider whether to search for discussions regarding the use of any PATAGONIA mark in connection with other alcoholic beverages.  As we explained, such documents are relevant and Plaintiffs should search for and produce them.  Please provide your position.

**RFP 3**:  You confirmed that you will produce any other contracts if more than one contract exists, or other documents sufficient to show the contractual relationship between Plaintiffs and New Belgium Brewing Co.  You agreed to amend this response.

**RFP 4**:  You confirmed that you will produce responsive documents, regardless of whether such documents mention AB, and you agreed to amend this response.

**RFP 6**:  You proposed that we first review the 50-100 files from the trademark department that Plaintiffs will produce in response to this request, and then discuss further whether a search for any specific third party is necessary.  Please confirm when you will produce these files.

**RFP 7**:  Your position is that you needed to investigate whether it is "burdensome" to search for documents relating to consideration of the mark PATAGONIA for wine, but objected to producing discussions of whether Plaintiffs' company names should be included on wine labels.  Both categories of documents are relevant and must be produced.  Please confirm you will produce such documents.  Also, please confirm your position as to whether Plaintiffs will produce documents relating to any plans they have to sell or market wine.

**RFP 9:**  You agreed to produce licenses relating to the PATAGONIA marks that Plaintiffs cited in their complaint and documents reflecting enforcement efforts with respect to the PATAGONIA marks.  Plaintiffs, however, refuse to produce communications relating to the negotiation or enforcement of such licenses based on their relevance objection.  Documents relating to the uses Plaintiffs have permitted of their PATAGONIA marks are relevant to Plaintiffs' tolerance and supervision of such use.

**RFP 10:**  You agreed to produce agreements from 2012 to the present, and to amend the response.

**RFP 11:**  You confirmed that Plaintiffs are not restricting their production by time.  But you stated that Plaintiffs will not produce draft agreements or communications relating to third-party use of PATAGONIA based on your objection that such request is unduly burdensome and disproportionate to the needs of the case.  However, third-party uses of PATAGONIA and Plaintiffs' awareness of such uses is relevant and Plaintiffs likely have files relating to each third-parties' use of PATAGONIA.

**RFPs 13 and 14:**  You stated that, with respect to PTO filings, those records are publicly available and AB should bear the time and burden of collecting them.  To the extent Plaintiffs have agreed to produce documents, you stated that Plaintiffs will only produce documents regarding applications for alcoholic beverages.  You stated that you would also produce non-privileged communications relating to other applications if we identify specific applications, so long as you deem our request to be reasonable.  We are considering your proposal with our client.

**RFP 14:**  You agreed to investigate whether the trademark department's files are maintained electronically and searchable by keywords.   To be clear, we are not agreeing that your search may be limited only to the "trademark department's" files.  Nonetheless, we suggested that, if so, Plaintiffs should search for the phrase "South America."  If the files are not searchable, you stated that you would let us know what searching capabilities exist.  Please let us know as soon as possible.

**RFP 15**:  You initially agreed to produce surveys regarding any goods or services that have been challenged in the complaint, and then stated that Plaintiffs would not produce surveys conducted in connection with litigation, which may be work product or privileged.  You agreed to investigate whether any such surveys or research exist and, if so, whether Plaintiffs will conduct a reasonable search.  If Plaintiffs intend to withhold ***any*** surveys or research, please let us know as soon as possible and confirm the basis.  If Plaintiffs refuse to produce surveys and research performed in connection with litigation on the basis of privilege, please also make that clear.

**RFP 17**:  You represented that the vast majority of fonts used in the past as well as all fonts currently in use and as principally used are reflected in representative advertising that will be produced.

**RFP 18**:  You agreed to remove the reference to general objections and confirmed Plaintiffs are not withholding any responsive documents based on their reference to their general objections.

**RFP 19**:  We discussed that the request seeks documents concerning Mr. Tadlock's statement about Patagonia's knowledge, including documents and communications reflecting his preparation in making such statements or commentary about his statements.  You agreed to search Mr. Tadlock's email for responsive non-privileged communications and you agreed to speak with Mr. Tadlock about others he spoke to as potential other custodians for a reasonable search.  Please let us know whether Plaintiffs agree to conduct a reasonable search for responsive documents.

**RFP 20**:  You agreed to search Corley Kenna's email for responsive non-privileged communications and otherwise conduct a reasonable search of other custodians' documents.

**RFP 21**:  You agreed to produce documents relating to any request by AB to obtain permission to place its brand on Plaintiffs' products.  Plaintiffs, however, refuse to produce any other responsive documents relating to other third-party requests to place their brands on Plaintiffs' products.

