1   COOLEY LLP
    BOBBY GHAJAR (198719)
2   bghajar@cooley.com
    MARCUS PETERSON (265339)
3   mpeterson@cooley.com
    1333 2nd Street, Suite 400
4   Santa Monica, CA  90401
    Telephone: (310) 883-6400
5   Facsimile:  (310) 883-6500

6   COOLEY LLP
    ANGELA L. DUNNING (212047)
7   adunning@cooley.com
    AMANDA A. MAIN (260814)
8   amain@cooley.com
    DINA ROUMIANTSEVA (300576)
9   droumiantseva@cooley.com
    3175 Hanover Street
10  Palo Alto, CA  94304
    Telephone: (650) 843-5000
11  Facsimile:  (650) 843-7400

12  Attorneys for Defendant and Counterclaimant
    ANHEUSER-BUSCH, LLC
13

14              **UNITED STATES DISTRICT COURT**

15          **FOR THE CENTRAL DISTRICT OF CALIFORNIA**

16             **WESTERN DIVISION – LOS ANGELES**

17  | PATAGONIA, INC. and PATAGONIA PROVISIONS, INC., | Case No.  2:19-cv-02702-VAP (JEMx) |
18  |  | **REPLY IN SUPPORT OF DEFENDANT AND COUNTERCLAIMANT ANHEUSER-BUSCH, LLC'S MOTION FOR PARTIAL SUMMARY JUDGMENT** |

                  Plaintiffs,
19
          v.
20
    ANHEUSER-BUSCH, LLC dba
    PATAGONIA BREWING CO.,
21
                  Defendant.
22
    _____
    ANHEUSER-BUSCH, LLC dba
23  PATAGONIA BREWING CO.,

24                Counterclaimant,

25        v.

    PATAGONIA, INC. and
26  PATAGONIA PROVISIONS, INC.,

27                Counter-Defendants.

28

Date:   August 31, 2020
Time:   2:00 p.m.
Courtroom: 8A, 8th Floor
Judge: Hon. Virginia A. Phillips

Discovery Cut-off Date: October 1, 2020
Pretrial Conf. Date:  February 8, 2021
Trial Date:  February 16, 2021

**REDACTED VERSION OF THE DOCUMENT
PROPOSED TO BE FILED UNDER SEAL**

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ................................................................. 1

II.     PAT FAILS TO RAISE A GENUINE ISSUE FOR TRIAL ON ITS
        FRAUD CLAIM.................................................................. 1

        A.      PAT's Evidence Comes Nowhere Close To Establishing Fraud ................. 1

        B.      PAT's Fraud Claim Is Time-Barred Under the Statute of Limitations ......... 7

III.    PAT FAILS TO RAISE A GENUINE ISSUE FOR TRIAL ON ITS
        FIFTH CLAIM .................................................................. 8

        A.      The Anti-Trafficking Claim Is Statutorily Barred ......................... 8

        B.      PAT's Claim that AB Abandoned the PATAGONIA Mark Fails.............. 10

IV.     PAT FAILS TO RAISE A GENUINE ISSUE ON ITS FALSE
        SUGGESTION CLAIM ........................................................ 11

V.      PAT FAILS TO RAISE A GENUINE ISSUE ON ITS
        MISREPRESENTATION CLAIM ................................................ 13

VI.     AB IS ENTITLED TO SUMMARY JUDGMENT ON ITS LACHES
        DEFENSE.................................................................... 14

VII.    CONCLUSION ............................................................... 15

**Cases**

*Adidas Am. v. Payless Shoesource, Inc.*,
    540 F. Supp. 2d 1176 (D. Or. 2008) ................................................................ 15

*AECOM Energy & Constr., Inc. v. Ripley*,
    348 F. Supp. 3d 1038 (C.D. Cal. 2018) ........................................................ 11

*Am. Cruise Lines, Inc. v. HMS Am. Queen Steamboat Co.*,
    2017 WL 3528606 (D. Del. 2017) .......................................................... 10, 14

*Anhing Corp. v. Thuan Phong Co. Ltd.*,
    2015 11018526 (C.D. Cal. Apr. 23, 2015) ........................................................ 2

*AV Media Pte. Ltd. v. Promounts*,
    2008 WL 11337209 (C.D. Cal. Jul. 2008) ...................................................... 14

*Barcamerica Int'l USA Trust v. Tyfield Importers, Inc.*,
    289 F.3d 589 (9th Cir. 2002) .............................................................................. 3

*Bayer Cons. Care AG v. Belmora LLC*,
    110 U.S.P.Q. 2d 1623 (TTAB 2014) ............................................................... 13

*Bon Vivant Catering, Inc. v. Duke Univ.*,
    2016 WL 3149725 (M.D.N.C. Jun. 3, 2016) .................................................... 5

*Cabell v. Zorro*,
    2017 WL 2335597 (N.D. Cal. May 30, 2017) .............................................. 7, 8

*Carter-Wallace, Inc. v. Procter & Gamble Co.*,
    434 F.2d 794 (9th Cir. 1970) .......................................................................... 11

*City-Core Hosp., LLC v. Palmer*,
    2018 WL 398257 (N.D. Cal. Jan. 12, 2018) .................................................... 4

*Claire v. All Am. Pet Co. Inc.*,
    2006 WL 8434717 (C.D. July 12, 2006) ........................................................ 11

*Del Taco LLC., v. Ziebarth Holdings, LLC*,
    2018 WL 5266973 (TTAB Oct. 19, 2018) ..................................................... 13

*Dept. of Parks and Rec. v. Harper*,
    2006 WL 8434731 (C.D. Cal. Apr. 25, 2006) ........................................... 10, 11

*Dynamic Meas. Grp., Inc. v. Univ. of Oregon,*
   121 F. Supp. 3d 1047 (D. Or. 2015) .................................................................... 15

*Electro Source, LLC v. Brandess-Kalt-Aetna Grp., Inc.,*
   458 F.3d 931 (9th Cir. 2006) ............................................................................... 11

*eMachines, Inc. v. Ready Access Memory, Inc.,*
   2001 WL 456404 (C.D. Cal. Mar. 5, 2001) ....................................................... 11

*Evergreen Safety Council v. RSA Network, Inc.,*
   697 F.3d 1221 (9th Cir. 2012) ............................................................................ 15

*Federal Treasury Enterprise Sojuzplodoimport v. Spirits Int'l N.V.,*
   623 F.3d 61 (2d Cir. 2010) ................................................................................... 9

*Gap, Inc. v. G.A.P. Adventures Inc.,*
   2011 WL 2946384 (S.D.N.Y. June 24, 2011) ................................................... 15

