KILPATRICK TOWNSEND & STOCKTON LLP
GREGORY S. GILCHRIST (State Bar No. 111536)
ggilchrist@kilpatricktownsend.com
RYAN T. BRICKER (State Bar No. 269100)
rbricker@kilpatricktownsend.com
NICHOLE DAVIS CHOLLET (admitted *pro hac vice*)
nchollet@kilpatricktownsend.com
GIA L. CINCONE (State Bar No. 141668)
gcincone@kilpatricktownsend.com
HANNAH T. YANG (State Bar No. 311814)
hyang@kilpatricktownsend.com
BEATRICE O'NEIL STRNAD (State Bar No. 327791)
bstrnad@kilpatricktownsend.com
Two Embarcadero Center, Suite 1900
San Francisco, CA  94111
Telephone:  415 576 0200
Facsimile:   415 576 0300

Attorneys for Plaintiffs and Counter-Defendants
PATAGONIA, INC. and PATAGONIA PROVISIONS, INC.

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| PATAGONIA, INC. and PATAGONIA PROVISIONS, INC., <br><br> Plaintiffs, <br><br> v. <br><br> ANHEUSER-BUSCH, LLC dba PATAGONIA BREWING CO., <br><br> Defendant. | Case No. 2:19-cv-02702-VAP-JEM <br><br> **PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT** <br><br> Complaint Filed:    April 9, 2019 |
| ANHEUSER-BUSCH, LLC dba PATAGONIA BREWING CO., <br><br> Counter-Claimant, <br><br> v. <br><br> PATAGONIA, INC. and PATAGONIA PROVISIONS, INC., <br><br> Counter-Defendants. | Hearing Date:  August 31, 2020 <br> Time:  2:00 P.M. <br> Court:  Courtroom 8A, 8th Floor <br> Judge:  Hon. Virginia A. Phillips |

# REDACTED VERSION OF DOCUMENT SOUGHT TO BE FILED UNDER SEAL

1

# TABLE OF CONTENTS

2    I.    INTRODUCTION ...................................................................................... 1

3    II.   PATAGONIA'S FIFTH CLAIM PRESENTS NO JURY
           QUESTIONS ........................................................................................... 2
4
           A.    No Authority Supports AB's Evasion of the Rule ......................... 2
5
                 1.    AB's Treatment of Emerald Cities Only
6                      Validates the MPSJ ............................................................ 2

7                2.    Professor McCarthy's Comments Do Not
                       Apply ................................................................................. 4
8
                 3.    An Ethics Seminar Could Never Authorize
9                      AB's Tactics ...................................................................... 4

10         B.    AB Cannot Alter The Substance of Its Agreements
                 With Immaterial Revisions of The Facts ...................................... 5
11
                 1.    WIA Had No Right To Terminate For Breach
12                     of the "Quality Standard" .................................................. 5

13               2.    AB's Revised Termination Provision Changes
                       Nothing. ............................................................................ 7
14
                 3.    AB Failed To Disclose The License In The
15                     SOU .................................................................................. 8

16         C.    Section 1064 Does Not Rescue An Unlawful
                 Assignment .................................................................................... 8
17
           D.    Laches Does Not Apply To The Anti-trafficking
18               Claim .......................................................................................... 11

19   III.  PATAGONIA'S NINTH CLAIM PRESENTS NO JURY
           QUESTIONS ......................................................................................... 13
20
21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Action Ink, Inc. v. New York Jets, LLC*,
No. 12-46, 2013 WL 12106878 ................................................................. 15

*Airs Aromatics, LLC v. Opinion Victoria's Secret Stores Brand Mgmt., Inc.*,
744 F.3d 595 (9th Cir. 2014) ..................................................................... 15

*Ajax Hardware Corp. v. Packaging Techniques, Inc.*,
No. 72-722-ALS, 1974 WL 336318 (C.D. Cal. Apr. 8, 1974) ............................ 15

*Am. Cruise Lines, Inc. v. HMS Am. Queen Steamboat Co. LLC*,
223 F. Supp. 3d 207 (D. Del. 2016) ............................................................. 9

*Barcamerica Int'l USA Tr. v. Tyfield Importers, Inc.*,
289 F.3d 589 (9th Cir. 2002) ................................................................. 6, 10

*Brittingham v. Jenkins*,
914 F.2d 447 (4th Cir. 1990) ..................................................................... 14

*Brooklyn Brewery Corp. v. Black Ops Brewing, Inc.*,
156 F. Supp. 3d 1173 (E.D. Cal. 2016) ....................................................... 15

*Cerveceria Centroamericana, S.A. v. Cerveceria India, Inc.*,
892 F.2d 1021 (Fed. Cir. 1989) .................................................................. 14

*CLT Logistics v. River W. Brands*,
777 F. Supp. 2d 1052 (E.D. Mich. 2011) ....................................................... 9

