1   KILPATRICK TOWNSEND & STOCKTON LLP
    GREGORY S. GILCHRIST (State Bar No. 111536)
2   ggilchrist@kilpatricktownsend.com
    RYAN T. BRICKER (State Bar No. 269100)
3   rbricker@kilpatricktownsend.com
    NICHOLE DAVIS CHOLLET (admitted *pro hac vice*)
4   nchollet@kilpatricktownsend.com
    GIA L. CINCONE (State Bar No. 141668)
5   gcincone@kilpatricktownsend.com
    HANNAH T. YANG (State Bar No. 311814)
6   hyang@kilpatricktownsend.com
    BEATRICE O'NEIL STRNAD (State Bar No. 327791)
7   bstrnad@kilpatricktownsend.com
    Two Embarcadero Center, Suite 1900
8   San Francisco, CA 94111
    Telephone: 415 576 0200
9   Facsimile: 415 576 0300

10  Attorneys for Plaintiffs and Counter-Defendants
    PATAGONIA, INC. and PATAGONIA PROVISIONS, INC.

11

12                  **UNITED STATES DISTRICT COURT**

13            **FOR THE CENTRAL DISTRICT OF CALIFORNIA**

14                         **WESTERN DIVISION**

15  PATAGONIA, INC. and                  Case No. 2:19-cv-02702-VAP-JEM
    PATAGONIA PROVISIONS, INC.,
16                                        **RESPONSE TO ANHEUSER
                  Plaintiffs,             BUSCH LLC'S EVIDENTIARY
17                                        OBJECTIONS TO EVIDENCE
         v.                               CITED IN PLAINTIFFS'
18                                        OPPOSITION TO MOTION FOR
    ANHEUSER-BUSCH, LLC dba               PARTIAL SUMMARY JUDGMENT
19  PATAGONIA BREWING CO.,

20                Defendant.              Complaint Filed:   April 9, 2019

21  _____

    ANHEUSER-BUSCH, LLC dba
22  PATAGONIA BREWING CO.,

23                Counter-Claimant,

24       v.

25  PATAGONIA, INC. and
    PATAGONIA PROVISIONS, INC.,
26
                  Counter-Defendants.
27

28      **REDACTED VERSION OF DOCUMENT SOUGHT TO BE FILED
                           UNDER SEAL**
    PLT'S RESP TO DEF'S EVIDENTIARY OBJ TO EVIDENCE CITED IN PLTS' OPP TO
    MOTION FOR PARTIAL SUMMARY JUDGMENT; CASE NO. 2:19-CV-02702-VAP-JEM

Patagonia, Inc. and Patagonia Provisions, Inc. ("Patagonia") respond to Anheuser Busch LLC.'s ("AB") objections to the evidence cited in Patagonia's Genuine Issues Statement.

**Declarations**:  AB has objected to several declarations on grounds that they were executed by DocuSign rather than scans of handwritten signatures.  Due to Covid-19, witnesses who are not in the office do not all have access to scanners.  Corrected versions of the signature pages have now been filed.  In addition, a corrected version of Corley Kenna's declaration has been filed as the penalty of perjury declaration inadvertently was left off her declaration.  Dkt. 328 at 2-3; *see Hal Roach Studios, Inc. v. Feiner & Co.*, 896 F.2d 1542, 1551 (9th Cir. 1990); *Link Treasure Ltd. v. Baby Trend, Inc.*, 809 F. Supp. 2d 1191, 1195 (C.D. Cal. 2011) (noting that, at summary judgment phase, once a party had notice that its supporting declarations lacked a statement that it was made under penalty of perjury, the party "could have remedied it by submitting sworn declarations").  Such "missteps" do not disqualify evidence for consideration at summary judgment.  *Id.*; *see also Burch v. Regents of Univ. of California*, 433 F. Supp. 2d 1110, 1120 (E.D. Cal. 2006) ("Summary judgment is not a game of 'Gotcha!'").

**Relevance:**  There is no basis for a relevance declaration to the evidence submitted.  First, relevance objections are subsumed by the summary judgment standard and are inappropriate, generally, grounds for an objection.  *Prepaid Teleconnect, Inc. v. City of Murrieta*, No. EDCV152062VAPKKX, 2016 WL 1622609, at *1 (C.D. Cal. Apr. 21, 2016).  Second, the challenged evidence is not irrelevant.  The predominant objection appears to be that the cited evidence standing alone is insufficient to meet AB's view of the ultimate legal standard.  This is not a ground for exclusion of evidence in a summary judgment motion.

**Relationship To All Claims:**  AB often couches its relevance, foundation and Rule 402 (unduly prejudicial) objections in connection with one of the claims subject to the motion without regard to the relationship the evidence has to other

1   claims.  This is not proper ever, but particularly on a summary judgment motion that

2   will be decided by the Court.

3       **Excessive Argument:**  The objections are often simply extensions of

4   arguments that AB has made in its reply brief that is unnecessary or irrelevant to the

5   objection and is in violation of the page limitations for reply briefs.  *King Cty. v.*

6   *Rasmussen*, 299 F.3d 1077, 1082 (9th Cir. 2002) (filings "should not be used to

7   make an end-run around the page limitations of Rule 7 by including legal arguments

8   outside of the briefs."); *GemCap Lending, LLC v. Quarles & Brady, LLP*, 269 F.

9   Supp. 3d 1007, 1026 (C.D. Cal. 2017), *aff'd sub nom. GemCap Lending I, LLC v.*

10  *Quarles & Brady, LLP*, 787 F. App'x 369 (9th Cir. 2019).  Legal arguments do not

11  controvert facts and will not be considered outside of briefing.  *Id.*; *Andrew Pierce*

12  *Corp. v. First Specialty Ins. Corp.*, No. EDCV1100944VAPSPX, 2012 WL

13  13015010, at *1 (C.D. Cal. May 1, 2012) (The Honorable Virginia A. Philips); L. R.

14  56-7, 7-6.

15      **Patagonia's General Responses**

16      Due to the large number of objections by AB to which Patagonia's response

17  would be repetitive and cite to the same authority, Patagonia has provided general

18  responses here to be incorporated by reference in individual responses.  Many of

19  AB's objections could be categorically overruled based on the general responses

20  alone.[1]

21      **"Redundancy Response" to Relevancy Objections:**  This Court has held

22  that "relevancy objections are redundant" as they are "duplicative of the summary

23  judgment standard itself."  *Prepaid Teleconnect, Inc. v. City of Murrieta*, No.

24  EDCV152062VAPKKX, 2016 WL 1622609, at *1 (C.D. Cal. Apr. 21, 2016) (The

25  _____

26  [1] The Court need not individually address objections that are boilerplate recitations of
    evidentiary principles or are redundant under the summary judgment standard.

27  *Markel Ins. Co. v. Exec. Risk Indem.*, No. SACV120509AGMLGX, 2013 WL
    12114020, at *2 (C.D. Cal. Oct. 31, 2013);  *Alvarez v. AutoZone, Inc.*, No.

28  EDCV142471VAPSPX, 2017 WL 10562874 at *2 (C.D. Cal. Oct. 4, 2017).

1   Honorable Virginia A. Phillips overruling objections as to relevance).  AB's

2   objections as to relevance should be overruled on this basis alone.  *Id.*, *citing*

3   *Garnett v. ADT LLC*, 139 F. Supp. 3d 1121, 1125 (E.D. Cal. 2015) ("Objections on

4   [relevance] grounds are superfluous, and the court will overrule them.").

5        This response is incorporated below as "Redundancy Response."

6        **"Rule 401 Response" to Relevancy Arguments:**  Numerous times, AB

7   asserts that evidence is irrelevant and fails to address whether the evidence "has any

8   tendency to make a fact more or less probable than it would be without" it or is "of

9   consequence."  Fed. R. Evid. 401.  Instead, AB's relevancy objections go to the

10  weight the evidence should be afforded, not to whether such evidence is probative or

11  consequential and sometimes AB admits this by invoking Rule 402.  For example,

12  AB only cites to cases in which evidence was admitted and considered but given

13  little weight or found to be insufficient.  *See Japan Telecom, Inc. v. Japan Telecom*

14  *Amer., Inc.*, 287 F.3d 866, 874 (9th Cir. 2002) ("The two letters attached to

15  Hasegawa's affidavit are admissible, but they aren't enough."); *Id.* at 875-875

16  (considering six declarations and finding they were "not enough to establish a

17  'mental recognition in buyers' and potential buyers' minds'" due to the personal

18  relationship); *Attacks Ink, LLC v. MGA Entm't Inc.*, 581 F.3d 1138, 1147 (9th Cir.

19  2009) (finding witness testimony of actual confusion was insufficient, not

20  inadmissible); *Bosley Med. Inst., Inc. v. Kremer*, 403 F.3d 672, 677 (9th Cir. 2005)

21  (stating that the Lanham Act aims to prevent confusion in regards to purchasing

22  decisions, but not addressing whether general confusion can nonetheless be

23  probative of such consumer confusion); *Mattel, Inc. v. MCA Records, Inc.*, 28 F.

24  Supp. 2d 1120, 1148 (C.D. Cal. 1998) (considering the admitted evidence of

25  misdirected emails and finding they fall short of demonstrating a likelihood of

26  confusion).  None of the cases AB cites goes to actual admissibility of evidence and

27  thus falls outside the scope of the Federal Rules of Evidence.  Fed. R. Evid. 401,

28  402.  Such legal arguments are improper outside of briefing and cannot be couched

1   in relevancy objections as AB has done here.

2       This response is incorporated below as "Rule 401 Response."

3       **"Personal Knowledge Response" to Foundation Objections:** At summary

4   judgment, evidence presented on the basis of personal knowledge may be

5   considered if a "competent witness with personal knowledge could authenticate the

6   document." *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1551

7   (9th Cir. 1989); *Hardy v. 3 Unknown Agents*, 690 F. Supp. 2d 1074, 1087–88 (C.D.

8   Cal. 2010); Fed. R. Evid. 901(b)(1); *see also Orr v. Bank of Am., NT & SA*, 285 F.3d

9   764, 773–74 (9th Cir. 2002) (if evidence *could* be admitted into evidence by the

10  affiant, then the evidence may be considered at summary judgment).  And where

11  personal knowledge cannot provide a proper foundation, the evidence can be

12  considered at summary judgment if it could be authenticated another way. *Id.*; *Orr*

13  at 774 ("However, a proper foundation need not be established through personal

14  knowledge but can rest on any manner permitted by Federal Rule of Evidence

15  901(b) or 902").

16      AB cites to *Kelly v. Sec. Pac. Nat. Bank*, 954 F.2d 727 (9th Cir. 1992) in

17  which an affidavit stated that the allegations in the complaint were true and correct

18  "to the best of [Kelly's] knowledge and belief." *Kelly* at *2.  There, "the affidavit

19  and complaint were inadmissible because there was no demonstration of Kelly's

20  personal knowledge or competence, and no explanation of the sources from which

21  his beliefs were derived." *Id.  Kelly* is easily distinguishable.  First, Kelly presented

22  no basis or argument supporting that the complaint and affidavit could nonetheless

23  be presented in an admissible form at trial.  Second, none of the portions of

24  Patagonia's declarations to which AB is objecting consists of a plain assertion that

25  the allegations in its complaint are true based on information and belief.  Further,

26  AB's reliance on *Kelly* ignores the proper standard for personal knowledge at

27  summary judgment.  Even though the standard's flexibility made no difference in

28  *Kelly*, the authority on which the *Kelly* Court relies demonstrates its allowance for

1  consideration of evidence that "could be introduced at trial" despite current

2  admissibility defects.  *See McElyea v. Babbitt*, 833 F.2d 196, 198 (9th Cir. 1987)

3  (considering a letter despite authentication defects).  Citing to a case with

4  unfortunate facts does not alter this standard.

5      This response is incorporated below as "Personal Knowledge Response."

6      **"Hearsay Response" to Hearsay Objections:**  "[H]earsay evidence

7  produced in an affidavit may be considered on summary judgment if the declarant

8  could later present the evidence through direct testimony."  *Fraser v. Goodale*, 342

9  F.3d 1032, 1037 (9th Cir. 2003); *Fonseca v. Sysco Food Servs. of Arizona, Inc.*, 374

10  F.3d 840, 846 (9th Cir. 2004); *Hughes v. United States*, 953 F.2d 531, 543 (9th Cir.

11  1992); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).  Statements that are a

12  "recitation of events" within a declarant's personal knowledge whose contents could

13  somehow be admitted into evidence at trial through an alternative method may be

14  considered at summary judgment.  *Montoya v. Orange Cty. Sheriff's Dep't*, 987 F.

15  Supp. 2d 981, 996 (C.D. Cal. 2013) (overruling hearsay objections).

16      This response is incorporated below as "Hearsay Response."

17      **"Speculation Response" to 602 Objections:**  This Court has refused to

18  consider any objections on the ground that the evidence is speculative.  *Alvarez v.

19  AutoZone, Inc.*, No. EDCV142471VAPSPX, 2017 WL 10562874 at *2 (C.D. Cal.

20  Oct. 4, 2017).  AB's objections as to speculation should be overruled on this basis

21  alone.  *Id.*; *Stonefire Grill, Inc. v. FGF Brands, Inc.*, 987 F. Supp. 2d 1023, 1033

22  (C.D. Cal. 2013).

23      This response is incorporated below as "Speculation Response."

24      **"Standing Order Response" to Authentication Objection:**  In numerous

25  identical objections, AB cites to the Standing Order at pages 3 to 4 and states that

26  Ms. Yang has failed to authenticate the document.  AB does not point to anything

27  specific in the Standing Order nor does it state how Ms. Yang's declaration falls

28  short of proper authentication.  Such a vague objection requires Patagonia (and the

1    Court) to guess as to the actual substance AB's of objection.  Objections consisting

2    of "boilerplate recitations of evidentiary principles or blanket objections without

3    analysis applied to specific items of evidence" are not proper.  *Markel Ins. Co. v.*

4    *Exec. Risk Indem.*, No. SACV120509AGMLGX, 2013 WL 12114020, at *2 (C.D.

5    Cal. Oct. 31, 2013); *Burch v. Regents of the Univ. of Cal.*, 433 F. Supp. 2d 1110,

6    1118 (E.D. Cal. 2006).  This nonspecific and vague objection should be overruled

7    across the board.  *Id.*

8        This response is incorporated below as "Standing Order Response."

9    **BOLAND DECLARATION (DKT. 259)**

10

| No. | Citation | Objection | Response |
|-----|----------|-----------|----------|
| 46 | Boland Decl. ¶ 3 and Ex. A – "I remember the beer being extremely popular, selling out quickly wherever it was stocked, and attracting attention from magazine and newspapers, and on social media." | Fed. R. Evid. 402 – This vague statement is not relevant to establish a genuine issue of material fact as to whether the PATAGONIA brand for beer would have pointed uniquely and unmistakably to the clothing Patagonia, Inc. in 2012 because Plaintiffs' California Route beer was not offered until November 2013, and it was not branded with the PATAGONIA trademark. Thus, unspecific magazine, newspaper, and social media "attention" regarding "California Route" beer has no bearing on consumer reaction to the PATAGONIA trademark on beer. Fed. R. Evid. 602/402. Mr. Boland does not and cannot establish the readership (i.e. how many people actually read them) of any of the referenced magazines, | **Redundancy Response.** Additionally, objections as to vagueness are also redundant of the summary judgment standard. *California Found. for Indep. Living Centers v. Cty. of Sacramento*, 142 F. Supp. 3d 1035, 1044–45 (E.D. Cal. 2015). **Rule 401 Response.** Patagonia's collaboration with New Belgium, near the time that Warsteiner's purported registration issued, is relevant to the degree of association with Patagonia, even without the brand on the can.  AB essentially admits it is relevant when it argues that Patagonia had not sold beer in 2012. **Hearsay Response.** Even so, there is no inadmissible hearsay as this evidence goes to |

| No. | Citation | Objection | Response |
|---|---|---|---|
| | | newspapers, and social media, and without that context, the alleged evidence is not relevant. Fed. R. Evid. 801/802 – the articles provided by Mr. Boland contain inadmissible hearsay to the extent they are offered for the truth of the matter asserted. | the fact of association, not the truth of facts stated. |
| 47 | Boland Decl. ¶ 4 and Ex. B – "We created a few hashtags as part of the announcement of the collaboration with New Belgium, including using #findtheroute on Facebook, Instagram and Twitter. I followed posts associated with the hashtag at the time and was impressed by how much effort some of our customers put into locating sixpacks of California Route and sharing their stories of finding the beer." | Fed. R. Evid. 402 – The statement is not relevant to establish a genuine issue of material fact as to whether the PATAGONIA brand for beer would have pointed uniquely and unmistakably to Patagonia, Inc. in 2012 because the "California Route" beer was not offered until November 2013, and because it was not branded with the PATAGONIA trademark. Thus, social media posts for the hashtag "#findtheroute" or regarding "California Route" beer has no bearing on consumer reaction to the PATAGONIA trademark on beer. Separately, whether Mr. Boland was "impressed" by consumer effort to locate sixpacks of the limited edition California Route beer, is irrelevant. | **Redundancy Response.**<br><br>**401 Response.** Patagonia's collaboration with New Belgium, near the time that Warsteiner's purported registration issued, is relevant to the degree of association with Patagonia, even without the brand on the can.  AB essentially admits it is relevant when it argues that Patagonia had not sold beer in 2012. |
| 48 | Boland Decl. ¶ 5 and Ex. C – "I remember that the California Route beer sold out quickly. We launched it in November 2013, and I believe we had sold through | Fed. R. Evid. 402 – The statement is not relevant to establish a genuine issue of material fact as to whether the PATAGONIA brand for beer would have pointed uniquely and unmistakably to Patagonia, Inc. in 2012 | **Redundancy Response.**<br><br>**Rule 401 Response.** Patagonia's collaboration with New Belgium, near the time that Warsteiner's purported registration issued, is relevant to |

| No. | Citation | Objection | Response |
|-----|----------|-----------|----------|
| | the entire stock by the first quarter of 2014. I have reviewed a sales report provided by our partner, New Belgium, in connection with preparing this declaration. A true and correct copy of the report is attached as Exhibit C, showing that we sold nearly 8,000 case equivalents (each containing 24 12oz cans) in 2013 and early-2014, in at least 17 states." | because the California Route beer was not offered until November 2013, its sold for a few months only, and because it was not branded with the PATAGONIA trademark. The statement is also not relevant to show that Plaintiffs had somehow established common law rights in the PATAGONIA trademark for beer given that the beer was not branded with the PATAGONIA trademark, the beer was a limited-edition release only sold for a few months in late 2013 until early 2014 and then discontinued permanently. Fed. R. Evid. 602: Mr. Boland does not lay foundation for the supposed sales figures or the sales report provided by New Belgium Brewing, and there is no declaration from the creator of the document (New Belgium Brewing) attesting to or explaining those sales numbers. Fed. R. Evid. 801: the statement contains inadmissible hearsay in that it contains an out-of-court statement offered for the truth of the matter asserted (e.g., the number of cases of "California Route" beer | the degree of association with Patagonia, even without the brand on the can. AB essentially admits it is relevant when it argues that Patagonia had not sold beer in 2012, only a year before. The length of time the product was on sale is not the issue; the issue is whether beer affiliated with Patagonia was recognized as such when it went on sale. **Personal Knowledge Response.** The examples AB lists of what Patagonia did not do to authenticate the sales reports and figures from New Belgium Brewing demonstrate that Patagonia could present these documents in an admissible format at trial. Therefore, the contents of the documents may be considered at summary judgment. **Hearsay Response.** Even so, it is not hearsay or unfounded for Mr. Boland to rely on the sales reports created by Patagonia's partner. Per above and per AB's own objection, these sales figures and data could be presented in an admissible form at trial. |

| No. | Citation | Objection | Response |
|---|---|---|---|
| | | sold by nonparty New Belgium Brewing). | |