**RFP 22**: You stated that Plaintiffs agree to produce documents regarding the meaning and significance of "Patagonia" as used in Plaintiffs' brand in response to RFP 18.

**RFP 26**: You confirmed that your production will include the Statements of Use to support the dates of first use. With respect to documents substantiating first use dates for the marks identified in the complaint, you stated that you may not be able to provide such documentation for every mark, but would discuss further with your client and get back to us. Please let us know as soon as possible.

**RFP 27**: You confirmed that Plaintiffs will not seek to rely on any unproduced examples of advertising to support their claims.

**RFPs 29 and 30:** You stated that "aggregate sales" means total sales as maintained in the ordinary course of business and that sales are likely divided into categories (for example, apparel may have several sub-categories). You stated that you would investigate further and let us know with respect to how records are kept with regard to product categories and monthly or quarterly sales.

**RFP 32**: You confirmed that you will amend your response to remove the reference to "currently."

**RFP 33**: You stated that Plaintiffs will not produce profit and loss statements, but that they are producing sales records in response to RFPs 29 and 30, based on your objection that such statements are not relevant. Profit and loss statements are relevant to Plaintiffs' damages and should be produced.

**RFP 34**: You proposed that we first review the 50-100 files that you anticipate producing in response to RFP 6, and we can discuss further whether a search for any specific third party is necessary. Please confirm when you will produce these files.

**RFP 35**: You stated that you will produce search reports in connection with US trademark applications for PATAGONIA-formative marks, but only for alcoholic beverages. You proposed that we review the documents produced in response to RFP 6 and 34 above, and consider whether a search for any specific third party is needed. Clearance search reports or investigations regarding use of PATAGONIA mark in connection with any non-apparel goods or services are relevant and should be produced. Please confirm you will produce these documents and also that the search reports you intend to produce are not limited to those conducted prior to the filing of an application.

**RFP 36**: You stated that you believe Plaintiffs undertook a reasonable inquiry. However, you agreed that to the extent responsive, non-privileged documents exist, Plaintiffs would produce those documents.

**RFP 37**: Plaintiffs refuse to produce responsive documents and are standing on their objection that the request is vague and ambiguous. As previously stated, the request is not vague and ambiguous and applies to any goods or services offered by Plaintiffs.

**RFP 38**: You agreed to investigate whether any such surveys or research exists and, if so, would then let us know which surveys Plaintiffs will produce.

**RFP 39**: You confirmed that you will produce documents sufficient to show the corporate structure (organizational charts) relating to the beer business and all other products or services alleged in the complaint for three different time periods: 2012, 2016, and 2019.

**RFP 40**: You confirmed that Plaintiffs will produce documents concerning Plaintiffs' awareness of sales of PATAGONIA beer in the United States. Please also confirm that Plaintiffs will conduct a reasonable search for responsive documents not limited to their trademark department's files. In response to your concern that it would be difficult to locate such documents, we noted that "Quilmes" would be at least one relevant search term. You refused to search for that

term.  If you believe a search for "Quilmes" would be unduly burdensome, please provide us with information substantiating that claim.

**Dina Roumiantseva**
Cooley LLP
101 California Street, 5th Floor
San Francisco, CA  94111-5800
+1 415 693 2141 office
droumiantseva@cooley.com

This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message. If you are the intended recipient, please be advised that the content of this message is subject to access, review and disclosure by the sender's Email System Administrator.

Confidentiality Notice:
This communication constitutes an electronic communication within the meaning of the Electronic Communications Privacy Act, 18 U.S.C. Section 2510, and its disclosure is strictly limited to the recipient intended by the sender of this message. This transmission, and any attachments, may contain confidential attorney-client privileged information and attorney work product. If you are not the intended recipient, any disclosure, copying, distribution or use of any of the information contained in or attached to this transmission is STRICTLY PROHIBITED. Please contact us immediately by return e-mail or at 404 815 6500, and destroy the original transmission and its attachments without reading or saving in any manner.

***DISCLAIMER*** Per Treasury Department Circular 230: Any U.S. federal tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

**Peterson, Marcus D.**

| | |
|---|---|
| **From:** | Bricker, Ryan <rbricker@kilpatricktownsend.com> |
| **Sent:** | Friday, November 1, 2019 11:17 AM |
| **To:** | Main, Amanda |
| **Cc:** | Ghajar, Bobby A.; Gilchrist, Gregory; Ferrari, Louis; Manes, Sophy; Yang, Hannah |
| **Subject:** | RE: Patagonia / AB - meet and confer on RFAs |

**[External]**

Amanda, I will send you amended responses next week.  On RFA 92, you've rejected each effort I've made to tailor the scope to the issues in this case.  Against that background, I agree with you that we aren't going to resolve the dispute.