*Global Maschinen GMbh v. Global Banking Sys., Inc.,*
   227 U.S.P.Q. 862 (TTAB 1985) ......................................................................... 13

*Heckler & Koch, Inc. v. German Sport Guns GmbH,*
   71 F. Supp. 3d 866 (S.D. Ind. 2014) .................................................................... 6

*Hokto Kinoko Co. v. Concord Farms, Inc.,*
   738 F.3d 1085 (9th Cir. 2013) .............................................................................. 4

*Hornby v. TJX Cos. (Twiggy),*
   87 U.S.P.Q. 2d 1411 (TTAB 2008) .............................................................. 12, 15

*Hylete v. Hybrid Athletics, LLC,*
   2020 WL 2571196 (S.D. Cal. May 21, 2020) ...................................................... 8

*In re Bose Corp.,*
   580 F.3d 1240 (Fed. Cir. 2009.) ........................................................................ 1, 7

*In re Nieves & Nieves LLC,*
   113 U.S.P.Q. 2d 1629 (TTAB 2015) .................................................................. 12

*interState Net Bank v. NetB@nk, Inc.,*
   348 F. Supp. 2d 340 (D.N.J. 2004) ...................................................................... 9

*Kleven v. Hereford,*
   2015 WL 4977185 (C.D. Cal. Aug. 21, 2015) .............................................. 6, 8, 9

*Kling v. Hallmark Cards Inc.*,
225 F.3d 1030 (9th Cir. 2000) ........................................................ 15

*La Societe Anonyme des Parfums le Galion v. Jean Patou, Inc.*,
495 F.2d 1265 (2d Cir. 1974) ......................................................... 11

*Marketquest Grp., Inc. v. BIC Corp.*,
316 F. Supp. 3d 1234 (S.D. Cal. 2018) ....................................... 3, 10

*Marshak v. Treadwell*,
240 F.3d 184 (3d Cir. 2001) ............................................................ 8

*Meckatzer Lowenbrau Benedikt Weib KG v. White Gold, LLC*,
95 U.S.P.Q. 2d 1185 (TTAB 2010) .................................................. 5

*Mindy's Cosmetics, Inc. v. Dakar*,
2009 WL 10669480 (C.D. Cal. Jul. 14, 2009) .................................. 4

*NetJets Inc. v. IntelliJet Group, LLC*,
678 F. App'x 343 (6th Cir. 2017) ................................................... 10

*Neurovision Med. Prods., Inc. v. Nuvasive, Inc.*,
2011 WL 13130775 (C.D. Cal. May 5, 2011) ................................... 5

*Neurovision Med. Prods., Inc. v. Nuvasive, Inc.*,
494 Fed. App'x 749 (9th Cir. 2012) ................................................. 5

*Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Argonaut Ins. Co.*,
701 F.2d 95 (9th Cir. 1983) ............................................................. 7

*Oculu, LLC v. Oculus VR, Inc.*,
2015 WL 3619204 (C.D. Cal. June 8, 2015) ............................... 8, 10

*Official Airlines Guides, Inc. v. Goss*,
6 F.3d 1385 (9th Cir. 1993) ............................................................. 7

*Olay Co. v. Cococare Prod., Inc.*,
1983 WL 62351 (S.D.N.Y. Apr. 19, 1983) ..................................... 13

*Oreck Corp. v. Thomson Consumer Elecs., Inc.*,
769 F. Supp. 1152 (S.D. Ind. 1992) ............................................... 14

*Park 'N Fly, Inc. v. Dollar Park & Fly, Inc.*,
469 U.S. 189 (1985) ......................................................................... 8

*Pegler v. Cty. of Los Angeles*,
   2020 WL 854199 (C.D. Cal. Jan. 2, 2020)........................................................5

*Pinkette Clothing, Inc. v. Cosmetic Warriors, Ltd.*,
   894 F.3d 1015 (9th Cir. 2018) ...............................................................8, 14

*Pro-Football, Inc. v. Harjo*,
   284 F. Supp. 2d 96 (D.D.C. 2003).............................................................14

*San Diego Cty. Credit Union v. Citizens Equity First Credit Union*,
   2020 WL 1864781 (S.D. Cal. Apr. 14, 2020) ..............................................7

*Slep-Tone Entn't Corp. v. Kalamata, Inc.*,
   75 F. Supp. 3d 898 (N.D. Ill. 2014).............................................................5

*Spin Master, Ltd. v. Zobmondo Entm't, LLC*,
   778 F. Supp. 2d 1052 (C.D. Cal. 2011)...................................................2, 3

*Starsight Telecast, Inc. v. Gemstar Dev. Corp.*,
   158 F.R.D. 650 (N.D. Cal. 1994) ................................................................7

*Taco Cabana Int'l, Inc. v. Two Pesos, Inc.*,
   932 F.2d 1113 (5th Cir. 1991), *aff'd*, 505 U.S. 763 (1992)........................4

*The Clorox Co. v. Chemical Bank*,
   40 U.S.P.Q. 2d 1098 (TTAB 1996)........................................................8, 10

*Univ. of Notre Dame Du Lac v. J.C. Gourmet Food Imports Co.*,
   703 F.2d 1372 (Fed. Cir. 1983) ...........................................................12, 13

*WBS, Inc. v. Croucier*,
   2016 WL 6635619 (C.D. Cal. Nov. 8, 2016) ...............................................9

*Yucaipa Corp. Initiatives Fund I, LP v. Hawaiian Airlines, Inc.*,
   2014 WL 12564354 (C.D. Cal. Dec. 17, 2014)..........................................11

**Statutes**

15 U.S.C.

§ 1052(a) ........................................................................................... 11, 14

§ 1055 .................................................................................................... 4, 9

§ 1060 .................................................................................................... 8, 9

§ 1060(a)(1) ............................................................................................. 10

§ 1064 ........................................................................................................ 8

§ 1064(3) ........................................................................................... *passim*

§ 1072 ...................................................................................................... 14

§ 1115 ...................................................................................................... 15

§ 1119 ........................................................................................................ 8

§ 1120 ........................................................................................................ 7

§ 1127 ...................................................................................................... 11

Cal. Civ. Code

§ 338(d) ..................................................................................................... 7

§ 1640 ........................................................................................................ 3

**Other Authorities**

37 C.F.R. § 2.38(b) ........................................................................................... 5

Trademark Manual of Examining Proc. ("TMEP")

§ 1201.03(a) ............................................................................................. 5

§ 1201.03(e) ............................................................................................. 4

§ 311.02(b)(1) ........................................................................................... 14

3 J. Thomas J. McCarthy, McCarthy on Trademarks and Unfair Comp. (5th
ed. 2019)

§ 18:13 ................................................................................................ 2, 10

§ 18:46 ..................................................................................................... 4

§ 20:74 ..................................................................................................... 14

# I.   INTRODUCTION[1]

This case is nothing but a ploy. After studying and acknowledging AB's valid rights to the PATAGONIA beer mark for years, and only after ███████████████████████ ████████████ PAT asks the Court to strip AB of its Registration so PAT can take the mark for its own foray into beer. PAT has no right to it. As AB's opening brief ("MPSJ") showed and PAT's Opposition only confirms, PAT's cancellation claims are both legally improper and factually unsupported. PAT does not address AB's on-point authority and brazenly misconstrues its own cases. It also cites (and mischaracterizes) a wide array of irrelevant, unauthenticated, and inadmissible "evidence" to confound the issues and create the veneer of a dispute, but AB's evidentiary objections and responses expose that tactic— none of it creates a genuine issue on the equitable cancellation claims before the Court.