*Deere & Co. v. FIMCO Inc.*,
239 F. Supp. 3d 964 (W.D. Ky. 2017) (Opp. ) ............................................... 15

*Dep't of Parks & Recreation for State of Cal. v. Bazaar Del Mundo Inc.*,
448 F.3d 1118 (9th Cir. 2006) ..................................................................... 6

*Emerald Cities Collaborative, Inc v. Reese*,
666 Fed. App'x 908 (Fed. Cir. 2016) .................................................. 1, 2, 3, 4

*Fed. Treasury Enter. Sojuzplodoimport v. Spirits Int'l N.V.*,
623 F.3d 61 (2d Cir. 2010) .................................................................... 9, 11

*First Nat'l Bank of Omaha v. Autoteller Systems Service Corp.*,
    9 U.S.P.Q.2d 1740, 1988 WL 252335 (T.T.A.B. 1988) .......................................... 6

*Grasshopper House, LLC v. Clean & Sober Media LLC*,
    394 F. Supp. 3d 1073 (C.D. Cal. 2019) ................................................................. 13

*Imperial Tobacco Ltd. v. Philip Morris, Inc.*,
    899 F.2d 1575, 14 U.S.P.Q.2d 1390 (Fed. Cir. 1990) .......................................... 10

*interState Net Bank v.NetB@nk, Inc.*,
    348 F. Supp. 2d 340 (D.N.J. 2004) ...................................................................... 10

*Kleven v. Hereford*,
    No. CV 13-02783-AB, 2015 WL 4977185 (C.D. Cal. Aug. 21, 2015) ............ 10, 11

*Li'l Red Barn, Inc. v. Red Barn Sys., Inc.*,
    322 F. Supp. 98, 103 (N.D. Ind. 1970) ................................................................. 15

*Lincoln Logs Ltd. v. Lincoln Log Pre-Cut Log Homes, Inc.*,
    971 F.2d 732 (Fed. Cir. 1992) .............................................................................. 12

*Mister Donut of Am., Inc. v. Mr. Donut, Inc.*,
    418 F.2d 838 (9th Cir. 1969) ................................................................................ 12

*PepsiCo, Inc. v. Grapette Co., Inc.*,
    416 F.2d 285 (1969) ............................................................................................. 11

*Pinkette Clothing, Inc. v. Cosmetic Warriors Ltd.*,
    894 F.3d 1015 (9th Cir. 2018) .............................................................................. 12

*Reno Air Racing Ass'n, Inc. v. McCord*,
    452 F.3d 1126 (9th Cir. 2006) .............................................................................. 12

*Rivard v. Linville*,
    133 F.3d 1446 (Fed. Cir. 1998) ............................................................................ 10

*Slep-Tone Entm't Corp. v. Kalamata, Inc.*,
    75 F. Supp. 3d 898 (N.D. Ill. 2014) ....................................................................... 8

*SmileDirectClub, LLC v. Berkely*,
    No. SACV 18-1236 JVS (KESx), 2018 WL 8131096 (C.D. Cal. Oct. 26, 2018) ........................................................................................... 15

*Stafford v. United Treasures, Inc.*,
   No. CIV. S-04-47 GEB PAN, 2005 WL 8176573 (E.D. Cal. May 17,
   2005) ................................................................................................... 7

*Taco Cabana Int'l, Inc. v. Two Pesos, Inc.*,
   932 F. 2d 1113 (5th Cir. 1991) ........................................................... 7

*TAP Mfg., LLC v. Signs*,
   No. 2:15-cv-00797-SVW-PJW, 2015 WL 12752874 (C.D. Cal. July
   23, 2015) ............................................................................................ 15

*Turner v. Hops Grill & Bar Inc.*,
   52 U.S.P.Q.2d 1310 (T.T.A.B. 1999) .................................................. 12

*Vital Pharm., Inc. v. Monster Energy Co.*,
   No. 19-60809-CIV-ALTMAN/Hunt, 2020 WL 3791612 (S.D. Fla.
   July 7, 2020) ......................................................................................... 2

*Zamacona v. Ayvar*,
   No. CV 07-02767 ABC, 2009 WL 279073 (C.D. Cal. Feb. 3, 2009) ........ 14

**Statutes**

15 U.S.C. § 1055 .......................................................................................... 5

15 U.S.C. § 1058 ........................................................................................ 11

15 U.S.C. § 1060 .......................................................................................... 8

15 U.S.C. § 1060(1) .................................................................................... 10

15 U.S.C. § 1060(a) ................................................................................ 2, 10

15 U.S.C. § 1064 ...................................................................................... 8, 9

15 U.S.C. § 1064(3) ........................................................................... 8, 10, 11

15 U.S.C. § 1065 .......................................................................................... 9

15 U.S.C. § 1114 ........................................................................................ 11

**Other Authorities**

3 McCarthy on Trademarks and Unfair Com. (5th ed. 2019) §18:13. .......... 4

TMEP 1201.3(a) (7th ed. 2010) ................................................................... 8