## KENNA DECLARATION (DKT. 261)

| No. | Citation | Objection | Response |
|---|---|---|---|
| 49 | Kenna Decl. (D¶ 4, Exs. A, B – "Patagonia began regularly winning awards for its catalogs in the 1990s, and, through the late-1990s into the mid-2000s, has won dozens of awards for excellence in catalog publishing, in categories including Consumer Specialty Catalogs, Sporting Goods and Children's Products." | Fed. R. 602: Ms. Kenna lacks personal knowledge of any awards Plaintiffs won prior to her joining Patagonia, Inc. in September 2016. (*See* Reply Declaration of Amanda Main in Support of AB's Evidentiary Objections ("Reply Main Decl.") Ex. 6 at 156:18-161:4); *Kelly v. Security Pac. Nat'l Bank*, No. 91-55268, at *2, 1992 U.S. App. LEXIS 2520 (9th Cir. Feb. 7, 1992) (finding a declaration or affidavit must be based on personal knowledge, and a declaration based on information and belief is insufficient to meet the requirements of Rule 56 of the Federal Rules of Civil Procedure). Fed. R. Evid. 402/602: Ms. Kenna does not lay foundation for the catalogs or the awards they have received, especially because she does not state the distribution or circulation numbers for the catalogs. Without this context, the catalogs and awards lack relevance. Even if the catalogs win awards, | **Redundancy Response.** **Rule 401 Response.** Patagonia's brand strength is relevant to the notoriety of the brand. Information relevant to public recognition of Patagonia's distinctive method of promoting its brand and the awards it receives are pertinent to brand notoriety. **Personal Knowledge Response.** Personal knowledge of the awards going back 20-30 years is not necessary to report the fact of them from company records. *See* Fed. R. Evid. 901(b)(8)(C). As the Court explicitly stated in *Orr*, a proper foundation for this evidence need not be established by personal knowledge where it "can rest on any manner permitted by Federal Rule of Evidence 901(b)." *Orr* at 774; Fed. R. Evid. 901(b)(8)(C). |

| No. | Citation | Objection | Response |
|-----|----------|-----------|----------|
| | | they do not demonstrate that the PATAGONIA mark for beer pointed uniquely and unmistakably to Plaintiffs in 2012 if seen by relatively few consumers. Ms. Kenna, Plaintiffs' 30(b)(6) designee on Plaintiffs' 2(a) claim and on the fame of their PATAGONIA trademark, also testified that she is not aware of the circulation numbers of Plaintiffs' catalogs, let alone the circulation numbers leading up to 2012. (*See* Reply Main Decl., Ex. 6 at 161:18-163:15.) Fed. R. Evid. 402: The catalogs and press coverage regarding them are irrelevant to the issue as Plaintiffs did not advertise any beer or alcoholic products in them prior to 2012 (or thereafter); and thus, they are irrelevant to whether the PATAGONIA trademark on beer pointed uniquely and unmistakably to the clothing company Patagonia, Inc. in 2012. | |
| 50 | Kenna Decl. ¶ 5 – "Much of our other work — including producing films that explain the issues, often environmental, that we are attempting to address through product offerings (e.g., Unbroken | Fed. R. Evid. 402: Ms. Kenna does not lay any foundation for these films, including by stating when they came out or how many people have seen them. Without this context, the Plaintiffs' films are not relevant. Long Root beer was released in 2016, so a film released at that time has no bearing on whether the PATAGONIA mark for beer pointed uniquely | **Redundancy Response.**

**Rule 401 Response.** The films are relevant to showing the continuing target market and notoriety and breadth of the brand. This relevance does not turn on whether Patagonia counted the number of people at film screenings. |

| No. | Citation | Objection | Response |
|-----|----------|-----------|----------|
| | Ground, which coincided with our launch of Long Root beer, and A Net Plus, a film detailing the threat of discarded, plastic fishing nets, including those that we recycle in Chile and Argentina to produce Patagonia's hat brims) — also reinforces our commitment to being in business to save our home planet." | and unmistakably to Plaintiffs in 2012. *See, e.g., Hornby v. TJX Cos.* (*"Twiggy"*), 87 U.S.P.Q.2d 1411, at *4 (T.T.A.B. 2008), holding that evidence from more than a "few years" out is "obviously [] too distant in time" to be"probative" on a § 1052(a) false suggestion claim. Ms. Kenna testified at her deposition on August 14, 2020 that she does not know how many consumers viewed either film, that Unbroken Ground was shown only in Plaintiffs' retail stores and not in any theaters, that the film, released in 2016, discussed several subjects and not just Long Root beer, the press release announcing the film did not reference Long Root Ale, and that A Net Plus was released in 2019 or 2020. (See Reply Main Decl., Ex. 6 at 166:23-169:11; 179:1-23.) The films cannot support Plaintiffs' argument that PATAGONIA for beer in 2012 pointed uniquely and unmistakably to the clothing company Patagonia, Inc. | **Personal Knowledge Response.** Patagonia would be able to present evidence of the film screenings in a manner admissible at trial, including advertisements and communications that establish when and where the film was screened. Further, current Patagonia employees would be able to attest to their personal knowledge of Patagonia's work on the film Unbroken Ground. Fed. R. Evid. 901(b)(1). Thus the content of Ms. Kenna's examples could be verified in numerous ways at trial. |
| 51 | Kenna Decl. ¶ 5, Ex. C – "One aspect of our environmental mission is funding grants and giving to organizations focused on protecting our shared environment. For more than 30 | Fed. R. 602: Ms. Kenna's declaration does not state that she has personal knowledge of any charitable giving prior to her joining Patagonia, Inc. in September 2016. *Kelly v. Security Pac. Nat'l* | **Redundancy Response.** **Rule 401 Response.** Patagonia's long history of charitable giving is relevant given that AB's beer is branded and marketed with sponsorships and environmental advocacy that infringes |

| No. | Citation | Objection | Response |
|---|---|---|---|
| | years, since 1985, Patagonia has donated at least 1% of its gross sales to environmental causes. Patagonia made this commitment nearly two decades before Mr. Chouinard co-founded 1% For The Planet, a non-profit organization that encourages other businesses to do the same. By 1991, Patagonia was donating at least $1 million per year, and by 2012 — which I understand is an important year with respect to certain aspects of our lawsuit with Anheuser-Busch, LLC — we reached an annual donation level of $5 million based on 1% donations alone (the company also funds other grants and makes donations separate from this commitment)." | *Bank*, No. 91-55268, at *2, 1992 U.S. App. LEXIS 2520 (9th Cir. Feb. 7, 1992). Fed. R. Evid 402/602: Ms. Kenna lays no foundation for the basis or relevance of the amount of Plaintiffs' charitable donations, including the number of consumers who are aware of these totals, or what Plaintiffs have done to advertise their charitable giving. Accordingly, the numbers have no relevance to the issue of whether the PATAGONIA mark for beer pointed uniquely and unmistakably to the clothing company Patagonia, Inc. in 2012. | Patagonia's rights. **Personal Knowledge Response.** First, personal knowledge of the charitable giving going back 20-30 years is not necessary to report the fact of them from company records. *See* Fed. R. Evid. 901(b)(8)(C). As the Court explicitly stated in *Orr*, a proper foundation for this evidence need not be established by personal knowledge where it "can rest on any manner permitted by Federal Rule of Evidence 901(b)." *Orr* at 774; Fed. R. Evid. 901(b)(8)(C). Second, the contents of the charitable giving can be presented in a format that is admissible at trial. *E.g.*, Fed. R. Evid. 901(b)(1), 901(b)(7)(A), or 901(b)(8)(A). |
| 52 | Kenna Decl. ¶ 6, Exs. D–H – "There is a long history of the public and press noticing our unique approach to business, corporate responsibility, and marketing." | Fed. R. 602: Ms. Kenna's declaration does not state that she has personal knowledge of and does not lay proper foundation for the "press" relating to Patagonia, Inc. prior | **Rule 401 Response.** **Redundancy Response.** **Personal Knowledge Response.** In addition, Ms. Kenna testified she did have knowledge of press remarking on Patagonia's unique |

| No. | Citation | Objection | Response |
|---|---|---|---|
| | | to her joining the company in September 2016. *Kelly v. Security Pac. Nat'l Bank*, No. 91-55268, at *2, 1992 U.S. App. LEXIS 2520 (9th Cir. Feb. 7, 1992).<br><br>Fed. R. Evid. 402: None of these articles regarding Patagonia, Inc.'s founder or the company's "approach to business, corporate responsibility, and marketing," which articles range in date from 1977 to 1999, bear any relevance to the issue of whether the PATAGONIA mark for beer pointed uniquely and unmistakably to the clothing company Patagonia, Inc. in 2012, especially given that Plaintiffs had not announced, marketed, sold, or offered for sale any beer or alcoholic beverage products when any of the articles were written. | identity and corporate responsibility and attached articles to that effect. |
| 53 | Kenna Decl. ¶ 7, Ex. I – "In my experience, the public closely associates the organization with Patagonia and Mr. Chouinard — the majority of people who have heard of 1% For The Planet (it now has close to 4,000 business members, in addition to its non- profit | Fed. R. Evid. 402/602: Ms. Kenna does not lay any foundation for the statement that the "majority of people who have heard of 1% For The Planet...recognize the organization as tied to Patagonia," because she does not state how many people have heard of it, or why tying the organization to Plaintiffs is relevant to the issue | **Redundancy Response.**<br><br>**Rule 401 Response.** Patagonia does not need to assert the number of people in order for testimony regarding public association of 1% for the Planet with Patagonia to be relevant.  Likewise, an article about Patagonia's charitable giving is clearly relevant as to the |

| No. | Citation | Objection | Response |
|---|---|---|---|
| | members, based on my conversations with those responsible for membership) recognize the organization as tied to Patagonia." | of whether PATAGONIA for beer pointed uniquely and unmistakably to Patagonia, Inc. in 2012. Without this context, the statement has no relevance. Ms. Kenna testified that ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ (*See* Reply Main Decl., Ex. 6 at 188:17-25; 190:16-24.)<br><br>Fed. R. Evid. 402: The single 1999 article regarding Plaintiffs' charitable giving that was attached to Ms. Kenna's declaration is not relevant to the issue of whether PATAGONIA for beer pointed uniquely and unmistakably to the clothing company Patagonia, Inc., in 2012, especially given that Patagonia Provisions did not exist when the articles were written, and Patagonia, Inc. had not announced, marketed, sold, or offered for sale any beer or alcoholic beverage products when any of the articles were written. | notoriety of the brand and likelihood that a product targeted at the same consumer with environmental advocacy attached would point to Patagonia.<br><br>**Personal Knowledge Response.** Ms. Kenna is speaking from her personal and professional experience as Patagonia's Director of Global Communications and Public Relations. Empirical data or examples of consumer impression that supports this specific experience within her professional role can be presented in other formats. |
| 54 | Kenna Decl. ¶ 8, Ex. J – "As the reach of Patagonia's brand continued to increase through the early-2000s, we were approached to | Fed. R. 602: Ms. Kenna lacks personal knowledge of the 2004 Starbucks promotion and she testified ▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓ (*See* Reply Main Decl., Ex. 6 at 196:15-197:12.) *Kelly v.* | **Redundancy Response.**<br><br>**Rule 401 Response.** Patagonia's involvement with the beverage industry is relevant, as is the consumer awareness of |

| No. | Citation | Objection | Response |
|-----|----------|-----------|----------|
| | contribute to a variety of interesting projects. In 2004, for example, Starbucks put quotes from influential people on its cups, a series called "The Way I See It" that was meant to spark conversation at its coffee shops. Mr. Chouinard was quoted on #5 in the series as founder of Patagonia: "The Zen master would say if you want to change government, you have to aim at changing corporations, and if you want to change corporations, you first have to change consumers. Whoa, wait a minute! The consumer? That's me drinking this cup of coffee." A true and correct copy of an archived print-out of Starbucks' website from the time is attached as Exhibit J. | *Security Pac. Nat'l Bank*, No. 91-55268, at *2, 1992 U.S. App. LEXIS 2520 (9th Cir. Feb. 7, 1992).<br><br>Fed. R. Evid. 402/602: Ms. Kenna lays no foundation for the quote by Mr. Chouinard on a Starbucks cup in 2004, including the number of consumers who saw his quote as one of 200 different quotes used, or whether any consumer understood that "Founder of Patagonia" was a reference to Plaintiffs. Without this context, the promotion lacks relevance. ███████████████ ███████████████ ███████████████ ███████████████ ███████████████ ███████████████ (*See* Reply Main Decl., Ex. 6 at 199:13-202:1.)<br>Fed. R. Evid. 402: The Starbucks quote that was used in 2004 is not relevant to the issue of whether PATAGONIA for beer pointed uniquely and unmistakably to the clothing company Patagonia, Inc. in 2012, especially given that Patagonia Provisions did not exist prior to 2012, and Patagonia, Inc. did | Patagonia's brand.<br><br>**Personal Knowledge Response.** As part of her role, Ms. Kenna does have knowledge of Patagonia's historical efforts to spread its brand message and ethos to the public. However, there are other ways to lay a proper foundation for the 2004 Starbucks cup at trial, such as longer term employees or Starbucks. Fed. R. Evid. 901(b)(1). |

| No. | Citation | Objection | Response |
|---|---|---|---|
| | | not market, sell, or offer for sale any beer or alcoholic beverage products in the "early-2000s" when the promotion allegedly ran. | |
| 55 | Kenna Decl. ¶ 9 – "In 2006, Mr. Chouinard published "Let My People Go Surfing," which walks through Patagonia's history (and Mr. Chouinard's approach to running a company), and explains the impetus and process behind manufacturing and selling products that limit harm to the environment, and reflect a level of quality that ensures they will be worn, used, repaired, and/or recycled for years. While the book doesn't explicitly focus much on marketing, its entire narrative relates to why so many people care about and are loyal to Patagonia." | Fed. R. Evid. 402/602: Ms. Kenna lays no foundation for Mr. Chouinard's book, including the number of people who purchased or read the book." Without this context, the book has no relevance. Ms. Kenna testified that ███████ ██████████████ ██████████████ ██████████████ (*See* Reply Main Decl., Ex. 6 at 202:322.) *Kelly v. Security Pac. Nat'l Bank*, No. 91-55268, at *2, 1992 U.S. App. LEXIS 2520 (9th Cir. Feb. 7, 1992). Without that context, the fact that a book may have been "published" in 2006 saying nothing about whether it was read, let alone purchased by any appreciable number of consumers.<br><br>Fed. R. Evid. 402: Mr. Chouinard's book is not relevant to the issue of whether PATAGONIA | **Redundancy Response.**<br><br>**Rule 401 Response.** The book is relevant to Patagonia's brand and environmental advocacy, which AB has attempted to imitate for the same consumer target.<br><br>**Personal Knowledge Response.** Ms. Kenna does not need to have knowledge of the number of copies sold of the book to have personal knowledge of it. Further, Patagonia can present evidence of the book and its publication at trial. Ms. Kenna has personal knowledge regarding how the book sets the stage for Patagonia to show that it has established an identity with consumers that transcends particular products. Fed. R. Evid. 902(6). |

| No. | Citation | Objection | Response |
|-----|----------|-----------|----------|
| | | for beer pointed uniquely and unmistakably to Patagonia, Inc. in 2012, especially given that Plaintiffs had not announced, marketed, or sold a single beer or alcoholic beverage product in 2006 when the book was allegedly published, and did not do so until after 2012. | |
| 56 | Kenna Decl. ¶ 10, Ex. K – "In 2007, Fortune Magazine featured Mr. Chouinard on its cover, and published an 8-page profile of the company in its "Green Issue." | Fed. R. Evid. 402: The article regarding Patagonia, Inc. as a whole, and more particularly its founder, has no relevance to the issue of whether the PATAGONIA mark for beer pointed uniquely and unmistakably to Patagonia, Inc. in 2012, especially given that Patagonia Provisions did not exist in 2007, and Patagonia, Inc. had not announced, marketed, conceived, sold, or offered for sale any beer or alcoholic beverage product in 2007 when the article was published. Further, without any foundation to lay context for the article, including how many people read it that year, or in the years leading up to 2012, the article is similarly irrelevant to the show the PATAGONIA mark for beer pointed uniquely and unmistakably to the clothing company Patagonia, Inc. in 2012. | **Redundancy Response.**<br><br>**Rule 401 Response.** The article is relevant to Patagonia's brand and environmental advocacy, which AB has attempted to imitate.  That Patagonia established this ethos *before* AB came out with its beer is clearly relevant.  It supports Patagonia's contention that consumers have long associated Patagonia with its environmental activism, making it more likely that AB's beer and "green" branding would point unmistakably to Patagonia. |
| 57 | Kenna Decl. ¶ 11 – "In part because we devote so much of our budget to | Fed. R. 602: Ms. Kenna's declaration does not state that she has personal knowledge of | **Redundancy Response.**<br><br>**Rule 401 Response.** This evidence is relevant to Patagonia's |

| No. | Citation | Objection | Response |
|-----|----------|-----------|----------|
| | the philanthropy work I discussed in paragraph 5 above (not to mention our commitment to child care, employee benefits, fair and transparent sourcing, organic materials, etc.), we do not rely (and have not relied) on traditional advertising (e.g., print, television, social media) as much as most other companies our size, In this respect, we operate differently than some of our primary competitors in the outdoor apparel and gear space, including The North Face and Columbia Sportswear. To amplify our image and influence, we focus (and have focused for decades) on relationship building and "earned media" strategies that have generated the coverage | Plaintiffs' earned media prior to her joining Patagonia, Inc. in September 2016. Fed. R. Evid. 402: None of the articles regarding Patagonia, Inc. as a whole, or its founder, which Ms. Kenna claims were in the late 1990s and 2000s, have any relevance to the issue of whether the PATAGONIA mark for beer pointed uniquely and unmistakably to the clothing company Patagonia, Inc., in 2012, especially given that Patagonia Provisions did not exist when the articles were published, and Patagonia, Inc. had not announced, marketed, sold, or offered for sale any beer or alcoholic beverage products when any of the articles were published. | brand and environmental advocacy, which AB has attempted to imitate.  That Patagonia established an identity beyond particular products and services before AB came out with its beer is clearly relevant.  It supports Patagonia's contention that consumers have long associated Patagonia with its environmental activism, making it more likely that AB's beer and "green" branding would point unmistakably to Patagonia.<br><br>**Personal Knowledge Response.**  Patagonia's historical and current performance of charitable giving and earned media both fall within Ms. Kenna's professional duties. Further, records of charitable giving and earned media that pre-date Ms. Kenna's employment can be authenticated by means other than personal knowledge.  *E.g.*, Fed. R. Evid. 901(b)(7) and 901(b)(8). |

| No. | Citation | Objection | Response |
|-----|----------|-----------|----------|
|  | discussed throughout this declaration. In executing these types of strategies and evaluating their effectiveness, it is important to consider the nature and reputation of the publications discussing Patagonia, in addition to typical metrics such as readership, circulation, and commercial impressions. It is significant that, through the late-90s and 2000s, Patagonia was profiled in so many major, influential news outlets. It's extraordinarily difficult to measure exactly how valuable consistent coverage of the company in the New York Times, Washington Post, Fortune magazine has been, but I believe this type of coverage has played a huge role in the strength of our brand. | | |
| 58 | Kenna Decl. ¶ 12, Ex. L – "our | Fed. R. Evid. 602 and 1002 (Best Evidence | **Personal Knowledge Response.** Ms. Kenna |

| No. | Citation | Objection | Response |
|-----|----------|-----------|----------|
| | systems indicate that Patagonia was profiled or discussed in more than 660 articles in 2012 alone, with significant exposure through a pair of New York Times articles and three articles in Forbes magazine. A true and correct copy of a report from our system, Cision, that tries to track readership and equivalent ad value is attached as Exhibit L. | Rule): Ms. Kenna does not lay proper foundation for the third party "Cision" report ██████████████████ ██████████████████ ██████████████████ ██████████████████ ██████████████████ ██████████████████ ██████████ She had no personal knowledge as to ██████████████████ ██████████████████ ██████████████ Reply Main Decl., Ex. 6 at 205:21213:6.) Without the articles themselves, the Court (and AB) has no way of knowing how many of the articles: (1) were actually published in the US as opposed to Mexico or Canada; (2) how many actually discussed Patagonia, Inc. versus **another company** with Patagonia in its name, or referred to the **Patagonia geographic region**; (3) how many individuals actually clicked on and/or read the articles; (4) how many of the "660" articles were re-runs of the same article (i.e whether there were actually "660" articles); or (5) what portion of each alleged article was dedicated to a discussion Patagonia, Inc. or Patagonia Provisions, Inc. (*i.e.* | is personally and professionally familiar with Cision reports. Further, the articles and any other materials in the reports could be submitted at trial in other formats. *E.g.*, Fed. R. Evid. 902(6), 901(b)(8), and 901(b)(9). The evidence cited by AB does not support the claim that Ms. Kenna did not read any of the articles. |

| No. | Citation | Objection | Response |
|-----|----------|-----------|----------|
| | | was it a single phrase in a much larger article discussing another topic altogether, or was the company the focus of the article). | |
| | | Ms. Kenna could not lay foundation for and her declaration does not establish any of these necessary contextual facts and had no personal knowledge of them. *Kelly v. Security Pac. Nat'l Bank*, No. 91-55268, at *2, 1992 U.S. App. LEXIS 2520 (9th Cir. Feb. 7, 1992). Separately, the Cision report highlights the five "top" articles (without disclosing their content). Yet, on their face, none of those five articles mention or reference Plaintiffs (i.e. the title does not including a mention of "Patagonia, Inc." As further proof of the lack of foundation and Ms. Kenna's lack of personal knowledge, Ms. Kenna's declaration does not indicate that she review all of the articles herself (and she did not) to confirm which referenced Plaintiffs rather than another company with the name Patagonia, or the famous region. Her declaration references "ad equivalency" but she testified that she | **Redundancy Response.**<br><br>**Rule 401 Response.** This evidence is relevant to consumer awareness of Patagonia, which goes to whether AB's beer would point unmistakably to Patagonia. The fact that the articles are included in Patagonia's own report indicate the likelihood the articles are indeed about Patagonia, and the actual articles can be submitted to confirm such.<br><br>**Personal Knowledge Response.** Ms. Kenna is personally and professionally familiar with Cision reports. Further, the articles and any other materials in the reports could be submitted at trial in other formats. *E.g.*, Fed. R. Evid. 902(6), 901(b)(8), and 901(b)(9). |

| No. | Citation | Objection | Response |
|-----|----------|-----------|----------|
| | | ██████████ ██████████ ██████████ ██████████ ██████████ *(See* Reply Main Decl., Ex. 6 at 230:21- 231:17.) Fed. R. Evid. 801/802: The Cision report contains inadmissible hearsay to the extent it is offered for the truth of the matter asserted (e.g., that Plaintiffs were actually referenced in any of the articles, that Plaintiffs obtained a certain level of "equivalent ad value"). Fed. R. Evid. 402: Including for the reasons above, none of the articles have any relevance to the issue of whether the PATAGONIA mark for beer pointed uniquely and unmistakably to the clothing company Patagonia, Inc. in 2012, especially given that Plaintiffs had not announced, marketed, offered for sale, or sold any beer or alcoholic beverage products when the supposed articles were published. | |
| 59 | Kenna Decl. ¶ 13, Ex. M – "The nature of the press matters, too. Because so much of the "earned media" we've | Fed. R. Evid. 602/402: There is no basis or foundation laid for Ms. Kenna's generalization that "so much of the | **Redundancy Response.** **Rule 401 Response.** This evidence is relevant to consumer awareness of |