Regards,
Ryan

**Ryan Bricker**
**Kilpatrick Townsend & Stockton LLP**
Two Embarcadero Center | Suite 1900 | San Francisco, CA 94111
office 415 273 4368 | fax 415 354 3467
rbricker@kilpatricktownsend.com | My Profile | vCard

**From:** Main, Amanda <amain@cooley.com>
**Sent:** Thursday, October 31, 2019 10:05 AM
**To:** Bricker, Ryan <rbricker@kilpatricktownsend.com>
**Cc:** Ghajar, Bobby A. <bghajar@cooley.com>; Gilchrist, Gregory <ggilchrist@kilpatricktownsend.com>; Ferrari, Louis <lferrari@kilpatricktownsend.com>; Manes, Sophy <SManes@kilpatricktownsend.com>; Yang, Hannah <HYang@kilpatricktownsend.com>
**Subject:** RE: Patagonia / AB - meet and confer on RFAs

Ryan,

With respect to RFAs 5, 12, 15, 23, 29, 34, 40, 46, 52, 58, 64, 70, and 87, Plaintiffs have agreed to expand their interpretation of "objected" / "challenged" to also include letters sent by outside or in-house counsel.  We will accept this based on your representation that any such letters would have come from the legal department or outside counsel.

Regarding RFA 92, the fact that Plaintiffs are producing documents relevant to this issue does not excuse Plaintiffs from their obligation to respond to this RFA.  While you claim that RFA 92 is overbroad, you did not respond to my questions below regarding why Plaintiffs believe it is necessary to make a distinction based on the goods and services at issue in the co-existence agreements or whether this would change Plaintiffs' responses.  You are now claiming that RFA 92 would require Plaintiffs to "characterize" agreements in order to respond, but you do not explain how that is the case.  Plaintiffs know what a co-existence agreement is and whether they have entered into them for use of PATAGONIA.  While we have tried multiple times to encourage Plaintiffs to comply with their obligation to respond to this request, it is clear that Plaintiffs will not, and thus we are only left with the option of seeking relief from the court.

With respect to the RFAs that the parties continue to dispute, RFA 15 was inadvertently included in that list, but the remaining ones discussed in your email (including RFAs 3, 10, and 88) were on that list, and Plaintiffs have not changed their position after we met and conferred and thus there is no need to re-hash those positions again.

Exhibit D
Pg. 59

We patiently waited a week for Plaintiffs to confirm their position on two issues, and Plaintiffs still have not provided a date certain when they will serve their amended responses.  Please provide that date by tomorrow.

Thank you,
Amanda

**Amanda A. Main**
Cooley LLP
3175 Hanover Street
Palo Alto, CA  94304-1130
+1 650 843 5914 office
+1 650 849 7400 fax
amain@cooley.com

---

**From:** Bricker, Ryan <rbricker@kilpatricktownsend.com>
**Sent:** Wednesday, October 30, 2019 4:29 PM
**To:** Main, Amanda <amain@cooley.com>
**Cc:** Ghajar, Bobby A. <bghajar@cooley.com>; Gilchrist, Gregory <ggilchrist@kilpatricktownsend.com>; Ferrari, Louis <lferrari@kilpatricktownsend.com>; Manes, Sophy <SManes@kilpatricktownsend.com>; Yang, Hannah <HYang@kilpatricktownsend.com>
**Subject:** RE: Patagonia / AB - meet and confer on RFAs

**[External]**

Amanda,

With respect to RFAs 5, 12, 15, 23, 29, 34, 40, 46, 52, 58, 64, 70, and 87, we will amend responses to fit your interpretation of "objected / challenged" based on any letters sent by outside or in-house counsel.  Any such letters would have come from the legal department or outside counsel in any case, and we are not agreeing to scour the entirety of both plaintiffs via interviews or record searches to determine whether anyone has contacted third parties referenced in AB's RFAs.

On RFA 92, we have agreed to produce copies of agreements concerning third party uses of Patagonia-formative marks, including coexistence agreements, consent agreements, and concurrent use agreements, in response to RFP 11.  In addition to RFA 92's issues of overbreadth as to scope which I've explained, the RFA would require us to characterize agreements in order to respond.  Presumably our production in response to RFP 11 will give you what you are looking for, and AB can characterize any agreements produced as it wishes.  If authentication of document(s) produced in response to RFP 11 is AB's goal, I imagine we can arrange that.

You've included RFA 15 in your list of those that have not been resolved, but my understanding is that we've resolved the dispute by agreeing to your interpretation of "objected / challenged."

On RFAs 3 and 10, I don't think I've heard from you since my October 15 comments, but if you are asking whether our position has changed, it hasn't.