PAT has no evidence that AB's transaction with Warsteiner was in any way improper, much less gave rise to fraud on the PTO (a claim which is now also time-barred); its anti-trafficking claim is both baseless and barred under 15 U.S.C. § 1064(3); its false suggestion and passing off claims fail as a matter of law and are premised on nothing more than alleged likelihood of confusion (and, thus, also barred under § 1064(3)); and PAT's unreasonable and prejudicial delay plainly constitutes laches. The Court will ultimately decide these equitable claims, and has everything it needs to dispense with them now and significantly narrow the issues for trial. The Court should grant summary judgment for AB.

## II.   PAT FAILS TO RAISE A GENUINE ISSUE FOR TRIAL ON ITS FRAUD CLAIM

### A.   PAT's Evidence Comes Nowhere Close To Establishing Fraud

With fraud, "there is no room for speculation, inference or surmise and, obviously, any doubt must be resolved *against the charging party.*" *In re Bose Corp.*, 580 F.3d 1240, 1243 (Fed. Cir. 2009.) But speculation is all PAT offers. Its baseless fraud claim begins with the unfounded premise that there was something inherently

---

[1] This Reply uses the same defined terms as the MPSJ. AB cites its Statement of Undisputed Facts (1–256) as "SUF" and its responses to PAT's additional facts (1–322) as "R." AB has separately filed evidentiary objections and responses. Unless otherwise stated, all citations and internal quotations are omitted, and all emphases are added.

1  improper about structuring a deal in which AB licensed the PATAGONIA beer mark
2  from Warsteiner so that AB could make use and file a statement of use ("SOU") on
3  Warsteiner's behalf, and the mark could then be assigned to AB upon registration. But
4  that premise is wrong, and PAT's claim just crumbles from there.

5      PAT cannot show any "knowingly false statements aimed at avoiding the anti-
6  trafficking rule." (Opp. at 2.) It cannot even show a violation. McCarthy's leading treatise
7  explicitly *endorses* the structure AB and Warsteiner negotiated, concluding that an
8  "agreement by a[n] ITU applicant to assign the mark and its registration in the future"
9  once an SOU has been filed is "not a present assignment" and does not violate "either the
10 letter or the spirit" of the anti-trafficking rule. McCarthy § 18:13.

11     PAT's own law firm reached the same conclusion. In 2015, Kilpatrick



13 ██████████████████████████. (R64.) ████████████████

16 ██████████████." (*Id.*) (agreement allowing importation and sale pursuant to a license,
17 and later assignment of ITU following amendment to allege use "██████████████

19 ████████████████████████████████").

20     PAT observes that the script called this a "████" issue (Opp. at 4 n.3), and a
21 way to "████████" the rule, but those words were *Kilpatrick's*, as was the conclusion
22 that the structure would be "████." (R64.) Moreover, even if the issue were "████,"
23 that would only undermine PAT's claim, as it requires "clear and convincing evidence"
24 of "subjective intent to deceive," *Spin Master, Ltd. v. Zobmondo Entm't, LLC,* 778 F.
25 Supp. 2d 1052, 1061 (C.D. Cal. 2011), and not mere "mistake." *Id.* at 1065. Plaintiffs
26 lack any shred of evidence that any witness acted inappropriately, much less deceitfully.

27     Consistent with the above, all relevant witnesses have attested that they believed the
28 transaction lawful and had no intent to deceive. (SUF23, 26–27, 43, 64, 86–87, 139.) *See*

*Anhing Corp. v. Thuan Phong Co. Ltd.*, 2015 11018526, at *7 (C.D. Cal. Apr. 23, 2015) (considering such testimony in assessing fraud claim). The parties' contemporaneous emails bear that out. (SUF55, 67–73.) Warsteiner swore to it in a declaration **PAT** solicited. (SUF14, 26.) PAT offers no contrary evidence. Indeed, Ms. Cannon's 2015 ████████ is unrefuted evidence from before this suit was filed that ██████████████████████ appropriate. (R64.) *See Spin Master*, 778 F. Supp. 2d at 1061 ("absent the requisite intent to mislead the PTO, even a material misrepresentation" not actionable); *Marketquest Grp., Inc. v. BIC Corp.*, 316 F. Supp. 3d 1234, 1279 (S.D. Cal. 2018) (same).

Undeterred, PAT seeks to pick apart the Agreements to raise some specter of fraud, to no avail. For instance, PAT claims that intent to deceive can be inferred from the fact that the License purportedly terminated on July 21, 2012. (Opp. at 5.) Warsteiner and AB both attest that the License did not expire until the Registration issued and the assignment was effected. (SUF37–38.)[2] But even if it expired in July (it did not), that would not raise a genuine issue, as the anti-trafficking rule only prohibits assignment before an SOU is filed. The SOU here was filed on July 17, 2012 (SUF58)—***before*** PAT claims the License expired. Warsteiner could have made a lawful assignment that same day, but waited until registration because that is what the Purchase Agreement required. (SUF55, 69–73.)

Ignoring the page limit, PAT improperly incorporates six pages from its own MPSJ to argue the License was not "genuine." (Opp. at 8.) That trick fails. It is "well-established that a trademark owner may grant a license and remain protected provided quality control of the goods … sold under the trademark by the licensee is maintained." *Barcamerica Int'l USA Trust v. Tyfield Importers, Inc.*, 289 F.3d 589, 595 (9th Cir. 2002). Here, there was a written License (SUF33, 35), it imposed explicit quality standards (requiring AB's beer to

---

[2] Contrary to PAT's ██████████ at 5), AB's Frank Hellwig did not admit that the License expired on July 21: ██████████ (SUF91.) Like Warsteiner, he attested that the License "██████████████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████ ██████████ ual intent notwithstanding any mistake in the text. *See* Cal. Civ. Code § 1640.