1

TMEP § 501.01(a) .................................................................................................. 3

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# I.      INTRODUCTION

AB's[1] Opposition confirms that the question for the Court is whether cobbling together a sham license to hide the substance of an immediate assignment violates the anti-trafficking rule. As expected, AB claims its agreement with WIA was "perfectly appropriate." Opp. at 12.  But as both Congress and the Federal Circuit in *Emerald Cities* have stated, courts must inspect the "overall scheme and plan of the Agreement." The undisputed evidence shows that, before the statement of use ("SOU") was filed, AB took control of WIA's ITU through an agreement that was "tantamount to an assignment." WIA's post-dated assignment was merely a "*fait accompli*" to complete the plan. There is no question for the jury here. If AB's conduct comports with the anti-trafficking rule, there will be nothing left of it.

Now that the plain text of the agreements has been challenged, AB tries to wish away some provisions, while inventing new ones that have no evidentiary support. AB's efforts to rewrite the agreements are unavailing and do not raise factual issues about the purpose or effect of the license. Even if AB's transaction with WIA had been executed smoothly rather than riddled with errors as AB now claims, it still constitutes (i) an effective transfer of immediate control over the ITU, (ii) a sham license, and (iii) a faux assignment after registration.

AB's inability to defend on the merits explains why AB devotes so much attention to its procedural defenses. Patagonia did not wait too long to challenge AB's deceptive registration and these defenses all lack merit. And none is relevant to Patagonia's rectification claim which AB admits did not arise until AB's misrepresentation in its incontestability affidavit in 2018.

---

[1] Anheuser Busch LLC is referred to as "AB."  Warsteiner Importers Agency is referred to as "WIA." Cerveceria Malteria Quilmes Saica y G is referred to as "Quilmes." Patagonia Inc. and Patagonia Provisions, Inc. is collectively referred to as "Patagonia."  Patagonia's Motion for Partial Summary Judgment is Dkt. 235 and is referred to as "MPSJ." AB's Opposition Brief (Dkt. 254-1) is referred to as "Opp." Patagonia's Statement of Undisputed Facts (Dkt. 235-1) was repeated along with additional facts in opposition to AB's motion (Dkt. No. 272-85).  For convenience, all citations will be to Dkt. 272-85 and will be denominated "UF."

## II.     PATAGONIA'S FIFTH CLAIM PRESENTS NO JURY QUESTIONS

AB does not examine the statutory language or the congressional purpose for the anti-trafficking rule and ignores the giant loophole that its scheme would create in the law. There is no precedent condoning AB's evasion of the rule.

### A.     No Authority Supports AB's Evasion of the Rule.

#### 1.     AB's Treatment of *Emerald Cities* Only Validates the MPSJ

*Emerald Cities Collaborative, Inc v. Reese,* 666 Fed. App'x 908 (Fed. Cir. 2016) and the Congressional directive in § 1060(a) require the Court to look behind the text of agreements to determine if the substance is "tantamount to an assignment."  This rule is not unique to assignments challenged under the anti-trafficking rule, it applies uniformly to all trademark assignments. *See, e.g.*, *Vital Pharm., Inc. v. Monster Energy Co*., No. 19-60809-CIV-ALTMAN/Hunt, 2020 WL 3791612, at *18 n.14 (S.D. Fla. July 7, 2020) ("courts have universally recognized that 'a trademark assignment does not transfer goodwill merely because it formally recites that the goodwill is transferred'") (citation omitted).  AB's reliance on rote provisions in the license, accordingly, does not sidestep the Court's need to evaluate the sham aspects of the transaction.

AB's efforts to distinguish *Emerald Cities* show exactly why its transaction with WIA was "tantamount" to an immediate assignment.  AB argues the *Emerald Cities* agreement "explicitly" had an "effective" date *prior* to filing the SOU and called for formal assignment *after* the SOU was filed.  Dkt. Opp. at 17. ███

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

█████████████████████████████████████████

███████████████████████████████████████████

1  ████████████████████████████████████████████████

2  ███████████████████████████████████ In the end,

3  however, as *Emerald Cities* makes clear, merely signing the forms in the right order

4  does not manufacture compliance with the anti-trafficking rule.

5      AB points to its █████████████████████████████

6  ████████████████████████ and says there was no license in *Emerald Cities*.