| No. | Citation | Objection | Response |
|-----|----------|-----------|----------|
| | received over the years discusses our products, but also focuses on the way we conduct business and our commitment to environmental causes, consumers are able to recognize the PATAGONIA brand (and have been for a long time) when we use it in connection with new products, new services, or new campaigns. As an example of this, when Patagonia and Mr. Chouinard started talking about entering the food and beverage space in 2011, outlets like NPR and Entrepreneur immediately noticed and gave us a platform to discuss why changing the way we source ingredients and food products matters to an overall mission to save our environment." | 'earned media'" the company has received "over the years," or for Ms. Kenna's unsupported conclusion that "consumers are able to recognize the PATAGONIA brand (and have been for a long time)...." (*See* Reply Main Decl., Ex. 6 at 186:4-187:20; 188:7-15.) *Kelly v. Security Pac. Nat'l Bank*, No. 91-55268, at *2, 1992 U.S. App. LEXIS 2520 (9th Cir. Feb. 7, 1992). Fed. R. Evid. 402: Neither of the articles, dated May and November 2011, have any relevance to the issue of whether the PATAGONIA mark for beer pointed uniquely and unmistakably to the clothing company Patagonia, Inc., in 2012, especially given that there is no discussion of beer or alcohol in the articles and Plaintiffs had not announced, marketed, sold, or offered for sale any beer or alcoholic beverage products when the articles were published. | Patagonia, which goes to whether AB's beer would point unmistakably to Patagonia. **Personal Knowledge Response.** Ms. Kenna is personally and professionally familiar with earned media reports and Patagonia's current and historical publicity. Further, press articles and examples of consumer perception pre-dating Ms. Kenna's employment could be submitted at trial in other formats. *E.g.*, Fed. R. Evid. 902(6), 901(b)(8), and 901(b)(9). |
| 60 | Kenna Decl. ¶ 14, Exs. N–Q: "In 2011, as Black | Fed. R. 602: Ms. Kenna lacks personal knowledge of the | **Redundancy Response.** |

| No. | Citation | Objection | Response |
|-----|----------|-----------|----------|
| | Friday approached, we took out a full-page ad in the New York Times and used the space to publish our "Don't Buy This Jacket" ad. A true and correct copy of the ad is attached as Exhibit N. That was a significant moment for us as a company, in part because we do not typically invest in print ads. It also garnered a lot of attention including being featured in a profile of Patagonia and Mr. Chouinard on the Today Show in 2015. | advertising and license agreements prior to her joining Patagonia, Inc. in September 2016, and as "Director of Communications" fails to otherwise lay proper foundation for them; state that she was involved in negotiating them; or claim any awareness of the terms of the agreements. Fed. R. Evid. 402: Patagonia, Inc.'s "Don't Buy This Jacket" ad, the articles that have discussed it, and the requests to reprint it, have no relevance to the issues in AB's Motion, including whether the PATAGONIA mark for beer pointed uniquely and unmistakably to the clothing company Patagonia, Inc. in 2012. Moreover, Ms. Kenna does not and cannot lay foundation for how many consumers read or saw the referenced articles, and does not attach the articles themselves. Reply Main Decl., Ex. 6 at 137:9144:22. | **Rule 401 Response.** This evidence is relevant to consumer awareness of Patagonia, which goes to whether AB's beer would point unmistakably to Patagonia.<br><br>**Personal Knowledge Response.** Ms. Kenna is personally and professionally familiar with Patagonia's current and historical publicity. Further, the actual press article and segment, or testimony by employees with specific personal knowledge could be submitted at trial in other formats. *E.g.,* Fed. R. Evid. 902(6), 901(b)(8), and 901(b)(1).<br><br>AB also mentions licensing agreements here for no apparent reason. |
| 61 | Kenna Decl. ¶ 15, Ex. R –"Around the same time, Harvard Business School published a 30-page case study about Patagonia as a | Fed. R. Evid. 402: A case study regarding Plaintiffs' lack of traditional paid advertising, or its "free publicity" is not relevant to the issue of | **Relevancy Response.**<br><br>**Rule 401 Response.** Further, Patagonia's ability to generate free publicity in the absence of traditional marketing makes it more probable |

| No. | Citation | Objection | Response |
|-----|----------|-----------|----------|
| | company that detailed our approach to activism, business and marketing. A true and correct copy is attached as Exhibit R. That case study recognized a few things that we have been doing throughout the company's history." | whether the PATAGONIA mark for beer pointed uniquely and unmistakably to the clothing company Patagonia, Inc. in 2012. At deposition, although Ms. Kenna testified that she had been careful and proofed her declaration, she was forced to admit that Ex. R of her declaration is not a copy of a "2012" Harvard Business School study, but instead is a copy of a **2019** study. (*See* Reply Main Decl., Ex. 6 at 237:9-240:8.) A 2019 study about Plaintiffs is not relevant to whether the PATAGONIA mark for beer pointed uniquely and unmistakably to Patagonia, Inc. in 2012. FRCP Rule 37/Fed. R. Evid. 403: Just before midnight on August 14, 2020, hours after Ms. Kenna's deposition had concluded, and nearly two weeks *after* Ms. Kenna submitted her declaration, Plaintiffs filed a so-called errata, "substituting" in a new "Exhibit R," purporting to be the 2012 Harvard Study, for the 2019 Harvard Study that Ms. | that Patagonia was well-known by the public in 2012. This fact is highly relevant to whether the PATAGONIA mark for beer pointed uniquely and unmistakably to the clothing company Patagonia, Inc. in 2012. As explained Dkt. 328 at 2-3, n. 1., during her deposition – taken on August 14, 2020, a date that AB requested after Patagonia opposed AB's Motion for Partial Summary Judgment – Ms. Kenna explained to AB's counsel that the filed declaration inadvertently must have been assembled with the incorrect Harvard case study. She did testify about the correct study; which was produced to AB eight months before the deposition and she could have been asked more about the study had AB chosen. Dkt. 313-8, Ex. 6 at 135-139 (Kenna Tr., 237:9-241:3). After Ms. Kenna explained the inadvertent error during her August 14 deposition, Plaintiffs filed the Notice of Errata the same day. Patagonia originally produced the correct document to AB – submitted via errata and attached to Ms. Kenna's Corrected Declaration – on January 24, 2020. |

| No. | Citation | Objection | Response |
|---|---|---|---|
| | | Kenna's declaration had previously included. (Dkt. 296.) This was improper. In so doing, Plaintiffs deprived AB of any ability to ask Ms. Kenna about the 2012 study at her deposition. Plaintiffs also provided the document to AB less than one Court day before AB's Reply and these evidentiary objections were due. Plaintiffs' conduct is prejudicial and improper, and Ex. R should be stricken and disregarded for this additional reason. | |
| 62 | Kenna Decl. ¶ 16, Ex. S – "2012 also marked the publication of Mr. Chouinard and Vincent Stanley's book, "The Responsible Company: What We've Learned from Patagonia's First 40 Years." The book tracks Patagonia's development as a company (leading up to our donation milestones discussed in my paragraph 5 (including $5 million per year via 1% contributions), corresponding revenue milestones, and opening our 28th retail outlet), and development a | Fed. R. Evid. 602/402: Ms. Kenna lays no foundation establishing facts regarding Mr. Chouinard's book, including (1) the number of copies in print or (2) the number of copies purchased by consumers. For all Ms. Kenna knows (and she had no knowledge), the book sold 100 copies. Without that context (about which she has no personal knowledge and laid no foundation), the book is irrelevant and cannot support the notion that the PATAGONIA trademark for beer pointed uniquely and unmistakably to Patagonia, Inc. in 2012. Fed. R. Evid 402: The | **Redundancy Response.**<br><br>**Rule 401 Response.** The history of Patagonia's brand and company is clearly relevant to consumer perception and whether AB's beer would uniquely and unmistakably point to Patagonia. This book captures this history. The book's sales data is not required to support such relevance.<br><br>**Personal Knowledge Response.** The book itself can be presented at trial. Fed. R. Evid. 902(5). |

| No. | Citation | Objection | Response |
|-----|----------|-----------|----------|
|  | leader in corporate responsibility. It also discusses some of the ways in which Patagonia influenced other large corporations through the 1990s and 2000s. For example, a section is devoted to the story of Walmart's approach to Patagonia seeking ideas about how the mass retailer could become more environmentally and socially responsible (Patagonia and Walmart have since joined in initiatives to increase voter turnout through the "Time To Vote" program that gives employees time off on election days, and to develop a sustainability index for Walmart's products). Attached as Exhibit S are a true and correct copy of a 2010 article published by Forbes about Patagonia and WalMart working together on sustainability, and a 2018 article published by the New York Times | book and articles about Patagonia, Inc. consulting with Walmart on environmental initiatives has no bearing on the issue of whether the PATAGONIA mark for beer pointed uniquely and unmistakably to the clothing company Patagonia, Inc. in 2012, especially given that Ms. Kenna does not state that the article and book reference the company's plans to offer beer, or marketing or sale of beer or alcoholic productions. |  |

| No. | Citation | Objection | Response |
|---|---|---|---|
| | discussing Patagonia and Walmart's respective efforts to increase voter turn-out." | | |
| 63 | Kenna Decl. ¶ 17, Ex. T – "While there are many examples of public recognition that Patagonia and the company's leadership has received over the years, all of which bears on our brand image and recognition among the customers, we are particularly proud of some. Among those, in 2015, our former CEO, Rose Marcario, was recognized by President Barack Obama during his Champions of Change program, based on Ms. Marcario and Patagonia's support of employees' families by providing an in-house, on-site child development center at the company's headquarters in Ventura, as well as full company-paid health care and paid sick time for all employees, paid maternity and paternity leave, and financial support to any employees who | Fed. R. Evid. 602: Ms. Kenna lays no foundation for her statement that that are "many examples of public recognition that Patagonia [Inc.] has received." Nor can she properly lay foundation for the White House Archives. Fed. R. Evid. 402: The recognition of Ms. Marcario by President Obama in 2015 for providing childcare for employees, along with other benefits, has no bearing on the issue of whether the PATAGONIA mark for beer pointed uniquely and unmistakably to Patagonia, Inc. in 2012, three years earlier. Moreover, the recognition does not speak to the company's beer or alcoholic beverage products. | **Redundancy Response.** **Rule 401 Response.** The recognition in 2015 was given in regards to Patagonia's past efforts and demonstrates public awareness of such. **Personal Knowledge Response.** Public records of this recognition, articles, or other evidence could be submitted at trial. *E.g.*, Fed. R. Evid. 901(7) and 902(6). |

| No. | Citation | Objection | Response |
|---|---|---|---|
| | cannot access the on-site childcare. A true and correct copy of President Obama's Recognition of Ms. Marcario, from his White House Archives, is attached as Exhibit T. | | |
| 64 | Kenna Decl. ¶ 18, Ex. U – "Additionally, in 2018, Fast Company listed Patagonia as #6 on its list of the World's Most Innovative Companies, alongside companies like Apple, Netflix, and Amazon, among others. A true and correct copy of Fast Company's list and article is attached as Exhibit U. | Fed. R. Evid. 402: The Patagonia, Inc. appeared on a list of "innovative companies" in 2018 has no bearing on the issue of whether the PATAGONIA mark for beer pointed uniquely and unmistakably to Plaintiffs in 2012, six years earlier. Fed. R. Evid. 602/402: Ms. Kenna lays no foundation establishing the readership of the Fast Company article, and without that context, the article is further irrelevant. | **Redundancy Response.** **Rule 401 Response.** The article supports the contention that Patagonia had strong public recognition along with other household brands. Further, the award addressed Patagonia's past performance as a company, not its performance solely in 2018. **Personal Knowledge Response.** Ms. Kenna's personal knowledge of the article does not turn on whether she knows the specifics of the publication's readership. |
| 65 | Kenna Decl. ¶ 19, Ex. U – "In 2019, The United Nations honored Patagonia as a UN Champion of the Earth, the UN's "flagship global environmental award." A true and correct copy of the UN's press release announcing the honor is attached as Exhibit V." | Fed. R. Evid. 602: Ms. Kenna cannot lay foundation for a UN Press Release. Fed. R. Evid. 402: An award for environmentalism in 2019 has no bearing on the issue of whether the PATAGONIA mark for beer pointed uniquely and unmistakably to | **Redundancy Response.** **Rule 401 Response.** The recognition by the United Nations of Patagonia's commitment to environmentalism is relevant to whether AB's use of "green" branding would point to Patagonia. The recognition covers more than work done or a reputation developed |

| No. | Citation | Objection | Response |
|-----|----------|-----------|----------|
| | | Patagonia, Inc. in 2012, seven years earlier. Fed. R. Evid. 602/402: Ms. Kenna lays no foundation establishing the readership of the UN press release. | in 2019. **Personal Knowledge Response.** The UN Press Release does not rely on Ms. Kenna's personal knowledge for a proper foundation. *E.g.*, Fed. R. Evid. 901(7) and 902(5). |

## SUPPLEMENTAL TADLOCK DECLARATION (DKT. 257-21)

| No. | Citation | Objection | Response |
|-----|----------|-----------|----------|
| 66 | Supp. Tadlock Decl. ¶ 3 & Exs. A, B (1–41) | Fed. R. Evid. 402; Fed. R. Evid. 801 – the chart provided by Mr. Tadlock (Ex. A), along with the documents purportedly underlying that (Exs. B1– 41, contain supposed instances of confusion that are not relevant to any of the issues in AB's motion (because confusion is not as issue), fail to demonstrate any instance of a consumer making a confused purchasing decision, demonstrate that any confusion has been caused by Plaintiffs, and/or contain inadmissible hearsay. For ease of the Court's reference, attached as Exhibit A to the Reply | **Redundancy Response.** **Rule 401 Response.** The instances of confusion when AB "launched" its brand demonstrate association between AB's beer and Patagonia. This is clearly relevant to whether the beer points uniquely and unmistakably to Patagonia. **Hearsay Response.** These instances of confusion are submitted to show the consumer's state of mind, which is an exception to hearsay. *See Conversive Inc. v. Conversagent, Inc.*, 433 F.Supp.2d 1079, 1091 (C.D. Cal. 2006); Fed. R. Evid. 803(3). |

| No. | Citation | Objection | Response |
|---|---|---|---|
| | | Declaration of Marcus Peterson in Support of Motion for Summary Judgment ("Reply Peterson Decl.") is another version of the chart with AB's response to each alleged instance of confusion side-by-side. | |
| 67 | Supp. Tadlock Decl. ¶ 4 – "I understand that, outside of that file transfer, no copy of the document exists in Patagonia's own files." | Fed. R. Evid. 602: Mr. Tadlock lacks personal knowledge and lays no foundation for his purported "understanding" that no other copy of Exhibit C exists in Patagonia's files. Fed. R. Evid. 801/802: To the extent Mr. Tadlock's stated understanding is based on a conversation he had with an unidentified third party (or parties), it would constitute inadmissible hearsay offered for the truth of the matter asserted. | **Personal Knowledge.** Tadlock is responsible for the litigation and oversight of the document gathering and production.  He can testify to something AB knows, that no documents were found other than produced, and where, within the department in which he works, the document was found.  Fed. R. Evid. 901(b)(1).<br><br>**Hearsay Response.** Mr. Tadlock is making a statement based on his personal knowledge of files within the legal department.  Further, he would have personal knowledge of any conversation he had with a third party about these materials. *Montoya v. Orange Cty. Sheriff's Dep't*, 987 F. Supp. 2d 981. 996 (C.D. Cal. 2013). |

## HORN DECLARATION (DKT. 260)

| No. | Citation | Objection | Response |
|---|---|---|---|
| 68 | Horn Decl. ¶ 3 – "Since Anheuser Busch ("AB") launched its | Fed. R. Evid. 801/802: Mr. Horn's assertion that he has "learned" of multiple instances of | **Redundancy Response.**<br><br>**Rule 401 Response.** The instances of |

| No. | Citation | Objection | Response |
|---|---|---|---|
|  | PATAGONIA beer in late-2018, I have learned of multiple instances where our retailers or potential retailers have been confused about whether Provisions makes AB's beer, or whether AB's beer is affiliated with Patagonia and Patagonia Provisions. Where I've been able to document that confusion, I've submitted reports to our legal department by email or through the tool our company set up to track issues in the marketplace and the impact on our brands. I have documented confusion reports when others have relayed them to | purported confusion on the part of "retailers or potential retailers" is pure hearsay (or double hearsay). He is relying on statements by unidentified out-of-court-declarants to the effect that they experienced purported confusion, and offering such statements for their purported truth. Fed. R. Evid. 602: Mr. Horn lacks personal knowledge of what any retailer or potential retailer believed, and lays no foundation for his claim that unidentified retailers or potential retailers have experienced purported confusion. He does not identify who was confused, who relayed that information to him, what they said, or when. He does not even state whether he heard about this purported confusion directly from retailers or potential retailers, or from others that similarly lacked personal knowledge of the events in question. Fed. R. Evid. 402: any instances of purported confusion among retailers of which Mr. Horn is testifying are irrelevant to the issues raised in AB's motion. At most, they | confusion demonstrate association between AB's beer and Patagonia.  This occurrence of confusion, when AB launched its brand, is clearly relevant to whether the beer points uniquely and unmistakably to Patagonia.  If retailers are confused, it makes it more likely that consumers would be as well.<br><br>**Personal Knowledge Response.**  Mr. Horn works directly with retailers and is speaking from personal knowledge within his professional role.  He has personal knowledge of reporting retailer confusion to Patagonia's legal team and of documenting such instances.  Mr. Horn makes no assertion outside of his personal knowledge.  Further, Patagonia could present evidence such as affidavits from the retailers to further evidence the contents of what Mr. Horn asserts.  Fed. R. Evid. 901(b)(1).  Mr. Horn's reference to AB launching its beer in 2018 does not rely on Mr. Horn's personal knowledge for a proper foundation.  There is plenty of evidence in the record evidencing the 2018 launch of the beer.<br><br>**Hearsay Response.** These instances of |

| No. | Citation | Objection | Response |
|---|---|---|---|
| | me." | demonstrate that Plaintiffs base their § 1052(a) claim on likelihood of confusion, which is not a valid basis for seeking to cancel a registration that is over five years old. 15 U.S.C. § 1064(3).<br><br>Fed. R. Evid. 602: Mr. Horn lacks personal knowledge and lays no foundation for his claim that AB "launched its PATAGONIA beer in late 2018," and the evidence of record establishes this is untrue. | confusion are submitted to show the consumer's state of mind, which is an exception to hearsay. *See Conversive Inc. v. Conversagent, Inc.*, 433 F.Supp.2d 1079, 1091 (C.D. Cal. 2006); Fed. R. Evid. 803(3). |
| 69 | Horn Decl., ¶ 4 – "I've had to explain that we don't make AB's beer to a wide array of people, from close friends and family who have reached out because they thought they were trying our beer, to existing accounts who can't distinguish between AB's beer and our brand, to potential accounts who mistakenly believe they already sell our beer when they actually stock AB's beer (or who reach out to us to ask to sell AB's beer). In particular | Fed. R. Evid. 402: so-called "confusion" among Mr. Horn's friends and family, as well as current customers is not relevant to the issue of consumer confusion. *Japan Telecom, Inc. v. Japan Telecom Amer., Inc.*, 287 F.3d 866, 874 (9th Cir. 2002) (explaining confusion of those who personally knew plaintiff, including former customer, not indicative of confusion among buying public); *Attacks Ink, LLC v. MGA Entm't Inc.*, 581 F.3d 1138, 1147 (9th Cir. 2009) (rejecting | **Redundancy Response.**<br><br>**Rule 401 Response.** The instances of confusion demonstrate association between AB's beer and Patagonia. This occurrence of confusion, when AB launched its brand, is clearly relevant to whether the beer points uniquely and unmistakably to Patagonia.<br><br>**Personal Knowledge Response.** Mr. Horn has personal knowledge to the extent that this confusion was reported directly to him. AB's "Buy a Case, Plant a Tree" campaign's imitation of and |

| No. | Citation | Objection | Response |
|-----|----------|-----------|----------|
| | I have been approached by multiple people during my market visits where AB also sells its 'PATAGONIA beer', including at events that I have hosted, to discuss 'PATAGONIA.' Sometimes they are referring to our Long Root Ale or Wit, but other times I discover by asking follow-up questions that they are asking about AB's beer, and assuming that we (Patagonia Provisions) are responsible for it. When I discover that someone is confused and is asking me about AB's beer, I have to take time to explain to them that we are not responsible for or involved with AB's product, despite the fact that AB has used our PATAGONIA brand and marketing strategies that mimic ours, including the environmental messaging behind the 'Buy a Case, Plant a Tree' campaign." | evidence of actual confusion from witnesses who were plaintiff's employees or friends of the plaintiff's founder); *Planet Coffee Roasters, Inc. v. Hung Dam*, 2010 WL 625343, at *5 (C.D. Cal. Feb. 18, 2010) (explaining the plaintiff's declarations of confusion from its customers and others already familiar with the plaintiff's business are "insufficient to establish evidence of actual confusion for purposes of a preliminary injunction"). Moreover, people reaching out to Plaintiffs to obtain AB's beer only demonstrates that Plaintiffs have succeeded in causing confusion with AB's mark, and have misdirected those who are looking for AB's beer. Fed. R. Evid. 602: Mr. Horn lays no foundation for the notion that AB has used Plaintiffs' PATAGONIA brand (as opposed to AB's own registered PATAGONIA brand for beer) or that Plaintiffs have ever | similarity to Patagonia's branding and ethos does not rely on Mr. Horn's personal knowledge for foundation as other evidence in the record can demonstrate the contents of his statement, such as AB's communications with third party marketing agencies. **Hearsay Response.** These instances of confusion were submitted in separate declarations to show that individual's state of mind, which is an exception to hearsay. *See Conversive Inc. v. Conversagent, Inc.*, 433 F.Supp.2d 1079, 1091 (C.D. Cal. 2006); Fed. R. Evid. 803(3). Further, he has personal knowledge of these conversations, and the third party statements could be presented in an admissible form. *Montoya v. Orange Cty. Sheriff's Dep't*, 987 F. Supp. 2d 981, 996 (C.D. Cal. 2013). |