On RFA 88, again, I don't think I've heard from you since I responded on October 15.  On our call you argued that context is not appropriate.  We disagree, particularly in a situation where a request uses a truncated portion of a quote to skew the meaning.  If you have authority for your position, we can review and consider it.

On the remaining RFAs (1, 8, 15, 20, 26, 32, 37, 43, 49, 55, 61, 67, 6, 13, 24, 30, 35, 41, 47, 53, 59, 65, 71, 7, 14, 19, 25, 31, 36, 42, 48, 54, 60, 66, and 72), we are not withdrawing our objections, including that they call for improper legal conclusions.  The reasoning and outcome in the *Gibson* case clearly reflects the court's agreement with our position, but if you think the *Gibson* court relied on some other objection to conclude that the RFAs were improper – or if you continue to disagree with me on some other basis – then I agree that our dispute is unresolved.

Regards,
Ryan

Exhibit D
Pg. 60

**Ryan Bricker**
**Kilpatrick Townsend & Stockton LLP**
Two Embarcadero Center | Suite 1900 | San Francisco, CA 94111
office 415 273 4368 | fax 415 354 3467
rbricker@kilpatricktownsend.com | My Profile | vCard

---

**From:** Bricker, Ryan
**Sent:** Monday, October 28, 2019 5:07 PM
**To:** 'Main, Amanda' <amain@cooley.com>
**Cc:** Ghajar, Bobby A. <bghajar@cooley.com>; Gilchrist, Gregory <ggilchrist@kilpatricktownsend.com>; Ferrari, Louis <lferrari@kilpatricktownsend.com>; Manes, Sophy <SManes@kilpatricktownsend.com>; Yang, Hannah <HYang@kilpatricktownsend.com>
**Subject:** RE: Patagonia / AB - meet and confer on RFAs

Amanda, Thanks.  I will get back to you in the next day or two.

Ryan

**Ryan Bricker**
**Kilpatrick Townsend & Stockton LLP**
Two Embarcadero Center | Suite 1900 | San Francisco, CA 94111
office 415 273 4368 | fax 415 354 3467
rbricker@kilpatricktownsend.com | My Profile | vCard

---

**From:** Main, Amanda <amain@cooley.com>
**Sent:** Monday, October 28, 2019 12:42 PM
**To:** Bricker, Ryan <rbricker@kilpatricktownsend.com>
**Cc:** Ghajar, Bobby A. <bghajar@cooley.com>; Gilchrist, Gregory <ggilchrist@kilpatricktownsend.com>; Ferrari, Louis <lferrari@kilpatricktownsend.com>; Manes, Sophy <SManes@kilpatricktownsend.com>; Yang, Hannah <HYang@kilpatricktownsend.com>
**Subject:** RE: Patagonia / AB - meet and confer on RFAs

Ryan,

Checking in on my email below.

Thanks,
Amanda

**Amanda A. Main**
Cooley LLP
3175 Hanover Street
Palo Alto, CA  94304-1130
+1 650 843 5914 office
+1 650 849 7400 fax
amain@cooley.com

---

**From:** Main, Amanda <amain@cooley.com>
**Sent:** Wednesday, October 23, 2019 8:10 PM
**To:** Bricker, Ryan <rbricker@kilpatricktownsend.com>
**Cc:** Ghajar, Bobby A. <bghajar@cooley.com>; Gilchrist, Gregory <ggilchrist@kilpatricktownsend.com>; Ferrari, Louis <lferrari@kilpatricktownsend.com>; Manes, Sophy <SManes@kilpatricktownsend.com>; Yang, Hannah <HYang@kilpatricktownsend.com>
**Subject:** RE: Patagonia / AB - meet and confer on RFAs

Ryan,

Exhibit D
Pg. 61

With respect to RFAs 5, 12, 15, 23, 29, 34, 40, 46, 52, 58, 64, 70, and 87, and the interpretation of "objected" / "challenged," I was borrowing your language from our call where you proposed to include "cease and desist letters or action by Plaintiffs' legal departments."  While this would include cease and desist letters sent by in-house or outside counsel, it would also include letters from others not in the legal department (e.g., the CEO, head of marketing, etc.).  Please confirm Plaintiffs are amending consistent with this interpretation of objected / challenged.

With respect to RFA 92, we disagree with your statement that this lawsuit is about AB's use of Patagonia on beer.  Based on Plaintiffs' allegations, it is about much more than that.  In particular, Plaintiffs' Section 1052(a) and dilution claims make uses of PATAGONIA on other goods and services relevant.  Regardless of the parties' differing views on this, we do not understand your rationale in attempting to make a distinction based on the goods and services at issue in the co-existence agreements.  Please explain.  Would it change Plaintiffs' responses?  It's not reasonable for you to suggest rewriting our RFA just because Plaintiffs do not want to admit the request as framed (again, for reasons we do not understand).  This is straightforward.  Please let us know if Plaintiffs are refusing to respond.