**REPLY I/S/O AB'S MPSJ**
**CASE NO. 2:19-CV-02702-VAP (JEMX)**

comply with U.S. law and be of comparable quality to that sold by Quilmes in Argentina) (SUF36, R65), and during the License term, it is undisputed that AB complied with those requirements, ensuring consumers a consistent level of quality.[3] PAT cites no evidence to contradict sworn testimony that AB and Warsteiner believed the License valid. (SUF 60, R179–80.) PAT's claim (at 10) that AB "knew" it was "sham" is pulled out of thin air.

PAT's argument that AB's use of the PATAGONIA mark "could not possibly have conferred trademark rights on *[Warsteiner]*" (Opp. at 9), is wrong as a matter of law. Under 15 U.S.C. § 1055, "[o]wnership rights in a trademark . . . can be acquired and maintained through the use of the mark by a controlled licensee ***even when the first and only use of the mark was made, and is being made, by the licensee***," because that use "inures to the benefit of the licensor, who as a result becomes owner of the trademark … rights." McCarthy § 18:46; *see* Trademark Manual of Examining Proc. ("TMEP") § 1201.03(e) (same).[4] Here, it is undisputed that AB began selling PATAGONIA beer in U.S. commerce in July 2012. (SUF56–57.) The goodwill accruing from that use inured to Warsteiner's benefit, as licensor. *See Mindy's Cosmetics, Inc. v. Dakar*, 2009 WL 10669480, at *5 (C.D. Cal. Jul. 14, 2009) ("[E]ven if there was no legally protectable 'trademark' when the name was initially licensed, … the ownership rights in the trademark run[] to the licensor."); *City-Core Hosp., LLC v. Palmer*, 2018 WL 398257, at *2 (N.D. Cal. Jan. 12, 2018) (goodwill generated by licensee's use "accrue[s] to the mark's owner").

Beyond its lack of a tenable fraud theory, PAT cannot identify any specific statement that was false or made with intent to deceive, as required to state a claim. *Hokto Kinoko Co. v. Concord Farms, Inc.*, 738 F.3d 1085, 1097 (9th Cir. 2013).

---

[3] The "purpose of the quality-control requirement is to prevent the public deception that would ensue from variant quality standards under the same mark or dress." *Taco Cabana Int'l, Inc. v. Two Pesos, Inc.*, 932 F.2d 1113, 1121 (5th Cir. 1991), *aff'd*, 505 U.S. 763 (1992). PAT does not argue that any such deception occurred here, and cannot show that the License is in any other way invalid (*see* Dkt. 280 at 13-18), much less that AB knew it.

[4] PAT's Opp. (at 8–9) improperly conflates licensees (who are controlled by the applicant or registrant through a license) with other "related parties," such as subsidiaries and parents, who can claim the benefit of use by a related company under § 1055 only if there is a "substantial relationship" entailing ability to control.

**Statement of Use**: Ms. Cannon testified at length why the SOU she submitted was accurate. (*See* SUF64; MPSJ at 9–11.) PAT only challenges as false Ms. Cannon's statement that "applicant *or the applicant's … licensee*" was using the mark" (Opp. at 4), but that was *true*: Warsteiner's licensee (AB) *was* using the mark. (SUF56–57, 64.)[5] Further, the PTO knew AB was acting as Warsteiner's agent because Ms. Cannon had filed a power of attorney just two months earlier, identifying herself as an AB employee. (SUF40, 44.)[6]

Grasping at straws, PAT claims the SOU was false because an earlier version of the TMEP provided that an applicant should disclose whether it "is using the mark [solely] *through its related company* (or equivalent explanatory wording)." (TMEP § 1201.03(a) (emphasis in original) (citing 37 C.F.R. § 2.38(b)).) This argument fails. First, the PTO did away with that rule in January 2015, and now explicitly "does *not* require" this disclosure. (Reply Main ¶¶ 17–21 & Exs. 9–12). Second, PAT cannot show that Ms. Cannon knew of or intentionally violated that rule; it chose not to ask her about it at deposition.[7] (*Id.* ¶ 22; R186) Third, the SOU did use "equivalent" wording to report that use was made through a licensee, so there was no violation. *See Bon Vivant Catering, Inc. v. Duke Univ.*, 2016 WL 3149725, at *8–9 (M.D.N.C. Jun. 3, 2016) (holding at summary judgment that disclosure of use by "applicant *or* the applicant's related company" *satisfied* 2012 rule and violation would "not form a basis for cancellation" anyway); *cf. Slep-Tone Entn't Corp. v. Kalamata, Inc.*, 75 F. Supp. 3d 898, 905–06 (N.D. Ill. 2014) (unable to decide issue

---

[5] It is undisputed that AB (not Quilmes) imported and sold PATAGONIA beer in the U.S. through *AB's* U.S. distributors (SUF48–53, 56–57.) AB was the seller, not a U.S. "distributor" for Quilmes as PAT suggests (at 9), and PAT's cited cases are inapt.

[6] PAT fails to address AB's arguments that the extension requests and power of attorney cannot support a fraud claim (MPSJ at 9, 13–14), conceding that summary judgment is proper. *See J.C. v. Cty. of L.A.*, 2020 WL 854199, at * 9 (C.D. Cal. Jan. 2, 2020).

[7] PAT's citation to *Neurovision Medical Products, Inc. v. Nuvasive, Inc.*, 2011 WL 13130775, at *1 (C.D. Cal. May 5, 2011), is improper. The verdict was *vacated on appeal* and the case re-assigned on remand because the judge "erroneously instructed the jury as to the elements required to prove fraud" on the PTO. 494 Fed. App'x 749 (9th Cir. 2012). Further, the only authority cited for the proposition that a plaintiff need not show a particular signatory acted with intent to deceive was *Meckatzer Lowenbrau Benedikt Weib KG v. White Gold, LLC*, 95 U.S.P.Q. 2d 1185 (TTAB 2010), which held only that it sufficed at the *pleading stage* to allege applicant's intent. In any event, PAT has no facts that Ms. Cannon *or anyone else at AB* believed the SOU to be inaccurate.

under 2012 rule on a motion to dismiss). PAT cannot avoid summary judgment on its

fraud claim by pointing to non-"violation" of a technical rule the PTO has since rejected.