7  The court in *Emerald Cities* certainly found no *effective* license from Orlando, the

8  ITU owner, to ECC prior to the assignment.  But, ECC had argued in ███████████

9  ███ that Orlando had allowed ECC to use the mark and that the restrictions in

10  ECC's license back to the owner were only effective *after* ownership of the mark

11  was supposed to change hands under the text of their agreement. 666 Fed. App'x at

12  911-912. The court discredited this argument because, as this Court should find, the

13  ██████████████████████████████████ *Id.*

14  ██████████████████████████████████████████████

15  ██████████████████████████████████████████████

16  █████████████████████████████████████████████

17  ██████████████████████████████████████████████

18  █████████████████████████████████████████████

19  ███████████████████████████████████████████████

20  ████████████████████████████████████████████

21  ██████████████████████████████████████████████

22  ██████████████████████████████████████████████

23  ███████████████████████████████████████████████

24  █████████████████████████████████████████████

25  ██████████████████████████████████████████ This

26  argument completely distorts the concept of trademarks, namely that a trademark

27  will be associated with a single source. ██████████████████████████

28  ██████████████████████████████████████████

██████████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

██████████████████████████████████████████

████████████

### 2.      Professor McCarthy's Comments Do Not Apply

Because no case law approves ████████ around the anti-trafficking rule,
AB scrapes vague commentary from Professor McCarthy's treatise for support.  AB
ignores McCarthy's main discussion of the rule, citing only to his "author's
opinion" that a hypothetical pre-SOU agreement to a later assignment might be
valid. Opp. at 16.  This comment, alone, means next to nothing.  For example,
Professor McCarthy clearly felt that a conditional, future assignment in service of a
financing arrangement – to take effect after the SOU was filed – should be
legitimate.[2]  Other valid transactions prior to the SOU, involving the ITU owner's
legitimate creation of a mark, might be imagined.  Professor McCarthy says nothing
about using a "license" to circumvent the anti-trafficking rule and specifically
cautions that beneficial ownership cannot be transferred in light of the *Emerald
Cities* case. 3 McCarthy on Trademarks and Unfair Com. (5th ed. 2019) §18:13. The
"author's opinion," stripped of any hypothetical facts that apply here, offers nothing
that permits AB to overcome *Emerald Cities*, or the plain purpose of the statute.

### 3.      An Ethics Seminar Could Never Authorize AB's Tactics

Supporting "authority" must be sparse when a party starts to cite itself. AB's
lawyer, Andrea Cannon, presented at an ethics seminar hosted by Plaintiffs' law

---

[2] Professor McCarthy offers his opinion about future assignments immediately after
discussing how the rule might impair using trademarks as security interests in
financing agreements. *Id.* Professor McCarthy cautions against making a *present*
assignment, but proposes that a *conditional* assignment of an ITU in support of a
security interest should be valid.  *Id.* (citing *The Clorox Co. v. Chemical Bank*, 40
U.S.P.Q.2d 1098 (T.T.A.B. 1996))(holding a present assignment to support financing
invalid under anti-trafficking rule).

firm, advising on how to "get around the [anti-trafficking] rule."  This is not somehow an admission by Patagonia, or any other kind of blessing of AB's transaction. An ethics presentation by AB's own lawyer is not authority, and AB never explains how a law firm's role as host or scrivener for the panelists can somehow transform into an admission *by Plaintiffs* that AB's scheme here was lawful. Ms. Cannon approved the 'script' and it was her idea alone to discuss a scenario that was ███████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████

### B. AB Cannot Alter The Substance of Its Agreements With Immaterial Revisions of The Facts

Patagonia never contests that a trademark can be created through bona fide use under a real license. 15 U.S.C. § 1055. ██████████████████████

████████████████████████████████████████

██████████████████████████████████████████████

█████████████████████████████████████████

█ ██████████████████████████████████████████████

██████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████████████

█████████████████████████████████████████

█ █████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

█ ████████████████████████████████████████████

████████████████████████

1 ███████████████████████████████████

2 ████████████████████████████████████████

3 ████████████████████████████████

4 ██████████████████████████████████ *Dep't of Parks &*

5 *Recreation for State of Cal. v. Bazaar Del Mundo Inc.*, 448 F.3d 1118, 1131 (9th

6 Cir. 2006) ("Although the parties agreed [on various quality provisions] the [license]

7 provided no recourse to the [licensor] if the quality . . . were to deteriorate.").

8 ████████████████████████████████████

9 ████████████████████████ *Barcamerica Int'l USA Tr. v. Tyfield*

10 *Importers, Inc.,* 289 F.3d 589, 597 (9th Cir. 2002) (inadequate control because "Mr.