| No. | Citation | Objection | Response |
|-----|----------|-----------|----------|
| | | used the environmental messaging "Buy a Case, Plant a Tree." Fed. R. Evid. 801/802: the paragraph contains inadmissible hearsay and double hearsay to the extent Mr. Horn describes statements allegedly made to him for the truth of any matter asserted. | |
| 70 | Horn Decl. ¶ 5 – "The confusion caused by AB's PATAGONIA brand beer is a problem for us on multiple levels. It disrupts our relationships with accounts and potential accounts, and impacts our ability to sell, because we have to explain that another entity is selling a beer under the PATAGONIA name. There's also the concern that people will try AB's beer, assume it is ours, have a bad experience with it, and ultimately form the opinion that they don't like our beer or our products generally. | Fed. R. Evid. 602: Mr. Horn lays no foundation. He does not describe the number of instances of alleged confusion, the number of relationships that have supposedly been "disrupted," or whether any "disruption" actually has cost Plaintiffs any sales. Similarly, he lays no foundation for the notion that his "concern" that someone will have a "bad experience" with AB's beer has ever happened. Fed. R. Evid. 402: Mr. Horn's subjective belief about "disruptions" with retailers has no bearing on any issue raised in this motion. | **Redundancy Response.**<br><br>**Rule 401 Response.**<br><br>**Personal Knowledge Response.** Mr. Horn does have personal knowledge to the extent that confusion was reported directly to him and witnessed by him. Mr. Horn has personally seen the effect of the association on retailers and consumers. His stated concern does not assert a fact outside the scope of his personal knowledge and experience. |
| 71 | Horn Decl. ¶ 6, Exs. A & B1–4 – "Attached as Exhibit A is a | Fed. R. Evid. 402 – The chart provided by Mr. Horn, along with the | **Redundancy Response.**<br><br>**Rule 401 Response.** |

| No. | Citation | Objection | Response |
|-----|----------|-----------|----------|
|  | chart reflecting a true and correct record of notes about examples of the type of confusion I've described in this declaration, and Exhibit B are true and correct copies of documents underlying the chart. These are examples, and I believe that AB's PATAGONIA has caused more confusion and trouble in the market than I have been able to detect or document." | individual components of that chart making up Exhibits B1–4, contain supposed instances of confusion that are not relevant to any of the issues in AB's motion (because likelihood of confusion is not at issue), fail to demonstrate any instance of a consumer making a confused purchasing decision, and/or demonstrate that any confusion has been caused by Plaintiffs. Fed. R. Evid. 602 – Mr. Horn fails to lay a proper foundation for the chart. He does not explain when it was created, how, or by whom. He also provides no basis at all for his purported belief that use by AB of its own registered PATAGONIA beer mark "has caused more confusion and trouble in the market than I have been able to detect or document." Fed. R. Evid. 801/802 – Exs. A and B1–4 contain inadmissible hearsay and double hearsay, some of which is not borne out by any documentation at all. For instance, the third entry on the chart states: "Received a text message from my Uncle saying that he was finally able to try | The instances of confusion demonstrate association between AB's beer and Patagonia. This occurrence of confusion, when AB launched its brand, is clearly relevant to whether the beer points uniquely and unmistakably to Patagonia.<br><br>**Personal Knowledge Response.** Mr. Horn works directly with retailers and is speaking from personal knowledge within his professional role. He has personal knowledge of reporting retailer confusion to Patagonia's legal team and of documenting such instances. Mr. Horn does have personal knowledge to the extent that confusion was reported directly to him and witnessed by him. Mr. Horn has personally seen the effect of the association on retailers and consumers. Mr. Horn makes no assertion outside of his personal knowledge.<br><br>**Hearsay Response.** These instances of confusion are submitted to show the consumer's state of mind, which is an exception to hearsay. *See Conversive Inc. v. Conversagent, Inc.*, 433 F.Supp.2d 1079, 1091 (C.D. Cal. 2006); Fed. R. Evid. 803(3). Further, he has personal |

| No. | Citation | Objection | Response |
|-----|----------|-----------|----------|
| | | Patagonia's (not ABInBev) beer Patagonia Cerveza. I let him know that this was an ABInBev product and he was pretty disappointed." Plaintiffs did not provide a copy of the text message, much less any declaration from Mr. Horn's uncle. Fed. R. Evid. 402: This purported text message—purporting to show confusion on the part of the relative of an employee—is not evidence of confusion among the general consuming public (the relevant inquiry). *See Japan Telecom, Inc. v. Japan Telecom Amer., Inc.*, 287 F.3d 866, 874 (9th Cir. 2002) (explaining confusion of those who personally knew plaintiff, including former customer, not indicative of confusion among buying public). | knowledge of some of these conversations, and the third party statements could be presented in an admissible form. *Montoya v. Orange Cty. Sheriff's Dep't*, 987 F. Supp. 2d 981. 996 (C.D. Cal. 2013). |
| 72 | Horn Decl., Exs. A, B-1 | Fed. R. Evid. 801/802 – Exs. A and B1–4 contain inadmissible hearsay and double hearsay. The first entry on the chart (Ex. A, B1) purports to be an email from someone named Connor Cox (who uses a Patagonia.com email address) to Mr. Horn. | **Redundancy Response.** **Rule 401 Response.** Instances of confusion demonstrate association between AB's beer and Patagonia. This occurrence of confusion, when AB launched its brand, is clearly relevant to whether the beer points uniquely and unmistakably to |

| No. | Citation | Objection | Response |
|-----|----------|-----------|----------|
|     |          | As just one example of the hearsay problems with this document, Mr. Cox informs Mr. Horn in the email: "During a Provisions clinic at the Patagonia Ballard store a new employee told me she saw a billboard for our beer and was stoked about it." This statement is double hearsay (from the unidentified new employee to Mr. Cox, and from Mr. Cox to Mr. Horn), all offered to prove the truth of the matters asserted, i.e., that the employee was "stoked" about a billboard. Notably, both Mr. Cox and the unidentified "employee" appear to be current or former employees of Plaintiffs. Yet, Plaintiffs have offered no declaration from these individuals. The other so-called instances of confusion described in Mr. Cox's email suffer from the same or similar hearsay problems. Fed. R. Evid. 402: The supposed instances of confusion in Mr. Cox's email are not relevant to any of the issues in AB's | Patagonia. **Hearsay Response.** Evidence of confusion is submitted to show the consumer's state of mind, which is an exception to hearsay. *See Conversive Inc. v. Conversagent, Inc.*, 433 F.Supp.2d 1079, 1091 (C.D. Cal. 2006); Fed. R. Evid. 803(3). The reported third party statements could be presented in an admissible form. *Montoya v. Orange Cty. Sheriff's Dep't*, 987 F. Supp. 2d 981. 996 (C.D. Cal. 2013). |

| No. | Citation | Objection | Response |
|---|---|---|---|
| | | motion (because likelihood of confusion is not as issue). Further, the first bullet point is alleged confusion by a close friend of an employee, which is not evidence of confusion among the general consuming public. *See Japan Telecom, Inc. v. Japan Telecom Amer., Inc.*, 287 F.3d 866, 874 (9th Cir. 2002) (explaining confusion of those who personally knew plaintiff, including former customer, not indicative of confusion among buying public). The next four bullet points are not evidence of purchasing confusion. *See Bosley Med. Inst., Inc. v. Kremer*, 403 F.3d 672, 677 (9th Cir. 2005) ("Trademark infringement protects only against mistaken purchasing decisions and not against confusion generally.") (citation omitted). The final bullet point is not confusion at all – a restaurant correctly advertised AB's PATAGONIA beer as "Patagonia Beer." | |
| 73 | Horn Decl. Exs. A, B-2 | Fed. R. Evid. 801/802 – The second entry on the chart (Exs. A, B2) | **Redundancy Response.** |

| No. | Citation | Objection | Response |
|-----|----------|-----------|----------|
|     |          | includes this description that Mr. Horn provided to Plaintiffs' in-house legal team (Robert Tadlock, Greg Curtis, and Traci Escamilla) in a December 2019 email, as Plaintiffs were contemplating litigation. Mr. Horn reported that "Kristi at the Front Door/Reef believed that she had already tried the beer from Patagonia the apparel company but when I should [sic] her the Long Root beers she said that what she tried was in a bottle but the logo looked like Patagonia's so she just assumed that it was part of Patagonia." Again, Plaintiffs are offering this statement from an out-of-court declarant (Kristi) for the truth of the matter asserted (that she believed she had tried a beer and assumed it was from Plaintiffs). Notably, Plaintiffs apparently know where "Kristi" works but did not solicit a declaration from her. This statement is inadmissible. ed. R. Evid. 402: The supposed instances of confusion in Mr. Horn's email are not relevant to any of the issues in AB's motion | **Rule 401 Response.** Instances of confusion demonstrate association between AB's beer and Patagonia. This occurrence of confusion, when AB launched its brand, is clearly relevant to whether the beer points uniquely and unmistakably to Patagonia.<br><br>**Hearsay Response.** Evidence of confusion is submitted to show the consumer's state of mind, which is an exception to hearsay. *See Conversive Inc. v. Conversagent, Inc.*, 433 F.Supp.2d 1079, 1091 (C.D. Cal. 2006); Fed. R. Evid. 803(3). The reported third party statements could be presented in an admissible form. *Montoya v. Orange Cty. Sheriff's Dep't*, 987 F. Supp. 2d 981, 996 (C.D. Cal. 2013). |

| No. | Citation | Objection | Response |
|-----|----------|-----------|----------|
| | | (because likelihood of confusion is not as issue). Further, none of the instances described in Mr. Horn's email are evidence of purchasing confusion, and only involve seeing the product or "trying" it, but do not relay instances of a consumer purchasing AB's product because they believed it was put out by Plaintiffs. *See Bosley Med. Inst., Inc. v. Kremer*, 403 F.3d 672, 677 (9th Cir. 2005) ("Trademark infringement protects only against mistaken purchasing decisions and not against confusion generally."). The final bullet point contains a summary of vague and unspecified discussions, none of which is specific enough to describe an actual instance of confusion, and each of which fails to demonstrate a single confused purchasing decision. | |
| 74 | Horn Decl. Exs. A, B-3 | Fed. R. Evid. 402; Fed. R. Evid. 801 – The third entry on the chart (Exs. A, B3) is an email containing inadmissible hearsay, and does not demonstrate consumer confusion. A store retailer | **Redundancy Response.**<br><br>**Rule 401 Response.** Instances of confusion demonstrate association between AB's beer and Patagonia.  This occurrence of confusion, when AB launched its brand, is |

| No. | Citation | Objection | Response |
|-----|----------|-----------|----------|
| | | merely mixed up the two products. | clearly relevant to whether the beer points uniquely and unmistakably to Patagonia.<br><br>**Hearsay Response.** Evidence of confusion is submitted to show the consumer's state of mind, which is an exception to hearsay. *See Conversive Inc. v. Conversagent, Inc.*, 433 F.Supp.2d 1079, 1091 (C.D. Cal. 2006); Fed. R. Evid. 803(3). The reported third party statements could be presented in an admissible form. *Montoya v. Orange Cty. Sheriff's Dep't*, 987 F. Supp. 2d 981. 996 (C.D. Cal. 2013). |
| 75 | Horn Decl. Exs. A, B-4 | Fed. R. Evid. 801/802 – The final entry on the chart (Ex. A, B4) purports to be an email from someone named Stephen Fagerstrom (who uses a Patagonia.com email address) to Mr. Horn, describing conversations he has with third parties. These statements are inadmissible hearsay. Mr. Fagerstrom also admits in the email that it is not a direct quote, which further calls into question its reliability. Notably, Plaintiffs apparently know where Mr. Fagerstrom works but did not solicit a | **Redundancy Response.**<br><br>**Rule 401 Response.** Instances of confusion demonstrate association between AB's beer and Patagonia. This occurrence of confusion, when AB launched its brand, is clearly relevant to whether the beer points uniquely and unmistakably to Patagonia.<br><br>**Hearsay Response.** Evidence of confusion is submitted to show the consumer's state of mind, which is an exception to hearsay. *See Conversive Inc. v. Conversagent, Inc.*, 433 F.Supp.2d 1079, 1091 (C.D. Cal. 2006); Fed. R. Evid. 803(3). The reported third party |

| No. | Citation | Objection | Response |
|---|---|---|---|
| | | declaration from him. Fed. R. Evid. 402: The supposed instance of confusion in Mr. Fagerstrom's email is not relevant to any of the issues in AB's motion (because likelihood of confusion is not as issue). Further, the email (which is vague) appears merely to describe an instance in which an ad director mentioned AB's PATAGONIA beer during a conversation about Patagonia Provisions. *See Bosley Med. Inst., Inc. v. Kremer*, 403 F.3d 672, 677 (9th Cir. 2005) ("Trademark infringement protects only against mistaken purchasing decisions and not against confusion generally.") (citation omitted). | statements could be presented in an admissible form. *Montoya v. Orange Cty. Sheriff's Dep't*, 987 F. Supp. 2d 981. 996 (C.D. Cal. 2013). |
| | **DANNY WATTS DECLARATION (DKT. 262)** | | |
| 76 | Danny Watts Decl. ¶ 3 – "Since Anheuser Busch ("AB") launched its PATAGONIA beer in late- 2018, I have learned of many instances where our wholesale partners or potential wholesale partners have been confused | Fed. R. Evid. 801/802: Mr. Watt's assertion that he has "learned" of "many instances" of purported confusion on the part of "wholesale partners or potential wholesale partners" is pure hearsay (or double hearsay). He is relying on statements by unidentified out-of- | **Redundancy Response.**<br><br>**Rule 401 Response.** Instances of confusion demonstrate association between AB's beer and Patagonia.  This occurrence of confusion, when AB launched its brand, is clearly relevant to whether the beer points uniquely and unmistakably to |

| No. | Citation | Objection | Response |
|-----|----------|-----------|----------|
|  | about whether AB's PATAGONIA beer is made by Patagonia Provisions. Where I've been able to document that confusion, I've submitted reports to our legal department by email or through the tool our company set up to track issues in the marketplace caused by AB's PATAGONIA beer — including its use of the PATAGONIA name and other marketing tactics — and the impact on our brands. I've also received reports that customers have been confused by AB's PATAGONIA beer through our Field Sales Representatives who run programs like in-store samplings and other events, and report to me and our team." | court-declarants to the effect that they experienced confusion, and offering such statements for their purported truth. Fed. R. Evid. 602: Mr. Watts lacks personal knowledge of what any wholesaler or potential wholesaler believed, and lays no foundation for his claim that unidentified wholesale partners or potential wholesale partners have experienced purported confusion. He does not identify who was confused, who relayed that information to him, what they said, or when. He does not even state whether he heard about this purported confusion directly from wholesale partners or potential wholesale partners, or from others that similarly lacked personal knowledge of the events in question. Fed. R. Evid. 402: any instances of purported confusion among wholesale partners or potential wholesale partners of which Mr. Watts is testifying are irrelevant to the issues raised in AB's Motion. At most, they demonstrate that | Patagonia.<br><br>**Hearsay Response.** Evidence of confusion is submitted to show the consumer's state of mind, which is an exception to hearsay. *See Conversive Inc. v. Conversagent, Inc.*, 433 F.Supp.2d 1079, 1091 (C.D. Cal. 2006); Fed. R. Evid. 803(3). The reported third party statements could be presented in an admissible form. *Montoya v. Orange Cty. Sheriff's Dep't*, 987 F. Supp. 2d 981, 996 (C.D. Cal. 2013).<br><br>**Personal Knowledge Response.** Mr. Watts works directly with wholesalers and is speaking from personal knowledge within his professional role. Mr. Watts makes no assertion outside of his personal knowledge. The contents of his assertion could be presented at trial through examples of his reports to the legal team, affidavits by wholesalers, or examples of the wholesaler being confused. His personal knowledge is not the sole basis for which a proper foundation can be established. |

| No. | Citation | Objection | Response |
|-----|----------|-----------|----------|
| | | Plaintiffs base their § 1052(a) claim on likelihood of confusion, which is not a valid basis for seeking to cancel a registration that is over five years old. 15 U.S.C. § 1064(3). Fed. R. Evid. 602: Mr. Watts lacks personal knowledge and lays no foundation for his claim that AB "launched its PATAGONIA beer in late 2018," and the evidence of record establishes this is untrue. | |
| 77 | Danny Watts Decl. ¶ 4 – "I've had to explain that we don't make AB's beer to a wide array of people, from friends and family who have reached out because they thought we put out a new beer, to existing food accounts who can't distinguish between AB's beer and our brand, to potential accounts who mistakenly believe they already sell our beer when they actually stock AB's beer (or who reach out to us to ask for 'Patagonia' marketing | Fed. R. Evid. 402: so-called "confusion" among Mr. Watt's friends and family, as well as current customers, is not relevant to the issue of consumer confusion. *Japan Telecom, Inc. v. Japan Telecom Amer., Inc.*, 287 F.3d 866, 874 (9th Cir. 2002) (explaining confusion of those who personally knew plaintiff, including former customer, not indicative of confusion among buying public); *Attacks Ink, LLC v. MGA Entm't Inc.*, 581 F.3d 1138, 1147 (9th Cir. 2009) (rejecting evidence of actual | **Redundancy Response.**<br><br>**Rule 401 Response.** Instances of confusion demonstrate association between AB's beer and Patagonia. This occurrence of confusion, when AB launched its brand, is clearly relevant to whether the beer points uniquely and unmistakably to Patagonia.<br><br>**Hearsay Response.** Evidence of confusion is submitted to show the consumer's state of mind, which is an exception to hearsay. *See Conversive Inc. v. Conversagent, Inc.*, 433 F.Supp.2d 1079, 1091 (C.D. Cal. 2006); Fed. R. Evid. 803(3). The reported third party |

| No. | Citation | Objection | Response |
|-----|----------|-----------|----------|
| | collateral to support their sales of AB's beer)." | confusion from witnesses who were plaintiff's employees or friends of the plaintiff's founder under *Japan Telecom*). Moreover, people reaching out to Plaintiffs to obtain AB's beer only demonstrates that Plaintiffs have succeeded in causing confusion with AB's mark, and have misdirected those who are looking for AB's beer. Fed. R. Evid. 801/802: the paragraph contains inadmissible hearsay and double hearsay to the extent Mr. Watts offers his supposed communications with others for the truth of any matter asserted. Notably, Plaintiffs apparently know how to contact nearly all of those with whom Mr. Watts had discussions, but did not provide a declaration from any other than his mother. | statements could be presented in an admissible form. *Montoya v. Orange Cty. Sheriff's Dep't*, 987 F. Supp. 2d 981. 996 (C.D. Cal. 2013). |
| 78 | Danny Watts Decl. ¶ 5 – "The confusion caused by AB's PATAGONIA brand beer is a problem for us on multiple levels. It disrupts our relationships with wholesale accounts and | Fed. R. 602: Mr. Watts lays no foundation. He does not describe the number of instances of alleged confusion, the number of relationships that have supposedly been "disrupted," or whether any | **Redundancy Response.**<br><br>**Rule 401 Response.** Instances of confusion demonstrate association between AB's beer and Patagonia. This occurrence of confusion, when AB launched its brand, is clearly relevant to |

| No. | Citation | Objection | Response |
|---|---|---|---|
| | potential wholesale accounts, and impacts our ability to sell, because we have to explain that another entity is selling a beer under the PATAGONIA name (and marketing in the particular fashion AB has chosen, with environmental messaging and ads that cater to active, outdoor enthusiasts). It also prevents our brand from being unique in the marketplace. | "disruption" actually has cost Plaintiffs any sales. Fed. R. Evid. 402: Mr. Watt's subjective belief about "disruptions" has no bearing on any issue raised in this motion. | whether the beer points uniquely and unmistakably to Patagonia. **Personal Knowledge Response.** Mr. Watts works directly with wholesalers and is speaking from personal knowledge within his professional role. Mr. Watts makes no assertion outside of his personal knowledge. The contents of his assertion could be presented at trial through examples of his reports to the legal team, affidavits by wholesalers, or examples of the wholesaler being confused and Patagonia having to explain that AB's beer is not theirs. His personal knowledge is not the sole basis for which a proper foundation can be established. |
| 79 | Danny Watts Decl. ¶ 6, Ex. A, B1–8 – "Attached as Exhibit A is a chart reflecting a true and correct record of notes about examples of the type of confusion I've described in this declaration, and Exhibit B are true and correct copies of documents underlying the chart. These are examples, and I believe that AB's PATAGONIA beer has caused more confusion | Fed. R. Evid. 402 – The chart provided by Mr. Watts, along with the individual components of that chart making up Exhibits B1–8, contain supposed instances of confusion that are not relevant to any of the issues in AB's motion (because likelihood of confusion is not at issue), fail to demonstrate any instance of a | **Redundancy Response.** **Rule 401 Response.** Instances of confusion demonstrate association between AB's beer and Patagonia. This occurrence of confusion, when AB launched its brand, is clearly relevant to whether the beer points uniquely and unmistakably to Patagonia. **Hearsay Response.** Evidence of confusion is submitted to show |