Please let us know when we will receive Plaintiffs' amended responses to the requests above and No. 76.

It appears we were not able to resolve our disagreement on the remaining RFAs (1, 8, 15, 20, 26, 32, 37, 43, 49, 55, 61, 67, 6, 13, 24, 30, 35, 41, 47, 53, 59, 65, 71, 7, 14, 19, 25, 31, 36, 42, 48, 54, 60, 66, and 72, 3, 10, 88).

Thanks,
Amanda

**Amanda A. Main**
Cooley LLP
3175 Hanover Street
Palo Alto, CA  94304-1130
+1 650 843 5914 office
+1 650 849 7400 fax
amain@cooley.com

**From:** Bricker, Ryan <rbricker@kilpatricktownsend.com>
**Sent:** Wednesday, October 23, 2019 2:16 PM
**To:** Main, Amanda <amain@cooley.com>
**Cc:** Ghajar, Bobby A. <bghajar@cooley.com>; Gilchrist, Gregory <ggilchrist@kilpatricktownsend.com>; Ferrari, Louis <lferrari@kilpatricktownsend.com>; Manes, Sophy <SManes@kilpatricktownsend.com>; Yang, Hannah <HYang@kilpatricktownsend.com>
**Subject:** RE: Patagonia / AB - meet and confer on RFAs

**[External]**

Amanda, Thanks.  I've responded to your comments in blue below.  Please let me know whether we have agreements on 5, 12, 15, 23, 29, 34, 40, 46, 52, 58, 64, 70, 87, and 92.

Ryan

**Ryan Bricker**
**Kilpatrick Townsend & Stockton LLP**
Two Embarcadero Center | Suite 1900 | San Francisco, CA 94111
office 415 273 4368 | fax 415 354 3467
rbricker@kilpatricktownsend.com | My Profile | vCard

Exhibit D
Pg. 62

**From:** Main, Amanda <amain@cooley.com>
**Sent:** Friday, October 18, 2019 12:56 PM
**To:** Bricker, Ryan <rbricker@kilpatricktownsend.com>
**Cc:** Ghajar, Bobby A. <bghajar@cooley.com>; Gilchrist, Gregory <ggilchrist@kilpatricktownsend.com>; Brown, Bob
<BoBrown@kilpatricktownsend.com>; Ferrari, Louis <lferrari@kilpatricktownsend.com>; Manes, Sophy
<SManes@kilpatricktownsend.com>; Yang, Hannah <HYang@kilpatricktownsend.com>
**Subject:** RE: Patagonia / AB - meet and confer on RFAs

Ryan, see below in green.  Please get back to me in the next few days on these final outstanding issues and
let me know when we will receive Plaintiffs' amended responses.

Thank you,
Amanda

Amanda A. Main
Cooley LLP
3175 Hanover Street
Palo Alto, CA  94304-1130
+1 650 843 5914 office
+1 650 849 7400 fax
amain@cooley.com

---

**From:** Bricker, Ryan <rbricker@kilpatricktownsend.com>
**Sent:** Tuesday, October 15, 2019 3:34 PM
**To:** Main, Amanda <amain@cooley.com>
**Cc:** Ghajar, Bobby A. <bghajar@cooley.com>; Gilchrist, Gregory <ggilchrist@kilpatricktownsend.com>; Brown, Bob
<BoBrown@kilpatricktownsend.com>; Ferrari, Louis <lferrari@kilpatricktownsend.com>; Manes, Sophy
<SManes@kilpatricktownsend.com>; Yang, Hannah <HYang@kilpatricktownsend.com>
**Subject:** RE: Patagonia / AB - meet and confer on RFAs

**[External]**

Amanda, I've interlineated responses in red below.

Regards,
Ryan

**Ryan Bricker**
Kilpatrick Townsend & Stockton LLP
Two Embarcadero Center | Suite 1900 | San Francisco, CA 94111
office 415 273 4368 | fax 415 354 3467
rbricker@kilpatricktownsend.com | My Profile | vCard

---

**From:** Bricker, Ryan <rbricker@kilpatricktownsend.com>
**Sent:** Monday, October 14, 2019 4:57 PM
**To:** Main, Amanda <amain@cooley.com>
**Cc:** Ghajar, Bobby A. <bghajar@cooley.com>; Gilchrist, Gregory <ggilchrist@kilpatricktownsend.com>; Brown, Bob
<BoBrown@kilpatricktownsend.com>; Ferrari, Louis <lferrari@kilpatricktownsend.com>
**Subject:** Re: Patagonia / AB - meet and confer on RFAs

Amanda, I will send you our responses tomorrow.  Thanks.