**Assignment**: PAT's only challenge to the Assignment is that it was "post-dated."

(Opp. at 6.) But it is undisputed that Warsteiner did not send the Assignment to AB until

November 29, 2012 (after registration) (SUF69–73), and it was not effective until then,

even though ████████████████████████. (SUF 32, 45–47, 67–78.) The fact that ████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████ (SUF74–75, 79–82; R245–46)—

does not show an anti-trafficking violation, much less fraud.[8]

**Incontestability Declaration**: PAT's Eighth Claim for cancellation is premised

solely on the ground that "AB and Warsteiner *procured* the registration by fraud." (TAC

¶ 107; *see* ¶¶ 103–06.) PAT alleged that AB's incontestability declaration was "false" (*id.*

¶¶ 30, 109), but the only relief PAT requested was *rectification* (Claim Nine). If PAT now

seeks to *cancel* AB's Registration on that ground (Opp. at 11), that claim is not pleaded

and cannot be considered on summary judgment. (*See* MPSJ at 13–14 (citing cases).)

The claim fails, in any event. AB has proffered substantial evidence of AB's long-

standing use of the mark, including import and sale of PATAGONIA beer in 2012, 2015,

2016, 2017, and 2018 (SUF48–61, 91–111, 126–29, 134–36; R121.) Three witnesses

testified ██████████████████████████████████████████████████████████

██████████████████████████████████████████████ (SUF93. 96.) AB also

entered the beer in a competition and festival in 2016 and 2018, and undertook substantial

efforts to expand the brand and begin brewing in the U.S. (SUF 105, 112–25, 126–29, 134–

36). Given this, PAT cannot show that Todd Davidovits, who signed the declaration,

knowingly lied when he attested AB had been using the PATAGONIA mark for five years.

---

[8] In *Kleven v. Hereford*, 2015 WL 4977185, at *19, 23–27 (C.D. Cal. Aug. 21, 2015), all fraud elements were *admitted* pursuant to a default judgment. In *Heckler & Koch, Inc. v. German Sport Guns GmbH*, 71 F. Supp. 3d 866, 883–89 (S.D. Ind. 2014), plaintiff *admitted* falsity, but the court still found no fraud. There are no such admissions here.

He believed his submission "truthful" (SUF139), and PAT has no contrary evidence.[9] The singular fact PAT cites to accuse Mr. Davidovits of fraud—that he knew AB launched its "new" ***domestically***-brewed beer in 2018 (Opp. at 11)—is irrelevant, as AB had long offered ***Argentina***-brewed beer in the U.S. under the PATAGONIA name.

PAT's only rebuttal to the total dearth of intent evidence is that a jury might not believe AB's witnesses. Yet, the "hope of undermining" witness credibility at trial does not "suffice[] to avert summary judgment." *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Argonaut Ins. Co.*, 701 F.2d 95, 96 (9th Cir. 1983); *see Bose*, 580 F.3d at 1246 ("Sullivan testified under oath that he believed the statement was true…. Unless [plaintiff] can point to evidence … of deceptive intent, it [fails] to ... establish [] fraud."). Fraud must be "proven to the hilt." *Bose*, 580 F.3d at 1243. PAT's baseless speculation proves nothing at all.

## B. PAT's Fraud Claim Is Time-Barred Under the Statute of Limitations

As noted in the MPSJ (at 16), a claim for damages under 15 U.S.C. § 1120 arising from the fraudulent procurement of a trademark registration may not be brought after the applicable state statute of limitations expires. *Official Airlines Guides, Inc. v. Goss*, 6 F.3d 1385, 1395–96 (9th Cir. 1993). In California, that period is three years. Cal. Civ. Code 338(d); *Cabell v. Zorro*, 2017 WL 2335597, at *10 (N.D. Cal. May 30, 2017).

PAT does not dispute these points. Its only argument to avoid dismissal of its § 1120 damages claim (TAC, Prayer ¶ 13) is a fly-by reference to the "discovery rule." (Opp. at 25 n.13 (citing *San Diego Cty. Credit Union v. Citizens Equity First Credit Union*, 2020 WL 1864781, at *5 (S.D. Cal. Apr. 14, 2020)). Notably, that case held that a plaintiff must "specifically plead facts to show (1) the time and manner of discovery *and* (2) the inability to have made earlier discovery despite reasonable diligence," and went on to find the claim time-barred. *Id.* at *4. Likewise, PAT satisfies neither prong.

---

[9] PAT gets nowhere by attacking AB's proper claims of privilege. Its witnesses confined their testimony to denying intent to defraud, which is "insufficient to constitute waiver." *Starsight Telecast, Inc. v. Gemstar Dev. Corp.*, 158 F.R.D. 650, 653 (N.D. Cal. 1994).

The TAC does not allege when PAT learned of the "fraud," much less that it could not have discovered it earlier with due diligence. Indeed, PAT's original complaint alleged that it was the Assignment itself—which has been publicly available on the PTO's website since 2013, when PAT was ███████████████ (*see* MPSJ at 6–7)—that purportedly "reveal[ed]" AB's purported misconduct. (Dkt. 1 ¶ 27.) PAT cannot claim or show diligence; it simply sat on its hands. Thus, its invocation of the discovery rule fails.

These same facts doom PAT's fraud-based **cancellation** claim under 15 U.S.C. § 1119. Courts in the Ninth Circuit hold that such claims are subject to the state fraud statute of limitations. *See Cabell*, 2017 WL 2335597, at *10 (§ 1119 claim "barred by [California's 3-year fraud] statute of limitations **and** … laches"); *Hylete v. Hybrid Athletics, LLC*, 2020 WL 2571196, at *8 (S.D. Cal. May 21, 2020).[10]

## III. PAT FAILS TO RAISE A GENUINE ISSUE FOR TRIAL ON ITS FIFTH CLAIM

### A. The Anti-Trafficking Claim Is Statutorily Barred

PAT's anti-trafficking claim is not only baseless; it is barred. Remarkably, PAT ignores AB's Supreme Court and Ninth Circuit cases holding, unambiguously, that a five-year-old registration like AB's may not be cancelled except on grounds explicitly listed in § 1064(3). *Park 'N Fly, Inc. v. Dollar Park & Fly, Inc.*, 469 U.S. 189, 197 (1985); *Pinkette Clothing, Inc. v. Cosmetic Warriors, Ltd*, 894 F.3d, 1015, 1023 (9th Cir. 2018). This requires summary judgment for AB, as violation of § 1060 is not a listed ground for cancellation.

Unable to meet this roadblock head on, PAT tries (unsuccessfully) to swerve around it. PAT points to *The Clorox Co. v. Chemical Bank*, 40 U.S.P.Q. 2d 1098, 1104 (TTAB 1996) and *Oculu, LLC v. Oculus VR, Inc.*, 2015 WL 3619204, at *1, 4, 7 (C.D. Cal. June 8, 2015), noting that neither involved a § 1064 challenge but both "were very explicit that a violation of the anti-trafficking rule 'voids' the registration." (Opp. at 23.) This dodge

---

[10] Contrary to PAT's assertion (at 25), the Ninth Circuit has not endorsed the holding in *Marshak v. Treadwell*, 240 F.3d 184, 193 (3d Cir. 2001), that fraud claims may be brought "at any time." Just the opposite, it held that § 1064(3) notwithstanding, fraud claims are subject to laches, measured by the state fraud limitations period. *Pinkette Clothing, Inc. v. Cosmetic Warriors, Ltd.*, 894 F.3d 1015, 1023–25 & n.3 (9th Cir. 2018). The holding in *Kleven*, 2015 WL 4977185, at *27, thus, has been superseded.