11 Barca fails to state when, how often, and under what circumstances he tastes the

12 ████████████████████████████████████

13 ████████████████████████████████████

14 ███████████████████████████████████

15 ████████████████████████████████████

16 █████████████████████████████████

17 ████████████████████████████████████████

18 ████████████████████████████████ *Dep't of Parks*, 448

19 F.3d at 1131–32 (quality control provisions must "'reflect[] the goodwill and quality

20 standards' of [the licensor], as opposed to the [licensee's]"); *First Nat'l Bank of*

21 *Omaha v. Autoteller Systems Service Corp.*, 9 U.S.P.Q.2d 1740, 1988 WL 252335,

22 at *4 (T.T.A.B. 1988) ("[T]he agreement holds [the licensee] to maintenance of

23 whatever quality service standards it had already established . . . There was no

24 attempt made to define the standard . . . It was a naked license at best."). █████████

25 ████████████████████████████████████████

26 ████████████████████████████████████████

27 ██████████████████ *Barcamerica,* 289 F.3d at 596 ("agreement provides that

28 [licensee] is 'solely responsible for any and all claims …. and that [licensee] shall

1  defend and indemnify plaintiff against such claims.").[4]



24 [4] AB cites (Opp. at 14) *Taco Cabana Int'l, Inc. v. Two Pesos, Inc.*, 932 F. 2d 1113, 1121-22 (5th Cir. 1991) but that case involved an eight year prior relationship during which the intricacies of maintaining consistency and quality were established.  AB cites (Opp. at 15) *Stafford v. United Treasures, Inc.*, No. CIV. S-04-47 GEB PAN, 2005 WL 8176573 (E.D. Cal. May 17, 2005) as a case in which no "real" quality control provision was included and no real quality control was exercised.  But the quality control provision stated: "LICENSEE shall use the TRADEMARKS and or COPYRIGHTS on the GOODS as prescribed in writing by LICENSOR…" and the court found it was undisputed that adequate quality control, in fact, had been exercised.  Id. at *1, *5.

### 3.      AB Failed To Disclose The License In The SOU

AB stumbles again, arguing that the "PTO does not even require the applicant to specify if the use supporting registration is its own or that of a licensee." Opp. at 12.  Not true.  When AB filed the SOU, it was ***obliged to disclose***, but did not, that only licensed use supported the SOU.  See Dkt.272-1 at 5 (citing TMEP 1201.3(a) (7th ed. 2010); *Slep-Tone Entm't Corp. v. Kalamata, Inc.*, 75 F. Supp. 3d 898, 905 (N.D. Ill. 2014).  It is not clear why AB argued this erroneous point, but if AB is suggesting the PTO does not care if trademark rights are established through sham uses, its own authorities disagree.  Opp. at 12.[5]

### C.      Section 1064 Does Not Rescue An Unlawful Assignment

Again trying to dodge scrutiny, AB tries to jam Patagonia's anti-trafficking claim into the rubric of a void *ab initio* challenge, which AB argues is barred by § 1064(3). AB diverts to an argument that it made more than token use in commerce before filing the SOU, trying to wedge the anti-trafficking challenge into the *ab initio* cases rather than grappling with the issues presented in cases of an unlawful assignment. Opp. at 18. ███████████████████████ but Patagonia never moved on this ground. AB repeats that it has found no case law involving "a § 1060 challenge against a five-year old registration" but then proceeds to argue that the decisions Patagonia has cited with exactly those facts, including from this district, were wrongly decided.  What AB really means is that it cannot find any case law holding that the invalid assignment of a trademark registration is somehow rescued by § 1064(3) because the registration also was void *ab initio*.

There is ample case law holding that § 1064(3) does not bar Patagonia's anti-trafficking challenge. As the Court observed when denying AB's Motion to Dismiss: "… the incontestability of a trademark is irrelevant to Plaintiffs'

---

[5] In its quest to dodge the merits, AB argues that Patagonia did not plead the license was a "sham." Opp. at 13. This argument is particularly galling given that AB did not publicly disclose the license as required and, by the time AB produced the license under Court order, this Court already had denied AB's Motion to Dismiss the anti-trafficking claim. Dkt. 24.

cancellation claims.  *See, e.g., Fed. Treasury Enter. Sojuzplodoimport v. Spirits Int'l N.V.*, 623 F.3d 61, 69 (2d Cir. 2010) (holding that "the question of the validity of the assignment is antecedent to the question of incontestability")."  (Dkt. 24 at 11 fn. 2.) While the Court's comment foreshadowed precisely what AB now argues, AB mischaracterizes the Court's Order, claiming the Court "neither considered nor rejected" AB's argument.  Opp. at 9 & n. 5.  In fact, in *Fed. Treasury*,  the Federal Circuit reversed the district court's reliance on incontestability to dismiss a challenge to an assignment, concluding that the beneficiary of an invalid assignment cannot "step into the shoes" of the assignor to invoke the protections afforded five-year old registrations.[6]  623 F.3d at 67–68. "The district court was also called upon to [address the antecedent question] whether a valid assignment had ever actually taken place… because only after a valid assignment … does the assignee succeed to the rights of the assignor." *Id*. at 68-69. See also *CLT Logistics v. River W. Brands*, 777 F. Supp. 2d 1052, 1069 (E.D. Mich. 2011) (only if assignment "is deemed valid, would Plaintiffs be entitled to … 'conclusive evidence' of ownership.")