| No. | Citation | Objection | Response |
|-----|----------|-----------|----------|
| | and trouble in the market than I have been able to detect or document." | consumer making a confused purchasing decision, and/or demonstrate that any confusion has been caused by Plaintiffs. Fed. R. Evid. 602 – Mr. Watts fails to lay a proper foundation for the chart. He does not explain when it was created, how, or by whom. He also provides no basis at all for his purported belief that use by AB of its own registered PATAGONIA beer mark "has caused more confusion and trouble in the market than I have been able to detect or document." Fed. R. Evid. 801/802 – Exs. A and B1–8 contain inadmissible hearsay and double hearsay, as described more fully below. Notably, Plaintiffs apparently know how to contact nearly all of those with whom Mr. Watts had discussions, but did not provide a declaration from any other than his mother. | the consumer's state of mind, which is an exception to hearsay. *See Conversive Inc. v. Conversagent, Inc.*, 433 F.Supp.2d 1079, 1091 (C.D. Cal. 2006); Fed. R. Evid. 803(3).  The reported third party statements could be presented in an admissible form. *Montoya v. Orange Cty. Sheriff's Dep't*, 987 F. Supp. 2d 981. 996 (C.D. Cal. 2013). **Personal Knowledge Response.**  Mr. Watts has personal knowledge collecting the confusion and making the chart. The contents of his chart could be presented at trial through examples of his reports to the legal team, affidavits by third parties, or examples of the third party being confused and Patagonia having to explain that AB's beer is not theirs. His personal knowledge is not the sole basis for which a proper foundation can be established. |
| 80 | Danny Watts Decl. Exs. A, B-1 | Fed. R. Evid. 402 – a misrouted email that went to Plaintiffs asking for a hires logo of PATAGONIA | **Redundancy Response.** **Rule 401 Response.** Instances of confusion demonstrate association between AB's beer and |

| No. | Citation | Objection | Response |
|-----|----------|-----------|----------|
| | | beer, which is no evidence of confusion. See *Mattel, Inc. v. MCA Records, Inc.*, 28 F. Supp. 2d 1120, 1148 (C.D. Cal. 1998) (misdirected emails that are ambiguous as to whether the authors actually believed plaintiff was associated with defendant do not prove actual confusion). | Patagonia. This occurrence of confusion, when AB launched its brand, is clearly relevant to whether the beer points uniquely and unmistakably to Patagonia. **Hearsay Response.** Evidence of confusion is submitted to show the consumer's state of mind, which is an exception to hearsay. *See Conversive Inc. v. Conversagent, Inc.*, 433 F.Supp.2d 1079, 1091 (C.D. Cal. 2006); Fed. R. Evid. 803(3). The reported third party statements could be presented in an admissible form. *Montoya v. Orange Cty. Sheriff's Dep't*, 987 F. Supp. 2d 981. 996 (C.D. Cal. 2013). |
| 81 | Danny Watts Decl. Exs. A, B-2 | Fed. R. Evid. 801/802 – Mr. Watts's email contains inadmissible hearsay in the form of text messages with his mother. Fed. R. Evid. 402 - The text from Mrs. Watts, mother of Danny Watts, is not evidence of confusion among the general consuming public. *See Japan Telecom, Inc. v. Japan Telecom Amer., Inc.*, 287 F.3d 866, 874 (9th Cir. 2002) (explaining confusion of those | **Redundancy Response.** **Rule 401 Response.** Instances of confusion demonstrate association between AB's beer and Patagonia. This occurrence of confusion, when AB launched its brand, is clearly relevant to whether the beer points uniquely and unmistakably to Patagonia. **Hearsay Response.** Evidence of confusion is submitted to show the consumer's state of mind, which is an exception to hearsay. *See Conversive Inc. v. Conversagent, Inc.*, 433 |

| No. | Citation | Objection | Response |
|---|---|---|---|
| | | who personally knew plaintiff, including former customer, not indicative of confusion among buying public). | F.Supp.2d 1079, 1091 (C.D. Cal. 2006); Fed. R. Evid. 803(3). The reported third party statements could be presented in an admissible form. *Montoya v. Orange Cty. Sheriff's Dep't*, 987 F. Supp. 2d 981. 996 (C.D. Cal. 2013). |
| 82 | Danny Watts Decl. Exs. A, B-3 | Fed. R. Evid. 801/802 – Mr. Watts's email contains inadmissible hearsay in the form of an email from a third party. Notably, Mr. Watts knows how to contact that third party, but Plaintiffs did not solicit or obtain a declaration from him. Fed. R. Evid. 402; The email is from a friend of Mr. Watts, and not a consumer, which is not evidence of confusion. *See Japan Telecom, Inc. v. Japan Telecom Amer., Inc.*, 287 F.3d 866, 874 (9th Cir. 2002) (explaining confusion of those who personally knew plaintiff, including former customer, not indicative of confusion among buying public). Moreover, the email does not describe a purchasing situation, but only the sender having seen AB's product in a store and sending a picture of it to his friend. *See Bosley Med. Inst., Inc. v. Kremer*, 403 F.3d | **Redundancy Response.**<br><br>**Rule 401 Response.** Instances of confusion demonstrate association between AB's beer and Patagonia. This occurrence of confusion, when AB launched its brand, is clearly relevant to whether the beer points uniquely and unmistakably to Patagonia.<br><br>**Hearsay Response.** Evidence of confusion is submitted to show the consumer's state of mind, which is an exception to hearsay. *See Conversive Inc. v. Conversagent, Inc.*, 433 F.Supp.2d 1079, 1091 (C.D. Cal. 2006); Fed. R. Evid. 803(3). The reported third party statements could be presented in an admissible form. *Montoya v. Orange Cty. Sheriff's Dep't*, 987 F. Supp. 2d 981. 996 (C.D. Cal. 2013). |

| No. | Citation | Objection | Response |
|---|---|---|---|
| | | 672, 677 (9th Cir. 2005) ("Trademark infringement protects only against mistaken purchasing decisions and not against confusion generally.") (citation omitted). | |
| 83 | Danny Watts Decl. Exs. A, B-4 | Fed. R. Evid. 801/802 – Mr. Watts's email contains inadmissible hearsay in the form of summary from Graeme Pike describing conversations he has with third parties. These statements are inadmissible hearsay. Mr. Pike does not submit his own declaration and Plaintiffs did solicit or provide declarations from any of the third parties. Fed. R. Evid. 402 – Mr. Pike claims without explanation or description "███████ ████████████ ████████████" which is too vague to be credited as confusion, and would not be relevant in any event. | **Redundancy Response.** **Rule 401 Response.** Instances of confusion demonstrate association between AB's beer and Patagonia. This occurrence of confusion, when AB launched its brand, is clearly relevant to whether the beer points uniquely and unmistakably to Patagonia. **Hearsay Response.** Evidence of confusion is submitted to show the consumer's state of mind, which is an exception to hearsay. *See Conversive Inc. v. Conversagent, Inc.*, 433 F.Supp.2d 1079, 1091 (C.D. Cal. 2006); Fed. R. Evid. 803(3). The reported third party statements could be presented in an admissible form. *Montoya v. Orange Cty. Sheriff's Dep't*, 987 F. Supp. 2d 981. 996 (C.D. Cal. 2013). |
| 84 | Danny Watts Decl. Exs. A, B-5 | Fed. R. Evid. 801/802 – Mr. Watts's email contains inadmissible hearsay in the form of | **Redundancy Response.** **Rule 401 Response.** Instances of confusion |

| No. | Citation | Objection | Response |
|-----|----------|-----------|----------|
| | | summary from Graeme Pike describing conversations he has with third parties. These statements are inadmissible hearsay. Mr. Pike does not submit his own declaration and Plaintiffs did solicit or provide declarations from any of the third parties. Fed. R. Evid. 402 - The one statement regarding AB's beer is not relevant to the issue of confusion, it merely recounts a story of ████████ ████████████ ████████████ ████████████ ████████████ ████████ *See Bosley Med. Inst., Inc. v. Kremer*, 403 F.3d 672, 677 (9th Cir. 2005) ("Trademark infringement protects only against mistaken purchasing decisions and not against confusion generally.") (citation omitted). | demonstrate association between AB's beer and Patagonia. This occurrence of confusion, when AB launched its brand, is clearly relevant to whether the beer points uniquely and unmistakably to Patagonia. **Hearsay Response.** Evidence of confusion is submitted to show the consumer's state of mind, which is an exception to hearsay. *See Conversive Inc. v. Conversagent, Inc.*, 433 F.Supp.2d 1079, 1091 (C.D. Cal. 2006); Fed. R. Evid. 803(3). The reported third party statements could be presented in an admissible form. *Montoya v. Orange Cty. Sheriff's Dep't*, 987 F. Supp. 2d 981. 996 (C.D. Cal. 2013). |
| 85 | Danny Watts Decl. Exs. A, B-6 | Fed. R. Evid. 801/802 – The text chain contains inadmissible hearsay, does not identify the sender, and does not identify the | **Redundancy Response.** **Rule 401 Response.** Instances of confusion demonstrate association between AB's beer and |

| No. | Citation | Objection | Response |
|---|---|---|---|
| | | reason the sender sent Mr. Watts the photo. Mr. Watts knows how to contact the sender but Plaintiffs did not solicit or provide a declaration from that individual. Fed. R. Evid. 402 - A friend of Mr. Watts sending him a picture of AB's PATAGONIA beer and calling it "ducked up" is not evidence of confusion. *See Japan Telecom, Inc. v. Japan Telecom Amer., Inc.*, 287 F.3d 866, 874 (9th Cir. 2002) (explaining confusion of those who personally knew plaintiff, including former customer, not indicative of confusion among buying public). | Patagonia. This is clearly relevant to whether the beer points uniquely and unmistakably to Patagonia.<br><br>**Hearsay Response.** Evidence of confusion is submitted to show the consumer's state of mind, which is an exception to hearsay. *See Conversive Inc. v. Conversagent, Inc.*, 433 F.Supp.2d 1079, 1091 (C.D. Cal. 2006); Fed. R. Evid. 803(3). The reported third party statements could be presented in an admissible form. *Montoya v. Orange Cty. Sheriff's Dep't*, 987 F. Supp. 2d 981. 996 (C.D. Cal. 2013). |
| 87 | Danny Watts Decl. Exs. A, B-7 | Fed. R. Evid. 801/802 – Mr. Watts's email contains inadmissible hearsay in the form of an email from a third party. Mr. Watts knows how to contact that party, but Plaintiffs did not provide a declaration from him. Fed. R. Evid. 402 - The statement describes the third party purchasing AB's beer from a | **Redundancy Response.**<br><br>**Rule 401 Response.** Instances of confusion demonstrate association between AB's beer and Patagonia. This is clearly relevant to whether the beer points uniquely and unmistakably to Patagonia.<br><br>**Hearsay Response.** Evidence of confusion is submitted to show |

| No. | Citation | Objection | Response |
|-----|----------|-----------|----------|
| | | distributor, then later sampling a Patagonia Provisions product and mentioning he already carries their beer. He does not state that he purchased AB's beer believing it was put out by Plaintiffs, making the statement irrelevant to the issue of confusion. *See Bosley Med. Inst., Inc. v. Kremer*, 403 F.3d 672, 677 (9th Cir. 2005) ("Trademark infringement protects only against mistaken purchasing decisions and not against confusion generally.") (citation omitted). | the consumer's state of mind, which is an exception to hearsay. *See Conversive Inc. v. Conversagent, Inc.*, 433 F.Supp.2d 1079, 1091 (C.D. Cal. 2006); Fed. R. Evid. 803(3).  The reported third party statements could be presented in an admissible form. *Montoya v. Orange Cty. Sheriff's Dep't*, 987 F. Supp. 2d 981. 996 (C.D. Cal. 2013). |

## FAULKNER DECLARATION (DKT. 263)

| No. | Citation | Objection | Responses |
|-----|----------|-----------|-----------|
| 88 | Faulkner Decl. | Fed. R. Evid. 402 – the declaration is not relevant to the issues raised in AB's Motion because AB did not move based on likelihood of confusion. AB has moved for summary judgment solely on Plaintiffs' cancellation claims. Likelihood of confusion is not a permissible basis upon which to seek cancellation of a registration that is more than five years old. 15 U.S.C. § | **Redundancy Response.**<br><br>**Rule 401 Response.** Instances of confusion demonstrate association between AB's beer and Patagonia.  This occurrence of confusion, when AB launched its brand, is clearly relevant to whether the beer points uniquely and unmistakably to Patagonia.<br><br>**Hearsay Response.**<br><br>Evidence of confusion is submitted to show the consumer's state of |

| No. | Citation | Objection | Responses |
|-----|----------|-----------|-----------|
| | | 1064. Fed. R. Evid. 403 – the declaration is unfairly prejudicial to AB because Plaintiffs obtained it in November 2019, but did not produce it until July 23, on the eve of the deposition of Mr. Tadlock. AB requested all declarations sent by or to Plaintiffs on September 13, 2019. (*See* Peterson Decl., Ex. B (RFPD. No. 101).) In its October 15, 2019 responses, Plaintiffs stated: "Patagonia responds that no such declarations or affidavits have been received by third parties." *Id.* Plaintiffs have never supplemented this response. During meet and confer efforts, Plaintiffs agreed on January 6 that they would produce any declarations they sent to third parties or received from third parties, and the parties agreed that they would produce documents as they became available. (*Id.* at ¶5, Ex. C.) | mind, which is an exception to hearsay. *See Conversive Inc. v. Conversagent, Inc.*, 433 F.Supp.2d 1079, 1091 (C.D. Cal. 2006); Fed. R. Evid. 803(3).  The reported third party statements could be presented in an admissible form. *Montoya v. Orange Cty. Sheriff's Dep't*, 987 F. Supp. 2d 981. 996 (C.D. Cal. 2013). This evidence is not unfairly prejudicial to AB.  Notably, AB has long been aware of incidences and evidence of consumer confusion that Patagonia was only just provided on August 24, 2020, *long after* summary judgment briefing has closed. This includes evidence that AB had tested confusion with Patagonia's core products.  Further, if consumer confusion is truly irrelevant as AB here contends, then the evidence would not unfairly prejudice AB at summary judgment. |

| No. | Citation | Objection | Responses |
|-----|----------|-----------|-----------|
|     |          | Nonetheless, Plaintiffs held onto several declarations, including Mr. Faulkner's declaration, until after AB had already filed its summary judgment motion, and it was too late to test Mr. Faulkner's statements prior to filing their summary judgment reply. The Court should not allow Plaintiffs to withhold the evidence for months, sandbag AB with the declarations, and then attempt to create a genuine issue of fact based on the withheld evidence. | |
| 89 | Gunkel Decl. | believing it was put out by Plaintiffs, nor does he assert that AB's use of the PATAGONIA trademark for beer impacts his perception of Plaintiffs in any way. Fed. R. Evid. 403 – the declaration is unfairly prejudicial to AB because Plaintiffs obtained it in November 2019, but did not produce it until July 23, on the eve of the deposition of Mr. | **Redundancy Response.**<br><br>**Rule 401 Response.** Instances of confusion demonstrate association between AB's beer and Patagonia. This occurrence of confusion, when AB launched its brand, is clearly relevant to whether the beer points uniquely and unmistakably to Patagonia.<br><br>**Hearsay Response.** Evidence of confusion |

| No. | Citation | Objection | Responses |
|---|---|---|---|
| | | Tadlock. AB requested all declarations sent by or to Plaintiffs on September 13, 2019. (*See* Peterson Decl., Ex. B (RFPD. No. 101).) In its October 15, 2019 responses, Plaintiffs stated: "Patagonia responds that no such declarations or affidavits have been received by third parties." *Id.* Plaintiffs have never supplemented this response. During meet and confer efforts, Plaintiffs agreed on January 9 that they would produce any declarations they sent to third parties or received from third parties, and the parties agreed that they would produce documents as they became available. *Id.* at ¶ 5, Ex. C. Nonetheless, Plaintiffs held onto several declarations, including Mr. Gunkel's declaration, until after AB had already filed its summary judgment motion, and it was too late to test Mr. Gunkel's statements prior to filing their summary judgment reply. Further prejudicing AB, Exhibit A to the Gunkel Declaration was not | is submitted to show the consumer's state of mind, which is an exception to hearsay. *See Conversive Inc. v. Conversagent, Inc.*, 433 F.Supp.2d 1079, 1091 (C.D. Cal. 2006); Fed. R. Evid. 803(3).  The reported third party statements could be presented in an admissible form. *Montoya v. Orange Cty. Sheriff's Dep't*, 987 F. Supp. 2d 981. 996 (C.D. Cal. 2013).  This evidence is not unfairly prejudicial to AB.  Notably, AB has long been aware of incidences and evidence of consumer confusion that Patagonia was only just provided on August 24, 2020, *long after* summary judgment briefing has closed. This includes evidence that AB had tested confusion with Patagonia's core products.  Further, if consumer confusion is truly irrelevant as AB here contends, then the evidence would not unfairly prejudice AB at summary judgment. |

| No. | Citation | Objection | Responses |
|-----|----------|-----------|-----------|
|  |  | included in the version produced to AB or filed with the Court; it was submitted for the first time on Friday, August 14, 2020—the Court day before AB's reply and these evidentiary objections were due. The Court should not allow Plaintiffs to withhold the evidence for months, sandbag AB with the declarations, and then attempt to create a genuine issue of fact based on the withheld evidence. |  |

## JOHNSTON DECLARATION (DKT. 265)

| No. | Citation | Objection | Responses |
|-----|----------|-----------|-----------|
| 90 | Johnston Decl. | Fed. R. Evid. 402 – The declaration is not relevant to the issues raised in AB's Motion because AB did not move based on likelihood of confusion. AB has moved for summary judgment solely on Plaintiffs' cancellation claims. Likelihood of confusion is not a permissible basis upon which to seek cancellation of a registration that is more than five years old. 15 U.S.C. § 1064. Further, the declaration is not even relevant to | **Redundancy Response.**<br><br>**Rule 401 Response.** Instances of confusion demonstrate association between AB's beer and Patagonia. This occurrence of confusion, when AB launched its brand, is clearly relevant to whether the beer points uniquely and unmistakably to Patagonia.<br><br>**Hearsay Response.** Evidence of confusion is submitted to show the consumer's state of mind, which is an exception to hearsay. |

| No. | Citation | Objection | Responses |
|-----|----------|-----------|-----------|
| | | show trademark confusion, or likelihood of confusion, because the scenario described by Ms. Johnston is not confusion in connection with a purchasing situation. To the extent it shows confusion at all, it is non-actionable confusion in that Ms. Johnston accepted free samples of beer and free apparel items. *See Bosley Med. Inst., Inc. v. Kremer*, 403 F.3d 672, 677 (9th Cir. 2005) ("Trademark infringement protects only against mistaken purchasing decisions and not against confusion generally.") (citation omitted). Ms. Johnston does not claim she purchased PATAGONIA beer believing it was put out by Plaintiffs, nor does she assert that AB's use of the PATAGONIA trademark for beer impacts her perception of Plaintiffs in any way. Fed. R. Evid. 403 – the declaration is unfairly prejudicial to AB because Plaintiffs obtained it in October 2019, but did not produce it until July 23, on the eve of the deposition of Mr. Tadlock. AB requested | *See Conversive Inc. v. Conversagent, Inc.*, 433 F.Supp.2d 1079, 1091 (C.D. Cal. 2006); Fed. R. Evid. 803(3). The reported third party statements could be presented in an admissible form. *Montoya v. Orange Cty. Sheriff's Dep't*, 987 F. Supp. 2d 981. 996 (C.D. Cal. 2013). This evidence is not unfairly prejudicial to AB. Notably, AB has long been aware of incidences and evidence of consumer confusion that Patagonia was only just provided on August 24, 2020, *long after* summary judgment briefing has closed. This includes evidence that AB had tested confusion with Patagonia's core products. Further, if consumer confusion is truly irrelevant as AB here contends, then the evidence would not unfairly prejudice AB at summary judgment. |

| No. | Citation | Objection | Responses |
|-----|----------|-----------|-----------|
|  |  | all declarations sent by or to Plaintiffs on September 13, 2019. (*See* Peterson Decl., Ex. B (RFPD. No. 101).) In its October 15, 2019 responses, Plaintiffs stated: "Patagonia responds that no such declarations or affidavits have been received by third parties." *Id.* Plaintiffs have never supplemented this response. During meet and confer efforts, Plaintiffs agreed on January 9 that they would produce any declarations they sent to third parties or received from third parties, and the parties agreed that they would produce documents as they became available. *Id.* at ¶5, Ex. C. Nonetheless, Plaintiffs held onto several declarations, including Ms. Johnston's declaration, until after AB had already filed its summary judgment motion, and it was too late to test Ms. Johnson's statements prior to filing their summary judgment reply. Further prejudicing AB, Exhibit A to the |  |

| No. | Citation | Objection | Responses |
|-----|----------|-----------|-----------|
| | | Gunkel Declaration was not included in the version produced to AB or filed with the Court; it was submitted for the first time on Friday, August 14, 2020—the Court day before AB's reply and these evidentiary objections were due. The Court should not allow Plaintiffs to withhold the evidence for months, sandbag AB with the declarations, and then attempt to create a genuine issue of fact based on the withheld evidence. | |