--
Ryan

-------- Original message --------
From: "Main, Amanda" <amain@cooley.com>
Date: 10/11/19 3:36 PM (GMT-08:00)
To: "Bricker, Ryan" <rbricker@kilpatricktownsend.com>
Cc: "Ghajar, Bobby A." <bghajar@cooley.com>, "Gilchrist, Gregory" <ggilchrist@kilpatricktownsend.com>, "Brown, Bob" <BoBrown@kilpatricktownsend.com>, "Ferrari, Louis" <lferrari@kilpatricktownsend.com>
Subject: RE: Patagonia / AB - meet and confer on RFAs

Ryan,

A week has passed since my email to you regarding the RFAs.  You stated on Tuesday that you would respond "shortly."  Given that it is now Friday, please confirm we will receive your response by Tuesday.

Amanda

**Amanda A. Main**
Cooley LLP
3175 Hanover Street
Palo Alto, CA  94304-1130
+1 650 843 5914 office
+1 650 849 7400 fax
amain@cooley.com

---

**From:** Bricker, Ryan <rbricker@kilpatricktownsend.com>
**Sent:** Tuesday, October 8, 2019 11:15 AM
**To:** Main, Amanda <amain@cooley.com>
**Cc:** Ghajar, Bobby A. <bghajar@cooley.com>; Gilchrist, Gregory <ggilchrist@kilpatricktownsend.com>; Brown, Bob <BoBrown@kilpatricktownsend.com>; Ferrari, Louis <lferrari@kilpatricktownsend.com>
**Subject:** RE: Patagonia / AB - meet and confer on RFAs

**[External]**

Amanda, Yes, I've attached Exhibit A to Plaintiffs' responses to the RFAs.  We will get back to you about the other points in your email shortly.

Regards,
Ryan

**Ryan Bricker**
**Kilpatrick Townsend & Stockton LLP**
Two Embarcadero Center | Suite 1900 | San Francisco, CA 94111
office 415 273 4368 | fax 415 354 3467
rbricker@kilpatricktownsend.com | My Profile | vCard

---

**From:** Main, Amanda <amain@cooley.com>
**Sent:** Monday, October 7, 2019 6:54 PM
**To:** Bricker, Ryan <rbricker@kilpatricktownsend.com>
**Cc:** Ghajar, Bobby A. <bghajar@cooley.com>; Gilchrist, Gregory <ggilchrist@kilpatricktownsend.com>
**Subject:** RE: Patagonia / AB - meet and confer on RFAs

Ryan,

Can you please send the Exhibit A that was omitted from Plaintiffs' initial responses two months ago?

Please also let us know when we can expect to hear back regarding the rest of my email.

Thank you,
Amanda

**Amanda A. Main**
Cooley LLP
3175 Hanover Street
Palo Alto, CA  94304-1130
+1 650 843 5914 office
+1 650 849 7400 fax
amain@cooley.com

---

**From:** Main, Amanda <amain@cooley.com>
**Sent:** Friday, October 4, 2019 4:37 PM
**To:** Bricker, Ryan <rbricker@kilpatricktownsend.com>
**Cc:** Ghajar, Bobby A. <bghajar@cooley.com>; Gilchrist, Gregory <ggilchrist@kilpatricktownsend.com>
**Subject:** Patagonia / AB - meet and confer on RFAs

Ryan,

I write to follow-up regarding our September 26th meet and confer on Plaintiffs' responses to AB's requests for admission ("RFAs").

To begin, with respect to RFAs 73 and 74 (and corresponding requests to Provisions), you stated that you would send Exhibit A, which should have been served with the initial responses, within a day or two.  It has been more than a week, and we still have not received the exhibit.  Please send as soon as possible.  We sent the exhibit.  Thanks for the reminder last week.