1   fails: in both cases, the claim was asserted *within* five years of registration.

2       PAT also cites inapposite cases in which a party successfully challenged the post-

3   registration *assignment* of a *valid registration*; none involved the anti-trafficking rule.

4       In *Federal Treasury Enterprise Sojuzplodoimport v. Spirits International N.V.*, 623

5   F.3d 61 (2d Cir. 2010), the parties agreed that the STOLICHNAYA registration *validly*

6   issued and was incontestable; the question was who owned it after a series of assignments

7   following the collapse of the Soviet Union. *Id.* at 68–69. The lower court avoided this issue,

8   citing the incontestable registration as conclusive evidence that defendant owned it. The

9   Federal Circuit reversed, noting that "validity of the assignment is antecedent to the

10  question of incontestability" and finding that plaintiff should be able to try to prove that the

11  assignment was fraudulent and that it was the true owner. *Id.* at 69; *see also WBS, Inc. v.*

12  *Croucier*, 2016 WL 6635619, at *3 (C.D. Cal. Nov. 8, 2016) (question was who owned

13  *valid* registration after rock band broke up and some members tried to assign it). Neither

14  involved a claim to *cancel* the registration, much less on anti-trafficking grounds.

15      PAT's citation to *Kleven*, 2015 WL 4977185, and *interState Net Bank v. NetB@nk,*

16  *Inc.*, 348 F. Supp. 2d 340 (D.N.J. 2004), is unavailing and misleading for the same reasons.

17  In *Kleven*, a registration *validly* issued to a puppy breeder, Hereford, who assigned it to a

18  third party two decades later. 2015 WL 4977185, at *2, 18. The court found that the

19  *assignment* was invalid, as the mark was assigned "in gross" without the goodwill of

20  Hereford's business and used for different goods—dog treats. *Id.* at *22.[11] However, this

21  did not void the registration. Instead, valid rights remained with Hereford, who later

22  abandoned them by closing her business with intent not to resume. The court cancelled the

23  registration based on this abandonment—an enumerated ground under § 1064(3)—not

24  under § 1060.  *Id.* at *22–23; *see NetB@nk,* 348 F. Supp. 2d at 351 (same fact pattern).

25

26  [11] Here, the assignment was not "in gross," and PAT does not assert that it was. Rather,
    Warsteiner made use through a licensee (AB); that use and the resulting goodwill inured
27  to Warsteiner's benefit under § 1055; once the Registration issued, Warsteiner assigned
    its rights in the mark to AB with "*the goodwill of the business* symbolized by the
    PATAGONIA mark and any resulting registration" (R67); and AB then continued to
28  use it in the same manner—to sell PATAGONIA beer.

REPLY I/S/O AB'S MPSJ
CASE NO. 2:19-CV-02702-VAP (JEMX)

In citing these cases, PAT intentionally conflates the rule against assigning a trademark in gross, codified in the first sentence of § 1060(a)(1), with the anti-trafficking rule prohibiting assignment of an ITU application before an SOU is filed, codified in the next sentence. But these rules are "different." McCarthy, § 18:13. Violation of the anti-trafficking rule voids "the underlying application and resulting registration," *Oculu*, 2015 WL 3619204, at *7, yielding a registration that is void *ab initio*, or "from the beginning." (Dkt. 255-1.) Assignments in gross, in contrast, do not affect the underlying registration. *Clorox*, 40 U.S.P.Q. 2d at 1097, 1100–02. PAT tries to blur this critical distinction, but the fact remains: **no court has ever cancelled a five-year old registration based on an alleged anti-trafficking violation, a void ab initio attack, or any other ground not specifically enumerated in § 1064(3)**. Just the opposite, courts routinely grant summary judgment on such claims. *See NetJets Inc. v. IntelliJet Group, LLC*, 678 F. App'x 343, 348 (6th Cir. 2017); *Marketquest* , 316 F. Supp. 3d at 1292; *Am. Cruise Lines, Inc. v. HMS Am. Queen Steamboat Co.*, 2017 WL 3528606, at *16 (D. Del. 2017).[12]

## B.     PAT's Claim that AB Abandoned the PATAGONIA Mark Fails

In its MPSJ, AB showed that it began using the PATAGONIA mark in commerce in July 2012, when it imported and sold its beer in retail stores in Hawaii. (SUF53, 56, 57, 91; R85–86, 90–91.) AB sold the beer to three more Hawaii retailers, beginning in March 2015 (SUF100–01, R108–09)—*before* PAT ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (SUF197–98). PAT concedes the beer was also on sale in Fort Collins by July 2015, and remained on sale there through 2017 (SUF102–07, 109–10, R110–14). By April 2019, the beer was available in ▮▮▮▮▮▮▮▮▮

---

[12] Unable to keep its theories straight, PAT asserts in a throwaway line that, because the assignment was invalid, the "registration revert[ed] to [Warsteiner], who undisputedly has abandoned the mark." (Opp. at 23–24.) That is wrong. If the anti-trafficking rule was violated (it was not), the registration would have been void when issued under *Clorox* and *Oculu* and could not have "reverted" to Warsteiner to be abandoned. PAT's anti-trafficking claim does not fit an "abandonment framework." *Am. Cruise Lines*, 2017 WL 3528606, at *16; *Dept. of Parks and Rec. v. Harper*, 2006 WL 8434731, at *8 n.10 (C.D. Cal. Apr. 25, 2006) (party "cannot abandon something it never owned").

outlets. (SUF 231.)[13] On these facts, PAT cannot even make a "prima facie" showing of abandonment, which requires "3 consecutive years" of "non-use." 15 U.S.C. § 1127.[14]