AB never explains its disregard for this basic point.  It argues that *Fed. Treasury* involved a ███████████████████████████████ ███████████████████████████  Opp. at 9 (emphasis in original).  AB provides no logical basis (because there is none) why the invalid assignment of an *invalid* registration would be insulated from challenge by §§ 1064 and 1065, while the invalid assignment of an otherwise *valid* registration would be subject to the "antecedent" question about the validity of an assignment.

AB does not disguise that it needs the Court also to reject other dispositive case law that addresses what happens to registrations once assignments have been

---

[6] AB argues (Opp. at 9) that *Fed. Treasury* is irrelevant because it does not explicitly refer to § 1064, but this is frivolous because §1064 is subject to all the same challenges as § 1065.  But, incontestability requires additional proof, e.g. the mark has had to be in continuous use for five years and "is supposed to afford greater protections, not lesser." *Am. Cruise Lines, Inc. v. HMS Am. Queen Steamboat Co. LLC*, 223 F. Supp. 3d 207, 213 (D. Del. 2016). Incontestability under § 1065 did not protect the assignment in *Fed Treasury*; thus, §1064 did not protect it either.

found to be invalid. It expands its attack, accordingly, beyond anti-trafficking violations, asserting that, "[l]ike the anti-trafficking rule, the prohibition against assignments in gross is codified in § 1060(1) and is not an enumerated basis in § 1064(3) to cancel a 5 year old registration." Opp. at 11 & n.6. The authority, however, is directly to the contrary. In *Kleven v. Hereford*, No. CV 13-02783-AB (AGRx), 2015 WL 4977185 (C.D. Cal. Aug. 21, 2015), the Court specifically held that § 1064(3) did not preclude a challenge to an assignment invalidated under § 1060(a). "[A]ssignment of Registration '135 to [assignee] was an invalid assignment in gross. Thus, Registration '135 is deemed reverted to [assignor], and the ultimate issue of abandonment turns on whether [assignor] (not [assignee]) has abandoned the registered mark." *Id*. at *22; *interState Net Bank v.NetB@nk, Inc.*, 348 F. Supp. 2d 340, 352 (D.N.J. 2004) (same); *Barcamerica,* 289 F.3d at 596 (cancelling incontestable registration for involuntary abandonment "where the licensor fail[ed] to exercise adequate quality control over the licensee").

Because§ 1064(3) does not preclude an abandonment challenge, AB also tries to distinguish *Kleven* and these other cases by arguing that ███████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████ Opp. at 10-11. **First,** this is not AB's argument to make once the invalid assignment is reversed and rights revert to WIA. **Second**, the definition of abandonment is not so crabbed that a registration obtained through token use (void *ab initio*) and then immediately abandoned would be immune from challenge. **Third,** despite dicta cited by AB (Opp. at 10), a registration can be abandoned even if it is *lawfully* registered *without ever having been used*. *Rivard v. Linville*, 133 F.3d 1446, 1448–49 (Fed. Cir. 1998) ("[w]here a registrant has *never used* the mark in the United States … cancellation is proper if a lack of intent to commence use in the United States accompanies the nonuse.") (emphasis added); *Imperial Tobacco Ltd. v. Philip Morris, Inc*., 899 F.2d 1575, 1582, 14 U.S.P.Q.2d

1    1390, 1395 (Fed. Cir. 1990) (same).

2            As this Court forewarned, and as the courts in *Fed Treasury* and *Kleven* held,

3    a court must first address whether an assignment is invalid and, if so, determine the

4    consequences that follow from reversion of any "rights" in the registration to the

5    original owner.[7] Nothing in § 1064(3) bars the Court from determining that █████

6    ████████████████████████████████████████████████████████████████████

7    ████████████████████████████████████████████████████████████████████████

8    ████████████████████████

9            **D.    Laches Does Not Apply To The Anti-trafficking Claim**

10            AB never addresses case law holding that AB may not cry laches relating to

11    purported rights it acquired in an invalid assignment.  Patagonia cited courts that

12    refuse to base laches on an assignor's use *or registrations* when an assignment is

13    invalid. MPSJ at 25.  AB tosses these off as holding merely that a party could not

14    "tack" an assignor's prior use to establish laches.  In the next paragraph, however,

15    AB forgets that ████████████████████████████████████████████████████

16    ████████████████████████████████████████████████████████████████████

17    ████████████████████████████████████████████████████████

18    ████████████████████████████████████████████████████████████████████████

19    ████████████████████████████████████████████████ just as the

20    assignee in *PepsiCo, Inc. v. Grapette Co., Inc.*, 416 F.2d 285 (1969) could not rely

21    on a forty-year old registration it invalidly had acquired.