## MARILYN WATTS DECLARATION (DKT. 266)

| No. | Citation | Objection | Responses |
|-----|----------|-----------|-----------|
| 91 | Marilyn Watts Decl. | Fed. R. Evid. 402 – The declaration is not relevant to the issues raised in AB's Motion because AB did not move based on likelihood of confusion. AB has moved for summary judgment solely on Plaintiffs' cancellation claims. Likelihood of confusion is not a permissible basis upon which to seek cancellation of a registration that is more than five years old. 15 U.S.C. | **Redundancy Response.** **Rule 401 Response.** Instances of confusion demonstrate association between AB's beer and Patagonia. This occurrence of confusion, when AB launched its brand, is clearly relevant to whether the beer points uniquely and unmistakably to Patagonia. **Hearsay Response.** Evidence of confusion is submitted to show the consumer's state of |

| No. | Citation | Objection | Responses |
|-----|----------|-----------|-----------|
| | | § 1064. Further, the declaration is not even relevant to show trademark confusion, or likelihood of confusion. Ms. Watts is the mother of Plaintiffs' employee and declarant, Danny Watts. "Confusion" from those in a close relationship with Plaintiffs (such as an employee's mother) are not evidence of consumer confusion. *Japan Telecom, Inc. v. Japan Telecom Amer., Inc.*, 287 F.3d 866, 874 (9th Cir. 2002) (explaining confusion of those who personally knew plaintiff, including former customer, not indicative of confusion among buying public); *Attacks Ink, LLC v. MGA Entm't Inc.*, 581 F.3d 1138, 1147 (9th Cir. 2009) (rejecting evidence of actual confusion from witnesses who were plaintiff's employees or friends of the plaintiff's founder). Fed. R. Evid. 403 – the declaration is unfairly prejudicial to AB because Plaintiffs obtained it in April 2020, but did not produce it until July 23, on the eve of the deposition of Mr. | mind, which is an exception to hearsay. *See Conversive Inc. v. Conversagent, Inc.*, 433 F.Supp.2d 1079, 1091 (C.D. Cal. 2006); Fed. R. Evid. 803(3). The reported third party statements could be presented in an admissible form. *Montoya v. Orange Cty. Sheriff's Dep't*, 987 F. Supp. 2d 981. 996 (C.D. Cal. 2013). This evidence is not unfairly prejudicial to AB. Notably, AB has long been aware of incidences and evidence of consumer confusion that Patagonia was only just provided on August 24, 2020, *long after* summary judgment briefing has closed. This includes evidence that AB had tested confusion with Patagonia's core products. Further, if consumer confusion is truly irrelevant as AB here contends, then the evidence would not unfairly prejudice AB at summary judgment. |

| No. | Citation | Objection | Responses |
|-----|----------|-----------|-----------|
|     |          | Tadlock. AB requested all declarations sent by or to Plaintiffs on September 13, 2019. (*See* Peterson Decl., Ex. B (RFPD. No. 101).) In its October 15, 2019 responses, Plaintiffs stated: "Patagonia responds that no such declarations or affidavits have been received by third parties." *Id.* Plaintiffs have never supplemented this response. During meet and confer efforts, Plaintiffs agreed on January 9 that they would produce any declarations they sent to third parties or received from third parties, and the parties agreed that they would produce documents as they became available. *Id.* at ¶5, Ex. C. Nonetheless, Plaintiffs held onto several declarations, including Ms. Watts's Declaration, until after AB had already filed its summary judgment motion, and it was too late to test Ms. Watts's statements prior to filing their summary judgment reply. The Court should not allow Plaintiffs to withhold the evidence for months, sandbag AB with the declarations, and then attempt to |          |

| No. | Citation | Objection | Responses |
|-----|----------|-----------|-----------|
|     |          | create a genuine issue of fact based on the withheld evidence. |          |

## MICHAEL DECLARATION (DKT. 267)

| No. | Citation | Objection | Responses |
|-----|----------|-----------|-----------|
| 92 | Michael Decl. | Fed. R. Evid. 402 – The declaration is not relevant to the issues raised in AB's Motion because AB did not move based on likelihood of confusion. AB has moved for summary judgment solely on Plaintiffs' cancellation claims. Likelihood of confusion is not a permissible basis upon which to seek cancellation of a registration that is more than five years old. 15 U.S.C. § 1064. Further, the declaration is not even relevant to show trademark confusion, or likelihood of confusion. Mr. Michael is a close friend of Plaintiffs' employee and declarant, Danny Watts. "Confusion" from those in a close relationship with Plaintiffs (such as an employee's friend) are not evidence of confusion. *Japan Telecom, Inc. v. Japan Telecom Amer., Inc.*, 287 F.3d 866, 874 (9th Cir. 2002) (explaining confusion of those who personally knew plaintiff, including | **Redundancy Response.** **Rule 401 Response.** Instances of confusion demonstrate association between AB's beer and Patagonia. This occurrence of confusion, when AB launched its brand, is clearly relevant to whether the beer points uniquely and unmistakably to Patagonia. **Hearsay Response.** Evidence of confusion is submitted to show the consumer's state of mind, which is an exception to hearsay. *See Conversive Inc. v. Conversagent, Inc.*, 433 F.Supp.2d 1079, 1091 (C.D. Cal. 2006); Fed. R. Evid. 803(3). The reported third party statements could be presented in an admissible form. *Montoya v. Orange Cty. Sheriff's Dep't*, 987 F. Supp. 2d 981. 996 |

| No. | Citation | Objection | Responses |
|-----|----------|-----------|-----------|
| | | former customer, not indicative of confusion among buying public); *Attacks Ink, LLC v. MGA Entm't Inc.*, 581 F.3d 1138, 1147 (9th Cir. 2009) (rejecting evidence of actual confusion from witnesses who were plaintiff's employees or friends of the plaintiff's founder). Fed. R. Evid. 403 – the declaration is unfairly prejudicial to AB because Plaintiffs obtained it in April 2020, but did not produce it until July 23, on the eve of the deposition of Mr. Tadlock. AB requested all declarations sent by or to Plaintiffs on September 13, 2019. (*See* Peterson Decl., Ex. B (RFPD. No. 101).) In its October 15, 2019 responses, Plaintiffs stated: "Patagonia responds that no such declarations or affidavits have been received by third parties." *Id.* Plaintiffs have never supplemented this response. During meet and confer efforts, Plaintiffs agreed on January 9 that they would produce any declarations they sent to third parties or received from third parties, and the parties | (C.D. Cal. 2013). This evidence is not unfairly prejudicial to AB. Notably, AB has long been aware of incidences and evidence of consumer confusion that Patagonia was only just provided on August 24, 2020, *long after* summary judgment briefing has closed. This includes evidence that AB had tested confusion with Patagonia's core products. Further, if consumer confusion is truly irrelevant as AB here contends, then the evidence would not unfairly prejudice AB at summary judgment. |

| No. | Citation | Objection | Responses |
|---|---|---|---|
| | | agreed that they would produce documents as they became available. *Id.* at ¶5, Ex. C. Nonetheless, Plaintiffs held onto several declarations, including Mr. Michael's Declaration, until after AB had already filed its summary judgment motion, and it was too late to test Mr. Michael's statements prior to filing their summary judgment reply. The Court should not allow Plaintiffs to withhold the evidence for months, sandbag AB with the declarations, and then attempt to create a genuine issue of fact based on the withheld evidence. | |

### RICHARDSON DECLARATION (DKT. 268)

| No. | Citation | Objection | Responses |
|---|---|---|---|
| 93 | Richardson Decl. | Fed. R. Evid. 402 – The declaration is not relevant to the issues raised in AB's Motion because AB did not move based on likelihood of confusion. AB has moved for summary judgment solely on Plaintiffs' cancellation claims. Likelihood of confusion is not a permissible basis upon which to seek cancellation of a registration that is more than five years | **Redundancy Response.** **Rule 401 Response.** Instances of confusion demonstrate association between AB's beer and Patagonia. This occurrence of confusion, when AB launched its brand, is clearly relevant to whether the beer points uniquely and unmistakably to Patagonia. **Hearsay Response.** Evidence of confusion is submitted to show |

| | | old. 15 U.S.C. § 1064. Further, the declaration is not even relevant to show trademark confusion, or likelihood of confusion, because the scenario described by Ms. Richardson is not confusion in connection with a purchasing situation. To the extent it shows confusion at all, it is non- actionable confusion in that Ms. Richardson saw a billboard and made an incorrect assumption about it. *See Bosley Med. Inst., Inc. v. Kremer*, 403 F.3d 672, 677 (9th Cir. 2005) ("Trademark infringement protects only against mistaken purchasing decisions and not against confusion generally.") (citation omitted). Ms. Richardson does not claim she purchased PATAGONIA beer believing it was put out by Plaintiffs, nor does she assert that AB's use of the PATAGONIA trademark for beer impacts her perception of Plaintiffs in any way.<br><br>Fed. R. Evid. 403 – the declaration is unfairly prejudicial to AB because Plaintiffs | the consumer's state of mind, which is an exception to hearsay. *See Conversive Inc. v. Conversagent, Inc.*, 433 F.Supp.2d 1079, 1091 (C.D. Cal. 2006); Fed. R. Evid. 803(3). The reported third party statements could be presented in an admissible form. *Montoya v. Orange Cty. Sheriff's Dep't*, 987 F. Supp. 2d 981. 996 (C.D. Cal. 2013).<br><br>This evidence is not unfairly prejudicial to AB. Notably, AB has long been aware of incidences and evidence of consumer confusion that Patagonia was only just provided on August 24, 2020, *long after* summary judgment briefing has closed. This includes evidence that AB had tested confusion with Patagonia's core products. Further, if consumer confusion is truly irrelevant as AB here contends, then the evidence would not unfairly prejudice AB at summary judgment. |
|---|---|---|---|

obtained it in January 2020, but did not produce it until July 23, on the eve of the deposition of Mr. Tadlock. AB requested all declarations sent by or to Plaintiffs on September 13, 2019. (*See* Peterson Decl., Ex. B (RFPD. No. 101).) In its October 15, 2019 responses, Plaintiffs stated: "Patagonia responds that no such declarations or affidavits have been received by third parties." *Id.* Plaintiffs have never supplemented this response. During meet and confer efforts, Plaintiffs agreed on January 9 that they would produce any declarations they sent to third parties or received from third parties, and the parties agreed that they would produce documents as they became available. *Id.* at ¶5, Ex. C. Nonetheless, Plaintiffs held onto several declarations, including Ms. Richardson's declaration, until after AB had already filed its summary judgment motion, and it was too late to test Ms. Richardson's statements prior to filing their summary judgment reply. .

| | | | |
|---|---|---|---|
| | | Further prejudicing AB, Exhibit A to the Gunkel Declaration was not included in the version produced to AB or filed with the Court; it was submitted for the first time on Friday, August 14, 2020—the Court day before AB's reply and these evidentiary objections were due. The Court should not allow Plaintiffs to withhold the evidence for months, sandbag AB with the declarations, and then attempt to create a genuine issue of fact based on the withheld evidence. | |

**BRICKER DECLARATION (DKT. 257-1)**

| No. | Citation | Objection | Responses |
|---|---|---|---|
| 94 | Bricker Decl. ¶¶ | Fed. R. Evid. 402 and 403: Mr. Bricker provides a misleading narrative regarding Plaintiffs' efforts to obtain significantly overly broad and unduly burdensome discovery. Specifically, Plaintiffs requested sales data, marketing expenses, and representative samples of marketing collateral for every one of AB's (or its parent company's) beer brands with sales up to three times the volume of sales that AB's PATAGONIA beer enjoyed over the first five years of its existence. Plaintiffs requested even more information (import | **Redundancy Response.**<br><br>**Rule 401 Response.** This Court has already determined this information is relevant. *See* Dkt. 325. "The problem with AB's position is that it has moved for partial summary judgment based on declarations claiming its sales of Patagonia brand beer are typical of AB's treatment of other acquired brands and high-end and specialty import beers." Dkt. 325 at 1. "AB cannot rely on assertions of comparability with other products and then refuse to produce documents supporting |

| No. | Citation | Objection | Responses |
|---|---|---|---|
| | 2–12 | records, geographic distribution, etc.) regarding "Specialty Beer Brands" and "Specialty Import Brands." (Dkt. 284-1, RFPD Nos. 122–24, 137–40.) The information sought was apparently of so little interest to Plaintiffs that they waited to move to compel until August 10 (Dkt. 284), weeks after AB filed its motion for summary judgment and three months after AB served its responses refusing to engage in the overly broad searches demanded by Plaintiffs. Mr. Bricker claims in ¶ 3 that Plaintiffs do not have "complete evidence" to test AB's allegations. Mr. Bricker is incorrect. AB has produced documents showing, for example, how sales of PATAGONIA beer compare to sales of other brands in AB's Fort Collins biergarten and gift shop between 2015 and 2017, as well as sales to retailers in Hawaii in 2012 and 2015. (Dkt. 284-1). These documents dispel Plaintiffs' notion that AB's sales of PATAGONIA beer were "token" sales that were inconsistent with sales of any other brands. Further, as discussed in the Reply Declaration of Amanda A. Main | those assertions." *Id.* |

| No. | Citation | Objection | Responses |
|---|---|---|---|
| | | filed concurrently herewith, and previously described in AB's portion of the joint statement on Plaintiffs' motion to compel, and Ms. Main's accompanying declaration (Dkt. 284-3), Mr. Bricker's narrative is incomplete and misleading. The Court should give it no weight in determining whether AB is entitled to summary judgment on Plaintiffs' cancellation claims. | |
| 95 | Bricker Decl. ¶ 13 | Fed. R. Evid. 403 – Mr. Bricker provides no explanation for changes made to Plaintiffs' privilege log after AB deposed Robert Tadlock, Plaintiffs' 30(b)(6) designee on Plaintiffs' delay in bringing these claims, regarding an April 2016 email chain referencing a possible lawsuit against AB. The email chain had the subject line "budget thoughts" and the description of the basis for withholding was that the email string reflected "Attorney-Client Communication and Work Product regarding lawsuit *against* Anheuser-Busch." These emails were then followed shortly thereafter by a further series of emails | AB cites Fed. R. Evid. 403 but has not specified what specifically outweighs the relevance of this evidence. This objection is vague and unspecific. AB requests the court review the evidence *in camera* on the basis that Patagonia's updates "obscure" what is in the privileged documents. AB is grasping at straws. The updated privilege description *clarifies* the contents and speaks for itself: "Discussion regarding potential of legal matters arising during paternity leave, including potential lawsuit not pertinent to this matter and **prospect that AB might initiate dispute**." (See Dkt. |

| No. | Citation | Objection | Responses |
|-----|----------|-----------|-----------|
|  |  | that the log describes as discussing "beer and litigation risk" regarding Inbev (i.e., AB). *See* Dkt. 251; 251-21 (Ghazarian Decl. ¶ 20 & Ex. 21 (Plaintiffs' Privilege Log, dated May 4, 2020) at Entry Nos. 598, 608, 609, 669, 675, 696, 697, 700, 1351, 1356, 1462.) The exhibits provided by Mr. Bricker show that, after Plaintiffs' counsel, Greg Gilchrist, initially offered to have Mr. Tadlock review the documents and confirm the accuracy of the privilege log entries, Mr. Gilchrist asserted that he would review the entries himself. According to Mr. Bricker's declaration, he apparently conducted this review instead. Not surprisingly, Plaintiffs then amended the entries to obscure whether the documents demonstrate that Plaintiffs considered litigation against AB. The entries at issue (1351, 1356, and 1462) now provide the following description: "Discussion regarding potential of legal matters arising during paternity leave, including potential lawsuit not pertinent to this matter and prospect that AB might initiate dispute." (*See* Dkt. 257-6 (Ex. E to | 257-6 (Ex. E to Bricker Decl.).) This description makes clear that the possibility that AB would sue Patagonia was considered. Patagonia also provides the additional context about paternity leave and an unrelated lawsuit. Patagonia's clarification debunks AB's interpretation of a less specific privilege description. Nothing was obscured: the potential that AB would sue was what was considered. AB cannot rely on a "misstep" by counsel to avoid unfavorable facts at summary judgment. *Burch v. Regents of Univ. of California*, 433 F. Supp. 2d 1110, 1120 (E.D. Cal. 2006). |

| No. | Citation | Objection | Responses |
|-----|----------|-----------|-----------|
|  |  | Bricker Decl.).) Notably, Mr. Bricker does not explain in his declaration why emails originally described as discussing a lawsuit *against AB* were changed to reflect "budget thoughts" about the hypothetical possibility that AB might "*initiate*" a dispute. Plaintiffs also served the amended privilege log without any discernable way for AB to detect the changes (e.g., via redline), given that it is a 133-page privilege log made up of 1,642 entries. Despite Plaintiffs' obstreperous conduct, AB is entitled to rely upon Plaintiffs' initial privilege log entries. To the extent Plaintiffs claim that they misrepresented the nature of the communications on their initial privilege log, and that the documents do not bear on AB's laches defense, they should submit the privileged communications for *in camera* review. |  |

## YANG DECLARATION (DKT. 257-7)

| No. | Citation | Objection | Responses |
|-----|----------|-----------|-----------|
| 96 | Yang Decl. ¶ 3, Ex. 74 | Fed. R. Evid. 901; Court's Standing Order at pp. 3–4: Ms. Yang | **Standing Order Response.** |

| No. | Citation | Objection | Responses |
|-----|----------|-----------|-----------|
|     |          | has not authenticated the document. Fed. R. Evid. 402: the document is not relevant as it contains statements made during negotiations of the agreement between AB and Warsteiner that are not reflected in the final agreement (e.g., geographic limitations on sales of PATAGONIA beer). Fed. R. Evid. 801, 802: the document contains inadmissible hearsay to the extent it is offered for the truth of the matter asserted (e.g., whether someone relayed to the declarant that he did not want to initially import PATAGONIA beer into Boston or New York.). | **Redundancy Response.** **Hearsay Response.** |
| 97 | Yang Decl. ¶ 4, Ex. 75 | Fed. R. Evid. 901; Court's Standing Order at pp. 3–4: Ms. Yang has not authenticated the document. Fed. R. Evid. 402: the document is not relevant as it contains statements regarding possible sales of PATAGONIA beer (among others) in Mexico. | **Standing Order Response.** **Redundancy Response.** |
| 98 | Yang Decl. ¶ 6, Ex. 77 | Fed. R. Evid. 901; Court's Standing Order at pp. 3–4: Ms. Yang has not authenticated the document. Fed. R. Evid. 602: Ms. Yang does not lay | **Standing Order Response.** **Redundancy Response.** **Hearsay Response.** |

PLT'S RESPONSE TO DEF'S EVIDENTIARY OBJECTIONS TO EVIDENCE CITED IN PLT'S MOTION FOR PARTIAL SUMMARY JUDGMENT; CASE NO. 2:19-CV-02702-VAP-JEM