In addition, Plaintiffs refused to respond to a number of RFAs asking Plaintiffs to admit that they do not contend that certain trademarks create a false suggestion or likelihood of confusion with their marks or dilute their marks, on the ground that they call for a legal conclusion.  As explained on our call, we disagree with Plaintiffs' objection and referred you to particular sections of the Rutter Guide that provide examples of objectionable legal conclusions.  Whether or not Plaintiffs contend something is not a legal conclusion.  You agreed to review the authority and let us know Plaintiffs position.  On our meet and confer call, I explained that these requests ask plaintiffs to admit or deny legal conclusions as to infringement, dilution, and false suggestion.  The requests are not appropriate RFAs.  During our call, you referenced section 11:2015 in the Rutter Group guide (I assume Federal Civil Procedure Before Trial).  The citations in that section are either irrelevant to our dispute (*Marchand v. Mercy Med. Ctr.*, 22 F3d 933, 937, fn. 4 (9th Cir. 1994) deals with a denied RFA – acknowledging that the denial may have been an appropriate application of law to fact – and its impact on fee shifting) or support my explanation.  For example, in *Playboy Enterprises, Inc. v. Welles*, 60 F. Supp. 2d 1050, 1057 (S.D. Cal. 1999), the court looked at an RFA seeking an admission that a contract required written permission to use "Playmate of the Year."  It concluded that the request compelled a conclusion of law.  AB's requests are even less appropriate, in that they seek legal opinions based on multi-factor tests.  Similar requests were rejected in *Gibson Brands Inc. v. John Hornby Skewes & Co. Ltd.*, 2015 WL 12681376, at *6 (C.D. Cal. Jul. 20, 2015).  On the call, I referred you to the Rutter Guide's examples of RFAs that are permissible requests involving the application of facts to law and not conclusions of law (e.g., "that defendant materially breached the contract," "that defendant failed to make timely delivery," "that paragraph 10 was a material term of the contract").  The *Gibson* case you cite does not state that similar requests were objectionable conclusions of law – that was merely one of many arguments made by the party.  We assume Plaintiffs are standing on their objection, unless you state otherwise.

RFAs 3 and 10 (and corresponding requests to Provisions) – you agreed to consider removing the improper objections that the document speaks for itself and that the requested information is equally available to AB.  Please confirm that Plaintiffs will do so.  The RFAs refer to "the PATAGONIAMALT & Design trademark" and "PATAGONIA BERRIES & Design" trademark.  In order to respond, we assumed that AB was talking about the registration certificates for those purported marks.  I gather that is what you intended.  The RFAs

then ask us to admit that the registration certificates "contain a mountain design element." Because you've asked us to opine about whether a graphic shows a mountain – an opinion that could differ depending on who is perceiving the graphic, and which seems of zero or minimal use given that the documents you're referencing are public – the objections are proper.

RFAs 5, 12, 15, 23, 29, 34, 40, 46, 52, 58, 64, and 70 (and corresponding requests to Provisions) – we discussed that Plaintiffs' responses too narrowly defined objected to mean "initiating formal proceedings, including civil litigation or an action before the Trademark Trial and Appeal Board." You agreed to also interpret objected to include cease and desist letters or action by Plaintiffs' legal departments. You stated that Plaintiffs would amend their responses based on the broader definition of "objected." Plaintiffs should also strike their statement that they lack information about the extent or context of use, unless they also state that they have made reasonable inquiry and that the information they know or can readily obtain is insufficient to enable it to admit or deny. Please provide a date certain when we will receive Plaintiffs' amended responses. We will amend to take into account your inclusion of "cease and desist letter" in the definition of "objected." You also agreed to include action by Plaintiffs' legal departments, and I assume you are not reneging on that agreement. Yes, cease and desist letters regardless of whether it came from outside or in-house counsel. I assume that's what you mean when you say "action" by the legal departments, and that we agree.

RFA 76 – you stated that you would consider amending the response. As discussed, the focus of this RFA is differentiating between Plaintiff Patagonia, Inc. and Plaintiff Patagonia Provisions, Inc. Although you expressed some concern about admitting that Plaintiff does or does not sell beer because of regulations on who can sell beer, we do find this rationale questionable given that Provisions alleges in the SAC that it "has been selling its own Long Root beer since 2016." Please confirm that Plaintiff will amend its response. The responses are accurate. If it will resolve the dispute, we will amend so that the responses reflect that both plaintiffs have been involved in marketing and branding beer in the US. This request – directed to Plaintiff Patagonia, Inc. only – states "Admit that Patagonia, Inc. has never sold beer in the United States." Plaintiff's prior admission "on the basis that third party distributions have been responsible for all distribution and sales of beer branded and promoted by Plaintiff**s**" is improper for several reasons, including because the question asks only about Patagonia, Inc. Your offer to respond in a manner that does not answer the question is unhelpful. Either Plaintiff Patagonia, Inc. has sold beer in the US or not – please answer that question. We will amend to address your concern about the answer covering both plaintiffs.

RFA 87 (and corresponding request to Provisions) – you agreed to interpret "challenged" in the same manner as "objected" discussed in connection with the RFAs above and amend the responses accordingly. Again, Plaintiffs should also remove the improper commentary and argument from their amended response. Please provide a date certain when we will receive Plaintiffs' amended responses. We will amend to take into account your inclusion of "cease and desist letter" in the definition of "challenged." You also agreed to include action by Plaintiffs' legal departments, and I assume you are not reneging on that agreement. Yes, cease and desist letters regardless of whether it came from outside or in-house counsel. I assume that's what you mean when you say "action" by the legal departments, and that we agree.