To avoid dismissal, PAT misleads the Court by pointing to a number of cases that evaluated sufficiency of use to prove *common law rights*. *See La Societe Anonyme des Parfums le Galion v. Jean Patou, Inc.*, 495 F.2d 1265, 1271–72 (2d Cir. 1974); *Claire v. All Am. Pet Co. Inc.*, 2006 WL 8434717, at *2 (C.D. July 12, 2006); *Harper*, 2006 WL 8434731, at *9 (refusing to find abandonment at summary judgment despite 23 years of non-use; PAT cites a different part of the case assessing *common law rights*). These cases hold that "sporadic, casual, or transitory" use will not establish *common law rights*, *id.*, but **that is not the test for abandonment**. Rather, the party asserting abandonment bears the burden to prove, through "clear and convincing evidence," *eMachines, Inc. v. Ready Access Memory, Inc.*, 2001 WL 456404, at *5 (C.D. Cal. Mar. 5, 2001), "*complete cessation [] of trademark use*" with intent not to resume. *Electro Source, LLC v. Brandess-Kalt-Aetna Grp., Inc.*, 458 F.3d 931, 935 (9th Cir. 2006). Even a "single instance of [good faith] use is sufficient against a claim of abandonment." *Carter-Wallace, Inc. v. Procter & Gamble Co.*, 434 F.2d 794, 804 (9th Cir. 1970). Here, there is no 3-year period of non-use, undisputed sales in commerce, and no evidence that AB ever intended to stop using its mark. AB is entitled to summary judgment. *AECOM Energy & Constr., Inc. v. Ripley*, 348 F. Supp. 3d 1038, 1055 (C.D. Cal. 2018).[15]

## IV.   PAT FAILS TO RAISE A GENUINE ISSUE ON ITS FALSE SUGGESTION CLAIM

PAT's Opposition only underscores that there is no genuine issue for trial on its

---

[13] The fact that AB "parked" or "discontinued" its plans to sell a low-alcohol version of Cerveza Patagonia (Opp. at 15; SUF112, R107) obviously does not show *any* period of non-use, much less that AB ceased using its mark to sell beer with intent not to resume.
[14] There is also uncontroverted evidence that it was not uncommon for premium beer like PATAGONIA to remain on retail shelves for years. (SUF93.)  Mr. Taylor saw it on offer in AB's tasting room in St. Louis in 2013 or 2014. (SUF96.) Although these facts show additional use between July 2012 and March 2015, any "dispute" about them would not raise a genuine issue for trial as PAT cannot show any three-year period of non-use.
[15] In *Yucaipa Corp. Initiatives Fund I, LP v. Hawaiian Airlines, Inc.*, there were at least three years of non-use, but the court found "token" uses after that period raised a triable issue of non-abandonment. 2014 WL 12564354, at *2, 4 (C.D. Cal. Dec. 17, 2014).

claim under 15 U.S.C. § 1052(a).[16] PAT relies almost exclusively on Ms. Kenna's declaration, which is inadmissible because it was not signed under penalty of perjury, lacks foundation, and provides no contextual data for the materials cited therein. (*See* AB's Evid. Obj. at 1–2, Nos. 49–65.)  PAT cites *zero* evidence (i.e. research, studies, or surveys) that it was known for *beer* in 2012, much less that use of PATAGONIA in 2012 on a premium beer imported from Argentina "uniquely and unmistakeably" pointed to an American clothing company that had *never sold beer*. Meanwhile, it is undisputed that Patagonia is a "*famous* region" for which PAT—like AB's beer and so many other food and beverage companies—was named. (SUF1, 5, 108, 118–26, 129, 145–46, 151, 165, 186–88, 200, 237–56.) PAT cannot succeed on these facts. (MPSJ at 19–22 (citing cases).)

Recognizing its shortcomings, PAT resorts to misconstruing *Hornby v. TJX Cos. (Twiggy)*, 87 U.S.P.Q.2d 1411, at 1416 (T.T.A.B. 2008)—arguing that the Court should consider much more recent "evidence" (most from 2018 or later) "in determining whether the elements are met." (Opp. at 16.) *Twiggy* held that post-registration evidence on the specific element of "fame or reputation" "may tell us something" about fame on the date of issuance, but evidence from more than a "few years" out is "obviously [] too distant in time" to be "probative." *Id.* at 1416. Thus, neither the fact that AB considered ███████████████████████████████ (R268–69), nor the fact that ██████████ ████████████████████████████████ (R270–74), nor any other "evidence" that PAT may claim shows an intent to associate AB's beer with PAT would create a genuine issue. Further, PAT cannot show that AB "*selected*" the name PATAGONIA *in 2012* to identify PAT. *Univ. of Notre Dame Du Lac v. J.C. Gourmet Food Imports Co.*, 703 F.2d 1372, 1377 (Fed. Cir. 1983). AB/ImBev had been selling the beer under the same name in Argentina since 2006. (SUF2.)

As its 30(b)(6) witness admitted (SUF290), the claim is nothing more than a

---

[16] PAT must (but cannot) show that AB's use of PATAGONIA on beer would have pointed "uniquely and unmistakably" to Patagonia, Inc., and that PAT's then-fame or reputation was such that AB's beer and the clothing company would be presumed to be connected. *In re Nieves & Nieves LLC*, 113 U.S.P.Q. 2d 1629, 1633 (TTAB 2015).

1  repackaged likelihood of confusion claim, and thus barred under § 1064(3). *Univ. of*

2  *Notre Dame Du Lac v. J.C. Gourmet Food Imports*, 703 F.2d 1372, 1376 (Fed. Cir. 1983).

3  **V.    PAT FAILS TO RAISE A GENUINE ISSUE ON ITS MISREPRESENTATION CLAIM**

4          Passing off requires "deliberate and blatant misrepresentation of source wherein *the*

5  *registration is merely a vehicle for the misuse rather than evidence of even a colorable*

6  *ownership claim*." *Global Maschinen GMbh v. Global Banking Sys., Inc.*, 227 U.S.P.Q.

7  862, 863 n.3 (TTAB 1985). It is only found where a registrant adopts a nearly identical

8  mark for identical goods or services and uses nearly identical packaging and displays.

9  (MPSJ at 22–23.) PAT's cases are in accord. *See Olay Co. v. Cococare Prod., Inc.*, 1983

10  WL 62351, at *24 (S.D.N.Y. Apr. 19, 1983) (nearly identical mark and packaging; same

11  product (beauty cream)); *Del Taco LLC., v. Ziebarth Holdings, LLC*, 2018 WL 5266973,

12  at *5 (TTAB Oct. 19, 2018) (identical mark and restaurant services).

13          PAT makes no such showing here. It cannot. It has never offered a PATAGONIA-

14  branded beer, and AB's beer looks nothing like PAT's LONG ROOT beer (or its short-

15  lived CALIFORNIA ROOT beer). (SUF125, 214.) PAT did not even sell beer when AB

16  began selling Cerveza Patagonia using the same packaging *Quilmes* used in Argentina.

17  (SUF123–25.) The imagery on AB's unique bottle is of AB's own brewery in Bariloche,

18  Argentina. (SUF123.) No case has ever allowed a passing off claim in these circumstances.

19  (*See* MPSJ at 22–23.) PAT certainly does not cite one.