22            AB has chronologically and substantively botched its argument about

23    constructive notice.  When the registration issued, *WIA was identified as the*

24    *registrant and no amount of investigation would have revealed actual, much less*

25    *constructive,* ████████████████████████████████████████ All of

26    _____

27    [7] Abandonment may not be the only outcome after a registration reverts to its original owner, if any.  The invalid assignee does not retain any rights in the registration.  For example, only "registrants" can enforce trademark registrations. 15 U.S.C. § 1114.

28    "Owners" must file Section 8 affidavits to demonstrate continued use of a registered mark.  15 U.S.C. § 1058.

1  the evidence shows that Patagonia *relied* on the trademark register exactly as AB

2  hoped ███████████████████████████████████████████████████████

3  ███████████████████████████████████████ does not constitute actual or

4  constructive knowledge of AB's maneuvers in the PTO.  *See Mister Donut of Am.,*

5  *Inc. v. Mr. Donut, Inc.*, 418 F.2d 838, 842 (9th Cir. 1969), mis-described by AB,

6  holding that an ineffective assignment did not constitute constructive notice, (Dkt.

7  254-1 at 25 n.10)). ████████████████████████████████████████

8  ██████████████████████████████████████████████████████████

9  ██████████████████████████████████████████████████████████

10 █████████████████████████████████ █████████████████

11  ████████████████████████████████████████████████████████

12 ███████████████████████████████████████████████████████████

13 ████████████████████████ █████████████████████████

14 ███████████████████████████████████████████████████████████

15 ██████████████████████████████████████████████████████████

16 ██████████████████████████████████████████████████████

17 ████████████████████████████████████████████████████[9]

18      None of AB's authorities justify applying laches to Patagonia's anti-

19  trafficking claim.  All of them involve applying actual or constructive knowledge of

20  an evident basis for cancellation. Opp. at 24. E.g. *Pinkette Clothing, Inc. v. Cosmetic*

21  *Warriors Ltd.*, 894 F.3d 1015, 1025 (9th Cir. 2018) (challenge should have been

22  known "no later than when Pinkette's registration issued." *See also Turner v. Hops*

23

24  [8] AB argues that Patagonia made a passing reference to WIA's assignment to AB in an office action response.  The fact of the assignment appears on the summary

25  landing page of the PTO's record of the registration.  Nothing Patagonia filed in the PTO required or would have warranted review of the assignment form itself.

26  [9] AB also adulterates the authority for this point.  AB argues that, in *Lincoln Logs Ltd. v. Lincoln Log Pre-Cut Log Homes, Inc.,* 971 F.2d 732, 735 (Fed. Cir. 1992), the

27  party *challenging* laches had previously asserted superior rights and, since Patagonia had not done this, *Lincoln Logs* did not apply. Opp. at 27, n. 11. In fact, it was the

28  party *claiming* laches that had asserted superior rights, ████████████████ (UF 103), in *Lincoln Logs.*

1     *Grill & Bar Inc.*, 52 U.S.P.Q.2d 1310 (T.T.A.B. 1999) (same).[10]

2         The same is not true here.  AB's registration gave no clue that it was based on

3 ███████████████████████████████████████████

4 ████████████████████████████████████████████

5 ██████████████████████████████████████

6 ████████████████████████████████████████████

7 ███████  But these facts, plus the assault on Patagonia's brand and identity in late

8 2018 and early 2019, reasonably permitted Patagonia to assemble the information

9 that warranted this action.  *See, e.g., Grasshopper House, LLC v. Clean & Sober*

10 *Media LLC*, 394 F. Supp. 3d 1073, 1097 (C.D. Cal. 2019) (laches inapplicable

11 where business relationship that gave rise to Lanham Act claim was concealed).[11]

12 **III.     PATAGONIA'S NINTH CLAIM PRESENTS NO JURY QUESTIONS**

13 ██████████████████████████████████████████

14 ███████████████████████████████████████████

15 ██████████████████████████████████████

16 ████████████████████████████████████████████

17 ████████████████████████████████████████████

18 ████████████████████████████████████████████

19 ███████████████████████████████████████████

20 ███████████████████████ ██████████████████████

21 _____

22 [10] The other affirmative defenses (waiver, acquiescence, estoppel and unclean hands) depend on affirmative conduct beyond mere inaction over a period of time and also are wholly unsupported.  The unclean hands defense is particularly indecipherable as it appears to depend on AB's non-liability and superior rights in the first place and has nothing to do with anti-trafficking or incontestability. Opp. at 28-30.