- 74 -

| No. | Citation | Objection | Responses |
|---|---|---|---|
| | | foundation for any of the statements in the document, and Plaintiffs merely speculate what the document *may* mean, given that they chose not to ask any of AB's witnesses about this document in deposition. Fed. R. Evid. 402: the document is not relevant to the extent it contains production, sales, or marketing strategies that were never implemented. | **Personal Knowledge Response.** The contents of these statements do not rely on Ms. Yang's personal knowledge for proper foundation and inferences from the document do not depend on hearing what AB witnesses might say at a deposition. |
| 99 | Yang Decl. ¶ 7, Exs. 78(a)-(b) | Fed. R. Evid. 901; Court's Standing Order at pp. 3–4: Ms. Yang has not authenticated the document. Fed. R. Evid. 602: Ms. Yang does not lay foundation for any of the statements in the document, and Plaintiffs merely speculate what the document *may* mean, given that they chose not to ask any of AB's witnesses about this document in deposition. Fed. R. Evid. 402: the document is not relevant to the extent it contains production, sales, or marketing strategies that were never implemented. | **Standing Order Response.** **Redundancy Response.** **Personal Knowledge Response.** The contents of these statements do not rely on Ms. Yang's personal knowledge for proper foundation and inferences from the document do not depend on hearing what AB witnesses might say at a deposition. |
| 100 | Yang Decl. ¶ 8, Exs. 79(a)-(g) | Fed. R. Evid. 901; Court's Standing Order at pp. 3–4: Ms. Yang has not authenticated the document. Fed. R. Evid. 602: Ms. Yang does not lay foundation for any of | **Standing Order Response.** **Personal Knowledge Response.** The contents of these statements do not rely on Ms. Yang's personal |

| No. | Citation | Objection | Responses |
|---|---|---|---|
|  |  | the statements in the document, and Plaintiffs merely speculate what the document *may* mean, given that they chose not to ask any of AB's witnesses about this document in deposition. | knowledge for proper foundation and inferences from the document do not depend on hearing what AB witnesses might say at a deposition. |
| 101 | Yang Decl. ¶ 9, Exs. 80 (a)-(c) | Fed. R. Evid. 901; Court's Standing Order at pp. 3–4: Ms. Yang has not authenticated the document. Fed. R. Evid. 602: Ms. Yang does not lay foundation for any of the statements in the document, and Plaintiffs merely speculate what the document *may* mean, given that they chose not to ask any of AB's witnesses about this document in deposition. Fed. R. Evid. 402: the document is not relevant to the extent it contains production, sales, or marketing strategies that were never implemented. Fed. R. Evid. 801, 802: the document contains inadmissible hearsay to the extent it is offered for the truth of the matter asserted (e.g., "Context here is, it's a tiny brand in terms of sales today, so we conceptually have more license to redesign the whole thing"). | **Standing Order Response.**<br><br>**Redundancy Response.**<br><br>**Hearsay Response.**<br><br>**Personal Knowledge Response.** The contents of these statements do not rely on Ms. Yang's personal knowledge for proper foundation and inferences from the document do not depend on hearing what AB witnesses might say at a deposition. |
| 102 | Yang Decl. ¶ 10, Exs. 81 (a)- (b) | Fed. R. Evid. 901; Court's Standing Order at pp. 3–4: Ms. Yang has not authenticated | **Standing Order Response.**<br><br>**Redundancy** |

| No. | Citation | Objection | Responses |
|---|---|---|---|
| | | the document.<br>Fed. R. Evid. 602: Ms. Yang does not lay foundation for any of the statements in the document, and Plaintiffs merely speculate what the document *may* mean, given that they chose not to ask any of AB's witnesses about this document in deposition.<br>Fed. R. Evid. 402: the document is not relevant to the extent it contains production, sales, or marketing strategies that were never implemented.<br>Fed. R. Evid. 801, 802: the document contains inadmissible hearsay to the extent it is offered for the truth of the matters asserted. | **Response.**<br><br>**Hearsay Response.**<br><br>**Personal Knowledge Response.** The contents of these statements do not rely on Ms. Yang's personal knowledge for proper foundation and inferences from the document do not depend on hearing what AB witnesses might say at a deposition. |
| 103 | Yang Decl. ¶ 11, Ex. 82 | Fed. R. Evid. 602: Ms. Yang does not include in the portion of her exhibit the following section to which Plaintiffs cite: 61:1-5, 158:25-160:1, 183:1-184:25. In addition, Ms. Yang lacks foundation for the testimony to the extent Plaintiffs rely on it for any statement not included in the testimony (e.g., where Mr. Taylor testifies in a manner that is the opposite of the purpose for which Plaintiffs cite the testimony). | **Personal Knowledge Response.** The contents of these statements do not rely on Ms. Yang's personal knowledge for proper foundation.<br><br>Portions 61:1-5, 158:25-160:1, 183:1-184:25 were inadvertently omitted. Where cited, these portions are cumulative of the other evidence included. |
| 104 | Yang Decl. ¶ 12, Exs. 83(a)-(c) | Fed. R. Evid. 901; Court's Standing Order at pp. 3–4: Ms. Yang has not authenticated | **Standing Order Response.**<br><br>**Redundancy** |

| No. | Citation | Objection | Responses |
|-----|----------|-----------|-----------|
| | | the document.<br>Fed. R. Evid. 602: Ms. Yang does not lay foundation for any of the statements in the document, and Plaintiffs merely speculate what the document *may* mean, given that they chose not to ask any of AB's witnesses about this document in deposition.<br>Fed. R. Evid. 402: the document is not relevant to the extent it contains production, sales, or marketing strategies that were never implemented. | **Response.**<br><br>**Hearsay Response.**<br><br>**Personal Knowledge Response.** The contents of these statements do not rely on Ms. Yang's personal knowledge for proper foundation and inferences from the document do not depend on hearing what AB witnesses might say at a deposition. |
| 105 | Yang Decl. ¶ 14, Ex. 108 | Fed. R. Evid. 901; Court's Standing Order at pp. 3–4: Ms. Yang has not authenticated the document.<br>Fed. R. Evid. 602: Ms. Yang does not lay foundation for any of the statements in the document, and Plaintiffs merely speculate what the document *may* mean, given that they chose not to ask any of AB's witnesses about this document in deposition.<br>Fed. R. Evid. 801, 802: the document contains inadmissible hearsay and double hearsay to the extent it is offered for the truth of the matter asserted (e.g., whether anyone intended to sell PATAGONIA beer in North America in 2010). | **Standing Order Response.**<br><br>**Hearsay Response.**<br><br>**Personal Knowledge Response.** The contents of these statements do not rely on Ms. Yang's personal knowledge for proper foundation and inferences from the document do not depend on hearing what AB witnesses might say at a deposition. |

| No. | Citation | Objection | Responses |
|---|---|---|---|
| 106 | Yang Decl. ¶ 15, Ex. 109 | Fed. R. Evid. 901; Court's Standing Order at pp. 3–4: Ms. Yang has not authenticated the document. Fed. R. Evid. 602: Ms. Yang does not lay foundation for any of the statements in the document, and Plaintiffs merely speculate what the document *may* mean, given that they chose not to ask any of AB's witnesses about this document in deposition. Fed. R. Evid. 801, 802: the document contains inadmissible hearsay and double hearsay to the extent it is offered for the truth of the matter asserted (e.g., whether Warsteiner transferred rights to the PATAGONIA brand in the U.S. in May 2012). Fed. R. Evid. 403, 701, 704 – Plaintiffs attempt to ascribe to Mr. Taylor a legal conclusion as to whether a trademark had been assigned in May 2012, when he does not have the knowledge or training to make such a determination. | **Standing Order Response.**<br><br>**Hearsay Response.**<br><br>**Personal Knowledge Response.** The contents of these statements do not rely on Ms. Yang's personal knowledge for proper foundation and inferences from the document do not depend on hearing what AB witnesses might say at a deposition.<br><br>AB makes no specific objection and cites evidentiary rules without specifying the issue. Fed. R. Evid. 403, 701, 704. Patagonia does not claim that Mr. Taylor is a legal expert or lawyer. Mr. Taylor's testimony speaks for itself. |
| 107 | Yang Decl. ¶ 18, Ex. 111 | Fed. R. Evid. 901; Court's Standing Order at pp. 3–4: Ms. Yang has not authenticated the document. Fed. R. Evid. 602: Ms. Yang does not lay foundation for any of the statements in the document, and | **Standing Order Response.**<br><br>**Redundancy Response.**<br><br>**Hearsay Response.**<br><br>**Personal Knowledge Response.** The |

| No. | Citation | Objection | Responses |
|-----|----------|-----------|-----------|
| | | Plaintiffs merely speculate what the document *may* mean, given that they chose not to ask any of AB's witnesses about this document in deposition. Fed. R. Evid. 801, 802: the document contains inadmissible hearsay and double hearsay to the extent it is offered for the truth of the matter asserted (e.g., Warsteiner's view of negotiations with AB). Fed. R. Evid. 402: the document is not relevant as it contains statements made during negotiations of the agreement between AB and Warsteiner that are not reflected in the final agreement. | contents of these statements do not rely on Ms. Yang's personal knowledge for proper foundation and inferences from the document do not depend on hearing what AB witnesses might say at a deposition. |
| 108 | Yang Decl. ¶ 19, Ex. 86 | Fed. R. Evid. 602: The deposition excerpts provided by Ms. Yang are incomplete and do not lay foundation for the responses, including because they provide answers, sometimes without even providing the question, and sometimes without providing context to the question. | **Personal Knowledge Response.** The contents of these statements do not rely on Ms. Yang's personal knowledge for proper foundation. Patagonia has not truncated or omitted any portion of Ms. Cannon's testimony. AB's objection is misplaced. If AB felt some additional information was important, AB could have submitted it. |
| 109 | Yang Decl. ¶ 20, Ex. 87 | Fed. R. Evid. 901: These deposition excerpts have not been properly authenticated, as the excerpts do not | Certifications have been submitted by Patagonia. Dkt. 257-7. This Exhibit was filed under seal per AB's confidentiality |

| No. | Citation | Objection | Responses |
|-----|----------|-----------|-----------|
|  |  | include a signed reporter's certification that the deposition is a true record of the testimony of the deponent." *See Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 774 (9th Cir. 2002) (cited in the Court's Standing Order (Dkt. 9) at 4). | designations. Such "missteps" do not disqualify evidence for consideration at summary judgment. *See Burch v. Regents of Univ. of California*, 433 F. Supp. 2d 1110, 1120 (E.D. Cal. 2006).<br><br>AB filed the exact same certification, bearing what appears to be an electronic signature, the same day that Patagonia filed Dkt. 257-7, Ex. 87. See Dkt. 192, Ex. 30 (filed July 13, 2020). Having relied on the same certification, AB's objection is made in bad faith. Patagonia has not received a hand-signed certification of the transcript. However, AB appears to have included a signed certification at Dkt. 254-05, Ex. 7 (filed August 3, 2020), resolving any issue as to the testimony that both parties have submitted. |
| 110 | Yang Decl. ¶ 21, Ex. 88 | Fed. R. Evid. 901; Court's Standing Order at pp. 3–4: Ms. Yang has not authenticated the document. Fed. R. Evid. 602: Ms. Yang does not lay foundation for any of the statements in the document, and Plaintiffs merely speculate what the document *may* mean, given that they chose not to ask any of AB's witnesses about this document in deposition. | **Standing Order Response.**<br><br>**Redundancy Response.**<br><br>**Personal Knowledge Response.** The contents of these statements do not rely on Ms. Yang's personal knowledge for proper foundation and inferences from the document do not depend on hearing what AB witnesses might say at a deposition. |

| No. | Citation | Objection | Responses |
|-----|----------|-----------|-----------|
| | | Fed. R. Evid. 402: the document is not relevant to any of the issues in AB's motion for partial summary judgment | |
| 111 | Yang Decl. ¶ 22, Ex. 89 | Fed. R. Evid. 901; Court's Standing Order at pp. 3–4: Ms. Yang has not authenticated the document. Fed. R. Evid. 602: Ms. Yang does not lay foundation for any of the statements in the document, and Plaintiffs merely speculate what the document *may* mean, given that they chose not to ask any of AB's witnesses about this document in deposition. Fed. R. Evid. 402: the document is not relevant to any of the issues in AB's Motion. Fed. R. Evid. 801 and 802: the document contains inadmissible hearsay to the extent it is offered for the truth of the matter asserted (e.g., that certain brands served as "inspirations" for the marketing or target consumer of the PATAGONIA brand) | **Standing Order Response.**<br><br>**Redundancy Response.**<br><br>**Hearsay Response.** The contents of Ms. Yang statements can be presented in another form at trial, including with AB's own documents.<br><br>**Personal Knowledge Response.** The contents of these statements do not rely on Ms. Yang's personal knowledge for proper foundation and inferences from the document do not depend on hearing what AB witnesses might say at a deposition. |
| 112 | Yang Decl. ¶ 23, Ex. 90 | Fed. R. Evid. 901; Court's Standing Order at pp. 3–4: Ms. Yang has not authenticated the document. Fed. R. Evid. 602: Ms. Yang does not lay foundation for any of the statements in the document, and Plaintiffs merely speculate what the document *may* mean, | **Standing Order Response.**<br><br>**Redundancy Response.**<br><br>**Personal Knowledge Response.** The contents of these statements do not rely on Ms. Yang's personal knowledge for proper foundation and |

| No. | Citation | Objection | Responses |
|-----|----------|-----------|-----------|
| | | given that they chose not to ask any of AB's witnesses about this document in deposition. Fed. R. Evid. 402: the document is not relevant to any of the issues in AB's motion for partial summary judgment, especially given that the portion cited by Ms. Yang was a proposal that was never implemented. | inferences from the document do not depend on hearing what AB witnesses might say at a deposition. |
| 113 | Yang Decl. ¶ 24, Ex. 91 | Fed. R. Evid. 901; Court's Standing Order at pp. 3–4: Ms. Yang has not authenticated the document. Fed. R. Evid. 602: Ms. Yang does not lay foundation for any of the statements in the document, and Plaintiffs merely speculate what the document *may* mean, given that they chose not to ask any of AB's witnesses about this document in deposition. Fed. R. Evid. 402: the document is not relevant to any of the issues in AB's motion for partial summary judgment, especially given that the portion cited by Ms. Yang was a proposal that was never implemented. | **Standing Order Response.** **Redundancy Response.** **Personal Knowledge Response.** The contents of these statements do not rely on Ms. Yang's personal knowledge for proper foundation and inferences from the document do not depend on hearing what AB witnesses might say at a deposition. |
| 114 | Yang Decl. ¶ 25, Ex. 92 | Fed. R. Evid. 901; Court's Standing Order at pp. 3–4: Ms. Yang has not authenticated the document. Fed. R. Evid. 602: Ms. Yang does not lay foundation for any of the statements in | **Standing Order Response.** **Redundancy Response.** **Personal Knowledge Response.** The contents of these statements do not rely on Ms. Yang's personal |

| No. | Citation | Objection | Responses |
|-----|----------|-----------|-----------|
| | | the document, and Plaintiffs merely speculate what the document *may* mean, given that they chose not to ask any of AB's witnesses about this document in deposition. Fed. R. Evid. 402: the document is not relevant to any of the issues in AB's motion for partial summary judgment, especially given that the portion cited by Ms. Yang was a proposal that was never implemented. | knowledge for proper foundation and inferences from the document do not depend on hearing what AB witnesses might say at a deposition. |
| 115 | Yang Decl. ¶ 26, Ex. 93 | Fed. R. Evid. 901; Court's Standing Order at pp. 3–4: Ms. Yang has not authenticated the document. Fed. R. Evid. 602: Ms. Yang does not lay foundation for any of the statements in the document, and Plaintiffs merely speculate what the document *may* mean, given that they chose not to ask any of AB's witnesses about this document in deposition. Fed. R. Evid. 402: the document is not relevant to any of the issues in AB's motion for partial summary judgment. | **Standing Order Response.** **Redundancy Response.** **Personal Knowledge Response.** The contents of these statements do not rely on Ms. Yang's personal knowledge for proper foundation and inferences from the document do not depend on hearing what AB witnesses might say at a deposition. |
| 116 | Yang Decl. ¶ 27, Ex. 94 | Fed. R. Evid. 901; Court's Standing Order at pp. 3–4: Ms. Yang has not authenticated the document. | **Standing Order Response.** **Redundancy Response.** |

| No. | Citation | Objection | Responses |
|---|---|---|---|
| | | Fed. R. Evid. 602: Ms. Yang does not lay foundation for any of the statements in the document, and Plaintiffs merely speculate what the document *may* mean, given that they chose not to ask any of AB's witnesses about this document in deposition.<br><br>Fed. R. Evid. 402: the document is not relevant to any of the issues in AB's motion for partial summary judgment. | **Personal Knowledge Response.** The contents of these statements do not rely on Ms. Yang's personal knowledge for proper foundation and inferences from the document do not depend on hearing what AB witnesses might say at a deposition. |
| 117 | Yang Decl. ¶ 28, Ex. 95 | Fed. R. Evid. 901; Court's Standing Order at pp. 3–4: Ms. Yang has not authenticated the document.<br><br>Fed. R. Evid. 602: Ms. Yang does not lay foundation for any of the statements in the document, and Plaintiffs merely speculate what the document *may* mean, given that they chose not to ask any of AB's witnesses about this document in deposition.<br><br>Fed. R. Evid. 402: the document is not relevant to any of the issues in AB's motion for partial summary judgment. | **Standing Order Response.**<br><br>**Redundancy Response.**<br><br>**Personal Knowledge Response.** The contents of these statements do not rely on Ms. Yang's personal knowledge for proper foundation and inferences from the document do not depend on hearing what AB witnesses might say at a deposition. |
| 118 | Yang Decl. ¶ 29, Ex. 96 | Fed. R. Evid. 901; Court's Standing Order at pp. 3–4: Ms. Yang has not authenticated the document.<br><br>Fed. R. Evid. 602: Ms. Yang does not lay foundation for any of the statements in the document, and | **Standing Order Response.**<br><br>**Redundancy Response.**<br><br>**Personal Knowledge Response.** The contents of these statements do not rely |

| No. | Citation | Objection | Responses |
|-----|----------|-----------|-----------|
|  |  | Plaintiffs merely speculate what the document *may* mean, given that they chose not to ask any of AB's witnesses about this document in deposition. Fed. R. Evid. 402: the document is not relevant to any of the issues in AB's motion for partial summary judgment. | on Ms. Yang's personal knowledge for proper foundation and inferences from the document do not depend on hearing what AB witnesses might say at a deposition. |
| 119 | Yang Decl. ¶ 30, Ex. 97 | Fed. R. Evid. 901; Court's Standing Order at pp. 3–4: Ms. Yang has not authenticated the document. Fed. R. Evid. 602: Ms. Yang does not lay foundation for any of the statements in the document, and Plaintiffs merely speculate what the document *may* mean, given that they chose not to ask any of AB's witnesses about this document in deposition. Likewise, Ms. Yang purports to summarize sales records produced by AB, when the Court can review those records for itself. Fed. R. Evid. 402: the document is not relevant to the extent it contains production, sales, or marketing strategies that were never implemented. | **Standing Order Response.**<br><br>**Redundancy Response.**<br><br>**Personal Knowledge Response.** The contents of these statements do not rely on Ms. Yang's personal knowledge for proper foundation and inferences from the document do not depend on hearing what AB witnesses might say at a deposition. |
| 120 | Yang Decl. ¶ 31, Ex. 98 | Fed. R. Evid. 901; Court's Standing Order at pp. 3–4: Ms. Yang has not authenticated the document. Fed. R. Evid. 602: Ms. Yang does not lay foundation for any of the statements in the | **Standing Order Response.**<br><br>**Redundancy Response.**<br><br>**Personal Knowledge Response.** The contents of these |

| No. | Citation | Objection | Responses |
|-----|----------|-----------|-----------|
| | | document, and Plaintiffs merely speculate what the document *may* mean, given that they chose not to ask any of AB's witnesses about this document in deposition. Fed. R. Evid. 402: the document is not relevant to the extent it contains production, sales, or marketing strategies that were never implemented. | statements do not rely on Ms. Yang's personal knowledge for proper foundation and inferences from the document do not depend on hearing what AB witnesses might say at a deposition. |
| 121 | Yang Decl. ¶ 32, Ex. 99 | Fed. R. Evid. 901; Court's Standing Order at pp. 3–4: Ms. Yang has not authenticated the document. Fed. R. Evid. 602: Ms. Yang does not lay foundation for any of the statements in the document, and Plaintiffs merely speculate what the document *may* mean, given that they chose not to ask any of AB's witnesses about this document in deposition. Fed. R. Evid. 402: the document is not relevant to the extent it contains production, sales, or marketing strategies that were never implemented. | **Standing Order Response.** **Redundancy Response.** **Personal Knowledge Response.** The contents of these statements do not rely on Ms. Yang's personal knowledge for proper foundation and inferences from the document do not depend on hearing what AB witnesses might say at a deposition. |
| 122 | Yang Decl. ¶ 38, Ex. 105 | Fed. R. Evid. 901; Court's Standing Order at pp. 3–4: Ms. Yang has not and could not authenticate the document. Fed. R. Evid. 602: Ms. Yang does not lay foundation for this document or any of the statements contained therein. Plaintiffs provide no evidence as | **Standing Order Response.** **Redundancy Response.** **Hearsay Response.** **Personal Knowledge Response.** The contents of these statements do not rely on Ms. Yang's personal |

| No. | Citation | Objection | Responses |
|-----|----------|-----------|-----------|
| | | to who created this standalone document, why it was created, or what it means. Plaintiffs' speculation is inadmissible. Further, Ms. Yang's description of the document as "an advertisement for AB's Patagonia beer" lacks foundation, as Ms. Yang lacks personal knowledge regarding what the document is, why it was created, and whether it was used (especially in the form presented). Fed. R. Evid. 801 and 802: The document contains inadmissible hearsay to the extent it is offered for the truth of the matter asserted (e.g., that the apparent file name is accurate). | knowledge for proper foundation. |
| 123 | Yang Decl. ¶ 39, Ex. 106 | Fed. R. Evid. 901; Court's Standing Order at pp. 3–4: Ms. Yang has not authenticated the document. Fed. R. Evid. 602: Ms. Yang does not lay foundation for any of the statements in the document, and Plaintiffs merely speculate what the document *may* mean, given that they chose not to ask any of AB's witnesses about this document in deposition. Fed. R. Evid. 801/802: the document contains inadmissible hearsay to the extent it is offered for the truth of the matter asserted (e.g., any consumer's response to advertisements for | **Standing Order Response.**<br><br>**Hearsay Response.**<br><br>**Personal Knowledge Response.** The contents of these statements do not rely on Ms. Yang's personal knowledge for proper foundation and inferences from the document do not depend on hearing what AB witnesses might say at a deposition. |

| No. | Citation | Objection | Responses |
|-----|----------|-----------|-----------|
| | | PATAGONIA beer). | |
| 124 | Yang Decl. ¶ 40, Ex. 107 | Fed. R. Evid. 901; Court's Standing Order at pp. 3–4: Ms. Yang has not authenticated the document. Fed. R. Evid. 602: Ms. Yang does not lay foundation for any of the statements in the document, and Plaintiffs merely speculate what the document *may* mean, given that they chose not to ask any of AB's witnesses about this document in deposition. Fed. R. Evid. 801/802: the document contains inadmissible hearsay to the extent it is offered for the truth of the matter asserted (e.g., any consumer's response to advertisements for PATAGONIA beer). | **Standing Order Response.** **Hearsay Response.** **Personal Knowledge Response.** The contents of these statements do not rely on Ms. Yang's personal knowledge for proper foundation and inferences from the document do not depend on hearing what AB witnesses might say at a deposition. |
| 125 | Yang Decl. ¶ 41, Ex. 112 | Fed. R. Evid. 602: The deposition excerpts provided by Ms. Yang are incomplete and do not lay foundation for the responses, including because they provide answers, sometimes without even providing the question, and sometimes without providing context to the question. | **Personal Knowledge Response.** The contents of these statements do not rely on Ms. Yang's personal knowledge for proper foundation. |
| 126 | Yang Decl. ¶ 43, Ex. 114 | Fed. R. Evid. 901; Court's Standing Order at pp. 3–4: Ms. Yang has not authenticated the document. Fed. R. Evid. 602: Ms. Yang does not lay foundation for any of the statements in the document, and | **Standing Order Response.** **Hearsay Response.** **Personal Knowledge Response.** The contents of these statements do not rely on Ms. Yang's personal knowledge for proper |