RFA 88 (and corresponding request to Provisions) – as stated, Plaintiffs' commentary, particularly in the last sentence of their response, is inappropriate. You agreed to discuss further with your client whether Plaintiffs would strike this improper commentary. The RFA is inappropriate in that it asks about a truncated quote (hence our objection). The context we've provided is particularly appropriate given that AB omitted text from the quote, presumably in order to imply an altered meaning of the history provided by Mr. Chouinard.

RFA 92 (and corresponding request to Provisions) – you asked whether this request could be limited to co-existence agreements regarding certain goods and services, such as those referenced in the SAC and related to those referenced in the SAC. We considered this further and do not believe there is any basis for narrowing this request. Plaintiffs claim that they own a monopoly on the word PATAGONIA so use of the term in connection with any good or service is relevant. Further, we believe this should be a straightforward admission for Plaintiffs if they have entered into two or more co-existence agreements. Please confirm Plaintiffs will respond to this RFA. First, your commentary in this email about our claims is inaccurate. Plaintiffs claim that AB's use of PATAGONIA violates Plaintiffs' rights. Arguing that the RFA is relevant based on an interpretation

of Plaintiffs' claims that AB would like to impose on Plaintiffs is not going to lead to an agreement.  On our call, I explained that we don't think the RFA has any relevance to this dispute, and that it is in any case overbroad.  The RFA isn't even limited to asking about whether such agreement actually include the "Patagonia" term in their scope, and could be asking us to admit whether we've entered a co-existence agreement with a company irrespective of whether the company is using "Patagonia" as a mark or part of a mark.  To the extent that third party uses of "Patagonia" as a brand are relevant to any of the claims, AB has equal access to locating and investigating such uses.  If you have a more narrow and appropriate interpretation to offer, we will consider it.  Plaintiffs refuse to respond based on the request's supposedly "improper scope."  As explained, there is no burden is responding if Plaintiffs have entered into two or more such agreements.  This request is not about locating and investigating uses of Patagonia – it is about Plaintiffs entering into co-existence agreements.  Given your apparent confusion, we clarify that the request is asking about co-existence agreements regarding use of the term PATAGONIA.  This lawsuit is at its core about AB's use of Patagonia on beer and its marketing of those products.  You proposed during our call that a broader range of coexistence agreements could be relevant (i.e., beyond agreements covering use of Patagonia on beer), if they exist, because of the scope of goods and services covered by registrations that plaintiffs have asserted in this litigation.  Without agreeing about the relevance, plaintiffs are prepared – if it will resolve the dispute – to answer whether plaintiffs have entered two or more coexistence agreement relating to third party use of PATAGONIA as a trademark on the goods or services covered by plaintiffs' asserted registrations, or to third party use of PATAGONIA as a trademark on beer.  Let me know if we have an agreement.

Sincerely,
Amanda

**Amanda A. Main**
Cooley LLP
3175 Hanover Street
Palo Alto, CA  94304-1130
+1 650 843 5914 office
+1 650 849 7400 fax
amain@cooley.com

www.cooley.com

Cooley is one of Fortune's **100 Best Companies to Work For**

Cooley GO > **Start and build your business**

This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message. If you are the intended recipient, please be advised that the content of this message is subject to access, review and disclosure by the sender's Email System Administrator.

Confidentiality Notice:
This communication constitutes an electronic communication within the meaning of the Electronic Communications Privacy Act, 18 U.S.C. Section 2510, and its disclosure is strictly limited to the recipient intended by the sender of this message. This transmission, and any attachments, may contain confidential attorney-client privileged information and attorney work product. If you are not the intended recipient, any disclosure, copying, distribution or use of any of the information contained in or attached to this transmission is STRICTLY PROHIBITED. Please contact us immediately by return e-mail or at 404 815 6500, and destroy the original transmission and its attachments without reading or saving in any manner.

***DISCLAIMER*** Per Treasury Department Circular 230: Any U.S. federal tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message. If you are the intended recipient, please be advised that the content of this message is subject to access, review and disclosure by the sender's Email System Administrator.

---

This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message. If you are the intended recipient, please be advised that the content of this message is subject to access, review and disclosure by the sender's Email System Administrator.

---

This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message. If you are the intended recipient, please be advised that the content of this message is subject to access, review and disclosure by the sender's Email System Administrator.

---

This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message. If you are the intended recipient, please be advised that the content of this message is subject to access, review and disclosure by the sender's Email System Administrator.