20          Instead, PAT resorts to citing (and misconstruing) evidence purportedly showing

21  that AB's conduct has confused third parties into "assum[ing that] AB's PATAGONIA

22  beer is put out by or affiliated with PAT." (Opp. at 21; R290–91; AB Evid. Obj. 1–2, Nos.

23  66–93.) This only confirms that dismissal is required. Passing off cannot be based on

24  likelihood of confusion, even where infringement is *willful*, *Bayer Consumer Care AG v.*

25  *Belmora LLC*, 110 U.S.P.Q. 2d 1623, 1632 (TTAB 2014), as a five-year-old registration is

26  immune from such challenge under § 1064(3). *Pinkette*, 894 F.3d at 1023. None of this

27  evidence, even if credited, raises a genuine issue.

28          Incredibly, when PAT added this dubious claim to its TAC, it alleged that AB's

distributors supposedly "*told*" retailers that AB's beer "originated from or is affiliated with Patagonia, the clothing company" (TAC ¶ 101).  At this "put up or shut up" moment, *AV Media Pte. Ltd. v. Promounts*, 2008 WL 11337209, *3 (C.D. Cal. Jul. 2008), PAT comes up empty, offering no retailer or distributor declaration. (R290; Evid. Obj. Nos. 66–93.)

## VI.  AB IS ENTITLED TO SUMMARY JUDGMENT ON ITS LACHES DEFENSE

In cancellation proceedings, the defenses of laches "start[s] to run from the date of registration, in the absence of actual knowledge before the close of the opposition period." TMEP § 311.02(b)(1); *see also Pinkette*, 894 F.3d at 1025 (same); McCarthy § 20:74 ("registration … put[s] potential petitioners for cancellation on notice *as a matter of law*"). None of these authorities is limited to the likelihood-of-confusion context. Courts use the same starting point in assessing laches as to other cancellation claims as well. *See Pro-Football, Inc. v. Harjo*, 284 F. Supp. 2d 96, 140 (D.D.C. 2003) (§ 1052(a) claim); *Oreck Corp. v. Thomson Consumer Elecs., Inc.*, 769 F. Supp. 1152, 1161–62 (S.D. Ind. 1992) (fraud). The reason is that, "[l]ogically," in a cancellation proceeding, "the objection is to the rights which flow from registration of the mark." *Harjo*, 284 F. Supp. 2d at 140

Here, PAT had *constructive notice* of the Registration in October 2012. 15 U.S.C. § 1072. The Registration then became the topic of persistent discussion among PAT executives, counsel, and brewing partners. (*See* MPSJ at 6–7; SUF155–68, 173–210.) Indeed, PAT's counsel had been ███████████████ for PAT since 2006. (SUF5, 154.) PAT admits that all of the PTO submissions upon which it premises its claims were publicly available to it by no later than February 2013. (SUF158.) Its more than six-year delay in filing suit creates a strong presumption of laches. *Pinkette*, 894 F.3d at 1025.

If PAT believed PATAGONIA on beer uniquely and unmistakeably pointed to it *in 2012*, it should have opposed the application or sought cancellation under § 1052(a) long before 2019, including when the PTO cited AB's Registration against PAT's own wine applications in 2014 and 2015. (SUF186, 188.) Its excuse that it waited for evidence of infringement is bogus: the harm that its *cancellation* claims address stems from the issuance of the registration, itself.  Indeed, PAT even admits it "refrained from using its

PATAGONIA branding on beer products" because of AB's Registration. (SUF168.)[17]

Similarly, given PAT's admission that it looked at AB's Registration in 2013 (SUF 156) and its allegation that the Assignment publicly recorded in February 2013 "revealed" AB's alleged anti-trafficking violation and fraud (Dkt. 1 ¶ 27), any modicum of diligence would have entailed conducting an investigation and bringing suit promptly. *See Evergreen Safety Council v. RSA Network, Inc.*, 697 F.3d 1221, 1227 (9th Cir. 2012) ("delay was unreasonable [as] it involved no evaluation or investigation of the claim"). PAT did not.

PAT's own "evidence" shows it unreasonably delayed in asserting abandonment as well. PAT asserts that it ███████████████████████████████ ██████████████. (R132–33.) It also claimed—before any discovery—that AB made no bona fide use of the mark in commerce until 2018. (TAC ¶ 30, Dkt. 1 ¶ 29.) PAT offers no explanation, much less valid justification, for why it failed to assert abandonment (a presumption of which arises after three years' non-use under § 1027), or any of these other claims, until 2019. And PAT does not even attempt to rebut AB's overwhelming showing of substantial economic and evidentiary prejudice arising from PAT's delay. (*See* MPSJ at 26–30.)[18] Laches bars all of these claims as a matter of law.

## VII.   CONCLUSION

PAT has utterly failed to overcome the presumption of validity that attaches to AB's Registration, irrespective of incontestability. 15 U.S.C. § 1115. The Court should grant summary judgment for AB on all cancellation claims and declare AB's Registration valid.

---

[17] PAT's cited cases are inapt. In *Twiggy*, the claim of prejudice was "not supported by any evidence whatsoever." 87 U.S.P.Q.2d. at *8. AB has shown prejudice in spades. In *Dynamic Meas. Grp., Inc. v. Univ. of Oregon*, 121 F. Supp. 3d 1047 (D. Or. 2015), unlike here, the suit was not filed outside of the limitations period, so a presumption *against* laches arose. *Kling v. Hallmark Cards Inc.*, 225 F.3d 1030, 1041 (9th Cir. 2000), was not even a trademark case and did not involve a challenge to a registration.
[18] *Gap, Inc. v. G.A.P. Adventures Inc.*, 2011 WL 2946384, at *17 (S.D.N.Y. June 24, 2011), and *adidas Am., Inc. v. Payless Shoesource, Inc.*, 540 F. Supp. 2d 1176, 1182 (D. Or. 2008), are inapt. Gap promptly opposed the trademark application and filed suit within three months of the infringer's store opening. In *adidas*, the party asserting laches offered no evidence of investment in use of the trademark, as AB has undisputedly done.

1    Dated:        August 17, 2020              COOLEY LLP

2
                                                /s/ *Bobby A. Ghajar*
3                                               Bobby Ghajar
                                                Angela L. Dunning
4                                               Amanda A. Main
                                                Marcus Peterson
5
                                                Attorneys for Defendant and Counterclaimant
6                                               ANHEUSER-BUSCH, LLC

7

8    231429000

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**REPLY I/S/O AB'S MPSJ**
**CASE NO. 2:19-CV-02702-VAP (JEMX)**