23

24 [11] AB's vague claims of evidentiary prejudice (Dkt. 254-1 at 28) fail to identify any *specific* items of evidence *material to the anti-trafficking claim* that have been lost due to Patagonia's purported delay in bringing that claim.  Likewise, any investment

25 AB made in the PATAGONIA brand prior to 2018 was discarded when AB decided to introduce its new PATAGONIA beer product ████████████████████████

26 ████████████████████████████████████████████

27 ████████████████████████████████████████████

28 ███.    None of AB's affirmative defenses apply to the Ninth claim.  AB filed the affidavit in October 2018; Patagonia sued in April 2019 with no contact in between.



AB shortchanges *Brittingham v. Jenkins*, 914 F.2d 447, 454 (4th Cir. 1990) and cases like it. MPSJ at 21-22. Just like the gap in sales was not adequately explained by Brittingham's attempts to license, or by advertising and news coverage of the mark, AB's internal plans and asserted lengthy development effort (Opp. at 21) do not demonstrate continuity in use. *Id.*

In *Cerveceria Centroamericana, S.A. v. Cerveceria India, Inc.,* 892 F.2d 1021, 1024 (Fed. Cir. 1989), the Federal Circuit rejected the very argument AB makes here, that beer imported in 1977 must or might have been sold at retail in subsequent years. *Id.* ("small quantities of . . . beer imported in 1977 or earlier were unlikely to remain on sale . . . after 1977."); see *Zamacona v. Ayvar,* No. CV 07-02767 ABC (FMOx), 2009 WL 279073, at *2 (C.D. Cal. Feb. 3, 2009) (sales of albums recorded prior to period of abandonment were insufficient).

1  ███████████████████████████████████████████████████████

2  ████████████████████████████████████████████████ See *Li'l Red*

3  *Barn, Inc. v. Red Barn Sys., Inc.,* 322 F. Supp. 98, 103 (N.D. Ind. 1970) (upheld a

4  registration based on a token sale which has been forbidden since 1988); *Brooklyn*

5  *Brewery Corp. v. Black Ops Brewing, Inc.,* 156 F. Supp. 3d 1173, 1176 (E.D. Cal.

6  2016) (not addressing continuous use, and plaintiff had sold "tens of thousands of

7  cases" over eight years in 27 states); *Action Ink, Inc. v. New York Jets, LLC*, No. 12-

8  46, 2013 WL 12106878, at *3-6; 8 (E.D. La. June 20, 2013) (questioning but

9  crediting testimony of use in one interval, but granting judgment of abandonment

10  during another, rejecting the owner's affidavit claiming uncorroborated use).

11      AB's incontestability declaration does not substitute for evidence. In *Deere &*

12  *Co. v. FIMCO Inc.,* 239 F. Supp. 3d 964, 1012 (W.D. Ky. 2017) (Opp. at 20), the

13  court deferred, in dicta, to an affidavit of incontestability because the challenger's

14  evidence only showed that a *subset* of products covered by the registration had not

15  been sold for years.  AB's purported registration only covers "beer." Patagonia has

16  proven that ████████████████████████████████████ all that is required

17  for summary judgment.[14]

18  **IV.   CONCLUSION**

19      AB unlawfully purchased WIA's ITU and then sat on the registration until

20  falsely declaring it was incontestable. Summary judgment on the Fifth and Ninth

21  Claims should be granted.

22

23  [14] *Airs Aromatics, LLC v. Opinion Victoria's Secret Stores Brand Mgmt., Inc.*, 744
    F.3d 595, 597 (9th Cir. 2014) does not stand for or create a rule that infringement (or

24  application of a spurious unclean hands defense to infringement), is a *prerequisite* to
    evaluating a cancellation clam. *Id; SmileDirectClub, LLC v. Berkely,* No. SACV 18-

25  1236 JVS (KESx), 2018 WL 8131096, at *8-9 (C.D. Cal. Oct. 26, 2018) (court has
    jurisdiction when claims other than infringement are asserted; e.g. damages for

26  fraudulent procurement).  Courts routinely grant summary judgment of cancellation
    while leaving questions of infringement or dilution for trial.  *See, e.g., TAP Mfg., LLC*

27  *v. Signs*, No. 2:15-cv-00797-SVW-PJW, 2015 WL 12752874 at *5–6 (C.D. Cal. July
    23, 2015); *Ajax Hardware Corp. v. Packaging Techniques, Inc.*, No. 72-722-ALS,

28  1974 WL 336318 at *1 (C.D. Cal. Apr. 8, 1974).

1   DATED:  August 17, 2020

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully submitted,

KILPATRICK TOWNSEND & STOCKTON LLP


By:   */s/Gregory S. Gilchrist*
         GREGORY S. GILCHRIST

Attorneys for Plaintiffs and Counter-Defendants
Patagonia, Inc. and Patagonia Provisions, Inc.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28