| No. | Citation | Objection | Responses |
|-----|----------|-----------|-----------|
| | | Plaintiffs merely speculate what the document *may* mean, given that they chose not to ask any of AB's witnesses about this document in deposition. Fed. R. Evid. 801/802: the document contains inadmissible hearsay to the extent it is offered for the truth of the matter asserted | foundation and inferences from the document do not depend on hearing what AB witnesses might say at a deposition. |
| 127 | Yang Decl. ¶ 44, Ex. 115 | Fed. R. Evid. 901; Court's Standing Order at pp. 3–4: Ms. Yang has not authenticated the document. Fed. R. Evid. 602: Ms. Yang does not lay foundation for any of the statements in the document, and Plaintiffs merely speculate what the document *may* mean, given that they chose not to ask any of AB's witnesses about this document in deposition. Fed. R. Evid. 801/802: the document contains inadmissible hearsay to the extent it is offered for the truth of the matter asserted | **Standing Order Response.**<br><br>**Hearsay Response.**<br><br>**Personal Knowledge Response.** The contents of these statements do not rely on Ms. Yang's personal knowledge for proper foundation and inferences from the document do not depend on hearing what AB witnesses might say at a deposition. |
| 128 | Yang Decl. ¶ 45, Ex. 116 | Fed. R. Evid. 901; Court's Standing Order at pp. 3–4: Ms. Yang has not authenticated the document. Fed. R. Evid. 602: Ms. Yang does not lay foundation for any of the statements in the document, and Plaintiffs merely speculate what the document *may* mean, given that they chose not to ask any of AB's witnesses about this | **Standing Order Response.**<br><br>**Redundancy Response.**<br><br>**Hearsay Response.**<br><br>**Personal Knowledge Response.** The contents of these statements do not rely on Ms. Yang's personal knowledge for proper foundation and inferences from the |

| No. | Citation | Objection | Responses |
|---|---|---|---|
| | | document in deposition. Fed. R. Evid. 402: the document is not relevant to the extent it contains production, sales, or marketing strategies that were never implemented. Fed. R. Evid. 801, 802: the document contains inadmissible hearsay to the extent it is offered for the truth of the matter asserted (e.g., "Context here is, it's a tiny brand in terms of sales today, so we conceptually have more license to redesign the whole thing"). | document do not depend on hearing what AB witnesses might say at a deposition. |
| 129 | Yang Decl. ¶ 46, Ex. 117 | Fed. R. Evid. 901; Court's Standing Order at pp. 3–4: Ms. Yang has not authenticated the document. Fed. R. Evid. 602: Ms. Yang does not lay foundation for any of the statements in the document, and Plaintiffs merely speculate what the document *may* mean, given that they chose not to ask any of AB's witnesses about this document in deposition. Fed. R. Evid. 402: the document is not relevant to the extent it contains production, sales, or marketing strategies that were never implemented. | **Standing Order Response.**<br><br>**Redundancy Response.**<br><br>**Personal Knowledge Response.** The contents of these statements do not rely on Ms. Yang's personal knowledge for proper foundation and inferences from the document do not depend on hearing what AB witnesses might say at a deposition. |
| 130 | Yang Decl. ¶ 47, Ex. 118 | Fed. R. Evid. 901; Court's Standing Order at pp. 3–4: Ms. Yang has not authenticated the document. Fed. R. Evid. 602: Ms. Yang does not lay | **Standing Order Response.**<br><br>**Redundancy Response.**<br><br>**Hearsay Response.** |

| No. | Citation | Objection | Responses |
|-----|----------|-----------|-----------|
| | | foundation for any of the statements in the document, and Plaintiffs merely speculate what the document *may* mean, given that they chose not to ask any of AB's witnesses about this document in deposition.<br>Fed. R. Evid. 402: the document is not relevant to the extent it contains production, sales, or marketing strategies that were never implemented.<br>Fed. R. Evid. 801, 802: the document contains inadmissible hearsay to the extent it is offered for the truth of the matter asserted. | **Personal Knowledge Response.** The contents of these statements do not rely on Ms. Yang's personal knowledge for proper foundation and inferences from the document do not depend on hearing what AB witnesses might say at a deposition. |
| 131 | Yang Decl. ¶ 48, Ex. 119 – "Under my supervision, one of my colleagues created the graphic, titled 'AB's Branding Strategy: AB Targets Patagonia,' pasted below, and attached as **Exhibit 119**. The graphic is intended to show some examples of documents produced by AB in this litigation that indicate AB referenced Patagonia, Inc. and Patagonia Provisions, Inc., and the PATAGONIA and PATAGONIA PROVISIONS brands, in the | Ex. 119, and the statements describing it, are incomplete and misleading.<br>Ex. 119 purports to be a chart reflecting "AB's Branding Strategy: AB Targets Patagonia." Ms. Yang does not explain how any particular reference to Plaintiffs is evidence of "targeting" Plaintiffs in "AB's Branding Strategy." None of the documents cited makes any such reference.<br>Fed. R. Evid. 602: The chart in Ex. 119 lacks foundation. Ms. Yang does not have personal knowledge that Ex. 119 references any attempt by AB to "target" Plaintiffs, and she cites to none. At most she can represent | **Standing Order Response.**<br><br>**Redundancy Response.**<br><br>**Personal Knowledge Response.** The contents of the chart do not rely on Ms. Yang's personal knowledge for proper foundation.<br><br>The contents of Ms. Yang's chart are based on AB's own documents. A compilation of AB's own documents is hardly prejudicial and is permitted. |

| No. | Citation | Objection | Responses |
|-----|----------|-----------|-----------|
| | course of developing AB's Patagonia beer product and brand. The facts and excerpts in this graphic are taken verbatim from Exhibits of this Supplemental Declaration, namely, Exhibits 83(b), 88, 89, 90, 91, 92-95, 114, and 115." | that AB referenced Plaintiffs along with many other outdoor brands and "purpose-driven" brands in the cited materials. Fed. R. Evid. 402, 403: Ms. Yang's chart is misleading, confusing, and unfairly prejudicial to AB. It purports to show instances in which AB "targeted" Plaintiffs in creating a branding strategy for PATAGONIA beer, but the chart merely crops images and takes them out of context. For example, when considering outdoor brands, AB references numerous brands, including Plaintiffs' competitors, Jeep, the X Games, and others. AB was not "targeting" all of those companies with its marketing strategies. Similarly, in one page of a lengthy presentation, AB referenced around 20 "purpose-driven" companies (e.g., companies that support various causes, donate profits to charity, etc.). Is it Ms. Yang's contention that AB "targeted" all of them? In other documents, AB or third parties conducted market research into products in the market that made "better for you" claims or that were non-traditional beers. Plaintiffs' Long Root Ale was one among dozens of brands referenced. AB certainly was not | |

| No. | Citation | Objection | Responses |
|-----|----------|-----------|-----------|
| | | "targeting" every one of those products. Finally, a file name of a document created by a third party cannot be evidence of AB "targeting" Plaintiffs. Ms. Yang provides none of this context to the Court. All of this manipulation of the documents was done to give a misleading and unfair impression of AB's initial marketing concepts. Accordingly, it should be disregarded. | |
| 132 | Yang Decl. ¶ 49, Ex. 120 – "Under my supervision, one of my colleagues created the graphic, titled 'AB's Branding Strategy: AB Targets Patagonia and Proxies,' pasted below, and attached as **Exhibit 120**. The graphic is intended to show some examples of documents produced by AB in this litigation that indicate AB referenced competitors of Patagonia, Inc., in the course of developing AB's Patagonia beer product and brand. The facts and excerpts in this graphic are taken verbatim from Exhibits of this Supplemental Declaration, namely Exhibits | Ex. 120, and the statements describing it, are incomplete and misleading. Ex. 120 purports to be a chart reflecting "AB's Branding Strategy: AB Targets Patagonia and Proxies." Ms. Yang does not explain how Plaintiffs' competitors are "proxies" for Plaintiffs, or how any particular reference to REI or The North Face is evidence of "targeting" Plaintiffs in "AB's Branding Strategy." None of the documents cited makes any such reference. Fed. R. Evid. 602: The chart in Ex. 120 lacks foundation. Ms. Yang does not have personal knowledge that Ex. 120 references any attempt by AB to "target" Plaintiffs, and she cites to none. At most she can represent that AB referenced Plaintiffs along with many other outdoor | **Personal Knowledge Response.** The contents of the chart do not rely on Ms. Yang's personal knowledge for proper foundation.<br><br>The contents of Ms. Yang's chart are based on AB's own documents, namely sales records and history. Empirical analysis of AB's own records is hardly prejudicial. |

PLT'S RESPONSE TO DEF'S EVIDENTIARY OBJECTIONS TO EVIDENCE CITED IN PLT'S MOTION FOR PARTIAL SUMMARY JUDGMENT; CASE NO. 2:19-CV-02702-VAP-JEM

- 94 -

| No. | Citation | Objection | Responses |
|-----|----------|-----------|-----------|
|  | 93-96, and 117." | brands and "purpose-driven" brands in the cited materials.<br>Fed. R. Evid. 403: Ms. Yang's chart is misleading, confusing, and unfairly prejudicial to AB. It purports to show instances in which AB "targeted" Plaintiffs in creating a branding strategy for PATAGONIA beer, by referencing Plaintiffs' competitors, but the chart merely crops images or statements and takes them out of context. For example, when considering outdoor brands, AB references numerous brands, including Plaintiffs' competitors, Jeep, the X Games, and others. AB was not "targeting" all of those companies with its marketing strategies. References to interests that drinkers of PATAGONIA beer might have, including hiking, camping, kayaking, Bass Pro Shops, and Go-Pro video cameras, among many others, is not evidence of AB "targeting" Plaintiffs. Ms. Yang provides none of this context to the Court.<br>All of this manipulation of the documents was done to give a misleading and unfair impression of AB's initial marketing concepts. Accordingly, it should be disregarded. |  |
| 133 | Yang Decl. ¶ 50, Ex. 121 – "Under | Ex. 121, and the statements describing | **Standing Order Response.** |

| No. | Citation | Objection | Responses |
|---|---|---|---|
| | my supervision, one of my colleagues created the graphic titled 'AB's Branding Strategy: Resulting Confusion' pasted below, and attached as **Exhibit 121**. The facts from the Exhibits of this Supplemental Declaration, namely Exhibits 97, 105, 106, and 107a-b form the basis for the information contained in this graphic." | it, are incomplete and misleading. Ex. 121 purports to be a chart reflecting "AB's Branding Strategy: Resulting Confusion." Ms. Yang does not explain any of the supposed instances of confusion, what led to any supposed instance of confusion, or whether any consumer was confused as a result of AB's branding strategy. She merely offers incomplete details and conjecture. Fed. R. Evid. 602: The chart in Ex. 121 lacks foundation. Ms. Yang does not have personal knowledge regarding any supposed instance of confusion or the reason any consumer made the statement he or she did. Fed. R. Evid. 403: Ms. Yang's chart is misleading, confusing, and unfairly prejudicial to AB. None of the supposed instances show consumer confusion, and Ms. Yang has merely taken documents out of context.<br><br>Fed. R. Evid. 801/802: Ms. Yang's chart purports to offer instances of consumer confusion as a result of AB's branding strategy. However, any statements referenced in the chart are inadmissible hearsay offered for the truth of the matter asserted(e.g., that the out-of-court | **Personal Knowledge Response.** The contents of the chart do not rely on Ms. Yang's personal knowledge for proper foundation.<br><br>**Redundancy Response.**<br><br>**Rule 401 Response.** Instances of confusion demonstrate association between AB's beer and Patagonia. This is clearly relevant to whether the beer points uniquely and unmistakably to Patagonia.<br><br>**Hearsay Response.** Evidence of confusion is submitted to show the consumer's state of mind, which is an exception to hearsay. *See Conversive Inc. v. Conversagent, Inc.*, 433 F.Supp.2d 1079, 1091 (C.D. Cal. 2006); Fed. R. Evid. 803(3). The reported third party statements could be presented in an admissible form. *Montoya v. Orange Cty. Sheriff's Dep't*, 987 F. Supp. 2d 981. 996 (C.D. Cal. 2013). |

| No. | Citation | Objection | Responses |
|-----|----------|-----------|-----------|
| | | declarants believed AB's PATAGONIA beer was put out by Plaintiffs). Fed. R. Evid. 402: To the extent Plaintiffs are attempting to introduce evidence of consumer confusion, it is not relevant to any of the issues raised in AB's motion for partial summary judgment and only serves to demonstrate that Plaintiffs' "false suggestion" claim under 15 U.S.C. § 2(a) and passing off claim under 15 U.S.C. §1064(3) amount to an improper attempt to cancel AB's registration based on likelihood of confusion—a claim that cannot be asserted after five years of registration. *Pinkette Clothing, Inc. v. Cosmetic Warriors, Ltd.*, 894 F.3d 1015, 1023 (9th Cir. 2018). *Notre Dame*, 703 F.2d at 1376. Further, given that the materials cited by Ms. Yang show that AB views any association with Plaintiffs as a negative, they certainly cannot support Plaintiffs' passing off claim. | |
| 134 | Yang Decl. ¶ 52, Ex. 122 | Fed. R. Evid. 901; Court's Standing Order at pp. 3–4: Ms. Yang has not authenticated the document. Fed. R. Evid. 602: Ms. Yang does not lay foundation for any of the statements in the document, and Plaintiffs merely | **Standing Order Response.** **Redundancy Response.** **Rule 401 Response.** AB's intent in forming the agreement is relevant. |

| No. | Citation | Objection | Responses |
|-----|----------|-----------|-----------|
| | | speculate what the document *may* mean, given that they chose not to ask any of AB's witnesses about this document in deposition. Fed. R. Evid. 402: the document is not relevant as it contains statements made during negotiations of the agreement between AB and Warsteiner that are not reflected in the final agreement. Fed. R. Evid. 801, 802: the document contains inadmissible hearsay to the extent it is offered for the truth of the matter asserted. | **Hearsay Response.** **Personal Knowledge Response.** The contents of these statements do not rely on Ms. Yang's personal knowledge for proper foundation and inferences from the document do not depend on hearing what AB witnesses might say at a deposition. |
| 135 | Yang Decl. ¶ 54, Ex. 124 | Fed. R. Evid. 901; Court's Standing Order at pp. 3–4: Ms. Yang has not authenticated the document. Fed. R. Evid. 602: Ms. Yang does not lay foundation for any of the statements in the document, and Plaintiffs merely speculate what the document *may* mean, given that they chose not to ask any of AB's witnesses about this document in deposition. Fed. R. Evid. 402: the document is not relevant to the extent it contains production, sales, or marketing strategies that were never implemented. Fed. R. Evid. 801, 802: the document contains inadmissible hearsay to the extent it is offered for the truth of the | **Standing Order Response.** **Redundancy Response.** **Hearsay Response.** **Personal Knowledge Response.** The contents of these statements do not rely on Ms. Yang's personal knowledge for proper foundation and inferences from the document do not depend on hearing what AB witnesses might say at a deposition. |

| No. | Citation | Objection | Responses |
|-----|----------|-----------|-----------|
| | | matter asserted. | |
| 136 | Yang Decl. ¶ 55, Ex. 126 | Fed. R. Evid. 602: The deposition excerpts provided by Ms. Yang are incomplete and do not lay foundation for the responses, including because they provide answers, sometimes without even providing the question, and sometimes without providing context to the question. | **Personal Knowledge Response.** The contents of these statements do not rely on Ms. Yang's personal knowledge for proper foundation. |
| 137 | Yang Decl. ¶ 56, Ex. 127 | Fed. R. Evid. 901; Court's Standing Order at pp. 3–4: Ms. Yang has not authenticated the document. | **Standing Order Response.** |
| 138 | Yang Decl. ¶ 57, Ex. 128 | Fed. R. Evid. 901; Court's Standing Order at pp. 3–4: Ms. Yang has not authenticated the document. | **Standing Order Response.** |
| 139 | Yang Decl. ¶ 58, Ex. 129 | Fed. R. Evid. 901; Court's Standing Order at pp. 3–4: Ms. Yang has not authenticated the document. Fed. R. Evid. 801/802: The articles contain inadmissible hearsay to the extent they are offered for the truth of any matter asserted. | **Standing Order Response.** **Hearsay Response.** The articles are submitted for their contents and not the truth of the matter asserted. |
| 140 | Yang Decl. ¶ 58, Ex. 130 | Fed. R. Evid. 901; Court's Standing Order at pp. 3–4: Ms. Yang has not authenticated the document. Fed. R. Evid. 801/802: The emails contain inadmissible hearsay to the extent they are offered for the truth of any matter asserted (e.g., that Plaintiffs were selling "Patagonia beer"). | **Standing Order Response.** **Hearsay Response.** The article is submitted to show its contents (e.g., that it refers to Patagonia's beer as "Patagonia beer"). |
| 141 | Yang Decl. ¶ 60, Ex. 125(a)- | Fed. R. Evid. 901; Court's Standing Order at pp. 3–4: Ms. Yang has not authenticated | **Standing Order Response.** **Redundancy** |

| No. | Citation | Objection | Responses |
|---|---|---|---|
| | (b) | the document.<br>Fed. R. Evid. 602: Ms. Yang does not lay foundation for any of the statements in the document, and Plaintiffs merely speculate what the document *may* mean, given that they chose not to ask any of AB's witnesses about this document in deposition.<br>Fed. R. Evid. 402: the document is not relevant to the extent it contains production, sales, or marketing strategies that were never implemented).<br>Fed. R. Evid. 801, 802: the document contains inadmissible hearsay to the extent it is offered for the truth of the matter asserted. | **Response.**<br><br>**Hearsay Response.**<br><br>**Personal Knowledge Response.** The contents of these statements do not rely on Ms. Yang's personal knowledge for proper foundation and inferences from the document do not depend on hearing what AB witnesses might say at a deposition. |
| 142 | Yang Decl. ¶ 61, Ex. 131 | Fed. R. Evid. 901; Court's Standing Order at pp. 3–4: Ms. Yang has not authenticated the document.<br>Fed. R. Evid. 602: Ms. Yang does not lay foundation for any of the statements in the document, and Plaintiffs merely speculate what the document *may* mean, given that they chose not to ask any of AB's witnesses about this document in deposition.<br>Fed. R. Evid. 801, 802: the document contains inadmissible hearsay to the extent it is offered for the truth of the matter asserted. | **Standing Order Response.**<br><br>**Hearsay Response.**<br><br>**Personal Knowledge Response.** The contents of these statements do not rely on Ms. Yang's personal knowledge for proper foundation and inferences from the document do not depend on hearing what AB witnesses might say at a deposition. |
| 143 | Yang Decl. ¶ | Fed. R. Evid. 901; Court's Standing Order at pp. 3–4: Ms. Yang | **Standing Order Response.** |

| No. | Citation | Objection | Responses |
|---|---|---|---|
| | 62, Ex. 132 | has not authenticated the document. Fed. R. Evid. 602: Ms. Yang does not lay foundation for any of the statements in the document, and Plaintiffs merely speculate what the document *may* mean, given that they chose not to ask any of AB's witnesses about this document in deposition. Fed. R. Evid. 801, 802: the document contains inadmissible hearsay to the extent it is offered for the truth of the matter asserted.<br><br>Fed. R. Evid. 402: the document is not relevant to the extent it contains production, sales, or marketing strategies that were never implemented. | **Redundancy Response.**<br><br>**Hearsay Response.**<br><br>**Personal Knowledge Response.** The contents of these statements do not rely on Ms. Yang's personal knowledge for proper foundation and inferences from the document do not depend on hearing what AB witnesses might say at a deposition.. |
| 144 | Yang Decl. ¶¶33-37, Exs. 100- 104 | Fed. R. Evid. 901; Court's Standing Order at pp. 3–4: Ms. Yang has not authenticated the document. Fed. R. Evid. 602: Ms. Yang does not lay foundation for any of the documents, and crops them from larger documents without context. Plaintiffs merely speculate what the document *may* mean, given that they chose not to ask any of AB's witnesses about this document in deposition. Fed. R. Evid. 402: the document is not relevant to the extent it contains production, sales, or marketing strategies that were | **Standing Order Response.**<br><br>**Redundancy Response.**<br><br>**Personal Knowledge Response.** The contents of these statements do not rely on Ms. Yang's personal knowledge for proper foundation and inferences from the document do not depend on hearing what AB witnesses might say at a deposition. |

| No. | Citation | Objection | Responses |
|-----|----------|-----------|-----------|
|     |          | never implemented. |           |

DATED:  August 25, 2020        Respectfully submitted,

KILPATRICK TOWNSEND & STOCKTON LLP


By:    */s/Gregory S. Gilchrist*
        GREGORY S. GILCHRIST

Attorneys for Plaintiffs and Counter-Defendants
Patagonia, Inc. and Patagonia Provisions, Inc.